# CONNORS LLP

July 7, 2017

*Attorneys At Law*
Terrence M. Connors
Randall D. White*
John T. Loss
Vincent E. Doyle III
Michael J. Roach
Lawlor F. Quinlan III
James W. Grable, Jr.
Joseph D. Morath, Jr.
Mollie C. McGorry
Paul A. Woodard
Nicholas A. Romano
Caitlin M. Higgins
Christina S. Parker
Christopher J. Larrabee
Caitlin E. O'Neil
Trevor N. White
Sarah M. Washington

*Paralegals*
Curtis J. Ahrens, Jr.
John P. Kromer
Sara E. Lyons
Christine A. Trojan, R.N.
Katherine M. Grossberg
Margaret Dickey, R.N.
Julie Scott, L.P.N.
Lea Ann Wilczak, R.N.
Dianne M. Lysarz, R.N.

*Also admitted in District of Columbia*

<u>Via CM-ECF</u>

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re: <u>United States v. Percoco, et al., 16 Cr. 776 (VEC)</u>

Dear Judge Caproni:

    As you know, I represent Kevin C. Schuler in the above matter.

    Your Honor instructed me to keep you apprised of developments with any trial conflicts.

    On July 5, 2017, I appeared before the Hon. William M. Skretny to discuss the status of the trial, <u>United States v. Raymond M. Krug</u>, now pending in the Western District of New York. As I previously mentioned, there is a jury drawn and held while we await the outcome of an interlocutory appeal filed by the government and currently *sub judice* in the United States Court of Appeals for the Second Circuit. Although that trial is now stayed pending a decision from the Second Circuit, Judge Skretny set a conditional trial date of December 5, 2017. I explained my current commitment on October 30, 2017, in the Southern District of New York.

    I also am scheduled to proceed to trial in the Western District of New York before the Hon. Richard J. Arcara beginning October 10, 2017, in <u>United States v. Corey Krug</u>. This trial date remains unchanged.

    In addition, I have a January trial in a pending RICO conspiracy case in the Western District of New York before the Hon. Elizabeth A. Wolford with a date certain of January 19, 2018. Judge Wolford has advised that even if she grants severances in that case, she and the government expect that my client would be part of the first group. That trial is expected to last nine to twelve weeks, which effectively precludes my participation in any January date proposed for this case.

    I regret that these conflicts will impact my ability to prepare and effectively represent Mr. Schuler in our case before Your Honor, but I owe it to Mr. Schuler, to his Sixth Amendment right to effective assistance of

counsel and his right to counsel of choice, and to this Court's need to manage its docket and see to the efficient administration of justice, to present Your Honor with the most up-to-date information about trial conflicts and about the impact of the volume and pace of discovery on our ability to sufficiently prepare for an October trial date.

In addition to these conflicts, Mr. Laipple's counsel, Herb Greenman, also faces extensive trial conflicts in Fall 2017 and Winter 2018. Mr. Greenman has federal trials set on August 3, 2017 (Hon. Richard J. Arcara); September 26, 2017 (Hon. William M. Skretny); and the January 2018 trial referenced above. For all the same reasons discussed below, these trials will equally preclude Mr. Greenman's preparation and participation in the instant matter.

This case has proceeded with great haste notwithstanding the immensity and breadth of discovery. Despite the fact that no defendant is incarcerated, the government requested a trial date in the Fall of 2017. In a case against eight defendants, alleging multiple (yet separate) conspiracies, with millions of documents (the review of which has been encumbered by repeated delays with documents still forthcoming from the government),[1] the government's desire to schedule the trial just a few months after the return of the indictment threatens to deprive Mr. Schuler of a fair trial. Simply put, aside from the government's request for such an early date, every factor in this case weighs in favor of a new trial date.

