UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

UNITED STATES OF AMERICA,

    -against-

JOSEPH PERCOCO,
    a/k/a "Herb,"
ALAIN KALOYEROS,
    a/k/a "Dr. K,"
PETER GALBRAITH KELLY, JR.,
    a/k/a "Braith,"
STEVEN AIELLO,
JOSEPH GERARDI,
LOUIS CIMINELLI,
MICHAEL LAIPPLE, and
KEVIN SCHULER,

               Defendants.

———————————————————————————

16-CR-776 (VEC)


# JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE BUFFALO DEFENDANTS' MOTION TO DISMISS <u>AND MOTION TO TRANSFER</u>

**LIPSITZ GREEN SCIME CAMBRIA LLP**
*Attorneys for Defendant Michael Laipple*
Herbert L. Greenman
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
716.849.1333

**HODGSON RUSS LLP**
*Attorneys for Defendant Louis Ciminelli*
Daniel C. Oliverio
Timothy W. Hoover
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
716.856.4000

**CONNORS LLP**
*Attorneys for Defendant Kevin Schuler*
Terrence M. Connors
1000 Liberty Building
424 Main Street
Buffalo, New York 14202
716.852.5533

**DLA PIPER LLP (US)**
*Attorneys for Defendant Louis Ciminelli*
John M. Hillebrecht
Jessica A. Masella
1251 Avenue of the Americas
New York, New York 10020
212.335.4829

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

REPLY ARGUMENT ..................................................................................................................3

      POINT ONE   THE BUFFALO DEFENDANTS SHOULD BE TRANSFERRED TO
                   THE WESTERN DISTRICT OF NEW YORK AT BUFFALO FOR
                   TRIAL .......................................................................................................3

          A.     The Court should not apply any presumption against transfer .......................3

          B.     The Buffalo Defendants' transfer motion properly focused on the *Platt*
                 factors as applied to them; the convenience of the Western District to the
                 non-moving Syracuse Defendants is irrelevant ..............................................4

          C.     Buffalo is the nerve center of the case against the Buffalo Defendants .........8

          D.     The facts supporting transfer to Buffalo are unrebutted by the
                 government, and the government does not meaningfully address
                 factors 1, 2, 3, 5, and 10 ..................................................................................9

CONCLUSION ...........................................................................................................................11

# TABLE OF AUTHORITIES

**Page/s**

**Cases**

*United States v. Aronoff*,
 463 F. Supp. 454 (S.D.N.Y. 1978) ...................................................................5, 6

*United States v. Clark*,
 360 F. Supp. 936 (S.D.N.Y. 1973) ...............................................................3, 4, 6

*United States v. Fiorentino*,
 No. CR 13-0338, 2014 WL 108415 (E.D.N.Y. Jan. 6, 2014).........................5, 6

*United States v. Holland*,
 No. 17-CR-20054, 2017 WL 1433265 (S.D. Fla. Apr. 24, 2017), *aff'd*
 (S.D. Fla. June 27, 2017) ...............................................................................6, 10

*United States v. Ohran*,
 No. 99-CR-142, 2000 WL 620217 (S.D.N.Y. May 12, 2000)............................4

*United States v. Posner*,
 549 F. Supp. 475 (S.D.N.Y. 1982) .................................................................3, 4

*United States v. Spy Factory, Inc.*,
 951 F. Supp. 450 (S.D.N.Y. 1997) .................................................................4, 5

*United States v. United States Steel Corp.*,
 233 F. Supp. 154 (S.D.N.Y. 1964) .....................................................................3

*United States v. Valdes*,
 No. 05-CR-156, 2006 WL 738403 (S.D.N.Y. Mar. 21, 2006) ...........................5

**Rules**

Federal Rule of Criminal Procedure 21 ..............................................................3, 4, 5

Federal Rule of Criminal Procedure 21(a)..................................................................1

Federal Rule of Criminal Procedure 21(b).......................................................1, 5, 7, 9

# PRELIMINARY STATEMENT

The government's opposition to the Buffalo Defendants' motion to transfer venue is notable for how little it has to say, its absence of any factual submission, and the remarkable argument that the case against these defendants should stay in the Southern District of New York because (the government contends) the Northern District of New York could be more convenient for other, non-moving defendants. The government's legal arguments are similarly misguided, and general to the point of irrelevance. At most, the government offers excuses for not transferring, rather than proper reasons to deny the motion. Just because the government ignores the facts and applicable law does not mean this Court should do the same.

