UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                         :
UNITED STATES OF AMERICA                                 :
                                                         :
       v.                                                :
                                                         :   Case No. 16-cr-00776 (VEC)
ALAIN KALOYEROS, et al.,                                 :
                                                         :
              Defendants.                                :
                                                         :
---------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALAIN KALOYEROS' MOTION TO DISMISS UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 12

Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: July 21, 2017

Defendant Alain Kaloyeros ("Dr. Kaloyeros") respectfully submits this reply memorandum of law in further support of his Motion to Dismiss Under Federal Rule of Criminal Procedure 12 (the "Motion") the Government's May 11, 2017 superseding indictment (the "Indictment" or "Ind.").

I. **INTRODUCTION**

Dr. Kaloyeros' opening brief in support of the Motion (the "Opening Brief" or "Opening Br.") (Dkt. No. 177) recounted this case's origin in the former U.S. Attorney's zeal to take down the so-called "three men in a room" that he claimed controlled New York government. It described how two of those three men—Sheldon Silver and Dean Skelos—were convicted, and how this prosecution was the product of his apparent inability to reach the third: Governor Cuomo. It explained how the prosecution against Dr. Kaloyeros, a talented scientist who was instrumental in revitalizing upstate New York's economy, was premised on threadbare allegations of wire fraud conspiracy and wire fraud. It showed that the Indictment stretched these flexible charges beyond even their breaking point by seeking to criminalize a request for proposal ("RFP") process that awarded its "winners" absolutely nothing, and that on their face, were not tailored to any particular developer.

The Opening Brief's criticism of the Government's approach proved prescient. Following the filing of the Government's June 30, 2017 omnibus opposition brief (the "Opposition Brief" or "Opp. Br.") (Dkt. No. 264), the Second Circuit reversed the Silver conviction, concluding that while "many would view the facts adduced at Silver's trial with distaste," much of it was lawful. *United States v. Silver*, No. 16-1615-cr, 2017 WL 2978386, at *13–17 (2d Cir. Jul. 13, 2017). The Skelos conviction is similarly in doubt on the same basis. Order, *United States v. Skelos*, Case No. 16-1618 (2d Cir. 2017) (Dkt. No. 133) (ordering supplemental briefing).

So too here. The Government may not like the way the RFP process at issue in this case was conducted. Indeed, the Complaint and Indictment strongly criticize alleged pre-RFP communications between Fort Schuyler Management Corporation ("FSMC") and the Buffalo and Syracuse Developers (collectively, the "Developers"). But Government disapproval is not sufficient to allege a crime. And, as described below, the Opposition Brief does not dispute the key legal principles and core facts that make the Government's charges legally untenable.

Therefore, unlike the *Silver* and *Skelos* cases, where the Government had support for its legal position at the trial stage, this case should proceed no further and should be dismissed.

## II. ARGUMENT

The Indictment must be dismissed for three reasons. First, the facts alleged do not constitute wire fraud conspiracy or wire fraud. Second, the terms of the RFPs indisputably show that no fraud occurred. Third, to the extent the Government is relying on the "right to control" legal theory, that theory is no longer tenable.[1]

### A. The Facts Alleged Do Not Constitute Wire Fraud.

The Government does not dispute that the elements of wire fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme. *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007). The Opening Brief showed that the Indictment fails to allege either a scheme to defraud or money or property as object of that scheme. As in the Opening Brief, we address money or property first.

---

[1] The Opening Brief also incorporated by reference the arguments raised in the Motion to Dismiss of Defendants Ciminelli, Laipple, and Schuler. We similarly incorporate by reference the arguments raised in their reply briefing.

1. The Indictment Fails to Allege Money or Property as the Object of the Scheme.

According to the Government, it has sufficiently alleged "money or property" by alleging that FSMC was deprived of its right to control its assets. (Opp. Br. at 55). It has not.

The Indictment does not allege the deprivation of a right to control because FSMC did not lose its right to control anything as a result of the RFP process. (Opening Br. at 11–13). This is because that process did not bind FSMC to use *any* specific developer for any specific, compensable project. It specifically permitted FSMC to walk away from the company which won the RFP process if FSMC and the winning bidder could not reach terms on actual, compensable projects. The RFPs gave FSMC the right to negotiate with any company that was not selected as the winner of the RFP process, to reject the RFP process in its entirety, to engage in a new RFP process, and to select any contractor that it wanted to in connection with actual compensable work. (*Id.*). In short, FSMC had no legal obligation and ceded no legal rights to the companies which won the RFP process in Buffalo and Syracuse. Instead, at most the Indictment alleges that the RFP process resulted in a non-binding internal recommendation. The Opening Brief explained that, under the logic of the concurrence in *Sekhar v. United States*, a non-binding internal recommendation is not money or property for purposes of the wire fraud statute. (Opening Br. at 11–13 (citing *Sekhar v. United States*, 133 S. Ct. 2720, 2728–29 (2013))).

