UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                :

UNITED STATES OF AMERICA      :

                              v.                          :     Case No. 16-cr-00776 (VEC)

ALAIN KALOYEROS, et al.,        :

              Defendants.       :

------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ALAIN KALOYEROS'
<u>MOTION FOR SUPPRESSION OF SEARCH WARRANT EVIDENCE</u>**

Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: July 21, 2017

Defendant Alain Kaloyeros ("Dr. Kaloyeros") respectfully submits this reply memorandum of law in further support of his Motion for Suppression of Search Warrant Evidence (the "Motion").

I. **INTRODUCTION**

Dr. Kaloyeros' opening brief in support of the Motion (the "Opening Brief" or "Opening Br.") (Dkt. No. 172) demonstrated that evidence obtained from three search warrants—including two issued by the U.S. Attorney's Office for the Southern District of New York on December 8, 2015 (the "December 2015 Warrant") and March 4, 2016 (the "March 2016 Warrant") (collectively, the "SDNY Warrants") and one by the N.Y. Attorney General's Office on May 24, 2016 (the "NYAG Warrant") (together with the SDNY Warrants, the "Warrants")—should be suppressed.

First, the Opening Brief demonstrated that the Warrants were improper because they failed to meet the Fourth Amendment's probable cause requirement. In response, the Government's June 30, 2017 omnibus opposition brief (the "Opposition Brief" or "Opp. Br.") (Dkt. No. 264) offers little more than its own conclusory say-so in defense of the SDNY Warrants, and no defense of the NYAG Warrant.

Second, the Opening Brief showed that the Warrants were overbroad and devoid of the requisite particularity. The Government's response is that it is free to issue blunderbuss warrants in the electronic evidence context irrespective of the Fourth Amendment's prohibition on general searches and seizures. It is not.

Third, the Opening Brief established that the good-faith exception does not apply. In opposition, the Government offers no additional facts that support the reasonableness of its reliance on the Warrants. Nor does it squarely address the SDNY Warrants' failure to disclose to

the issuing judge the fact that the requests for proposals ("RFP") at issue were entirely non-binding—a material omission that misled the Court. Indeed, the Government does not dispute (because it cannot dispute) the facts that the Government, at the time it applied for the issuance of the Warrants: (1) possessed and was familiar with the contents of the RFPs; (2) knew that the RFPs' terms make plain that the RFP "winners" won nothing—*i.e.* no business, no construction projects, no right to earn revenue, and no enhanced right to win any subsequent bid issued by Fort Schuyler Management Corporation ("FSMC"); and (3) failed to disclose any of this to the issuing judge.

For example, the Government did not disclose to the issuing judge that the RFPs both specifically stated that "designation of the preferred candidate as the PREFERRED DEVELOPER" was "subject, however, to execution of an acceptable agreement by the preferred candidate with FSMC," that FSMC "could terminate the process" or "reject any and all proposals, in whole or in part," and that FSMC could "[c]ancel the bid at any time" or "[a]ccept or reject any DEVELOPER response in its entirety or in part." (Opening Br. at 7). The Government—for reasons that it makes no effort to explain—simply failed to provide the issuing judge with copies of the RFPs or an accurate description of their terms.

For all of these reasons, the Motion should be granted. At a minimum, the Court should order a suppression hearing to assess the propriety of the Warrants.

## II. ARGUMENT

As shown in the Opening Brief, the fruit of the Warrants should be suppressed because the Warrants were: (1) issued without probable cause; (2) overbroad and lacked sufficient particularity; and (3) not subject to the good-faith exception.

A. <u>The Warrants Were Issued Without Probable Cause.</u>

The Opening Brief explained, and the Government does not dispute, that probable requires more than a "conclusory legal allegation," and instead requires a factual showing that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Opening Br. at 11). Here, the Warrants lacked probable cause because they were each premised on a conclusory legal allegation instead of meaningful factual allegations.

1. <u>The December 2015 Warrant Was Issued Without Probable Cause.</u>

The December 2015 Warrant was predicated on charges of mail and wire fraud, honest services fraud, and bribery. The Opening Brief explained, and the Government does not dispute, that: (1) to establish mail or wire fraud, the Government must prove a scheme to defraud, money or property as the object of the scheme, and the use of the mails or wires to further the scheme; and (2) to establish bribery or honest service fraud, the Government must show that a bribe was made or offered in connection with official action. (Opening Br. at 12–13). The December 2015 Warrant lacked support for either of these charges.

