UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - v. -

JOSEPH PERCOCO, a/k/a "Herb,"
ALAIN KALOYEROS, a/k/a "Dr. K.,"
PETER GALBRAITH KELLY, JR., a/k/a "Braith,"
STEVEN AIELLO,
JOSEPH GERARDI,
LOUIS CIMINELLI,
MICHAEL LAIPPLE, and
KEVIN SCHULER,

               Defendants.

No. S1 16 Cr. 776 (VEC)

**Oral Argument Requested**

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT PETER GALBRAITH KELLY, JR.'S MOTIONS FOR A BILL OF PARTICULARS AND BRADY MATERIAL

LANKLER SIFFERT & WOHL LLP

Daniel M. Gitner
Jun Xiang
Samantha J. Reitz

500 Fifth Avenue
New York, NY 10110
(212) 921-8399

*Attorneys for Defendant*
*Peter Galbraith Kelly, Jr.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..................................................................................................................2

POINT I

IF THE COURT DOES NOT DISMISS THE CHARGES AGAINST MR.
KELLY, IT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL
OF PARTICULARS ........................................................................................................2

    A.     The Government has not justified, and cannot justify, its failure to
    particularize the alleged "quid pro quo" or facts related to any alleged
    gratuity ........................................................................................................... 3

        1.     The Government should be required to particularize the "official
        acts" at issue................................................................................... 3

        2.     The Government fails to address its refusal to particularize items
        related to any gratuities charge ................................................... 6

        3.     The Government should be required to particularize the alleged
        "quid(s)"......................................................................................... 8

    B.     The Government's boilerplate response does not justify its failure to
    provide the remaining particulars Mr. Kelly seeks ................................. 8

POINT II

THE GOVERNMENT SHOULD PROVIDE BRADY MATERIAL
IMMEDIATELY ........................................................................................................11

    A.     The Government must disclose materials tending to show that Mr. Kelly
    believed or was told that the Energy Company's hiring of Percoco's wife
    had been authorized by an ethics opinion .............................................. 12

    B.     The Government must disclose materials tending to show that the State
    officials whom Percoco allegedly pressured or advised to take official
    action—including those identified by title in the Complaint—did not
    perceive Percoco to be pressuring or advising them at all................................... 14

    C.     The Government must disclose materials tending to show that its
    cooperator altered documents and otherwise deceived his alleged co-
    conspirators ........................................................................................................ 16

POINT III

MR. KELLY JOINS CERTAIN MOTIONS FILED BY OTHER DEFENDANTS ........18

A.  Percoco was not a government official during part of the relevant period........... 18

B.  The Court should order inspection of the Grand Jury minutes............................ 18

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Brady v. Maryland,
    373 U.S. 83 (1963)..................................................................... *passim*

Kyles v. Whitley,
    514 U.S. 419 (1995)................................................................................11

McDonnell v. United States,
    136 S. Ct. 2355 (2016).............................................................. *passim*

United States v. Agurs,
    427 U.S. 97 (1976)..................................................................................11

United States v. Bin Laden,
    92 F. Supp. 2d 225 (S.D.N.Y. 2000)......................................................7

United States v. Bortnovsky,
    820 F.2d 572 (2d Cir. 1987)...............................................................4, 8

United States v. Coppa,
    267 F.3d 132 (2d Cir. 2001)..................................................................11

United States v. Gil,
    297 F.3d 93 (2d Cir. 2002)....................................................................14

United States v. Nachamie,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000).....................................................10

United States v. Ramirez,
    609 F.3d 495 (2d Cir. 2010)....................................................................9

United States v. Salameh,
    152 F.3d 88 (2d Cir. 1998)....................................................................17

United States v. Siddiqi,
    No. 06-CR-377 (SWK), 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007) ....................................5

United States v. Silver,
    No. 16-1615, __ F.3d __, 2017 WL 2978386 (2d Cir. July 13, 2017) ..............................1, 4, 5

United States v. Sun-Diamond Growers,
    526 U.S. 398 (1999)...........................................................................7, 19

<u>United States v. Triumph Capital Grp., Inc.,</u>
    544 F.3d 149 (2d Cir. 2008).................................................................................11, 13, 14

<u>United States v. Twersky,</u>
    No. S2 92-CR-1082 (SWK), 1994 WL 319367 (S.D.N.Y. June 29, 1994)............................18

**Rules and Other Authorities**

Federal Rule of Criminal Procedure 7(f) .........................................................................1, 8, 20

Federal Rule of Criminal Procedure 29 .................................................................................5, 6

U.S. Attorneys' Manual 9-5.001(F), <u>available at</u>
    https://www.justice.gov/usam/usam-9-5000-issues-related-trials-and-other-
    court-proceedings.................................................................................................................12

U.S. Attorneys' Manual 2047 (Sample Charging Language), <u>available at</u>
    https://www.justice.gov/usam/criminal-resource-manual-2047-sample-
    charging-language.................................................................................................................3

Defendant Peter Galbraith Kelly, Jr. respectfully submits this Reply Memorandum of Law in further support of his motions, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), for an Order directing the Government to provide him with a bill of particulars and specific <u>Brady</u> material.