Accordingly, Mr. Schuler seeks a trial date in the Spring or Summer of 2018 for two reasons: (1) the overwhelming volume of discovery, coupled with the occurrence of several other federal trials simultaneously, requires additional time for trial preparation; and (2) my preexisting conflicts with both proposed trial dates infringe upon his Sixth Amendment right to counsel of his choice.

1. Volume of Discovery

Under 18 U.S.C. § 3161(7)(B), when determining whether to grant a new trial date, a judge shall consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself." To that point, a case's complexity may be predicated on, *inter alia*, the number of defendants, legal and factual nuances, and amount of discovery.

---

[1] For a summary of the numerous delays and issues pertaining to the government's production, *see* Dckt. No. 81.

*See, e.g., United States v. Gambino*, 784 F. Supp. 129, 140 (S.D.N.Y. 1992). "A continuance based on complexity is proper if it is limited in time and reasonably related to the actual needs of the case." *United States v. Chichakli*, 2014 WL 5369424, at *7 (S.D.N.Y. Oct. 16, 2014) (internal quotations omitted).

The primary reason for my request that Mr. Schuler not proceed to trial in October or November is the volume of production from the government. This case is unlike most others for the simple fact that it involves **terabytes**[2] of data amounting to millions of pages. My firm has been working diligently to review the millions of pages of documents the government has produced. We have a staff of lawyers and paralegals reviewing documents as quickly as they can. They have performed admirably and made impressive progress, but there is much left to review — let alone to then synthesize into a cogent defense. With complex federal criminal trials in other district courts scheduled for October 2017, December 2017, and January 2018 — and review of discovery and 3500 materials in those cases — we will not have completed our review of the documents in this case in time for an October or November trial of this case.

This is problematic inasmuch as the government itself, *i.e.*, the body responsible for prosecuting Mr. Schuler, urged the defendants to review all documents — pertaining to all defendants — in this case.[3] This is a daunting task even for the largest firms in New York, let alone a litigation boutique. As a result, we now face the grievous concern that Mr. Schuler will be forced to stand trial without a full and fair exploration of all the evidence. Our criminal system demands more and Mr. Schuler deserves more in defending his innocence.

To that end, the government should not be allowed to have its cake and eat it too. It cannot produce terabytes of data (plagued by delays and other issues) and not only expect the defendants to have reviewed all the documents, but to actually prepare for trial a mere three months after the "completion" of this production.[4] In other words, the government is not entitled to truncate a defendant's preparation time in an effort to bolster its own case. To hold otherwise turns the criminal justice system on its head,

---

[2] A terabyte of data is equivalent to one million pages. To give you an illustration, 1,024 gigabytes are equivalent to 1 terabyte. One gigabyte is equal to one truck full of paper. One terabyte would be produced from 50,000 trees. http://www.sdsdiscovery.com/resources/data-conversions/.

[3] The number of documents pertaining to the Buffalo Defendants is a far smaller subsection of the discovery. At this point, however, it is unclear with whom Mr. Schuler will be tried, mandating an exhaustive review of all discovery.

[4] The government recently conceded that it was continuing to produce documents through July. *See* Dckt. No. 257.

leaving defendants vulnerable to wrongful conviction by speed and subterfuge.

On balance, the government's request for a Fall 2017 trial date is arbitrary considering that it has been less than a year since the defendants were indicted; that no defendant is incarcerated; that there have been no prior requests for a continuance; that there are still a number of outstanding motions; and, of course, that the volume of discovery (some still outstanding) is massive. We, therefore, request that the Court consider a trial date in the Spring or Summer of 2018.

### 2. Preexisting Trial Conflicts

In addition to the review of important evidence that will not be completed by October or November, I face conflicts with other trials in other cases which further limit our ability to complete the review and prepare for this trial. Specifically, I have one trial, as discussed above, that has now been scheduled for December; another trial set to begin in early October and likely to end a week before this trial is scheduled to begin; and a trial in January 2018 that is expected to go nine weeks or longer. The Court's proposed trial dates will preclude my participation in Mr. Schuler's defense, a burden he should not have to shoulder.