The government's short response (Docket #264 ("Gov't Resp."[1]) at 103, 104-05, 108-11) relies on a purported and unwarranted presumption against transfer, given that venue in the Southern District does not exist or, at best, hangs by an unspecified wire. It next sets up a straw man with a legally irrelevant argument about the lack of convenience of a Buffalo trial to non-moving defendants, while claiming that the Northern District would be more convenient for those defendants. Finally, it breezes over the *Platt* factors in a conclusory and inaccurate fashion. These arguments distract not only from the overwhelming case for transfer to Buffalo, but also from the government's failure to address the Buffalo Defendants' legal and evidentiary bases for transfer. The government offers no evidentiary contradiction to the Buffalo Defendants' detailed factual record. It submits not a single declaration or piece of evidence, and

---

[1] The government uses the term "change of venue." (Gov't Resp. at 103.) The transfer motion is grounded in Rule 21(b) and the appropriateness of a transfer; it has nothing to do with a Rule 21(a) change of venue to combat government leaks *via* seal violations or pre-trial publicity issues occasioned by government misconduct.

fails to discuss, let alone rebut, the great weight of the facts and arguments made by the Buffalo

Defendants, implicitly conceding their merit.

As a result, there is an undisputed record showing that the most important facts, and most

important *Platt* factors, favor a transfer of the Buffalo Defendants' trial to the Western District of

New York:

- Buffalo is the nerve center and center of gravity of the charges against the Buffalo Defendants.

- The Buffalo Defendants all reside and work in the Buffalo area.

- Trial in Manhattan will be severely disruptive to the Buffalo Defendants, their family members (including minor children), their health, and their business.

- All or almost all of the Buffalo Defendants' witnesses are located in and around Buffalo.

- The government has not identified a single government witness by name or location, and has failed to identify even a single witness who resides or works in the Southern District.

- The government will call law-enforcement witnesses who reside and work in Buffalo, because its investigation originated in Buffalo and was led by the Buffalo FBI.

- Transfer and the resulting severance is entirely proper, even if no standalone severance motion were made or granted.

- Unique Factor 10 considerations support transfer.

The motion should be granted.[2]

---

[2]     The Buffalo Defendants join in and adopt the reply arguments made by Defendant Alain Kaloyeros in his reply memorandum filed on July 21, 2017, in support of their joint motion to dismiss for lack of venue. The Buffalo Defendants further note, with regard to Count Five of the Superseding Indictment, that neither the detailed Complaint nor the detailed Superseding Indictment alleges that any purported act related to the purported bribe occurred in the Southern District of New York. And claims related to the use of wires and scattered emails sent into Manhattan, on which the government attempts to rely (Gov't Resp. at 107 & n.35), pertain to an alleged scheme that included Dr.

## REPLY ARGUMENT

## POINT ONE

## THE BUFFALO DEFENDANTS SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF NEW YORK AT BUFFALO FOR TRIAL

### A.     The Court should not apply any presumption against transfer

The government quotes *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) for the proposition that "'[a]s a general rule a criminal prosecution should be retained in the original district' where the case was charged." (Gov't Resp. at 104.) *Posner*'s "general rule" derives from dictum in *United States v. United States Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964). Though the quoted language appears in several decisions from this District, these cases have not (and could not) ground *Posner*'s "general rule" in the text of Rule 21 or *Platt* decisions from the Supreme Court and Second Circuit. (*See generally* Docket #94 at 24, 25 & n.10 (collecting cases)). It is almost certainly the case that most criminal prosecutions are brought in a district that is both a proper venue and convenient to the defendant. But that fact hardly creates a legal presumption to be applied in cases where venue is legitimately contested.