The Opposition Brief confirms this. Factually, it acknowledges that the Indictment solely alleges that the Developers were—after the RFP process—separately "awarded future development contracts." (Opp. Br. at 57 n.21). It does not dispute that FSMC had no obligation

to use either Developer on any project, or that FSMC retained the right to issue a new RFP or bypass the RFP process entirely to select a developer for any project.[2]  Nor does it dispute that the RFP process resulted in at most a non-binding internal recommendation.  Legally, it does not dispute that a non-binding internal recommendation is insufficient to establish money or property.  And, while it makes vague suggestions that the RFP process led to a subsequent award to the Developers (*id.*), the *Sekhar* concurrence specifically rejected the notion that a "nonbinding" "initial step that might lead eventually to an investment" is a form of money or property.  *Sekhar*, 133 S. Ct. at 2728–29.

At bottom, the Opposition Brief cites nothing to suggest that either RFP resulted in anything more than a non-cognizable internal recommendation.  Accordingly, the Indictment fails to adequately allege money or property as required.

2. The Indictment Fails to Allege a Scheme to Defraud.

The Opening Brief also showed that the Indictment fails to allege a scheme to defraud because it fails to allege:  (1) that Dr. Kaloyeros contemplated actual harm or injury to FSMC; and (2) materiality, as required under the "right to control" theory.

a. The Indictment Fails to Allege the Requisite Intent.

The Opening Brief showed that the Indictment fails to allege that Dr. Kaloyeros contemplated actual harm or injury to FSMC, as is required to allege a scheme to defraud.

---

[2] The Opposition Brief does claim that the selection permitted the award of contracts without further action from FSMC's Board or further competitive bidding.  Even if true, this does not amount to a deprivation of money or property.  First, there is no allegation that Board action or competitive bidding was required in the first place.  Second, there is no dispute that FSMC remained free to contract with any party of its choosing.

*United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2487 (2016). The Government makes two arguments in response.

The Government first argues that it is not required to allege intent to defraud in more than a generic and conclusory fashion. (Opp. Br. at 50). But the cases it cites do not support this proposition. In each case, the court examined the specific factual allegations supporting this element, and did not end the inquiry at the indictment's parroting of the statutory elements.[3] That approach is consistent with the Second Circuit's admonition that an indictment may not "charge the offense in the same generic terms as the definition." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992); *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000).

The Government also argues that it has, in fact, alleged intent to defraud based on its allegations that Dr. Kaloyeros, Todd Howe, and the Developer Defendants covertly tailored the RFPs to favor the Developers, who were later awarded contracts. (Opp. Br. at 50–51). An intent to harm FSMC cannot be inferred from these allegations. This is because there is no allegation that this conduct had any potential impact on any agreement that was ultimately entered into. The court in *United States v. Starr* similarly rejected a finding of fraudulent intent where, as here, there was no evidence of impact to the "basis of the [] bargain." *United States v. Starr*, 816 F.2d 94, 100 (2d Cir. 1987) Absent this showing, the government in that case could

---

3     *United States v. Speight*, 75 F. App'x 802, 803–04 (2d Cir. 2003) (indictment against prisoner adequately alleged intent to defraud where prisoner "mailed various federal officials numerous letters . . . that falsely claimed that these officials owed him multimillion-dollar debts[.]"); *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *10 (S.D.N.Y. Jan. 18, 2017) (quoting specific allegations on stock ownership); *United States v. Martin*, 411 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (noting that "[t]he defendants could have succeeded in profiting from the scheme only if the bets placed on the doped horse paid out, which necessarily required that those betting on the non-doped horses lose their wagers.").

not "explain how the [defendants] intended . . . to cause direct pecuniary harm to their alleged victims" and any intended harm was "metaphysical." *Id.* So too here.

This merits dismissal of the Indictment.

      b.      <u>The Indictment Fails to Allege Materiality.</u>

The Opening Brief also demonstrated that the Indictment fails to adequately allege materiality. It explained that the "right to control" theory requires materiality, *i.e.* that the information at issue be "of some independent value or . . . bear on the ultimate value of the transaction." *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994). The Indictment fails to allege this. The alleged misrepresentation concerned whether the RFP process for "preferred developer" status was open and competitive. The Indictment fails to allege, however, that this alleged misrepresentation could or did affect the quality, adequacy, price, or nature of the bargain in the separate and distinct contracts that FSMC ultimately entered into with the Developers. This renders the Indictment deficient. *United States v. Regent Office Supply*, 421 F.2d 1174, 1182 (2d Cir. 1970).