First, this warrant failed to establish probable cause for any mail or wire fraud. The warrant's supporting affidavit did not: (1) identify any false representation made by Dr. Kaloyeros; (2) identify any money or property as the object of the scheme—where the purported scheme revolved around winning an RFP that gave the winning bidder no rights whatsoever; or (3) allege any facts supporting the notion that anyone faced even the potential for harm as a result of the alleged conduct. (Opening Br. at 12). The Opposition Brief offers nothing to the contrary. Instead:

- It claims that a misrepresentation is established based on an RFP provision calling for 50 years of developer experience, which the Government alleges favored the Buffalo Developer. (Opp. Br. at 123). It admits,

however, that other developers in the region would have and did meet this requirement, making it unclear how the 50-year provision favored the Buffalo Developer. (*Id.*). And it does not dispute that this provision was a typo that was promptly corrected before it had any impact on the bidding process. (*Id.*). Moreover, even if the 50-year typo actually favored the Buffalo Developer, the Opposition Brief does not identify any specific misrepresentation made by Dr. Kaloyeros related to this provision.

- Recognizing the deficiencies in this argument, it asserts that the removal of this provision is immaterial because the crime of conspiracy does not depend on the ultimate success of the scheme. (*Id.* at 126). This is no answer. A conspiracy charge still requires that the alleged co-conspirators agree to make a particular misrepresentation and, here, there is no allegation suggesting any such agreement was made. Moreover, any suggestion of conspiratorial intent is belied by the facts that this is the only provision identified as favoring any developer, and it was corrected before it had any impact on the bidding process.

- It claims that winning the RFP entitled the Buffalo Developer to "preferred developer" status and that it was later awarded a taxpayer-funded project. (*Id.*). It does not dispute, however, that the preferred developer status gave the Buffalo Developer no right to any compensable work.

- It identifies no basis to conclude that there was any harm or even potential harm to FSMC or any other party.

Second, the Opening Brief established that the December 2015 Warrant failed to establish probable cause for honest services fraud or bribery because there was no allegation of any exchange of money for official action. (Opening Br. at 13). Here, the Government's only response is that the Court can rely on the training of the warrant's affiant that: (1) rigging an RFP is normally accompanied by some type of compensation; and (2) the use of g-mail—such as the g-mail exchanges between Dr. Kaloyeros and Defendant Ciminelli recounted in the supporting affidavit—is probative of concealment of wrongdoing. (Opp. Br. at 124). The problem with this argument is that it is entirely dependent on having shown that the RFP was rigged—a fact the supporting affidavit definitely did not show. Without this predicate, there is

no basis to assume that there was compensation as required to show bribery, or that g-mail was used to conceal the bribery.

Accordingly, the December 2015 Warrant lacked probable cause.

### 2. The March 2016 Warrant Was Issued Without Probable Cause.

The March 2016 Warrant was similarly deficient.

First, the Opening Brief showed that this warrant was premised largely on evidence illegally obtained from the December 2015 Warrant. (Opening Br. at 13). It demonstrated, and the Government does not dispute, that if the December 2015 Warrant was unlawful, this material must be excised from the Court's evaluation of the warrant. (*Id*. at 13–14).

Second, even with this improper material included, the search warrant still lacked probable cause. The Government contends that probable cause is supported by additional evidence submitted for the warrant. Specifically, it claims that, while drafting RFPs for Buffalo and Syracuse, Todd Howe sent the qualifications of the Buffalo and Syracuse developers to Dr. Kaloyeros, who in turn requested additional qualifications for the Buffalo Developer because the ones provided were not "unique" enough. (Opp. Br. at 124–25). But given the warrant's complete failure to identify any concrete tailoring of the RFPs, at best, all this reflects is pre-RFP intelligence gathering. The Government identifies no law, rule, or regulation that prohibits this activity.

Accordingly, the March 2016 Warrant lacked probable cause as well.

### 3. The NYAG Warrant Was Issued Without Probable Cause.

The Opening Brief established that the NYAG Warrant was issued without probable cause because it was premised on the Donnelly Act, and that statute does not prohibit the vertical "bid-rigging" alleged in the warrant. (Opening Br. at 14–16). The Government does not defend

the NYAG Warrant in any respect—including its lack of probable cause, overbreadth, lack of particularity, or lack of good faith. Instead, it contends that the Motion is moot with respect to this search warrant because it intends to "apply for its own search warrant for these materials." (Opp. Br. at 112 n. 37). But this does not save the illegal fruits of the NYAG Warrant from suppression because the law is clear:

> No court has ever endorsed the view that it would allow the government to retroactively cure a Fourth Amendment violation and it is easy to see why. The violation is not the discovery of incriminating evidence, but the invasion of the searchee's privacy. Since such a violation is inherently irremediable, the exclusionary rule exists to deter violations in the first instance. It is one thing to say that there is no need to deter by suppressing evidence that would have been discovered regardless of unconstitutional conduct; it is quite another to allow the government a second chance to fix a problem that never should have arisen.