## <u>PRELIMINARY STATEMENT</u>

The S1 Indictment fails to provide the most basic information Mr. Kelly needs to prepare his defense, avoid surprise at trial, and avoid double jeopardy. That failing is particularly egregious because this is a bribery prosecution. As the Supreme Court made clear in <u>McDonnell v. United States</u>, 136 S. Ct. 2355 (2016), and as the Second Circuit more recently reiterated in <u>United States v. Silver</u>, No. 16-1615, __ F.3d __, 2017 WL 2978386 (2d Cir. July 13, 2017), a determination of whether bribery has been properly charged and proven requires careful attention to the precise conduct at issue—including, in particular, any conduct purportedly constituting an "official act." And yet, after conceding that a bill of particulars is required where an indictment does not advise the defendant "of the specific acts of which he is accused," the Government refuses to inform Mr. Kelly of the facts allegedly establishing the <u>quid pro quo</u> agreement here, <u>i.e.</u>, the facts at the heart of this bribery case. Moreover, with respect to its <u>Brady</u> disclosure obligations, the Government fails to acknowledge or justify its refusal to provide certain material that falls squarely within <u>Brady</u>'s scope. The Government thus reveals that, contrary to its repeated representations to the Court and defendants, it does not actually understand its obligations.

The Government should be ordered to provide a bill of particulars and to produce the requested <u>Brady</u> material to the extent it exists.

## ARGUMENT

## POINT I

### IF THE COURT DOES NOT DISMISS THE CHARGES AGAINST MR. KELLY, IT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS

As discussed in Mr. Kelly's motion to dismiss—which covers both the bribery and gratuity charges purportedly alleged against him—the allegations in the S1 Indictment with respect to "official acts" are defective as a matter of law, and cannot be cured through a bill of particulars.  (See MTD 49–50, 64 n.35; Reply MTD at Point II).  In any event, the Government refuses to offer any specificity as to the "official acts" through a bill of particulars, just as it refuses to provide the other particulars sought.[1]  As a result, Mr. Kelly remains largely in the dark as to some of the fundamental facts at issue in this quid pro quo bribery case.

In its omnibus opposition (cited herein as "Opp."), the Government lumps all the defendants' motions for bills of particulars together and furnishes boilerplate responses to the whole lot.  (Opp. 136–47).  In doing so, it mentions only one of Mr. Kelly's six requests for particulars, and even as to that request, the Government fails to justify its position in light of the facts of this case.  Ignoring the special need for specificity in a bribery prosecution, the Government gives the remainder of Mr. Kelly's narrowly-tailored requests the back of its hand.

---

[1]  As set forth in Mr. Kelly's initial brief (cited herein as "BOP and Brady Mot."), Mr. Kelly requests a bill of particulars as to: (1) the alleged "quid"—i.e. the thing of value that Mr. Kelly allegedly provided; (2) the alleged "quo"—i.e., the "official acts" performed to benefit the Energy Company; (3) any gratuity offense that the Government claims is charged in Count Thirteen; (4) the names of the unindicted co-conspirators; (5) the evidentiary basis for the allegation that the Energy Company Bribery Scheme "overlaps" with the other alleged schemes; and (6) clarification as to Percoco's alleged role and duties.  (BOP and Brady Mot. 3–26).

**A.** **The Government has not justified, and cannot justify, its failure to particularize the alleged "quid pro quo" or facts related to any alleged gratuity**

      **1.** **The Government should be required to particularize the "official acts" at issue**

The Government acknowledges that a bill of particulars is required when an indictment fails to "advise the defendant of the specific acts of which he is accused." (Opp. 137). However, Mr. Kelly is left to guess about fundamental acts underlying the alleged bribery. The Government has provided no notice of: (1) the full scope of the things of value that the Government claims Mr. Kelly provided to Percoco as part of the charged bribe, i.e., the alleged "quid(s)"; or (2) the "official acts" in favor of the Energy Company that the Government claims Percoco agreed to perform in exchange, i.e., the alleged "quo(s)."