Mr. Schuler is firm in his decision that I represent him at his trial. Although I have been assisted by others in this matter, Mr. Schuler retained me for the express reason that I try his case. As such, not only do I have an obligation and duty to vigorously represent him, Mr. Schuler is entitled to this representation under the Sixth Amendment.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." An element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). "It is consequently not surprising: *first,* that this Court's opinions often refer to the right to counsel as fundamental, . . . [and] *second,* that commentators describe the right as a great engin[e] by which an innocent man can make the truth of his innocence visible." *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) (internal quotation marks and citations omitted).

It is axiomatic that "[a]ttorneys are not fungible; often the most important decision a defendant makes in shaping his defense is his selection of an attorney." *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990), *cert. denied,* 500 U.S. 920 (1991) (internal quotations omitted). Moreover,

"[w]hen a defendant is financially able to retain counsel, the choice of counsel rests in his hands, not in the hands of the state. . . . A defendant's right to retain counsel of his choice therefore represents a right of constitution dimension, . . . the denial of which may rise to the level of a constitutional violation." *Id.* (internal quotations and citations omitted). Indeed, the "right to select counsel of one's choice" is the very "root meaning of the constitutional guarantee" of the Sixth Amendment. *See Gonzalez-Lopez*, 548 U.S. at 147-48. The Amendment, then, requires "that a . . . guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 146.

Accordingly, an individual's right to counsel of choice is violated "*whenever* the defendant's choice is wrongfully denied," and such error "pervades the entire trial." *Id.* at 150 (emphasis in original). In other words, a violation of this right is therefore a "structural error," that is, one of the very few kinds of errors that "undermine the fairness of a criminal proceeding as a whole." *United States v. Davila*, 133 S. Ct. 2139, 2142 (2013). "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed." *Gonzalez-Lopez*, 548 U.S. at 148.

To be certain, we recognize and respect that this Court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Brumer*, 528 F.3d 157, 161 (2d Cir. 2008) (quoting *Gonzalez-Lopez*, 548 U.S. at 152). When a defendant's right to secure counsel of its choice conflicts with the trial court's discretionary powers, courts will consider, *inter alia*, "whether the continuance would inconvenience witnesses, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay; whether the delay is the defendant's fault; and whether a denial would prejudice the defendant." *United States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986). Moreover, "[i]n giving effect to this governmental interest in the fair, orderly, and effective administration of the courts, however, a trial judge must be mindful that acting in the name of calendar control the judge cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney the client has selected." 9 Fed. Proc., L. Ed. § 22:599.

The factors as applied to the instant matter weigh in favor of considering a new trial date. Counsel raised the conflict at the earliest

point possible to ensure there is no inconvenience to witnesses, the court, counsel, and other parties. Furthermore, legitimate, unavoidable, preexisting scheduling conflicts exist — none of which are attributable to Mr. Schuler. Neither has Mr. Schuler requested repeated continuances or delayed the case in any way.

Moreover, there will be no prejudice to any party if this request is granted. None of the defendants are incarcerated. Although the government has requested a trial date in Fall of 2017, there is no compelling need to conduct the trial by then. Only a few months have passed since the charges were brought, and the volume of documents and the legal complexities in the case are overwhelming. The government had a much longer time — and possesses much deeper resources — to evaluate the evidence. My firm is relatively small (17 lawyers) and has had less time to review millions of pages. Likewise, the document review has been encumbered by repeated delays with documents still forthcoming from the government. In short, there is no reason to rush to trial and sacrifice the ability of Mr. Schuler's counsel to sufficiently prepare and gather the evidence that will prove his innocence. Expediency that leads to wrongful conviction is the worst kind of haste.