Applying a presumption against transfer is especially inappropriate where, as here, the government bases venue in the original district on the most fleeting and insubstantial of contacts. (Docket #94 at 2-22.) In such cases, even if the constitutional venue requirement is technically satisfied, the policy underlying that requirement weighs in favor of transfer to the district where the gravamen of the alleged misconduct occurred. *See United States v. Clark*, 360 F. Supp. 936, 945 (S.D.N.Y. 1973) (holding that the venue-transfer analysis should be informed by the policy

---

Kaloyeros and the Syracuse Defendants, who the government concedes were not involved in the conduct alleged in Count Five. These allegations are thus irrelevant to the Buffalo Defendants' alleged bribery of Todd Howe, and do not save Count Five from dismissal.

underlying the constitutional requirement that crimes be tried where they were allegedly committed); *United States v. Ohran*, No. 99-CR-142, 2000 WL 620217, at \*4 (S.D.N.Y. May 12, 2000) ("[T]he constitutional underpinnings of the rules governing venue strongly support the trial of this case in the district in which the defendant resides and where he committed the acts that are the basis for the charge against him.").

Any policy articulated in *Posner* is counterbalanced by the preference for trying defendants in their home districts whenever possible. *See United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (*cited in* (Gov't Resp. at 104)). Accordingly, the Court should apply the *Platt* factors without any presumption against transfer.

**B.     The Buffalo Defendants' transfer motion properly focused on the *Platt* factors as applied to them; the convenience of the Western District to the non-moving Syracuse Defendants is irrelevant**

The government makes no real effort to demonstrate that the *Platt* factors favor trying the Buffalo Defendants in Manhattan. Instead, it focuses on criticizing the Buffalo Defendants for not considering the interests and convenience of the Syracuse Defendants. (Gov't Resp. at 108-10.) Setting aside the government's failure to address the proper issues, the idea that the interests, defendants, and events located in the Northern District of New York somehow dictate a trial in the Southern District is patently illogical. The government's focus on the non-moving Syracuse Defendants is curious and irrelevant for the reasons given in the Buffalo Defendants' Joint Motion (Docket #94 at 37-38). Under Rule 21, the Court must consider only the *Platt* factors and appropriateness of transfer as to defendants who have moved for transfer. To rebut the Buffalo Defendants' showing that transfer to the Western District is warranted, the government must explain why the *Platt* factors point to the Southern District, not to some other place.

Both the text of Rule 21(b) and case law make clear that the Court's authority under Rule 21 to transfer applies only to defendants who have actually moved for transfer. The rule does not permit the Court to transfer non-moving defendants. Rule 21(b) provides that "[u]pon *the defendant's* motion, the court may transfer the proceeding, or one or more counts, against *the defendant* to another district for the convenience of the parties, any victim, and in the interest of justice." Fed. R. Crim. P. 21(b) (emphasis added).

The cases are in accord. In *United States v. Valdes*, No. 05-CR-156, 2006 WL 738403 (S.D.N.Y. Mar. 21, 2006), a subset of defendants (the "Section 1960 Defendants") sought transfer to the Southern District of Florida. *See id.* at *1. The government's opposition argued, in part, that "the criminal activity alleged to have occurred was national in scope." *Id.* at *6. The Court rejected that argument, holding that "the central location of the criminal acts allegedly committed *by the Section 1960 Defendants* is in the Southern District of Florida, *not New York*." *Id.* (emphasis added).[3]

*United States v. Aronoff*, 463 F. Supp. 454 (S.D.N.Y. 1978), reached the same conclusion. There, three defendants were charged with a single scheme to defraud. *See id.* at 455-56. Two defendants sought transfer to the Eastern District of Michigan. *See id.* at 455. The Court assessed these two motions independently, considering in each case whether the *Platt*

---

[3]      Cases like *Valdes* belie the government's argument that, since the 1980s, courts have tended to discount "the financial, emotional, or practical burdens of trial in a distant locale" (Gov't Resp. at 111 (internal quotation marks omitted)). *See Valdes*, 2006 WL 738403, at *4 ("[F]amily obligations, including the care of children, militates in favor of transferring proceedings to the district in which a defendant resides."); *United States v. Fiorentino*, No. CR 13-0338, 2014 WL 108415, at *4 (E.D.N.Y. Jan. 6, 2014) (holding that the defendant's need to care for his infirm mother weighed in favor of transfer); *Spy Factory, Inc.*, 951 F. Supp. at 463 (describing "the tremendous expense . . . [of] trying the case in New York" as the strongest factor favoring transfer).