The Opposition Brief does not dispute that this theory requires materiality, as articulated in the Opening Brief. The Opposition Brief offers no argument, however, as to how the information at issue had independent value or bore on the ultimate value of the transaction. Instead, it simply suggests that the alleged process was one that the FSMC board would have wished to avoid. (Opp. Br. at 54). This is not sufficient. In *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007), the Second Circuit recognized:

> Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes.

*Id.* at 108.

This deficiency merits dismissal of the Indictment.

B.  <u>The RFPs Themselves Indisputably Show That No Fraud Occurred.</u>

The Opening Brief explained that the Court can consider the sufficiency of the Indictment when the Government has made a full proffer of the facts it intends to prove on a matter. (Opening Br. at 15). The Government does not dispute this. The Opening Brief further demonstrated that, through the Complaint, the Government had made a full proffer of the facts it intends to prove to demonstrate that the RFPs' provisions were tailored. (*Id.*). In response, the Government identifies no additional factual material that it will submit at trial.[4] Rather, it liberally cites from the Complaint to support its claims that it has: (1) adequately alleged a fraud; and (2) described the conduct at issue with the requisite particularity. (Opp. Br. at 51, 141). Given the Government's position, this Court should test the sufficiency of the Indictment's allegations. They fall well short of their mark.

First, the Opening Brief showed that the allegations claiming that the RFPs were "tailored" are belied by the fact that the two RFPs were highly generic and substantively identical. (Opening Br. at 15). The Opposition Brief does not dispute this.

Second, the Opening Brief showed that none of the supposedly tailored terms that were ultimately in the RFPs would "favor" any specific developer, as opposed to a qualified developer. (Opening Br. at 15). It explained that:

- The Government claimed that two terms were inserted to favor the Syracuse Developer. (*Id.*). The first—a provision calling for the

---

[4]  The Government does offer a conclusory assertion that there is additional evidence. (Opp. Br. at 52 n.18). The Government does nothing to suggest, however, that RFP provisions other than those identified in the charging document are at issue.

- developer to have sophisticated software tools—was non-exclusionary and made sense given the highly sophisticated projects at issue. (*Id*. at 15–16). The second—a provision permitting a letter of reference in place of audited financials—was logical, non-exclusionary, and opened the process to more developers. (*Id*. at 16).

- The Government claimed that one provision that was ultimately in the RFPs was inserted to favor the Buffalo Developer. (*Id*.). That provision, which called for a demonstrated commitment to women and minority business enterprise ("WMBE"), is on its face laudable and was consistent with the standards employed by FSMC's sister organization, FRMC, and the Empire State Development Corporation. (*Id*.).

- The Government claimed that a provision was temporarily included in the Buffalo RFP calling for the developer to have 50 years of experience. (Id.). This provision, however, had no impact on the bidding process because it was not visible on the front end (because developers had to sign an NDA to get a copy of the RFP) and was corrected before any awards were issued. (*Id*. at 16–17). Given that this provision had no impact on the bidding process, and the Government otherwise is relying solely on an WMBE term to support its Buffalo tailoring claim, the temporary inclusion of this term cannot support a claim of even attempted tailoring. (*Id*.).

The Government offers no response to any of this. Given these facts, the Indictment should be dismissed as a matter of law.

C. <u>The "Right to Control" Theory Is No Longer Tenable.</u>

The Opening Brief acknowledged that the "right to control" theory remains good law in this Circuit following the Second Circuit's decision in *United States v. Finazzo*, 850 F.3d 94 (2017), *addt'l op.*, Nos. 14-3213-cr(L), 14-3330-cr (Con), 2017 WL 922966 (2d Cir. Mar. 7, 2017). (Opening Br. at 17). It demonstrated, however, that *Finazzo* was wrongly decided.

First, it showed that the "right to control" theory contradicts three Supreme Court decisions, which together demonstrate that: (1) the "right to control" is not property because it is not property in the victim's hands as required by *Cleveland v. United States*; (2) the theory contradicts *Skilling v. United States* because the "right to control" is not the mirror image of the

- 8 -

defendant's gain and poses unconstitutional vagueness issues; and (3) the "right to control" is not transferrable as required by *Sekhar*. (Opening Br. at 17–18).

Second, it showed that *Finazzo*'s contrary interpretation of the wire fraud statute contradicts the plain language of the statute, and inappropriately relies on a 2005 Second Circuit decision that cannot be reconciled with the Supreme Court's subsequent decisions in *Skilling* and *Sekhar*. (Opening Br. at 19–20).

The Government offers no substantive defense of the theory, aside from pointing out that it remains good law. The "right to control" theory should be rejected.

## III. CONCLUSION

For these reasons, and those stated in the Opening Brief, the Indictment should be dismissed.

Respectfully submitted,

/s/ Michael C. Miller
Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: July 21, 2017