*United States v. Cioffi*, 668 F. Supp. 2d 385, 398 (E.D.N.Y. 2009).

Accordingly, the Motion is not moot with respect to the NYAG Warrant. And, because there is no dispute that this warrant was improper, the Court should suppress the evidence obtained from it for all of the reasons stated in the Opening Brief.

B. <u>The Warrants Were Overbroad and Lacked Particularity.</u>

The Government does not dispute that the Fourth Amendment: (1) forbids overbreadth, such that a warrant must be limited in scope to the probable cause on which it is based; and (2) requires that a warrant state with particularity the items to be seized. (Op. Br. at 118). The Opening Brief showed that, in addition to lacking probable cause, the Warrants failed these requirements as well. They were overbroad because they sought data in a catch-all fashion without any connection to the alleged crimes. And the Warrants were not particularized because they did not provide any description of the specific locations to be searched. (Opening Br. at

17). Instead, they allowed the indiscriminate seizure of Dr. Kaloyeros' g-mail correspondence and cell phone records. (*Id*.).

With respect to overbreadth, the Government makes two arguments in response to the concerns raised in the Opening Brief. First, it argues that the SDNY Warrants were not overbroad because they were linked to the general time period in which the events surrounding the alleged bid rigging occurred. (Opp. Br. at 127). This is no answer, however, to the unfettered scope of the Warrants, which called for the seizure of all information regardless of any connection to purported criminal conduct. *See United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) ("[T]he description in the search warrant of Rosa's residence was overbroad and provided the officers with no judicial limit on the scope of their search, especially as it related to the seizure of electronically stored notes and records tending to identify criminal conduct."). Moreover, any linkage in time was attenuated at best. Together, the SDNY Warrants sought e-mails from December 2012 through March 2016, but the affidavits were essentially based on conduct from a much narrower window: from September 2013 to January 2014. This is too remote to support the breadth of the Warrants. *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 2574026, at *23 (S.D.N.Y. Jun. 14, 2017) (finding that the lack of a temporal limitation, "despite the underlying Affidavits . . . identifying . . . precise timeframes . . . for suspect criminal activity" militated against the validity of the warrants).

Second, the Government analogizes the search authorized by the Warrants to a search of the "entirety of a premises or object . . . for specific evidence as enumerated in the warrant," which the Government argues "applies with equal force to searches of email accounts." (Opp. Br. at 127). But this analogy is inapposite. Rather, the unfettered collection of the contents of an entire e-mail account or device is more analogous to *seizing* a house than it is to searching it.

Accordingly, the Warrants were invalid for overbreadth. *Cioffi*, 668 F. Supp at 396 (suppressing warrant that "did not, on its face, limit the items to be seized from [defendant]'s personal email account to emails containing evidence of the crimes charged in the indictment").

With respect to particularity, the Government argues that the SDNY Warrants were appropriately particularized because they only sought "any evidence, fruits, and instrumentalities" of the subject offenses articulated in them, and because they specifically identified certain categories of evidence. (Opp. Br. at 131). But these facts are no answer to the Warrants' broad authorization permitting the seizure and review of the entirety of Dr. Kaloyeros' e-mail accounts—especially given the Second Circuit's clear mandate that "'heightened sensitivity to the particularity requirement is the context of digital searches' is necessary." *See Wey*, 2017 WL 2574026, at *19 (quoting *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013)).

Under these circumstances, the Warrants' vague limitation that the items seized be "evidence, fruits, or instrumentalities" of five separate offenses does not meet the particularity requirement. *See United States v. Bucks*, 813 F.2d 588, 590–92 (2d Cir. 1987) (finding a warrant authorizing the seizure of "any papers, things or property of any kind relating to [the] previously described crime" insufficiently particularized because it "only described the crimes—and gave no limitation whatsoever on the kind of evidence sought"). Instead, it falls victim to the "serious risk" common to "every warrant for electronic information" of becoming "a general warrant." *United States v. Ulbricht,* 858 F.3d 71, 99–100 (2d Cir. 2017) (recognizing that warrants which "fail to 'link [the evidence sought] to the criminal activity supported by probable cause' do not satisfy the particularity requirement").