The Government makes no effort to justify its refusal to particularize this information. Its silence on the issue is especially surprising in light of the provision in the United States Attorneys' Manual, cited in our opening brief, that directs prosecutors to set forth *in the indictment* a description of any official act the defendant in a bribery case sought to influence. See U.S. Attorneys' Manual 2047 (Sample Charging Language), available at https://www.justice.gov/usam/criminal-resource-manual-2047-sample-charging-language. In fact, the Government has obfuscated matters by using in the S1 Indictment undefined terms such as "official State action" (S1 Ind. ¶ 1), "official State favors" (id. ¶ 28), and "official assistance" (id. ¶¶ 29–30), and by refusing to state whether these phrases are interchangeable with the phrase "official act." (See BOP and Brady Mot., Declaration of Daniel M. Gitner ("Gitner Decl.") Ex. H. (Doc. No. 235-8) (asking the Government "to state whether [these terms are] equivalent to the term 'official act'")). The Government's opposition brief provides no justification for its refusal to clarify these terms, nor does it even mention the defense's request to do so.

3

The Government refers to the Complaint and asserts that Percoco "[made] significant efforts to help the Energy Company obtain [a certain contract]," and that, "*[a]mong other things*, Percoco agreed to intervene to try to stop the reigniting" of a competitor's plant. (Opp. 13 (emphasis added)). Given the Government's refusal to identify what official acts it intends to rely on, it is far from clear whether the Government contends that this was an official act, mere context, or an "official favor" or "official assistance"—whatever those terms might mean. Without particularization, the Government will be free to roam at trial from act to act and Mr. Kelly will be forced to defend against a moving target. The Government's tactic hamstrings the defense's ability to effectively prepare for trial because the S1 Indictment's terms remain ambiguous and therefore hide the specific acts for which Mr. Kelly is being prosecuted. See United States v. Bortnovsky, 820 F.2d 572, 575 (2d Cir. 1987) (holding that the district court abused its discretion in denying defendants' motion for a certain bill of particulars where "[t]he relevance of key events was shrouded in mystery at the commencement of and throughout the trial"). Moreover, the apparently intentional fluidity of the Government's position creates a significant risk that any official act upon which it eventually alights at trial will be completely different from any official act upon which the Grand Jury relied in returning this Indictment—if indeed the Government introduced to the Grand Jury any evidence that an official act was actually contemplated by the parties when they entered into their alleged criminal agreement.[2]

Indeed, as McDonnell made clear and as Silver recently reiterated, the term "official act" is an element the Government must prove by eliciting at trial a variety of underlying facts. Silver, 2017 WL 2978386 at *11–12. Such underlying facts could help show, among other

---

[2]    As discussed in Mr. Kelly's motion to dismiss, the "as opportunities arise" theory alleged in the indictment is actually *inconsistent* with any official act having been contemplated by the parties when they entered into the alleged agreement. (See MTD 49–50; Reply MTD at Point II).

things, whether a public official's *specific conduct* amounted to a "decision" or "action," whether it was "formal," and whether it was taken by the official personally or was instead taken by means of "pressure" on another official, or by "advice" given with the knowledge that such advice would form the basis of another official's "official act." McDonnell, 136 S. Ct. at 2372. If the Government is *not* required to particularize prior to trial the "official acts" allegedly committed by Percoco, counsel will be left to guess what evidence might be needed to counter the proof. The trial will begin, and as the Government introduces proof of various acts undertaken by Percoco over the multi-year period at issue, the defense will *still* be left wondering which of those acts the Government will ultimately seek to characterize as "official acts." Indeed, the Government could rest its case without ever having identified the "official acts" on which it will rely in its summation, leaving the defense to move for Rule 29 relief without having been directed to those critical facts. This is what a bill of particulars is meant to avoid. See United States v. Siddiqi, No. 06-CR-377 (SWK), 2007 WL 549420, at *3 (S.D.N.Y. Feb. 21, 2007) (requiring a bill of particulars in a bribery case to identify the date, beneficiaries, and substance of the alleged official acts, "so that [the defendant] may focus his defense efforts on those specific instances.").

Indeed, in its harmless error analysis, the Second Circuit in Silver strongly suggested that, as a matter of law, some of the acts relied upon by the Government in that case might not meet the McDonnell test. See Silver, 2017 WL 2978386, at *13 ("Of those acts [relating to the mesothelioma scheme], only the Assembly resolution clearly remains an 'official act' under McDonnell. As such, the jury may have convicted Silver by relying on acts within the statute of limitations period that are no longer 'official' under McDonnell."); see also id. at *14, 15 ("Taking a public position on an issue, by itself, is not a formal exercise of governmental power,

5

and is therefore not an 'official act' under <u>McDonnell</u>" and "using government letterhead is not, by itself, a formal exercise of government power on a matter similar to a hearing or lawsuit").