In sum, the instant matter is distinguishable from the bounty of case law denying continuances where counsel is unavailable. For example, unlike many other cases where years have passed from indictment to trial, Mr. Schuler makes this request less than a year from the indictment. *Cf. Brumer*, 528 F.3d at 160-61 (denying continuance where defendant sought to replace his sixth attorney nearly six years after the indictment); *United States v. Lespier*, 558 F.2d 624, 626 (1st Cir. 1977) (denying continuance after three years of pretrial motions, conferences, and continuances). In addition, the breadth of discovery in this case undermines the rationale that another attorney would have ample time to prepare for the trial — even if he or she started now. Even if another attorney began reviewing this discovery every hour of every day for the next months, he would not be able to prepare adequately, as he must, to defend Mr. Schuler's innocence. This is, of course, ignoring the other essential preparation that must be conducted: witness preparation; expert preparation; and drafting of opening statements, examinations, and closing statements. Simply put, this is not a case where the Court can tell another attorney to be ready without negatively impacting Mr. Schuler's Sixth Amendment rights.

Importantly, Mr. Schuler does not seek a date uncertain, which would result in a significant delay. He simply seeks a trial date where I can be present to defend him in the Spring or Summer of 2018. Although my firm employs very competent, capable attorneys, we are not fungible. Attorneys

"may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues. These differences, all within the range of effective and competent advocacy, may be important in the development of a defense. Given this reality, a defendant's decision to select a particular attorney becomes critical to the type of defense he will make and thus falls within the ambit of the sixth amendment." *United States v. Laura,* 607 F.2d 52, 58 (3d Cir. 1979). I have been intimately involved in the preparation of this trial. I have attended all pretrial conferences and conferred on matters of discovery, witness preparation, and motions. Indeed, Mr. Schuler retained me based on, *inter alia*, my decades of experience trying complicated, high stakes criminal matters. He did not retain my firm to have someone else try his case.

At this point, neither the October nor the January dates allow me to adequately prepare for and/or participate in Mr. Schuler's trial. As Your Honor aptly pointed out in April, I cannot be two places at once. Here, the public's need for the efficient and effective administration of criminal justice is not hindered by my request. Indeed, setting a trial date for a date certain in the Spring or Summer of 2018 satisfies these principles as effectively as a trial in October or November of this year. In contrast, however, an earlier trial date renders Mr. Schuler's rights vulnerable to the government's "myopic insistence upon expeditiousness in the face of a justifiable request for delay," which "render[s] the right to defend with counsel an empty formality." *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964).

At bottom, "[t]he very enumeration of the right to counsel of choice denies us 'the power to decide . . . whether the right is *really worth* insisting upon.'" *Luis*, 136 S. Ct. at 1101 (Thomas, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008)). "The People, through ratification," did that for us. *Id.* Thus, judicial balancing of that right, where unjustifiable, "do[es] violence to the constitutional design." *Id.* (internal quotation marks omitted).

In addition to the conflicts and concerns highlighted above, I am also aware that counsel for Mr. Ciminelli has submitted a letter pertaining to his serious medical condition and extremely compelling reasons to postpone his trial. This, coupled with the government's recent concession that the Buffalo Defendants should be tried with one another, *see* Dckt. No. 264 at 87-93, further justifies the need for a trial date in the Spring or Summer of 2018.

We are respectful of this Court's need to control its docket, move cases at appropriate speed, control its calendar, and see to it that justice is not delayed. We do not make this request lightly. The recent developments

in my trial schedule, however, paired with the preexisting trial commitments as well as the volume of discovery described above, make it necessary to preserve Mr. Schuler's right to counsel and to avoid a wrongful conviction. We are, of course, available at the Court's request and convenience to discuss this request and do all in our power to try this case at the earliest possible date. And we remain grateful for Your Honor's willingness to consider the conflicts and challenges we face in doing our best to provide Mr. Schuler with the defense to which he is constitutionally entitled.

Respectfully submitted,

/s/ Terrence M. Connors

Terrence M. Connors

cc: All counsel of record (via CM-ECF)