factors, as applied to the moving defendant, tipped in favor of Michigan or New York. *See id.* at 458-61. The Court ultimately granted one motion and denied the other. *See id.* at 461.[4]

Accordingly, the government's discussion of the convenience issues for the Syracuse Defendants is irrelevant. The Syracuse Defendants have not moved for transfer (to any district) and will be tried before the Court. Contrary to the government's suggestion (Gov't Resp. at 109-10 (citing Factor 1)), the fact that the Syracuse Defendants live in Syracuse has zero applicability to the Buffalo Defendants' motion. The government's argument regarding the issue of savings on expenses from a Buffalo trial for the Syracuse Defendants (*id.* at 110 (citing Factor 6)) is likewise irrelevant.

As to the government's convenience calculus for Defendant Kaloyeros, he has moved for transfer to Buffalo. The government's belief that another district might be more convenient to him than Manhattan, but less convenient than Buffalo, does not mean a transfer from Manhattan to Buffalo should be denied. Dr. Kaloyeros is able to decide those issues for himself. And the analysis of the *Platt* factors is specific to each moving defendant. In sum, the government's reliance on events and defendants based in the Northern District of New York to justify a trial in the Southern District of New York, and its attempt to invoke its own interpretation of the interests of non-moving defendants, is bizarre.

---

[4]     *See also, e.g.*, *Clark*, 360 F. Supp. at 940-41, 946 (S.D.N.Y. 1973) (granting five co-defendants' motions for transfer to the Western District of Oklahoma, even though two other co-defendants had not moved for transfer and a third vigorously opposed transfer); *United States v. Holland*, No. 17-CR-20054, 2017 WL 1433265, at *6 (S.D. Fla. Apr. 24, 2017) (dismissing the government's argument that certain witnesses no longer lived in the proposed transferee district, in part because the government did not show that these witnesses "are now in *Florida*," where the government wanted the case venued (emphasis in original)), *aff'd*, (S.D. Fla. June 27, 2017) (slip op.) (copy attached); *Fiorentino*, 2014 WL 108415, at *5 (rejecting a government argument that relied in part on the fact that "defendant's coconspirators were located in and orchestrated acts in [jurisdictions other than the original and proposed transferee districts]").

The government's related discussion of severance is also off-base. First, it is inaccurate for the government to claim that "almost all of the Buffalo Defendants' arguments in favor of a Rule 21(b) transfer begin with the faulty premise that the charges against them will be severed and they will be tried on their own" (Gov't Resp. at 108). The Buffalo Defendants' Joint Motion focused on the relevant facts and the application of the *Platt* factors. (Docket #94 at 23-42.) The appropriateness of a severance was given as an additional consideration supporting transfer under Factor 10, because any severance occasioned by transfer was proper, given that "both transfer of the Buffalo Defendants and severance of the Buffalo Defendants (even if no transfer motion were made) are each warranted." (*Id.* at 40.)

Second, the government fails to explain why severance should control the transfer calculus; it simply claims that the Buffalo Defendants should be severed from the entire Percoco Bribery Scheme, but not from the Syracuse Defendants. Here, transfer of the Buffalo Defendants will not lead to multiple trials where otherwise only one trial was to occur. The government concedes that two trials should occur and the Court has ordered it (Docket #279). If the Buffalo Defendants are transferred to Buffalo, it need not create an additional, third trial that otherwise would not occur. Once the Court rules on transfer, and on the still-pending severance motions filed by the defendants charged in the Percoco Bribery Scheme, the Court may decide to hold only one Manhattan trial with the remaining defendants. Certainly the government has made clear its view that all the defendants (including all the Percoco Bribery Scheme Defendants) are properly charged together and can be tried together. And there is certainly no prejudice to the government in having two, three, or even four trials where the government chose to charge four separate conspiracies in a single indictment.