In *Wey*, the court suppressed similarly overbroad and unparticularized warrants where the warrants were, "in essence, all-records warrants unsupported by probable cause to seize all records" and "authorize[d] the seizure of sweeping categories of materials, regardless of their potential connection (or lack thereof) to any suspected criminal activities." *Wey*, 2017 WL 2574026, at *22. The same logic controls here where, as in *Wey*, the Government "treated the Warrants . . . as, for all intents and purposes, general warrants." *Id.* at *39.

Accordingly, the Warrants were overbroad and lacked sufficient particularity.

C. <u>The Warrants Were Not Subject to the Good-Faith Exception.</u>

While good faith may save invalid warrants from suppression, "[g]ood faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996). The Opening Brief established that the Warrants were not subject to the good-faith exception because: (1) they so lacked probable cause and particularity that any reliance on them would be unreasonable; and (2) the SDNY Warrants' supporting affidavits contained material omissions because they failed to attach the actual RFPs at issue (the language of which undermines the Government's probable cause argument), and did not disclose the most important operative terms of the RFPs, which thereby created a misleading impression that by winning an RFP, a developer secured a right to contracts for specific work. (Opening Br. at 19–20). The Opposition does little to refute these arguments.

First, the Government argues that reliance on the SDNY Warrants was reasonable. In doing so, it relies entirely on the same arguments it raised in support of an underlying finding that the Warrants were valid. These arguments do not hold for the same reasons discussed above and because where, "as here, a warrant plainly fails to comport with well-settled

particularity requirements, . . . reliance upon it . . . can hardly be deemed objectively reasonable." *Wey*, 2017 WL 2574026, at *31.

Second, the Government claims that the Warrants' supporting affidavits did not misleadingly suggest that the RFP process guaranteed the winner a right to actual compensable work. Instead, the Government first claims that the supporting affidavits were accurate because they correctly recounted that: (1) the FSMC board authorized an RFP process; (2) FSMC issued a resolution authorizing an award to the Buffalo developer; and (3) FSMC subsequently awarded the Buffalo Developer a project. (Opp. Br. at 133–24). But, even if accurate, these allegations do not change the core fact that the Warrants misleadingly suggested that the RFP process gave the Buffalo Developer a specific right to compensable work. The RFP itself, which is conspicuously omitted from the supporting affidavits despite the Government's access to it at the time, made abundantly clear that a successful bid did not entitle the winner to any compensable work—let alone the specific projects referenced in the supporting affidavits. As noted above, the RFP terms were crystal clear that any work was subject to the "execution of an acceptable agreement" and that FSMC could "cancel the bid at any time." (Opening Br. at 7).

The Government also argues that disclosure of this additional material was in any event immaterial. (Opp. Br. at 134). This is absurd. Whether the RFP process actually gave the Developers a concrete right to compensable work is critical to the Government's wire fraud claim because, as described above, the crime of wire fraud requires proof of a deprivation of money or property. These material omissions knowingly misled the issuing magistrate, and rendered the good-faith exception inapplicable.

Accordingly, the Government is not entitled to rely on the good-faith exception to save these otherwise invalid warrants.

D. <u>The Court Should Order a Suppression Hearing on the Warrants</u>.

Dr. Kaloyeros respectfully submits that, at a minimum, a suppression hearing is necessary to explore the Warrants' propriety. *See Wey*, 2017 WL 2574026, at *7 (holding a hearing to explore the same topic). Given the Opposition Brief's complete reliance on the same insufficient facts used in the Warrants and inability to defend their validity, a suppression hearing is necessary for the Court to assess the reasonableness of the Government's reliance on the Warrants, including how the affidavits were drafted, why the RFPs were not attached to the affidavits, how the RFP process was explained to the magistrate, and whether the Government employed any protocol to appropriately limit its seizure and review of electronic materials.

## III. **CONCLUSION**

For these reasons, and those set forth in the Opening Brief, the Court should suppress the evidence obtained as a result of the Warrants, or, in the alternative, hold a hearing to further develop the facts and circumstances surrounding the drafting of the applications for the Warrants, the presentation of these applications to the issuing judge, the execution of the Warrants, and the subsequent searches of the electronic data recovered as a result of the Warrants.

    Respectfully submitted,

    /s/ Michael C. Miller
    Michael C. Miller
    Jeffrey A. Novack
    Katherine M. Dubyak
    David B. Hirsch
    STEPTOE & JOHNSON LLP
    1114 Avenue of the Americas
    New York, New York 10036
    (212) 506-3900

    *Counsel for Alain Kaloyeros*

Dated: July 21, 2017