Likewise, in this case, it is entirely plausible that the specific conduct the Government will claim constitutes "official acts" by Percoco will not, in fact, meet the high bar set by <u>McDonnell</u>. By denying Mr. Kelly's request for a bill of particulars with respect to the "official acts" alleged here, as well as Mr. Kelly's request for clarification of the meaning of the amorphous phrases used in the S1 Indictment, the Government already has denied Mr. Kelly an appropriate opportunity to challenge on a motion to dismiss whether the Government has applied <u>McDonnell</u>'s standard correctly. If the Court denies the request for these particulars now, the defense's only remaining opportunity to test the sufficiency of the Government's proof will be through a motion under Rule 29, at which point the Court might rule that certain "official acts" alleged by the Government fail to meet the <u>McDonnell</u> test and therefore cannot form the basis of a conviction. But by then, Mr. Kelly will already have suffered substantial prejudice, as the jury might be unable to put the improper evidence out of its mind entirely, especially if that evidence formed an important or time-consuming part of the Government's direct case.

 2. **The Government fails to address its refusal to particularize items related to any gratuities charge**

The Government has refused to provide particulars relating to the gratuity offense purportedly charged in Count Thirteen. These particulars include: (1) *all* of the official acts performed by Percoco that the Government claims Mr. Kelly sought to "reward" by conferring a gratuity (which might not be the same as the official acts at the heart of the alleged bribery agreement); and (2) *all* the benefits conferred by Mr. Kelly that the Government claims constituted the "reward" for those official acts (which might not be the same as those at the heart of the alleged bribery agreement).

All of these facts go to the core of the bribery and gratuity charges against Mr. Kelly; they constitute "the specific acts of which he is accused." (Opp. at 137). But the Government fails to address its refusal to particularize the official acts that allegedly form the basis of its gratuity theory. In this context, the Government does not address the Supreme Court's ruling in United States v. Sun-Diamond Growers, 526 U.S. 398 (1999), a gratuity case in which the unanimous Court found that there must be "a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given," id. at 414; nor does the Government explain its refusal to state the alleged link between a thing of value and a specific official act "for or because of which it was given." Moreover, as discussed in our opening brief, because gratuities can be either forward- or backward-looking, the official acts underlying this gratuity prosecution could hypothetically have occurred at any point during the five-year period Percoco occupied his official position (starting in January 2011), not just the period from late 2012 forward (when the Energy Company hired Percoco's wife). (BOP and Brady Mot. 21).

Under the circumstances, Mr. Kelly cannot reasonably be expected to prepare for trial on a gratuity charge without identification of the specific official acts that he allegedly "rewarded" or the thing(s) of value that functioned as the reward. Without a bill of particulars, unfair surprise at trial would be guaranteed. See United States v. Bin Laden, 92 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (requiring the government to produce a bill of particulars where the allegations of overt acts in the indictment were "charged in such general terms" that they "creat[ed] a risk of prejudicial surprise at trial").

To make matters worse, in a footnote buried in another section of its brief, the Government states that it "may elect prior to trial to proceed on either a bribery or a gratuity

theory." (Opp. 45 n.16). The Government thus admits that Count Thirteen may be a duplicitous count that charges two separate crimes, but suggests that at some unspecified point it will "elect" one theory or the other. In the meantime, Mr. Kelly must prepare for both, not knowing which charge he will have to confront at trial. That is the very definition of surprise. Bribery and the payment of an unlawful gratuity are different crimes with different elements that require vastly different defense preparation. Without immediate particularization of which crime the Government will proceed on in Count Thirteen, Mr. Kelly cannot effectively prepare for trial. Under these circumstances, a bill of particulars is necessary. See Bortnovsky, 820 F.2d at 574 ("Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him . . . to prevent surprise . . . .").

### 3. The Government should be required to particularize the alleged "quid(s)"

The Government in its opposition brief makes no effort to justify its refusal to specify all the benefits Mr. Kelly allegedly provided to Percoco in exchange for Percoco's official acts. But, the Government *has* identified one such benefit: the Energy Company's hiring of Percoco's wife. Thus, the Government apparently recognizes the significance of that fact to Mr. Kelly's trial preparation, and the propriety of identifying it in the Indictment. The Government articulates no legal basis for its refusal to identify any other benefits allegedly provided to Percoco as part of the illegal agreement, or alternatively, to state that there were none.