**C.** **Buffalo is the nerve center of the case against the Buffalo Defendants**

The government's opposition is notable for what it does not say about the Buffalo Defendants. The government's response actually confirms that, as far as the Buffalo Defendants are concerned, all of the operative events occurred outside of Manhattan. The government does not claim that even one witness at the trial of the Buffalo Defendants resides in the Southern District. And it does not contest the Buffalo Defendants' assertion that their supposed criminal acts took place only in the Western District.

Without saying where the nerve center of the case is, or addressing the substantial record that the events, documents, interactions, and investigation in question occurred in Buffalo, the government states the obvious: some things happened in the Northern District, while nothing material occurred in the Southern District (Gov't Resp. at 109). The Buffalo Defendants exhaustively addressed that point in their motion papers, thoroughly detailing the location of the Buffalo Defendants, the location of witnesses, and the location of the events at issue under Factors 1-3. (Docket #93 ¶¶7-37; Docket #95 ¶¶5, 9-22; Docket #96 ¶¶4-11, 31-34.) Fort Schuyler's location in the Northern District, Dr. Kaloyeros's office in the Northern District, and Syracuse-related events (not involving the Buffalo Defendants) occurring in the Northern District do not affect the nerve center of the charges against the Buffalo Defendants. It always has been, and remains, Buffalo.

The government's unsupported suggestion that the nerve center of the case is outside Buffalo is belied by its absolute silence as to the *Platt* factors that go into such a determination (Gov't Resp. at 109). The fact that it must rely on defendants and events located in the Northern District of New York only strengthens the argument for transfer to Buffalo, by confirming that the case against the Buffalo Defendants has no connection whatever to the Southern District of New York.

**D.      The facts supporting transfer to Buffalo are unrebutted by the government, and the
government does not meaningfully address factors 1, 2, 3, 5, and 10**

The factual assertions set forth in the Buffalo Defendants' motion for transfer are

unrebutted.  Not only has the government failed to offer any evidentiary material to support its

opposition, it has not even attempted to counter the Buffalo Defendants' factual recitation.  Both

the location of the Buffalo Defendants' conduct, and the facts relevant to deciding whether to

transfer, are virtually unopposed, and overwhelmingly favor the Buffalo Defendants.

For example, the Buffalo Defendants' motion explained, under Factor 2, that almost all

defense witnesses (themselves; employees of LPCiminelli; third-party witnesses; and character

witnesses) live and work in the Western District.  (Docket #93 ¶¶7, 12-22; Docket #95 ¶¶5, 19-

21; Docket #96 ¶¶31-34.)  The Buffalo Defendants also showed that this investigation originated

in Buffalo, that it was pursued and led by the Buffalo FBI, and that these government witnesses

are located in Buffalo.  (Docket #93 ¶¶23-27, 29-30; Docket #95 ¶ 5; Docket #96 ¶ 4, 35.)  In

response, the government does not claim that even a single witness in this case resides or works

in the Southern District of New York.  Nor does the government identify any actual witnesses.

Nor does it even acknowledge the character witnesses, third-party witnesses, and government

witnesses that reside in the Western District of New York.  All the government says is that some

persons affiliated with Fort Schuyler (located in the Northern District) and Empire State

Development (which has a Buffalo office) may be called.  (Gov't Resp. at 110.)  Certainly there

is no requirement under Rule 21(b), or *Platt*, that each and every witness reside in the transferee

forum.  As the Buffalo Defendants have already indicated, the witnesses who live in the

Northern District of New York will have to travel somewhere.  Buffalo is just as convenient for

them as Manhattan.  (Docket #94 at 34.)  Moreover, the government's "decision to provide only

generalized representations about the location and significance of trial witnesses . . . undermines

its argument" against transfer. *United States v. Holland*, No. 17-CR-20054, 2017 WL 1433265, at \*9 (S.D. Fla. Apr. 24, 2017), *aff'd*, (S.D. Fla. June 27, 2017) (slip op.) (copy attached).

As explained above, the government also fails to rebut the Buffalo Defendants' arguments with respect to Factor 3, the location of the events at issue and the nerve center of the case.