### B. The Government's boilerplate response does not justify its failure to provide the remaining particulars Mr. Kelly seeks

As purported justification for its failure to address most of the defendants' requests, the Government asserts that it has already provided a wealth of detail in the S1 Indictment, the Complaint, and the discovery materials. (Opp. 139–42). But this claim does not justify its

position with respect to Mr. Kelly, because none of those materials provide the specific information Mr. Kelly seeks.  The Government does not try to demonstrate otherwise, nor could it do so.  Indeed, it appears the Government's primary objective is to keep the requested information from defendants, rather than to demonstrate that such information has already been provided.  (Id. at 139–47).  The Government also makes the general assertion that the defendants' requests for particulars are vague.  (Id. at 146).  However, it does not point to a single request by Mr. Kelly in support of this assertion.  Nor could it, as Mr. Kelly's requests are specific and narrowly tailored.  (See generally BOP and Brady Mot. 3–26).

With respect to the Government's assertion that it has already provided sufficient detail in its discovery, to the extent any facts responsive to Mr. Kelly's requests are contained in the discovery material, the millions of pages the Government provided serve only to hide those facts, and thus to exacerbate rather than relieve the burden of trial preparation.  The Government's much-touted "index" is of little help, as it has no granularity.  (BOP and Brady Mot. 9–10).  Moreover, a huge amount of the material—hundreds of thousands of pages—relate to schemes as to which (the Government now concedes for the first time) Mr. Kelly had no knowledge or involvement.  The index buries the defense in irrelevant information.  See, e.g., United States v. Ramirez, 609 F.3d 495, 503 (2d Cir. 2010) ("The district court made clear that it ordered a bill of particulars because so much discovery was produced to the defendants, not too little.").

In a similar vein, the Government tries to justify its decision not to provide a bill of particulars by referencing the fact that it has responded to 21 discovery letters.  (Opp. 141).  But responding to letters does not give the Government a blanket right to refuse the remaining requests.  (Id. at 141–42).  As an initial matter, the Government's correspondence with other defendants who are charged with conduct unrelated to Mr. Kelly has no bearing on whether Mr.

Kelly is entitled to the particulars he requests.   It is worth noting, however, that the number of letters submitted to the Government in this case reflects the problems encountered by all defendants in their efforts to prepare for trial.   Moreover, the Government's responses to the requests for specificity have largely consisted of either a refusal to provide the requested information, or a suggestion that counsel refer to huge swaths of materials.   In other words, the Government did not direct counsel to the particular information this motion concerns.   (See, e.g., BOP and Brady Mot., Gitner Decl. Ex. K (Doc. No. 235-11) (Government's letter stating that "no further particulars are required" and pointing the defense to tens of thousands of documents); Ex. S (Doc. No. 235-19) (Government's letter stating that a request for the specific wire upon which the Government intends to rely was "premature" and "would unduly restrict the government's ability to present its case" (quotation and citation marks omitted))).

The only request to which the Government offers any substantive response is the request for the names of the unindicted co-conspirators. (Opp. 143–45).   But even as to that request, the Government just cites a string of cases denying similar requests in dissimilar circumstances. (Id.).   As set forth in Mr. Kelly's moving brief, courts consider six factors when deciding whether to order the Government to provide names of unindicted co-conspirators.   United States v. Nachamie, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000).   Instead of engaging with the factors, the Government makes the conclusory assertion that the only similarity between the instant case and the facts of Nachamie is the number of co-conspirators.   (Opp. 143–45).   In fact, as discussed in our opening brief but ignored in the Government's papers, all six Nachamie factors militate in favor of disclosure of the unindicted co-conspirators.   (BOP and Brady Mot. 22–24).   Mr. Kelly cannot effectively prepare his defense or avoid unfair surprise at trial if he does not know with whom the Government believes he conspired.

For all of these reasons, the Court should order the Government to produce a bill of particulars itemizing the matters requested by Mr. Kelly.

**POINT II**

**THE GOVERNMENT SHOULD PROVIDE BRADY MATERIAL IMMEDIATELY**

The Government opposes Mr. Kelly's Brady requests by insisting that it is aware of its Brady obligations, claiming that no Brady material exists, and stating that the material Mr. Kelly has requested does not constitute Brady. Yet, even as the Government maintains that it understands its Brady duties, it demonstrates that it does not.