Similarly unrebutted, and only addressed in passing or not at all, are the location of the Buffalo Defendants (Factor 1), the disruption of their businesses if transfer is denied (Factor 5), and the related considerations under Factor 10. Initially, the government's bid to consolidate these considerations into a "solitary" factor (Gov't Resp. at 111) is easily rejected: each are important and distinct factors under *Platt*, with interconnected but independent force in the assessment to be undertaken here. Beyond that, the government simply glosses over the unrebutted business disruption that will occur if the defendants are tried in Buffalo (Docket #93 ¶¶45-63; Docket #95 ¶23; Docket #96 ¶4), and brushes aside as mere "family difficulties" (Gov't Resp. at 111) the devastating family, personal, and medical repercussions that will result if the Buffalo Defendants are tried in Manhattan (Docket #95 ¶ 29; Docket #96 ¶¶12-25; Docket #262 ¶¶4-18).

With respect to Factor 6, the government does not contest that a trial in Manhattan will be significantly more expensive, time-consuming, and disruptive for the Buffalo Defendants. Instead, the government again suggests that a trial in Buffalo would be inconvenient to the Syracuse Defendants (Gov't Resp. at 110), which might be relevant if there were to be a trial in the Northern District. But as the only districts at issue are the Western and Southern, the argument is irrelevant. As for expense to the government, the government makes no effort to show how a Buffalo trial would not be of the same or lesser expense, given the location of the

government law enforcement witnesses who will be called, the ease of access for the Buffalo FBI to the trial in Buffalo, and the lesser expense of lodging and meals in Buffalo as compared to Manhattan.

Finally, the government's passing comments on factors that traditionally are accorded little weight (Factors 4, 8, and 9) were previously addressed by the Buffalo Defendants in their motion (Docket #94 at 41-42). Even if Factors 4, 8, and 9 are neutral, there is no other factor that supports the denial of a transfer of the Buffalo Defendants to Buffalo.

## CONCLUSION

When the government conceded that the Superseding Indictment should be severed into two separate trials, it lost its best, and perhaps only, argument in opposition to the transfer of the Buffalo Defendants' trial to the Western District. Given the overwhelming weight of the *Platt* factors, the Court should enter an order granting the joint motion to transfer, and transfer the Buffalo Defendants and Counts One, Four, and Five to the United States District Court for the Western District of New York at Buffalo.

Dated:   Buffalo, New York
         July 21, 2017

Respectfully submitted,

**HODGSON RUSS** LLP
*Attorneys for Defendant Louis Ciminelli*

By:  s/Timothy W. Hoover
       Daniel C. Oliverio
       Timothy W. Hoover
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
716.856.4000
*doliverio@hodgsonruss.com*
*thoover@hodgsonruss.com*

**DLA PIPER** LLP (US)
*Attorneys for Defendant Louis Ciminelli*

By:  s/John M. Hillebrecht
       John M. Hillebrecht
       Jessica A. Masella
1251 Avenue of the Americas
New York, New York 10020
212.335.4829
*john.hillebrecht@dlapiper.com*
*jessica.masella@dlapiper.com*

**LIPSITZ GREEN SCIME CAMBRIA** LLP
*Attorneys for Defendant Michael Laipple*

By:  s/Herbert L. Greenman
       Herbert L. Greenman
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
716.849.1333
*hgreenman@lglaw.com*

**CONNORS** LLP
*Attorneys for Defendant Kevin Schuler*

By:   s/Terrence M. Connors        
        Terrence M. Connors
1000 Liberty Building
424 Main Street
Buffalo, New York 14202
716.852.5533
*tmc@connorsllp.com*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number: 17-20054-CR-MARTINEZ-GOODMAN**

UNITED STATES OF AMERICA,

>   Plaintiff,

vs.

JOHN HOLLAND,

>   Defendant.

_____/

## ORDER AFFIRMING MAGISTRATE JUDGE GOODMAN'S
## ORDER GRANTING TRANSFER

THIS CAUSE came before the Court upon the United States' Appeal of the Magistrate

Judge's Order Transferring Venue to the Northern District of Georgia (the "Appeal") [ECF No.

59]. This Court must consider timely objections and modify or set aside any part of a Magistrate

Judge's order on a nondispositive matter that is contrary to law or clearly erroneous. *See* Fed. R.