The Government has a constitutional duty, grounded in the Due Process Clause, "to disclose all material evidence favorable to a criminal defendant." United States v. Triumph Capital Grp., Inc., 544 F.3d 149, 161 (2d Cir. 2008). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001). The Government violates Brady if it fails to disclose evidence that would create a reasonable probability of altering the outcome of the trial. See id. at 146. The "reasonable probability" standard is more than a mere possibility, but less rigorous than a more likely than not standard. See United States v. Agurs, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."); see also Kyles v. Whitley, 514 U.S. 419, 434 (1995) ("[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)."). Unlike the Government's

position in this case, the United States Attorneys' Manual embraces a broad view of <u>Brady</u> by "encourag[ing] prosecutors to err on the side of disclosure in close questions of materiality . . . ." <u>See</u> U.S. Attorneys' Manual 9-5.001(F), <u>available at</u> https://www.justice.gov/usam/usam-9-5000-issues-related-trials-and-other-court-proceedings.

Rather than meaningfully engage with Mr. Kelly's explanation for why the requested information is <u>Brady</u>, the Government turns <u>Brady</u> on its head by flatly refusing to acknowledge the defendants' arguments that the material undermines the charges. Moreover, the Government seeks to skirt its <u>Brady</u> obligations by arguing that it "voluntarily" produced evidence to assist the defense in its trial preparation. (<u>See, e.g.</u>, Opp. 152 ("[T]he Government has already voluntarily disclosed, in an abundance of caution and to assist in the defendants' trial preparation, information regarding the other instances of such [email] alterations [by Howe] . . . .")). But <u>Brady</u> is absolute; there is no authority allowing the Government to avoid <u>Brady</u> disclosures because it voluntarily produced some information to aid the defense. Mr. Kelly is entitled to the material he seeks, and the Government should be compelled to provide it.

**A.    The Government must disclose materials tending to show that Mr. Kelly believed or was told that the Energy Company's hiring of Percoco's wife had been authorized by an ethics opinion**

Mr. Kelly has asked that the Court order the Government to disclose, pursuant to <u>Brady</u>, all materials tending to show that Mr. Kelly believed or was told that the Energy Company's hiring of Percoco's wife had been authorized by an ethics opinion. The Government misconstrues the request as a request for information regarding whether the document exists, and states that it "has already disclosed the information it has identified regarding the purported existence of an ethics opinion, going so far as to disclose witness statements that merely relate

the fact that Kelly told other people that such a document exists." (Opp. 153).[3] But Mr. Kelly's

request is not simply for evidence tending to show that the document existed, but rather for all

material tending to show that Mr. Kelly believed or was told that it did.

The material sought clearly falls within the Government's <u>Brady</u> obligations. Mr. Kelly's

belief as to the existence of an ethics opinion authorizing the Energy Company's hiring of

Percoco's wife speaks volumes about Mr. Kelly's innocent intent, and it is well-established that

such material is properly considered <u>Brady</u> material. <u>Triumph Capital</u> is directly on point.

There, the Second Circuit reversed a jury verdict and remanded for a new trial where the

government unconstitutionally suppressed evidence that tended to negate the intent element of

bribery; the Circuit found that "the government deprived [the alleged briber] of exculpatory

evidence going to the core of its bribery case against him." 544 F.3d at 161–62. The suppressed

evidence—an FBI agent's proffer notes—"support[ed] an alternative version of the [alleged

bribee-briber] conversation about finder's fees, one entirely at odds with the government's

theory of the case at trial." <u>Id.</u> at 162. The Second Circuit determined that "[t]he difference

between the government's final version of events and the version supported by [the bribee's]

initial proffer, which was suppressed, is directly relevant to the intent element of [certain] bribery

charges." <u>Id.</u> Likewise, here, the Government alleges that Mr. Kelly falsely told other

executives at the Energy Company that he had obtained an ethics opinion approving the Energy

Company's hiring of Percoco's wife. (<u>See</u> S1 Ind. ¶ 30(c)). If there are witness statements or

---

[3]     Mr. Kelly interprets the Government's statement that it has disclosed "*the* information it
has identified" as a representation that the Government has disclosed *all* "the information it has
identified regarding the purported existence of an ethics opinion." To be clear, Mr. Kelly
interprets the Government to be representing that it has asked Howe about the existence of the
ethics opinion and Howe had nothing to say on the matter. If this is incorrect, it is incumbent on
the Government to disabuse Mr. Kelly of this assumption, and to produce any such statements
pursuant to <u>Brady</u>.

other information that tend to show that Mr. Kelly, in fact, believed or was told that the Energy Company's hiring of Percoco's wife had been authorized by an ethics opinion, that evidence would be "at odds with the government's theory of the case." Triumph Capital, 544 F.3d at 162.

Similarly, in United States v. Gil, the Second Circuit vacated a conviction and remanded for a new trial where the Government unconstitutionally suppressed a memo that could support "arguments and inferences that . . . bear importantly on the central issue at trial: [the defendant's] defense of authorization" to overcharge for certain services. 297 F.3d 93, 103 (2d Cir. 2002). Here, similarly, the material that Mr. Kelly seeks falls within the Government's Brady obligations because it goes to his innocent state of mind that the hiring of Percoco's wife was authorized.