Crim. P. 59; 28 U.S.C. § 636(b)(1)(A). The Court has considered the Appeal, the response [ECF

No. 79], the reply [ECF No. 80], and the pertinent portions of the record, and is otherwise fully

advised in the premises.

**Reconsideration Standard**

The Government argues that the Magistrate Judge failed to find a proper basis for

reconsideration of the Order on Motion to Transfer Venue to the Northern District of Georgia

(the "Order Denying Transfer") [ECF No. 36]. The Government appears to be arguing that the

law of the case doctrine should apply to such order. Under the law of the case doctrine, an issue

decided at one stage of a case is binding at later stages of the same case. *See United States v.*

*Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). Pursuant to such doctrine, the

Government asserts that Defendant was required, but failed, to show any of the following three grounds for reconsideration of the Order Denying Transfer: "(1) that there has been an intervening change in the law; (2) that new evidence has been discovered which was previously not available to the parties in the exercise of due diligence; or (3) that the court made a clear error of law." *FN Herstal, S.A. v. Clyde Armory, Inc.*, No. 12-CV-102, 2016 U.S. Dist. LEXIS 150208, at *4 (M.D. Ga. Oct. 31, 2016).[1] The Court, however, disagrees that the law of the case doctrine applies to the Order Denying Transfer.

The law of the case doctrine does not apply to interlocutory orders. *See United States v. Young*, 267 Fed. App'x. 876, 878-79 (11th Cir. 2008) (citing *Gregg v. U.S. Indus., Inc.*, 715 F.2d 1522, 1530 (11th Cir. 1983)). Orders on motions to transfer are interlocutory. *See United States v. Snipes*, 512 F.3d 1301, 1302 (11th Cir. 2008). As a result, the Magistrate Judge's reconsideration of the Order Denying Transfer was not limited to the aforementioned three grounds. Instead, the decision to reconsider an interlocutory order is within the discretion of the Magistrate Judge. *See Young*, 267 Fed. App'x. at 878-79 (citing *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)).[2] A Magistrate Judge is free to reconsider an earlier interlocutory order. *Id.*

**Motion to Transfer Standard**

The Government also argues that the Magistrate Judge erred by failing to apply the "substantial imbalance" standard in the Order on Defendant's Motion for Reconsideration of Ruling Denying a Requested Venue Transfer to the Northern District of Georgia (the

---

[1] These grounds are exceptions to the law of the case doctrine. *See Escobar-Urrego*, 110 F.3d at 1561.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

"Reconsideration Order") [ECF No. 56]. Federal Rule of Criminal Procedure 21(b) states, "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." The Government, relying on *United States v. Stickle*, 355 F. Supp. 2d 1317, 1321 (S.D. Fla. 2004), asserts that the burden falls on Defendant to demonstrate a "substantial imbalance" of inconvenience to himself if he is to succeed in nullifying the Government's choice of venue. Defendant responds that there is no binding precedent in the Eleventh Circuit that establishes the test to use to determine whether to transfer venue under Rule 21(b). The Magistrate Judge agreed with Defendant and noted that there are some out-of-circuit cases which use the "substantial imbalance" standard, and there are also some district courts in this circuit that use such standard, but there are other district courts in this circuit that do not adopt such standard. Ultimately, the Magistrate Judge decided to not use the "substantial imbalance" standard, but rather chose "the view that the standard is a flexible one," which evaluates all of the factors established in *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240 (1964). The Court finds that the Magistrate Judge's standard is not contrary to law.