The Government's decision to produce evidence about the ethics opinion, but not to produce evidence tending to show that Mr. Kelly believed or was told it existed, *hides information clearly favorable to Mr. Kelly*. The Government should be ordered to acknowledge that any materials tending to show that Mr. Kelly believed or was told that the Energy Company's hiring of Percoco's wife had been authorized by an ethics opinion constitutes Brady material, and should be compelled to promptly produce any responsive material.

**B.      The Government must disclose materials tending to show that the State officials whom Percoco allegedly pressured or advised to take official action—including those identified by title in the Complaint—did not perceive Percoco to be pressuring or advising them at all**

The Government has chosen to indict this case on an "as opportunities arise" theory, claiming that Mr. Kelly bribed Percoco in exchange for his agreement to provide unspecified benefits to the Energy Company "as the opportunity arose" by "exert[ing] pressure on and provid[ing] advice to certain other State officials, with the intent that those officials" commit official acts. (S1 Ind. ¶ 31). Mr. Kelly seeks evidence tending to show that when Percoco spoke

14

to State officials about the Energy Company, he did not pressure or advise them to take official action favorable to the Energy Company.  (BOP and <u>Brady</u> Mot. 37).  Put simply, if Percoco, faced with an "opportunity" to pressure or advise an official to benefit the Energy Company did not do so, that would tend to undermine the charge that he had agreed to take such opportunities.

The Government responds to the argument by dividing state officials into two categories: (1) state officials that the Government does not contend "were asked, advised, or pressured by Percoco to take official action"; and (2) state officials that the Government does contend "were asked, advised, or pressured by Percoco to take official action."  (Opp. 153–54).  As to the former, the Government refuses to name the relevant officials because, it argues, "[e]vidence of instances in which Percoco did not perform or cause others to perform an official act do not tend to negate either Percoco's or Kelly's guilt."  (<u>Id.</u> at 153).  The Government's position is inconsistent with <u>McDonnell</u>.  In that case, the defense theory was that the Governor spoke to many people in a position to take official action but never took the opportunity to pressure them. (<u>See</u> BOP and <u>Brady</u> Mot. 38 (citing <u>McDonnell</u>, 136 S. Ct. at 2362)).  As set out in our initial brief, if, in an interview with the Government, any official in a position to aid the Energy Company and with whom Percoco spoke—and in particular spoke about the Energy Company— denied having been pressured or advised by Percoco to take official action or made any statement arguably inconsistent with having been pressured or advised by Percoco, that information would fall squarely within the Government's <u>Brady</u> obligations.  It would tend to show that Percoco had not agreed to advise or pressure officials to take official action to benefit the Energy Company.

As to those state officials that the Government does contend Percoco "asked, advised, or pressured . . . to take official action," the Government seems to admit that evidence that any such

officials denied as much would be <u>Brady</u>, but insists that no such evidence exists.  (<u>See</u> Opp. 154.)  However, in doing so, the Government misstates the standard of <u>McDonnell</u> and what this case is about.  Nowhere in <u>McDonnell</u> did the Supreme Court state that whether an official act has occurred turns on whether an official "asked" about a subject.  To the contrary, the Supreme Court held that simply asking about a pending issue is not an official act.  136 S. Ct. at 2371 (holding that "calling an official . . . merely to talk about a research study or to gather additional information, however, does not qualify as a decision or action on the pending question of whether to initiate the study").  Rather, as the Supreme Court made clear in <u>McDonnell</u>, an official action  "may include using [an] official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official."  <u>Id.</u> at 2372.  On their own, "setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)" are not official acts.  <u>Id.</u>  If the Government's evidence is that Percoco simply "asked" an official about an issue related to the Energy Company—and did not advise or pressure that official to take official action—that would be <u>Brady</u>, too, and the Government should be compelled to disclose as much.

      **C.**      **The Government must disclose materials tending to show that its cooperator altered documents and otherwise deceived his alleged co-conspirators**

The Government should be required to disclose, pursuant to <u>Brady</u>, all evidence or information tending to show that Todd Howe altered or destroyed documents for the purpose of deceiving Mr. Kelly (or any other defendant), as well as how and why he did so, and when, how, or why he deceived Mr. Kelly or the other alleged co-conspirators.  The Government asserts that it has voluntarily disclosed all of Howe's emails in its possession and "information regarding the

other instances of such alterations of which the Government is currently aware."[4]  (Opp. 151–52).  But the Government has chosen not to disclose Howe's explanation for altering the emails, including Howe's statements or other evidence showing how or why Howe tampered with these documents.  In this regard, the Complaint states that Howe "explained that he did [the alterations] *in part* to emphasize that [Percoco] was advocating for the Energy Company," (Compl. ¶ 51(b) n.6 (emphasis added)), but the Government has kept close to the vest Howe's *other* motivations.