### *Platt* Factors

The Government argues that the *Platt* factors do not support transfer. When evaluating a Rule 21(b) motion to transfer, courts generally look to the factors established in *Platt*, which include: (a) the location of the defendants; (b) the location of possible witnesses; (c) the location of events likely to be at issue; (d) the location of documents; (e) potential disruption of a defendant's business; (f) expenses to the parties; (g) location of counsel; (h) relative accessibility of the place of trial; (i) docket condition of each district involved; and (j) any other special factors which might affect transfer. In the Order Denying Transfer, the Magistrate Judge found

that (a) the location of the defendant does not weigh in favor of transfer; (b) the location of the witnesses is a neutral factor, meaning that it did not weigh in favor or against transfer; (c) the location of events likely to be at issue is a neutral factor; (d) location of documents and records factor does not support transfer; (e) the potential disruption of Defendant's business is a neutral factor; (f) the expenses to the parties does not weigh in favor of transfer; (g) location of counsel weighs slightly in favor of transfer; (h) the relative accessibility to place of trial does not weigh in favor of transfer; (i) the docket condition of each district involved does not weigh in favor of transfer; and (j) other special factors are neutral.

In the Reconsideration Order, the Magistrate Judge stated that two of the *Platt* factors generated a different result regarding the Defendant's Motion to Transfer Venue to the Northern District of Georgia [ECF No. 20]: (a) the location of the witnesses and (b) the location of events likely to be at issue. The Magistrate Judge did not change his analysis regarding the other *Platt* factors. While these two factors were neutral in the Order Denying Transfer, the Magistrate Judge considered them to be "two significant factors to favor transfer." With respect to the location of the witnesses, the Magistrate Judge stated that 300 witnesses, approximately 75% of all interviewees and grand jury witnesses are based in Georgia, while less than 1% are based in the Southern District of Florida. The Magistrate Judge found this to be a powerful reason to view this factor as being in favor of transfer. Regarding the location of the events likely to be at issue, the Magistrate Judge noted, "the more-significant events for the *Platt* analysis are those which involve conduct, motive, knowledge, planning, business and financial strategies and similar meaty issued. A substantial portion of those types of events occurred in the Northern District of Georgia."

The Government argues that whether or not two of the factors now favor transfer, the majority of factors favor not transferring the case. As noted in the Reconsideration Order, however, these factors need not be given equal weight, and the Court's decision is within the court's discretionary authority. *See United States v. Kopituk*, 690 F.2d 1289, 1322 (11th Cir. 1982); *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) ("No one of [the *Platt*] considerations is dispositive, and [i]t remains for the court to try to strike a balance and determine which factors are of greatest importance.") (internal quotations omitted). As a result, a few of the *Platt* factors can be dispositive. The Court finds that the Magistrate Judge's decision to transfer the case to the Northern District of Georgia based on the *Platt* factors is not contrary to law.

The Government also challenges the Magistrate Judge's factual findings with respect to the location of the witnesses and the location of events likely to be at issue. Specifically, the Government argues that the Magistrate Judge clearly erred in finding: (a) almost 300 witnesses, approximately 75% of all interviewees and grand jury witnesses, are based in Georgia – while less than 1% are based in the Southern District of Florida; (b) the witnesses from Florida and Texas are likely to be involved in routine, ministerial-type issues; (c) the relatively small number of Florida witnesses are expected to provide testimony on primarily garden-variety, administrative type issues; and (d) the Northern District of Georgia is the central location of the key events. The Court finds that the Magistrate Judge's factual findings are not clearly erroneous.

Any remaining objections presented by the Government do not lead the Court to conclude that the Reconsideration Order is contrary to law or clearly erroneous.

**Conclusion**

     The Magistrate Judge did not abuse his discretion in granting Defendant John Holland's

Motion for Reconsideration by the Magistrate Judge of his Motion to Transfer Venue to the

Northern District of Georgia [ECF No. 40].  This Court has considered all of the Government's

objections to the Reconsideration Order and finds that such order is neither contrary to law nor

clearly erroneous.  After careful consideration, it is hereby:

     **ORDERED AND ADJUDGED** that

     1.    Magistrate Judge Goodman's Order on Defendant's Motion for Reconsideration

of Ruling Denying a Requested Venue Transfer to the Northern District of Georgia [ECF No. 56]

is **AFFIRMED**.

     2.    The Clerk is **DIRECTED** to **TRANSFER** this action to the United States District

Court for the Northern District of Georgia.

     3.    The Clerk shall **CLOSE** this case in the Southern District of Florida for statistical

purposes.

     DONE AND ORDERED in Chambers at Miami, Florida, this 27 day of June, 2017.

                                JOSE E. MARTINEZ
                                UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record