     As set forth in Mr. Kelly's opening brief, Howe's document-tampering and his deception of Mr. Kelly is exculpatory under <u>Brady</u>.  Mr. Kelly and Howe are alleged to be co-conspirators. Any evidence or information tending to show that Howe deceived Mr. Kelly about a matter relevant to the conspiracy tends to undermine the existence of an agreement to further a common criminal objective.  <u>See</u> <u>United States v. Salameh</u>, 152 F.3d 88, 147 (2d Cir. 1998) (necessary element of any conspiracy charge is that the alleged co-conspirators had an agreement to further a common criminal objective).  Not only does the fact that Howe altered emails tend to undermine the charges against Mr. Kelly, but *the reasons Howe did so* also undermine important inferences the Government will ask the jury to draw—including inferences about the nature, extent, scope, and the duration of the charged conspiracy.  For that reason, the Government should be ordered to disclose Howe's reasons for altering the material.

---

[4]      Based on this representation, Mr. Kelly assumes that the Government has disclosed *all* instances of alterations of which the Government is aware, and will continue to disclose further instances that it discovers.

## POINT III

## MR. KELLY JOINS CERTAIN MOTIONS FILED BY OTHER DEFENDANTS

Mr. Kelly continues to join in the following motions filed by his co-defendants.

### A. Percoco was not a government official during part of the relevant period

Mr. Kelly continues to join the arguments in the motion to dismiss filed by Percoco (including Percoco's reply brief) as set forth in Point IV of our reply brief in support of Mr. Kelly's motion to dismiss.

### B. The Court should order inspection of the Grand Jury minutes

Mr. Kelly also continues to join the motion filed by the Buffalo Defendants to inspect certain portions of the Grand Jury minutes, including the jury instructions.

The Government fails to respond to Mr. Kelly's argument that the Grand Jury minutes should be inspected, and responds only to the motion as applied to the Buffalo Defendants. (Opp. 77–78). In any event, in responding to that motion, the Government argues that review of the Grand Jury minutes is not warranted because the defendants have offered only "[m]ere speculation . . . that the Government may have improperly instructed the grand jury." (Id. at 78). But there are several obvious and non-speculative deficiencies in the Government's charging instruments, all of which strongly suggest that the Grand Jury was improperly instructed, and in particular improperly instructed regarding McDonnell.

First, as discussed in Point II of both Mr. Kelly's opening and reply briefs in support of his motion to dismiss, the S1 Indictment does not allege that Percoco agreed to take official action favorable to the Energy Company on a specific question or matter. (See MTD 49–54; Reply MTD at Point II). This failure provides reason to believe that the Grand Jury was improperly instructed. See United States v. Twersky, No. S2 92-CR-1082 (SWK), 1994 WL 319367, at *5 (S.D.N.Y. June 29, 1994) (finding that a post-indictment Supreme Court decision

18

clarifying the meaning of willfulness warranted "*in camera* review of the Grand Jury minutes . . . to determine what legal instructions, if any, the Grand Jury received").

Second, as discussed above and in Point III of Mr. Kelly's opening and reply briefs in support of his motion to dismiss, the S1 Indictment does not link the "things of value" alleged to be gratuities with their corresponding "official act." But <u>Sun-Diamond</u> makes clear that this link is required. (<u>See</u> MTD 61–64; Reply MTD at Point III). This failure likewise calls into question whether the grand jury was properly instructed on the elements of an illegal gratuity.

**CONCLUSION**

The Government should be ordered to provide a bill of particulars as to all six of Mr. Kelly's requests pursuant to Rule 7(f). Additionally, the Government should be ordered to promptly disclose any responsive materials pertaining to Mr. Kelly's <u>Brady</u> requests regarding three categories of materials that are critical to his defense. Mr. Kelly reiterates that he joins in various motions filed by the other defendants in this matter.

Dated: July 21, 2017
      New York, NY

                  Respectfully submitted,

                  LANKLER SIFFERT & WOHL LLP

                  By:     /s/ Daniel M. Gitner
                            Daniel M. Gitner
                            Jun Xiang
                            Samantha J. Reitz

                            500 Fifth Avenue
                            New York, NY 10110
                            (212) 921-8399

                            *Attorneys for Defendant*
                            *Peter Galbraith Kelly, Jr.*