UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

JOSEPH PERCOCO, a/k/a "Herb,"
ALAIN KALOYEROS, a/k/a "Dr. K.,"
PETER GALBRAITH KELLY, JR., a/k/a "Braith,"
STEVEN AIELLO,
JOSEPH GERARDI,
LOUIS CIMINELLI,
MICHAEL LAIPPLE, and
KEVIN SCHULER,

Defendants.

No. S1 16 Cr. 776 (VEC)

<u>Oral Argument Requested</u>

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
PETER GALBRAITH KELLY, JR.'S MOTION TO DISMISS**

LANKLER SIFFERT & WOHL LLP

Daniel M. Gitner
Jun Xiang
Samantha J. Reitz

500 Fifth Avenue
New York, NY 10110
(212) 921-8399

*Attorneys for Defendant*
*Peter Galbraith Kelly, Jr.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ..........................................................................................3

POINT I
18 U.S.C.§ 666(A)(2) IS UNCONSTITUTIONAL.................................3

    A.    Section 666(a)(2) lacks an official act element......................................6

        1.    The Government appears to be unsure whether section 666(a)(2) contains an official act element................................................6

        2.    An official act requirement cannot be added to section 666(a)(2) through the Government's charging language or jury instructions ............8

        3.    The Government incorrectly suggests that other statutory elements of section 666(a)(2) can function as substitutes for the missing official act element.......................................................9

    B.    Without an official act element, section 666(a)(2) is unconstitutional.................10

        1.    The Government mischaracterizes McDonnell .......................................11

            a.    McDonnell defines "official act" narrowly in order to avoid "significant constitutional concerns"...........................................11

            b.    The constitutional concerns discussed in McDonnell include overbreadth, vagueness, and federalism .......................................15

        2.    Section 666(a)(2) is unconstitutionally overbroad....................................16

        3.    Section 666(a)(2) is unconstitutionally vague ..........................................20

        4.    The Government's casual dismissal of the federalism concern illustrates why the Supreme Court warned about federal overreach ........24

POINT II
THE GENERAL RETAINER THEORY OF BRIBERY DOES NOT SURVIVE MCDONNELL ...........................................................................26

    A.    McDonnell requires that the public official agree to take official action on a specific question or matter .............................................29

    B.    The Government cites pre-McDonnell Second Circuit authority that does not survive McDonnell .............................................34

C.   The Government trivializes the compelling constitutional and policy
     reasons to reject the general retainer theory ...........................................................36

POINT III
     TO THE EXTENT COUNT THIRTEEN CHARGES A GRATUITY OFFENSE,
     IT MUST BE DISMISSED ...............................................................................................38

POINT IV
     THE CHARGES AGAINST MR. KELLY CANNOT REST ON ALLEGED
     CONDUCT BY PERCOCO WHEN PERCOCO WAS NOT A GOVERNMENT
     OFFICIAL...........................................................................................................................39

CONCLUSION.................................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Borough of Duryea, Pa. v. Guarnieri,
    564 U.S. 379 (2011)...............................................................................................20

Broadrick v. Oklahoma,
    413 U.S. 601 (1973)...........................................................................................16, 19

Buckley v. Valeo,
    424 U.S. 1 (1976) (per curiam)...........................................................................20

City of Houston, Tex. v. Hill,
    482 U.S. 451 (1987)...........................................................................................17, 19

Evans v. United States,
    504 U.S. 255 (1992)...............................................................................................32

First Nat'l Bank of Boston v. Bellotti,
    435 U.S. 765 (1978)...............................................................................................19

Kolender v. Lawson,
    461 U.S. 352 (1983)...............................................................................................21

Lamie v. U.S. Trustee,
    540 U.S. 526 (2004).................................................................................................6

Mannix v. Phillips,
    619 F.3d 187 (2d Cir. 2010)..................................................................................21

McCormick v. United States,
    500 U.S. 257 (1991)...............................................................................................18

McCutcheon v. F.E.C.,
    134 S. Ct. 1434 (2014) (plurality opinion) ...........................................................18

McDonnell v. United States,
    136 S. Ct. 2355 (2016)................................................................................. *passim*

Meyer v. Grant,
    486 U.S. 414 (1988)...............................................................................................20

NAACP v. Button,
    371 U.S. 415 (1963)...............................................................................................20

Russell v. United States,
    369 U.S. 749 (1962)..............................................................................28

Sabri v. United States,
    541 U.S. 600 (2004)...........................................................................4, 5

Salinas v. United States,
    522 U.S. 52 (1997)..............................................................................4, 5

In re UBS AG Securities Litig.,
    07 CIV. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)..................28

United States v. Boyland,
    No. 15-3118, __ F.3d __, 2017 WL 2918840 (2d Cir. July 10, 2017) ................13, 14, 30, 31

United States v. Coyne,
    4 F.3d 100 (2d Cir. 1993).......................................................................35

United States v. Ganim,
    510 F.3d 134 (2d Cir. 2007)..........................................................7, 34, 35, 36

United States v. Musto,
    3:10-CR-338, 2012 WL 5879609 (M.D. Pa. Nov. 21, 2012) ..................................5

United States v. Reese,
    92 U.S. 214 (1875).................................................................................8

United States v. Rosen,
    716 F.3d 691 (2d Cir. 2013).........................................................5, 22, 23, 35

United States v. Silver,
    203 F. Supp. 3d 370 (S.D.N.Y. 2016) ........................................................13

United States v. Silver,
    No. 16-1615, __ F.3d __, 2017 WL 2978386 (2d Cir. July 13, 2017) ...........................*passim*

United States v. Sullivan,
    332 U.S. 689 (1948)................................................................................8

United States v. Sun-Diamond Growers of California,
    526 U.S. 398 (1999)...............................................................................*passim*

United States v. Thompson,
    501 F. App'x 347 (6th Cir. 2012). ............................................................3, 4

United States v. Walsh,
    194 F.3d 37 (2d Cir. 1999)......................................................................29, 39

United States v. Williams,
    553 U.S. 285 (2008)..................................................................................16, 17

Virginia v. Hicks,
    539 U.S. 113 (2003)........................................................................................15

**Statutes**

18 U.S.C. § 201 ....................................................................................... *passim*

18 U.S.C. § 666 ....................................................................................... *passim*

18 U.S.C. § 1349 ...............................................................................................24

N.Y. Penal Law §§ 200.00, 200.03, 200.04..............................................24

**Other Authorities**

Albert W. Alschuler, Criminal Corruption: Why Broad Definitions of Bribery
    Make Things Worse, 84 Fordham L. Rev. 463 (2015)...........................37

Defendant Peter Galbraith Kelly, Jr. respectfully submits this reply brief in further support of his motion to dismiss Counts Nine and Thirteen of the Superseding ("S1") Indictment pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure.

## PRELIMINARY STATEMENT

The Government's response to the motion to dismiss rests on the premise that 18 U.S.C. § 666(a)(2) ("section 666(a)(2)") was untouched by the Supreme Court's watershed decision in McDonnell v. United States, 136 S. Ct. 2355 (2016). By the Government's telling, McDonnell's painstaking constitutional discussion "does not impose a freestanding official act requirement on bribery statutes," (Opp. 28), and was instead an idle exercise with minimal impact on how bribery prosecutions may be charged.[1] The Government is wrong. Not only does McDonnell carefully define what "official act" means in the bribery context, it also makes clear that this definition is constitutionally significant. As McDonnell warns, a bribery statute unshackled from a narrow conception of "official act" would raise "significant constitutional concerns," including overbreadth, vagueness, and federalism concerns. McDonnell, 136 S. Ct. at 2372–73. As discussed in our opening brief, section 666(a)(2) lacks any official act element and therefore squarely presents those constitutional problems.

In its opposition brief, the Government avoids engaging directly with the issues presented by the motion to dismiss—including whether section 666(a)(2) requires an "official act," whether the absence of an "official act" element makes that statute unconstitutional, and whether the general retainer theory of bribery is consistent with McDonnell. Instead, the Government obscures the issues. For example, the Government's opposition brief begins not with a

---

[1] Citations to Mr. Kelly's Memorandum of Law in Support of the Motion to Dismiss, Doc. No. 230, appear as "MTD" and citations to the Government's Omnibus Memorandum of Law in Opposition to Defendants' Pretrial Motions, Doc. No. 264, appear as "Opp."

discussion of McDonnell, but with a discussion of pre-McDonnell cases addressing provisions of 18 U.S.C. § 666 that are completely irrelevant to this case.  (Opp. 25–27).  And when the Government does discuss McDonnell, its description of the decision bears little resemblance to what the Supreme Court actually wrote.

The Government's revisionism of McDonnell drives not only its response to the constitutional arguments, but also its defense of the general retainer theory charged in this case.  According to the Government, when the Supreme Court unanimously held that a bribe must be given in exchange for an official act on a "specific" and "concrete" question or matter, what the Court really meant was that the question or matter could remain entirely unspecified.  (Opp. 40–42).  The Government's position exemplifies the danger the Supreme Court hoped to thwart in McDonnell: unless the "quo" of a "quid pro quo" is narrowly defined and specifically identified, any "thing of value" that a public official (or the family member of an official) might receive, including a bona fide job, will raise the specter of criminal prosecution.

The Government's refusal to address legal authority is perhaps most apparent in its defense of the as-opportunities-arise gratuity theory purportedly charged in Count Thirteen.  (Opp. 43–46).  Nowhere in the discussion of that issue does the Government acknowledge the existence of—much less attempt to distinguish—the Supreme Court case directly on point, Sun-Diamond, which holds that a gratuity charge cannot rest on an as-opportunities-arise theory.  United States v. Sun-Diamond Growers of California, 526 U.S. 398, 414 (1999).

McDonnell was an opportunity for the Government to reflect on the appropriate boundaries of bribery prosecutions and the harm that overbroad prosecutions might inflict on the democratic process.  Rather than engage in that reflection, the Government flouts the Supreme Court's decision and invites this Court to join its efforts.  The Court should decline.

**ARGUMENT**

**POINT I**

**18 U.S.C.§ 666(a)(2) IS UNCONSTITUTIONAL**

Our constitutional challenge to section 666(a)(2) presents two questions: first, whether 18 U.S.C.§ 666(a)(2) incorporates an "official act" element as defined in McDonnell and, second, if the statute lacks such an element, whether it is unconstitutional for any of the three distinct reasons identified in McDonnell. The answers are clear. As discussed in the opening brief, section 666(a)(2) does not require—and cannot be interpreted to incorporate—any "official act" element. (MTD 18–28). Without such an element, the statute is unconstitutional for all of the reasons identified in McDonnell: it is unconstitutionally overbroad and vague, and undermines federalism. (MTD 28–42).

The Government's answers to the relevant questions are thoroughly unconvincing. On the first question, the Government answers, remarkably, that it does not know whether section 666(a)(2) incorporates an official act element. And its answer to the second question seems to be that, the plain language of McDonnell notwithstanding, the absence of an official act element has no bearing on the constitutionality of section 666(a)(2).

\*     \*     \*

Before turning to the questions actually presented by the motion, the Government's opposition brief muddies the waters by citing irrelevant authority. According to the Government, the constitutionality of 18 U.S.C. § 666 has already been litigated and upheld in the "instructive" and "particularly relevant" summary order in United States v. Thompson, 501 F. App'x 347 (6th Cir. 2012). (Opp. 26 (citing Thompson for the proposition that "[c]ourts have . . . rejected challenges to Section 666 as vague or, as particularly relevant here, constitutionally

3

overbroad")).  The Government cites <u>Thompson</u> repeatedly as authority for the issues presented

by the motion.  (<u>See</u> Opp. 26–27, 31).  But <u>Thompson</u> did not address the bribery subsection

charged against Mr. Kelly, 18 U.S.C. § 666(a)(2), and instead addressed a separate subsection,

18 U.S.C. § 666(a)*(1)(A)*, which defines a completely different crime, the misapplication of

property.  <u>Thompson</u>, 501 F. App'x at 349–50 (describing scheme to use public road bonds to

"blacktop" private property).[2]  The constitutional problems identified in <u>McDonnell</u> are specific

to *bribery* statutes, 136 S. Ct. at 2372–73, and Mr. Kelly only challenges the *bribery* subsection

of the statute, 18 U.S.C. § 666(a)*(2)*.  <u>Thompson</u> is therefore irrelevant, as is another

misapplication of property case on which the Government relies.  (Opp. 26 (citing <u>United States</u>

<u>v. Deen</u>, CR 14-184-01-03, 2016 WL 900463 (W.D. La. Mar. 7, 2016) (defendant charged under

18 U.S.C. § 666(a)(1)(A) for trading in a car))).[3]

        In support of its contention that "Section 666 has long withstood constitutional scrutiny,"

the Government also cites <u>Salinas v. United States</u>, 522 U.S. 52 (1997), and <u>Sabri v. United</u>

<u>States</u>, 541 U.S. 600 (2004).  (Opp. 25–26, 30 n.6, 35 & n.11).  But <u>Salinas</u> addressed whether,

to prove a bribe under 18 U.S.C. § 666, the Government must prove that the bribe affected

federal funds.  522 U.S. at 55–61 (holding no such effect required).  <u>Sabri</u> addressed a related

question—whether, by not requiring an effect on federal funds, 18 U.S.C. § 666 exceeded

Congress's legislative powers under Article I of the Constitution.  541 U.S. at 604–08 (holding

---

[2]     18 U.S.C. § 666(a)(1)(A) ("Whoever . . . embezzles, steals, obtains by fraud, or otherwise
without authority knowingly converts to the use of any person other than the rightful owner or
intentionally misapplies, property . . . ").

[3]     The Government seems to fully appreciate the difference between the various subsections
of 18 U.S.C. § 666 when, elsewhere in the opposition brief, it distinguishes a case cited by other
defendants on the ground that the case involved a subsection other than the bribery subsection.
(Opp. 70 n.25 (arguing that "<u>Doran</u> is inapposite because it concerned the embezzlement
prohibition in Section 666")).

18 U.S.C. § 666 validly enacted under Spending Clause). Neither case is remotely relevant to the issues raised in this motion or the Supreme Court's decision in <u>McDonnell</u>.[4] Also inapposite is <u>United States v. Rosen</u>, 716 F.3d 691, 699 (2d Cir. 2013), in which the defendant challenged the "as opportunities arise" theory of bribery underlying all of the statutes with which he was charged (including 18 U.S.C. § 666), rather than challenging the offense specifically defined in 18 U.S.C. § 666(a)(2).[5] (Opp. 26 (citing <u>Rosen</u>)).

The constitutional issue posed by our motion—whether the absence of an official act element from section 666(a)(2) makes that statute unconstitutional—was not even presented, much less decided, in the cases the Government cites. Nor could it have been, given that <u>McDonnell</u> was decided *after* those cases.

*     *     *

Notwithstanding the Government's confusion of the issues, the questions presented by this motion are, as discussed above: (A) whether section 666(a)(2) incorporates an official act element[6] and (B) if it lacks an official act element, whether the statute is unconstitutionally overbroad or vague, or undermines federalism.

---

[4]     Irrelevant for the same reason is <u>United States v. Musto</u>, in which a defendant attempted to re-litigate the issues decided by <u>Salinas</u> and <u>Sabri</u>. (Opp. 26 (citing <u>Musto</u>, 3:10-CR-338, 2012 WL 5879609 (M.D. Pa. Nov. 21, 2012) (rejecting argument that section 666 is unconstitutional absent a "nexus between . . . alleged actions and . . . federal benefits"))).

[5]     <u>Rosen</u> is inapplicable for reasons discussed, <u>infra</u>, at Point I.B.3. And the general retainer theory charged against Mr. Kelly does not survive <u>McDonnell</u> for the reasons discussed, <u>infra</u>, at Point II. (<u>See also</u> MTD 43–61).

[6]     The term "official act element" is shorthand. As discussed more fully below, and as <u>McDonnell</u> makes clear, a bribe does not require the *performance* of an official act, but an agreement that a "<u>quid</u>" is given in exchange for a "<u>quo</u>," which must be an official act.

### A. Section 666(a)(2) lacks an official act element

The framework for interpreting a statute is well-established: the plain language of the text controls, to be supplemented (as needed) by statutory or legislative history. See Lamie v. U.S. Trustee, 540 U.S. 526, 533–36 (2004). Here, the plain text and statutory history both point to the only possible interpretation: section 666(a)(2) incorporates no official act element. Not only are the words "official act" absent from the statute, they were purposefully *dropped* when section 666(a)(2) was adapted from the language of a predecessor statute, 18 U.S.C. § 201 ("section 201"). (See MTD 18–20). The Government does not dispute the plain text of section 666(a)(2) or the significance of the differing language between section 666(a)(2) and section 201, nor does it challenge the statutory history of section 666(a)(2). Numerous courts have concluded that section 666(a)(2) does not include an official act element. (Id. at 20 (citing cases)).

### 1. The Government appears to be unsure whether section 666(a)(2) contains an official act element

The Government appears to be genuinely unsure whether, as a statutory matter, section 666(a)(2) incorporates an "official act" element (as defined by section 201), and its position on that question shifts from page to page of its opposition brief. The Government begins the discussion by acknowledging that the text of the statute includes no such element. (E.g., Opp. 30 ("It is true, as Percoco and Kelly observe, that Section 666 does not contain the term 'official act,' or require, on its face, the commission of an official act as defined in Section 201.")). But then on other pages, it suggests that the Second Circuit has already found that section 666(a)(2) does require an official act. (E.g., Opp. 31–32 ("[T]he Second Circuit has generically referred to Section 666 as requiring an official act."))[7] And on yet other pages, it says that the issue is

---

[7] The generic references cited by the Government do not amount to a holding that section 666(a)(2) requires an official act. The Second Circuit has cautioned that generic use of the term "official act" should not be conflated with the legal concept of an "official act," as defined in

"undecided."  (E.g., Opp. 32 ("[T]hese cases may mean—although it is undecided—that Section 666 requires the commission of an 'official act' (as the term is used in Section 201).")).  Ultimately, the Government urges the Court to dodge the question altogether.  (Opp. 32 n.9 ("The question is not whether there is an 'official act' requirement.")).

The Government's inconsistency on this central question extends beyond this case.[8]  In a recent brief in a pending bribery case in the Southern District of New York, the Government took the position that "one cannot simply import wholesale the statutory framework of Section 201 into Section 666 cases" because "Section 666 has its own, different [statutory] requirements."  Brief of Government ("Ng Br.") at 29–31, United States v. Ng, 15 Cr. 706 (VSB) (S.D.N.Y. Nov. 30, 2016), Doc. No. 327.[9]  The Government went on to insist that it was "wrong" to suggest that a section 666 bribery offense requires proof of an official act, namely, the exercise of formal governmental power on a specific question or matter.  Id. at 30.  By contrast, in a recent brief to the Second Circuit in United States v. Skelos, the Government took the position that the jury charge as to section 666(a)(2) was correct because it communicated to the jury that the relevant issue was whether the defendant engaged in "*official decisionmaking about a specific issue or transaction*."  Brief of Government ("Skelos Br.") at 51, United States v. Skelos, No. 16-1618(L) (2d Cir. Jan. 6, 2017), Doc. No. 90 (emphasis in original).  The Government's slippery position on whether section 666(a)(2) incorporates an official act element is difficult to pin down.

---

section 201.  See United States v. Ganim, 510 F.3d 134, 142 n.4 (2d Cir. 2007) ("[W]e use the term 'official act' in a general sense to mean an act taken under color of official authority, not necessarily as the term is used and statutorily defined in 18 U.S.C. § 201 or elsewhere.").

[8]    As discussed, infra, at Point I.B.3, the Government's inconsistency demonstrates the unconstitutional vagueness of the statute.

[9]    (See also Opp. 66 (employing language similar to Ng brief)).

In any event, the text and statutory history of the relevant subsection are plain: the "official act" element defined in section 201 and discussed in <u>McDonnell</u> was omitted, purposefully, from section 666. (<u>See</u> MTD 18–20). The Government's opposition brief does not dispute this point, (Opp. 30), nor could it do so.

> ### 2. An official act requirement cannot be added to section 666(a)(2) through the Government's charging language or jury instructions

Notwithstanding the Government's equivocation, the charging language of Count Thirteen of the S1 Indictment makes clear the Government's intent to satisfy <u>McDonnell</u>'s official act requirement: "Kelly paid Joseph Percoco . . . in exchange for, to influence, and to reward the taking of *official action*." (S1 Ind. ¶ 65 (emphasis added)). Similarly, in the opposition brief, the Government suggests that the Court should graft section 201's official act element onto section 666(a)(2) through jury instructions. (Opp. 36 (proposing that jury instruction as to section 666 could simply "incorporate[] <u>McDonnell</u>'s limitations"); <u>id.</u> at 29 (proposing that "a jury instruction similar to that articulated in <u>McDonnell</u> would solve any remaining risk")).

The Government's attempt to plead around the problem is impermissible for reasons discussed at length in the opening brief. (<u>See</u> MTD 21–22, 27–28). Whether an element is included in a statute is for Congress to decide. If a statute does not require a certain element—particularly where, as here, the omission is by design—then that element cannot be inserted through charging language or through a jury instruction, even if the element is needed to make the statute constitutional. <u>See</u> <u>United States v. Reese</u>, 92 U.S. 214, 221 (1875) (holding that a criminal statute cannot "be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish"); <u>United States v. Sullivan</u>, 332 U.S. 689, 693 (1948) ("When it is reasonably plain that Congress meant its Act to prohibit certain conduct,

no [legal authority] justifies a distortion of the congressional purpose, not even if the clearly correct purpose . . . leads inevitably to a holding of constitutional invalidity.").  The Government does not dispute this black-letter principle, just as it does not dispute that Congress chose not to include any official act element in section 666(a)(2).

**3.**    **The Government incorrectly suggests that other statutory elements of section 666(a)(2) can function as substitutes for the missing official act element**

Alternatively, the Government suggests that, even if section 666(a)(2) does not incorporate an official act requirement as defined by section 201, it contains other language that can serve as a functional equivalent for such a requirement.  Specifically, the Government argues that the McDonnell official act requirement can be satisfied by some of the following phrases in section 666: "intent to influence"; "in connection with any business, transaction, or series of transactions"; and "corruptly."  (Opp. 31–32 & n.9).  The Government is wrong.

As discussed in the opening brief, it is perfectly possible for a constituent to give a public official a thing of value *with* "the intent to influence" the official *and* "in connection with any [state] business" but *without* an intent for the official to perform any official acts.  (See MTD 18–19).  Indeed, those were the very facts presented in McDonnell.  The constituent, Jonnie Williams, gave the Governor numerous gifts with the intent that the gifts would influence the Governor ("intent to influence") to facilitate research studies of Anatabloc by state universities ("in connection with any [state] business"). 136 S. Ct. at 2362–64.  What was missing was any agreement or effort by the Governor to perform *official acts*; rather, the evidence established that he arranged meetings, made inquires, and referred Williams to other government officials.  Id. at 2366.  Although those meetings, inquiries, and referrals were possibly "influenced" by Williams's gifts and were clearly "in connection with" state business, they were not "official acts" as the Supreme Court defined that term.

9

Here, by relying on the "intent to influence" and the "in connection with any [state] business" language of section 666, the Government makes the same mistake that it made in McDonnell: it assumes that everything a public official does "in connection with" state business is an official act. The Supreme Court expressly held otherwise. 136 S. Ct. at 2371 ("[I]f every action somehow related to the research study were an 'official act,' the requirement . . . would be meaningless."). Indeed, as discussed in the opening brief, the words "intent to influence" appear in both section 666(a)(2) *and* section 201, yet the "intent to influence" element in section 201 includes the words "official act," while the parallel element in section 666 does not. (MTD 27). It is thus apparent that neither the "intent to influence" element nor the "in connection with any [state] business" element found in the text of section 666(a)(2) can serve as a substitute for an official act element.

Nor does section 666(a)(2)'s use of the term "corruptly" imply an official act element. Numerous arguments for why the term "corruptly" does not imply an official act requirement—including the differing language between section 666(a)(2) and section 201, the plain meaning of "corruptly," and Second Circuit case law—are discussed in detail in the opening brief. (See MTD 24–27). The Government makes no attempt to respond to any of those arguments.

### B.      Without an official act element, section 666(a)(2) is unconstitutional

Because section 666(a)(2) lacks an official act element, and because no such element can be implied or engrafted, the statute squarely presents the question posed by McDonnell: whether a bribery statute that does not have an official act element is constitutional. As discussed in the opening brief, 18 U.S.C. § 666(a)(2) is unconstitutional for the three reasons discussed in McDonnell—it is overbroad, vague, and undermines federalism. (See MTD 28–42).

Before turning to the constitutional arguments, however, it is necessary to correct the mischaracterizations of <u>McDonnell</u> found in the Government's opposition brief.

### 1. The Government mischaracterizes <u>McDonnell</u>

#### a. <u>McDonnell</u> defines "official act" narrowly in order to avoid "significant constitutional concerns"

<u>McDonnell</u> has both a statutory dimension and a constitutional dimension. The Supreme Court narrowly defined "official act" and did so, in significant part, to avoid "significant constitutional concerns" that would arise under a broader definition. <u>McDonnell</u>, 136 S. Ct. at 2372–73.

The Government argues, however, that <u>McDonnell</u> is little more than a statutory interpretation decision about the meaning of "official act" as used in section 201, which applied to the Hobbs Act and honest services fraud statutes charged in <u>McDonnell</u> only because the parties "agreed" that it would. (Opp. 28–29). If the Government means to suggest that the applicability of <u>McDonnell</u> turns on whether parties "agree" to apply section 201, it is wrong. It is true that the parties in <u>McDonnell</u> agreed not to litigate whether the Hobbs Act and honest services fraud statutes required proof of an "official act" as defined in section 201. <u>McDonnell</u>, 136 S. Ct. at 2365. But the parties' agreement did not—and could not—alter what those statutes actually require: a federal statute is not a private contract that can be tailored to the desires of individual parties.[10] In agreeing that section 201's "official act" element applied to the statutes charged in <u>McDonnell</u>, the parties were simply recognizing what would have been true without their agreement. Indeed, the Second Circuit recently applied the <u>McDonnell</u> definition of "official act" to charges brought under the honest services fraud and Hobbs Act statutes, even

---

[10] The definition of federal crimes is the exclusive domain of Congress. (<u>See</u> MTD 21–22, 27–28).

though the parties "*did not agree* to apply § 201(a)(3)'s definition of 'official act' at trial."
United States v. Silver, No.16-1615, __ F.3d __, 2017 WL 2978386 at *11 n.67 (2d Cir. July 13,
2017) (emphasis added).[11]

The Government next argues that McDonnell "does not impose a freestanding official act
requirement on bribery statutes." (Opp. 28; see also id. at 29 ("McDonnell . . . certainly does not
hold that a bribery statute—however worded—without an official act requirement would be
facially unconstitutional.")). The Government arrives at that conclusion by treating McDonnell's
discussion of "significant constitutional concerns," see 136 S. Ct. at 2372, as an afterthought
unrelated to the discussion of "official act" that preceded it. (Opp. 28–30). But the two halves
of McDonnell cannot be severed: the Supreme Court treated the statutory question and the
constitutional analysis as fundamentally intertwined. The Supreme Court rejected the
"expansive interpretation of 'official act'" urged by the Government precisely because it would
"raise significant constitutional concerns." 136 S. Ct. at 2372. Likewise, the Court stated that it
was able to avoid Governor McDonnell's constitutional challenge precisely because a narrow
statutory construction of "official act" was possible. Id. at 2375 ("Because we have interpreted
the term 'official act' in § 201(a)(3) in a way that avoids the vagueness concerns raised by
Governor McDonnell, we decline to invalidate those statutes [on constitutional grounds] under
the facts here.").[12]

---

[11]     On appeal, the parties in Silver each cited the McDonnell definition of "official act."
Silver, 2017 WL 2978386 at *11 n.67.

[12]     For this reason, the Government's observation that the Supreme Court did not hold that
the statutes at issue in McDonnell were unconstitutional is true, but irrelevant. (Opp. 29
("Critically, McDonnell does not hold that Section 201 is unconstitutional.")). The only reason
the Supreme Court did not need to strike down either statute as unconstitutional was that it was
able to construe the statutes to incorporate an "official act" element, which the Court narrowly
defined. Here, the constitutional problems cannot be avoided in the same way. Section 666 does
not contain any official act element, so there is nothing to narrowly define.

Both this Court and the Second Circuit have recognized that McDonnell's statutory analysis of "official act" was driven by the Supreme Court's constitutional concerns. See United States v. Silver, 203 F. Supp. 3d 370, 378 n.8 (S.D.N.Y. 2016) ("The Supreme Court was clearly seeking to cabin the "quo" in the quid pro quo element of honest services fraud and extortion in order to avoid these constitutional concerns."); Silver, 2017 WL 2978386 at *11 n.67 ("Neither party argues for an alternative definition [of official act] that would allay the constitutional concerns expressed in McDonnell."). Indeed, in Silver, the Second Circuit rejected "the official act instructions given at Silver's trial *because of the 'constitutional concerns* stemming from the breadth of the interpretation advanced by the government.'" Silver, 2017 WL 2978386 at *12 n.84 (emphasis added).

The recent Boyland decision is not to the contrary. See United States v. Boyland, No. 15-3118, __ F.3d __, 2017 WL 2918840 (2d Cir. July 10, 2017). In Boyland, the defendant was convicted of Hobbs Act and honest services fraud offenses, as well as section 666(a)(2) bribery. As to the Hobbs Act and honest services fraud counts, the district court gave jury instructions on "official act" that were more expansive than the McDonnell definition; but, as to the section 666 bribery counts, the district court did not instruct the jury that an official act was an element of the crime. Id. at *6. On appeal, the defendant did not challenge any of his convictions on constitutional grounds.[13] Instead, the appeal was limited solely to the issue of whether the jury

---

[13]    Boyland's original opening brief, filed before the McDonnell decision, contained a cross-reference to the (then-pending) constitutional arguments advanced in McDonnell. Brief of Defendant at 63, Boyland, No. 15-3118 (2d Cir. June 13, 2016), Doc. No. 49. After McDonnell was decided, however, Boyland filed a supplemental opening brief—as well as a reply brief—that made no reference to a constitutional argument. See Boyland, No. 15-3118, Doc. Nos. 74, 96. The Government confirmed that no constitutional argument was before the Second Circuit. Brief of Government at 34 n.15, Boyland, No. 15-3118 (2d Cir. Nov. 9, 2016), Doc. No. 91 ("[T]he government will not address [the constitutional] argument[.] . . . Boyland did not raise this argument in his supplemental brief.").

instructions were plainly erroneous. The Second Circuit held that the failure to define "official act" for the section 666(a)(2) counts was not erroneous because section 666(a)(2) does not have an official act element that needs to be defined. Id. at *9. After noting the differing language between section 666(a)(2) and section 201, the Second Circuit remarked that "[w]e do not see that the McDonnell standard applied to these [section 666] counts." Id. Read in context, Boyland's use of the phrase "the McDonnell standard" refers to McDonnell's elaboration of the section 201 official act element. Boyland simply confirms—as we have argued—that section 666 lacks the official act element found in section 201. Boyland does not suggest, much less hold, that McDonnell's *constitutional* analysis was somehow inapplicable to section 666. Nor does Boyland consider the constitutional question presented by this motion—whether the absence of an official act element in section 666(a)(2) makes that statute unconstitutional.

In a letter filed after its opposition brief in this case, the Government cites Boyland to suggest that McDonnell's constitutional analysis is less applicable to section 666(a)(2) because section 666 "was enacted to protect the integrity of the vast sums of money distributed through federal programs." (Doc. No. 275). But Boyland does not discuss this issue at all. See Boyland, 2017 WL 2918840. In any event, the Government's argument is a non sequitur: the legitimacy of the policy objective that Congress hoped to achieve by enacting section 666 has no bearing on whether the statute chills First Amendment-protected conduct, is unconstitutionally vague, or undermines federalism.[14] McDonnell's "significant constitutional concerns" were in no way confined to any particular bribery statute. 136 S. Ct. at 2372–73.

---

[14]    Furthermore, the congressional interest in protecting federal funds cannot be, as the Government suggests, a basis for distinguishing section 666(a)(2) from section 201. (Opp. 25–26). Indeed, the congressional interest protected by section 201 is arguably even *greater* than the interest protected by section 666. If Congress has a legitimate interest in prohibiting bribery of state officials whose actions touch on the receipt of federal funds (section 666), then it must have

### b. The constitutional concerns discussed in <u>McDonnell</u> include overbreadth, vagueness, and federalism

Not only does the Government mischaracterize the relevance of the constitutional discussion to <u>McDonnell</u>'s definition of official act, it also mischaracterizes the constitutional discussion itself. <u>McDonnell</u> addresses three distinct "significant constitutional concerns": overbreadth, vagueness, and federalism. <u>See</u> 136 S. Ct. at 2372–73.

The Government does not dispute that <u>McDonnell</u> expresses concerns about vagueness and federalism. The Government suggests, however, that <u>McDonnell</u> does not address the First Amendment overbreadth doctrine because "the word 'overbroad' appears nowhere in the Supreme Court's opinion." (Opp. 28). That argument is ludicrous. As explained in the opening brief, (<u>see</u> MTD 16 n.9), even though the Court did not identify the overbreadth doctrine by name, its discussion of the "chill" on "democratic discourse" plainly invoked the doctrine. <u>Compare</u> <u>McDonnell</u>, 136 S. Ct. at 2372–73, <u>with</u> <u>Virginia v. Hicks</u>, 539 U.S. 113, 119 (2003) (explaining that First Amendment overbreadth doctrine bars enforcement of any "overbroad law [that] may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions"). Moreover, the <u>amicus</u> brief cited by the Supreme Court warned that an overbroad definition of official act would "run[] headlong into the First Amendment." Brief of Former Federal Officials as <u>Amicus Curiae</u>, <u>McDonnell</u>, 136 S. Ct. 2355 (No. 15-474), 2016 WL 878849 at *9.[15]

---

an even greater interest in prohibiting bribery of *federal officials*, who receive *federal salaries*, and whose official acts necessarily bear on the *federal government* (section 201). Yet, notwithstanding the importance of the latter interest, <u>McDonnell</u> holds that section 201's definition of "official act" must be read narrowly.

[15]     The signatories included former Attorneys General John Ashcroft, Michael B. Mukasey, and Mark Filip, former Solicitor General Theodore B. Olson, among others. Brief of Former Federal Officials as <u>Amicus Curiae</u>, 2016 WL 878849 at *1–*2.

However fervently the Government might wish otherwise, <u>McDonnell</u> is clear: a bribery statute that allows for an "expansive interpretation of 'official act' would raise significant constitutional concerns." 136 S. Ct at 2372. It necessarily follows, then, that a bribery statute completely unbounded by *any* official act element—such as section 666(a)(2)—presents those constitutional concerns even more starkly.

### 2. Section 666(a)(2) is unconstitutionally overbroad

A bribery statute that is untethered to a narrow official act element casts "a pall of potential prosecution" over broad categories of ordinary conduct integral of "democratic discourse." <u>McDonnell</u>, 136 S. Ct. at 2372. Section 666 does not incorporate, and cannot be interpreted to require, *any* official act element, much less a narrow one. For that reason, it is unconstitutionally overbroad. (<u>See</u> MTD 28–32).

As discussed in the opening brief, the test for unconstitutional overbreadth is whether the improper applications of the statute—that is, the applications that chill First Amendment-protected activity—are substantial both in "an absolute sense" and "relative to the statute's plainly legitimate sweep." <u>United States v. Williams</u>, 553 U.S. 285, 292 (2008); <u>see also</u> <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 615 (1973). The Government pays lip service to this test, (Opp. 29), then misapplies it at every turn.

The Government's principal argument for why section 666 is not overbroad is that "Section 666's 'plainly legitimate sweep' is broad" and "validly bars" broad "swaths of conduct" that do not implicate First Amendment rights. (Opp. 35). Even if that is true, it is beside the point. Overbroad statutes can—and generally do—have a "legitimate sweep." The question is whether, apart from that legitimate sweep, they also have a substantial *illegitimate* sweep. The illegitimate sweep is what makes a statute *over*broad, rather than just broad. <u>See, e.g.</u>, <u>Williams</u>, 553 U.S. at 297 (explaining that statute is overbroad if it "criminalizes a substantial amount of

protected expressive activity"). To the extent the Government suggests that a statute may be upheld simply because it has substantial legitimate application, it is wrong. <u>City of Houston, Tex. v. Hill</u>, 482 U.S. 451, 459 (1987) ("[Statutes] that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application").[16]

As discussed in the opening brief, while section 666 has some legitimate application, it also has substantial unconstitutional applications. (MTD 28–32). In particular, the statute criminalizes—or at least threatens to chill—ordinary political advocacy, including lobbying. Although the Government describes these concerns derisively as "hypothetical[]," (Opp. 33), they are among the very activities that the Supreme Court feared would be chilled by overbroad bribery statutes. <u>See</u> <u>McDonnell</u>, 136 S. Ct. at 2372 ("The Government's position could cast a pall of potential prosecution over these relationships . . . ."). <u>McDonnell</u> makes clear that the chilling effect on these activities is not only real, but vast. <u>Id.</u> (warning that, absent narrow definition of official act, "*nearly anything* a public official accepts . . . counts as a <u>quid</u>; and *nearly anything* a public official does . . . counts as a <u>quo</u>" (emphasis added)). Contrary to the Government's suggestion, the overbreadth of section 666(a)(2) does not concern some hypothetical fact pattern; it goes to everyday conduct that forms the "basic compact underlying representative government." <u>Id.</u>; <u>see also</u> <u>Silver</u>, 2017 WL 2978386 at *11 ("[<u>McDonnell</u>'s constitutional] concerns included the criminalization of *virtually all actions* taken on behalf of constituents." (emphasis added)). The degree of overbreadth is substantial.

---

[16]     The overbreadth of the statute may, in part, be considered "relative to the statute's plainly legitimate sweep." <u>Williams</u>, 553 U.S. at 292. But the mere fact that the legitimate sweep is significant does not drive the analysis—it must be compared to the illegitimate sweep.

The Government argues that campaign contributions are not threatened by section 666's overbreadth because, in any event, bribery prosecutions of campaign contributions are subject to the rule set forth in McCormick v. United States, 500 U.S. 257, 273 (1991), which requires that any alleged quid pro quo must be "explicit." (Opp. 33–34). But McCormick's explicitness rule does not remedy the absence of an official act requirement. For example, a legislator seeking reelection might promise a potential donor: "If the gun lobby financially supports my campaign, I promise to do what I can to protect the Second Amendment." The Government could argue that such a promise would constitute a bribe under section 666.[17] And because the promise is explicit, McCormick would provide no protection. Yet, it appears beyond dispute that in criminalizing such a promise, section 666(a)(2) would violate the First Amendment. See McCutcheon v. F.E.C., 134 S. Ct. 1434, 1448 (2014) (plurality opinion) ("[G]overnment regulation may not target the general gratitude a candidate may feel toward those who support him or his allies, or the political access such support may afford.").

With respect to political advocacy and lobbying, the Government argues that "nothing in Section 666 supports the view that it may be used to reach payments to lobbyists." (Opp. 34). The Government attacks a straw man. The issue is not whether section 666 criminalizes payments *to lobbyists*; the issue is whether section 666 chills *lobbying directed toward a public official* who has received a thing of value. Or, to borrow an example from McDonnell, whether section 666(a)(2) might allow the Government to prosecute homeowners who lobby an official to get their power restored if, previously, they had invited the official to a baseball game. McDonnell, 136 S. Ct. at 2372. The scenario described in McDonnell falls within the literal

---

[17]     The promise evinces an "intent to [be] influence[d]" by the campaign donation "in connection with any [state] business" so it would arguably be prosecutable under section 666. See 18 U.S.C. § 666(a)(2).

terms of bribery, as defined in section 666(a)(2),[18] yet it is clearly protected by the First

Amendment.  First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 776–77 (1978).  The

Government's assurance that "legitimate lobbying" is not threatened by section 666(a)(2) rings

especially hollow given the tenor of the opposition brief.  In describing Todd Howe's work for

the Energy Company, the Government implies that Mr. Kelly acted improperly by arranging for

the Energy Company to pay Howe $474,000 in exchange for Howe's "access" to state

government.  (Opp. 11–12).  The Government cannot claim that the statute does not chill

lobbying while at the same time trafficking in innuendo about the propriety of the lobbying

conducted in this case.[19]

　　　　Next, the Government suggests that any First Amendment concerns are diminished

because section 666 prohibits conduct rather than "pure speech."  (See Opp. 24–25, 30).  While it

is true that statutes targeting "pure speech" are more likely to be invalidated as overbroad, see

Broadrick, 413 U.S. at 615, the overbreadth doctrine also applies to statutes that "burden[]

innocent associations" or chill "expressive or communicative conduct," id. at 612–13.  See Hill,

482 U.S. at 459 ("[Statutes] that make unlawful a substantial amount of constitutionally

protected *conduct* may be held facially invalid . . . " (emphasis added)).  Notably, neither of the

statutes at issue in McDonnell prohibited pure speech, yet the Supreme Court was concerned

that, absent a narrow official act requirement, those statutes might chill political activity.  136 S.

Ct. at 2372–73.  As the Supreme Court recognized, the interactions between constituents and

---

[18]　　　The conduct falls within the literal terms of the statute because the baseball game is a thing of value and the homeowners are seeking "to influence" a public official "in connection with [government] business."  See 18 U.S.C. § 666(a)(2).

[19]　　　It is not until a footnote twenty pages later that the Government acknowledges that none of the payments to Howe from the Energy Company are alleged to be criminal.  (Opp. 34 n.10 (clarifying that the only Howe-related payments alleged to be criminal are the payments made by other defendants)).

their public officials are part of the "democratic discourse" of American government.  Id.  Such

discourse has always been at the core of what the First Amendment protects.[20]  U.S. Const.

amend. I (securing, among other rights, "the right of the people . . . to petition the government

for a redress of grievances"); see also Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 388

(2011) (observing that "the right to speak and the right to petition are cognate rights" and that

"[t]he right to petition allows citizens to express their ideas, hopes, and concerns to their

government and their elected representatives" (quotation marks omitted)); Meyer v. Grant, 486

U.S. 414, 424 (1988) ("The First Amendment protects appellees' right not only to advocate their

cause but also to select what they believe to be the most effective means for so doing."); NAACP

v. Button, 371 U.S. 415, 437 (1963) ("Free trade in ideas means free trade in the opportunity to

persuade to action . . . ."  (citation omitted)).

Finally, the Government argues that, even if section 666 is unconstitutionally overbroad,

the Court can remedy that overbreadth simply through a "limiting construction" that

"incorporates McDonnell's limitations."  (Opp. 36).  As discussed, however, section 666(a)(2)

does not contain an official act element—and, unlike the statutes at issue in McDonnell, cannot

be interpreted to imply such an element—so there is no statutory element to construe.  Neither

the Court nor prosecutors can add new elements to statutes in order to avoid unconstitutionality.

(See, supra, Point I.A.2; MTD 21–22, 27–28).

### 3.     Section 666(a)(2) is unconstitutionally vague

The test for unconstitutional vagueness is whether the statute "define[s] the criminal

offense with sufficient definiteness that ordinary people can understand what conduct is

prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

---

[20]     It is black-letter law that campaign contributions are a form of "speech."  E.g., Buckley v.
Valeo, 424 U.S. 1, 20–21 (1976) (per curiam).

<u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983).  For the reasons discussed in the opening brief, section 666(a)(2) does not meet this standard: the ordinary person is not put on notice that the statute can reach interactions between a constituent and a public official in which there is no agreement to influence an "official act," as that element is defined in <u>McDonnell</u>.  (<u>See</u> MTD 33–38).

The Government asks the Court to dismiss the vagueness concern "out of hand."  (Opp. 36).  That position is most ironic, given the Government's apparent inability to determine whether or not section 666(a)(2) in fact incorporates an official act element.  As discussed, the Government considers the issue "undecided" and has, in different cases, taken different positions on whether section 666 requires an official act.  (Opp. 32; <u>see also</u>, <u>supra</u>, Point I.A.1).  If the Government itself does not know whether section 666 incorporates this critical element, how can it plausibly assert that the crime is defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited"?  The reach of a bribery statute varies dramatically depending on whether it requires an official act.  A statute that lacks an official act element—such as section 666—can "subject to prosecution, without fair notice, . . . the most prosaic interactions."  <u>McDonnell</u>, 136 S. Ct. at 2373; <u>see also</u> <u>Silver</u>, 2017 WL 2978386 at *11 ("[<u>McDonnell</u>'s constitutional] concerns included . . . subjecting public officials to prosecution without fair notice due to the vagueness of the Government's definition.").

The Government's waffling on the elements of section 666(a)(2) not only demonstrates that the statute is too vague to provide notice of what is prohibited, it also shows that enforcement of the statute is subject to pure prosecutorial whim.  <u>Mannix v. Phillips</u>, 619 F.3d 187, 197 (2d Cir. 2010) (noting that a statute is vague if it "allows policemen, prosecutors, and juries to pursue their personal predilections" (citation omitted)); <u>see also</u> <u>McDonnell</u>, 136 S. Ct.

at 2373 ("[W]e cannot construe a criminal statute on the assumption that the Government will use it responsibly." (citation omitted)).  The best evidence that the Government cannot be trusted to interpret and enforce section 666 consistently is that it has taken different positions on that very question in different cases in the Southern District of New York.  Compare Ng Br. at 29–31 (denying that section 666 requires an official act), with Skelos Br. at 51 (arguing that district court correctly instructed that section 666 requires an official act).  The Due Process Clause does not permit a person to be prosecuted for a crime the elements of which are constantly in flux.  A statute must be sufficiently clear so that all parties—prosecutors and potential defendants alike— can know at the outset what is criminal and what is not.

The Government relies principally on Rosen, 716 F.3d 691, to argue that section 666 is not vague.  (Opp. 37–38).  Rosen is inapposite.  The vagueness challenge in Rosen was not directed specifically at the bribery offense defined in section 666(a)(2), but at the "as opportunities arise" theory of bribery underlying *all* of the statutes with which the defendant had been charged.  The defendant argued that the *theory* was unconstitutionally vague, not that any particular statute was unconstitutionally vague.  Id. at 699.  The Second Circuit rejected the defendant's argument, but, in doing so, did not consider (much less decide) any vagueness challenge specific to 18 U.S.C. § 666(a)(2).  Id. at 699–702.  The issue presented by the instant motion—whether, in the wake of McDonnell, the absence of an official act requirement in section 666(a)(2) makes that specific statute vague—was not considered in Rosen.  Nor could it have been, since the actions performed by the public officials in Rosen—writing funding requests, sponsoring legislation, and securing grants, 716 F.3d at 696—were unquestionably "official acts."  In any event, because Rosen was decided before McDonnell, it understandably does not incorporate McDonnell's definition of "official act" nor does it address the

constitutional problems posed by the absence of an official act element—issues that were recognized for the first time in McDonnell.

The Government takes refuge in the mantra, found in Rosen, that "it has always been plain as a pikestaff that bribes and kickbacks are prohibited." (Opp. 37 (quoting Rosen)). That is a truism, not an argument. What is vague is not whether bribes or kickbacks are unlawful, but what conduct section 666 reaches, given that the statute does not require that the "quo" of a "quid pro quo" be an official act. Section 666(a)(2) leaves the ordinary person—and apparently the Government—in the dark about that crucial question. Similarly circular is the Government's assertion that section 666(a)(2) is not vague because the "specific intent to bribe eliminates the possibility that [Mr. Kelly] will be prosecuted for bribery without fair notice." (Opp. 38 (quoting Rosen)). Section 666(a)(2) nowhere requires an "intent to bribe"; instead, it requires an "intent to influence . . . in connection with any business" before the state. 18 U.S.C. § 666(a)(2). The latter intent is considerably more open-ended than the former and, as McDonnell recognizes, political speech is often intended to influence government action.

Finally, the Government argues that, even if section 666(a)(2) is itself vague, the allegations against Mr. Kelly are not because they are "well within the core of Section 666's prohibition." (Opp. 38). That is incorrect. As discussed in the opening brief, the heartland bribery agreement is a quid pro quo transaction, in which the briber buys specific formal action by a decisionmaker on a specific issue. (See MTD 37–38 (citing United States v. Brunshtein, 344 F.3d 91, 94 (2d Cir. 2003) (tax officials bribed to destroy tax records))). The theory charged here is far more amorphous and rests on the allegation that Percoco was a valuable "gatekeeper" with "far-reaching influence within the Executive Chamber," whose wife the Energy Company hired in exchange for unspecified assistance "on an as-needed basis." (S1 Ind. ¶¶ 3, 28–29).

### 4. The Government's casual dismissal of the federalism concern illustrates why the Supreme Court warned about federal overreach

The Government's entire response to the federalism issue is found in a solitary footnote. (See Opp. 30 n.6). That footnote makes the puzzling assertion that the defense believes that "there should be no federal law that reaches bribery of state officials." (Opp. 30 n.6). Nothing in the opening brief even arguably suggests such a ridiculous position. (See MTD 38–40).[21]

Rather, the argument actually presented—to which the Government refuses to respond— is that the use of section 666(a)(2) (which lacks an official act element) to prosecute allegations involving a state official offends federalism where, as here, the federal statute reaches conduct that is not prohibited under the state's bribery law (which *does* require official action). (See MTD 38–40). As McDonnell makes clear, a state has a sovereign interest in regulating what its government officials may or may not do; in this area in particular, federal meddling is inappropriate. 136 S. Ct. at 2373 ("[W]e decline to construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of good government for local and state officials." (quotation marks omitted)). Notably, the Government's brief does not dispute that New York law permits public officials' family members to hold jobs with companies that do business before the state; nor does the Government dispute that New York law limits bribery prosecutions to quid pro quo agreements in which the quo is a "vote, opinion, judgment, action, decision or exercise of discretion," see N.Y. Penal Law §§ 200.00, 200.03, 200.04.

The Government also does not dispute what has been evident from its statements to the press: it views this case not as a discrete prosecution of specific allegations, but as a referendum

---

[21] Mr. Kelly does not challenge the constitutionality of the honest services fraud conspiracy statute charged in Count Nine, 18 U.S.C. § 1349.

on state government as a whole.  <u>See</u> USAOSDNY, Former Executive Deputy Secretary to the Governor and 9 others charged w/federal corruption, fraud, YouTube (Sept. 28, 2016), https://www.youtube.com/watch?v=9eFr2qTEPes (declaring that allegations reflect "a systemic problem" that goes "to the core of how . . . state government operates").  However much federal prosecutors might wish to sit in judgment of state governments, they may not do so except within appropriate constitutional limits.  <u>McDonnell</u>, 136 S. Ct. at 2373.

*    *    *

Despite the Government's efforts to complicate, obfuscate, and evade, <u>McDonnell</u> is clear: a narrow official act element is needed for a bribery statute to avoid "significant constitutional concerns."  Because section 666 lacks an official act element entirely, it is unconstitutional and Count Thirteen must be dismissed.

In the event that the Court declines to find the statute unconstitutional, then the Government must be required to prove—as it has undertaken to do in the S1 Indictment and again in the opposition brief—that Mr. Kelly provided benefits to Percoco in exchange for the performance of an official act, as that term is defined by <u>McDonnell</u>.  (S1 Ind. ¶ 65; Opp. 36 (stating that constitutional concerns could be avoided by "a jury instruction that incorporates <u>McDonnell</u>'s limitations")).  As the charging language of Count Thirteen recognizes, in no event should the Government be permitted to prosecute Mr. Kelly under section 666(a)(2) without proving that Mr. Kelly paid Percoco "in exchange for, to influence, and to reward the taking of official action," as defined in <u>McDonnell</u>.  (S1 Ind. ¶ 65).

**POINT II**

**THE GENERAL RETAINER THEORY OF BRIBERY DOES NOT SURVIVE MCDONNELL**

The Government has charged Mr. Kelly in Counts Nine and Thirteen with participating in a bribery scheme under a "general retainer" theory of bribery. (See MTD 43–61). Under that theory, when Mr. Kelly allegedly bribed Joseph Percoco by hiring Percoco's wife, he and Percoco did not come to an agreement on anything Percoco would do in return. Instead, they allegedly understood that Percoco would help the Energy Company "on an as-needed basis," without identifying any specific governmental matter (or even any type of matter) on which Percoco would make a decision or take a formal action. (S1 Ind. ¶¶ 29, 31, 54, 64).

As the opening brief explains, that theory is inconsistent with the requirement of an "official act" articulated in McDonnell v. United States, 136 S. Ct. 2355, 2369 (2016), which necessitates—at the very least—a "specific" and "concrete" question or matter on which the public official agrees to take action in favor of the briber in exchange for the alleged bribe. (MTD 44–46). In other words, unless there is a "specific" and "concrete" question or matter on which the public official agrees to exercise formal authority, there can be no "official act"—and, consequently, no bribery.

The Government's characterizations of our arguments are internally inconsistent and, in many instances, materially imprecise. For example, at one point, the Government asserts that "Kelly argues, in substance, that if the briber and bribe do not agree on a *specific official action* at the time the bribes are made, any future official action done in exchange for the bribes is immunized against prosecution." (Opp. 42–43 (emphasis added)).[22] At another point, the

---

[22] The Government does not even bother to offer a citation to the opening brief for this particular characterization.

26

Government accuses the defense of taking the position that "the bribe-payer and bribe-recipient must agree on a *'specific' or 'concrete' official act* at the time the bribery conspiracy is consummated."  (Opp. 41 (emphasis added)).  If the Government intends to suggest that, under the defense position, the parties to a bribe must agree to a specific *means* or *manner* by which the public official will satisfy the "quo," it is wrong.  We have made no such argument.  (See MTD 55 ("McDonnell observes that the briber and public official need not agree on precisely how the public official will satisfy the 'quo.' . . . *We do not contend otherwise*." (emphasis added))).

Notwithstanding the mischaracterizations described above, the Government appears at one point to understand the argument actually being made when it quotes our opening brief: "Kelly contends [that] McDonnell requires that, at the inception of the agreement to pay bribes, the bribe-recipient agree to 'take action on a *specific* question or matter.'"  (Opp. 38 (quoting MTD 44)).  In other words, at the time of the bribe, the alleged briber must, at the very least, identify and agree upon a specific "question or matter" on which the public official will take action to achieve a result sought by the briber.  McDonnell, 136 S. Ct. at 2369.  What must be specific and identifiable is not any "act"—that is, not any particular *means* or discrete *step* that the public official must take to provide the "quo"—but the *governmental question or matter* in relation to which that "quo" will be provided.  (See MTD 43–44, 55–57).

Critically, in responding to this argument, the Government does not dispute that both of the charges against Mr. Kelly rest on the allegation that he hired Percoco's wife in exchange for an open-ended commitment from Percoco to help the Energy Company, rather than in exchange for a formal decision or action on any identifiable governmental matter.  (See MTD 49–54 (discussing allegations in the S1 Indictment)).  Nowhere does the Government's opposition brief argue that the S1 Indictment has *satisfied* McDonnell by pleading a specific question or matter.

Rather, the Government's sole argument is that it is *not required* to allege a specific question or matter. (See Opp. 38 ("McDonnell requires no such thing.")). The Government has therefore waived any argument that the S1 Indictment adequately alleges a specific question or matter on which Percoco agreed to take action to favor Mr. Kelly.[23] See In re UBS AG Securities Litig., 07 CIV. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (holding that "silence" in opposition brief constitutes waiver).

The Government also does not argue—and has therefore waived any argument—that McDonnell is satisfied simply because the term "official act" appears in the S1 Indictment. In any event, such an argument would be meritless. "Official act" is a legal term of art without an intuitively obvious meaning—as McDonnell itself has shown. Indeed, the Second Circuit's recent Silver decision makes clear that, even after McDonnell, there remains vigorous debate as to whether the term applies to any given set of facts. It is thus apparent that the allegation of an "official act" is not itself a factual allegation, but the recitation of a generic legal term. The Government, however, is required to plead *facts* that satisfy that generic term. Russell v. United States, 369 U.S. 749, 765 (1962) ("[I]t is not sufficient that the indictment shall charge the offence in the same generic terms as in the [statutory] definition; but it must state the species,—it must descend to particulars." (citation omitted)).[24] Here, the facts pleaded by the Government

---

[23] As discussed in the opening brief, although the S1 Indictment mentions a "Power Purchase Agreement" and an "Emissions Credits Agreement," it does not allege that Mr. Kelly hired Percoco's wife with the understanding that, in exchange, Percoco would take official action on those two specific issues. (See MTD 49–51).

[24] In Russell, the defendants were charged under a statute that made it an offense to refuse to answer questions from a congressional committee "pertinent to the question then under [congressional] inquiry." 369 U.S. at 751–57. The indictment alleged that the defendants refused to answer questions that "were pertinent to the question then under inquiry," but did not identify what the question under inquiry was. Id. The Supreme Court held that the indictment's use of the "generic term[]" was insufficient. Id. at 765. The U.S. Attorneys' Manual reflects this principle by directing that the language of a bribery charge should include a "description of

fail to satisfy—and are indeed inconsistent with—<u>McDonnell</u>'s official act requirement.  Rather

than alleging that Mr. Kelly agreed to hire Percoco's wife in exchange for Percoco's formal

action on a specific governmental matter, the S1 Indictment alleges that Mr. Kelly and Percoco

agreed that Percoco would help on unspecified issues on an "as-needed" basis.  (<u>See</u> MTD 49–

50).

Finally, the Government does not appear to argue—and has accordingly waived any

argument—that the S1 Indictment's failures could be cured through a bill of particulars.

Although Mr. Kelly has moved for a bill of particulars, no particulars the Government could

provide would remedy the insufficiency of the S1 Indictment.  A bill of particulars can clarify

ambiguous charging language, but it cannot save a theory of liability—such as the general

retainer theory charged here—that fails as a matter of law.  <u>United States v. Walsh</u>, 194 F.3d 37,

45 (2d Cir. 1999) ("[A] bill of particulars or discovery cannot save a defective indictment."

(quotation marks omitted)).

In light of the arguments that the Government has waived, the question before the Court

is simple: under <u>McDonnell</u>, must the briber and public official contemplate and identify, at the

time a bribe is accepted, a specific "question or matter" on which the public official will take

official action to achieve a result sought by the briber?  <u>McDonnell</u> is clear.  Without an

identifiable and specific question or matter on which the public official agrees to take action,

there can be no "official act" and, consequently, no bribery.  136 S. Ct. at 2371–72.

> **A.**  **<u>McDonnell</u> requires that the public official agree to take official action on a specific question or matter**

<u>McDonnell</u>'s discussion of what an "official act" entails is clear:

---

official act defendant sought to . . . influence."  U.S. Attorneys' Manual 2047 (Sample Charging
Language), <u>available at</u> https://www.justice.gov/usam/criminal-resource-manual-2047-sample-
charging-language.

[A]n "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy." The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. *It must also be something specific and focused that is "pending" or "may by law be brought" before a public official.*

136 S. Ct. at 2371–72 (emphasis added). The italicized language appears, with minor variations, throughout the decision, and it makes plain that every "official act" must incorporate a specific governmental question or matter.

The Supreme Court applied this specificity requirement to the facts of <u>McDonnell</u>. The Court held that, for Governor McDonnell to have committed bribery, he would have needed to accept something of value in exchange for formal action to achieve Williams's desired result on a specific issue, such as "whether the state-created Tobacco Indemnification and Community Revitalization Commission would allocate grant money for the study of anatabine" or "whether the health insurance plan for state employees in Virginia would include Anatabloc as a covered drug." <u>McDonnell</u>, 136 S. Ct. at 2370.[25] It would not have been enough for the Governor to have accepted gifts in exchange for a promise to take action on "nebulous" topics, such as "Virginia business and economic development." <u>Id.</u> at 2369, 2374. Under <u>McDonnell</u>, bribery requires an agreement to influence an "official act," and an official act, in turn, must relate to a "specific" and identifiable question or matter. Therefore, bribery requires an agreement to influence action with respect to a specific question or matter. (<u>See</u> MTD 44–46).

The <u>Boyland</u> decision confirms that <u>McDonnell</u>'s conception of "official act" requires an agreement that the public official will take action to achieve a result on a specific question or matter. In <u>Boyland</u>, the Second Circuit considered whether <u>McDonnell</u>'s specificity requirement

---

[25]  We do not contend that a bribe requires that the "<u>quo</u>" be successfully provided. The parties must *agree* that the public official will perform official acts to achieve a particular result, but that result need not ultimately come to pass. <u>McDonnell</u>, 136 S. Ct. at 2370–71.

was satisfied by the evidence at trial.  United States v. Boyland, No. 15-3118, __ F.3d __, 2017 WL 2918840 at *9 (2d Cir. July 10, 2017).  In finding that it was, the Circuit noted that the defendant "promised that he would ensure that all of the necessary governmental actions occurred" on concrete issues, such as specific "grant money," "demolition contracts," and "zoning changes."  Id.  In other words, McDonnell's demand for specificity was satisfied because the defendant in Boyland promised to achieve favorable results on specific governmental issues.

Notwithstanding the plain language of McDonnell (and the application of that language in Boyland), the Government insists that McDonnell "has done nothing to alter the longstanding rule" that specificity is not required.  (Opp. 43).  But the Government offers no plausible alternative interpretation of the language from McDonnell quoted above or of McDonnell's holding that "the pertinent 'question, matter, cause, suit, proceeding or controversy' must be more *focused* and *concrete*."  136 S. Ct. at 2369 (emphasis added).  The terms "specific," "focused," and "concrete" are repeated throughout McDonnell and the failure of the district court's jury instructions to satisfy the specificity requirement was one of the grounds for vacatur. Id. at 2374.

The Government's interpretation of what McDonnell means by "specific" and "concrete" is found in the following statement: "[McDonnell] provides that the bribe-payer and bribe-recipient must agree that the action the bribe-recipient will take in exchange for the bribe will *relate* to a 'specific' or 'concrete' *matter*."  (Opp. 41 (emphasis in original); see also id. ("McDonnell . . . holds only that the bribe-recipient must agree that the actions he or she does take will relate to a matter that is 'specific' and 'concrete.'")).  It is not clear what the Government is trying to say.  One way to read this sentence is as a concession that a specific

matter must be identified at the time of the bribery agreement.  But given statements elsewhere in the opposition brief, it appears that the Government intends no such concession.  (See Opp. 38 ("Kelly contends [that] . . . at the inception of the agreement to pay bribes, the bribe-recipient [must] agree to take action on a *specific* question or matter.  McDonnell requires no such thing." (citations omitted))).

Another way to read the Government's statement is as an assertion that McDonnell requires only that any official act that is ultimately *performed* must relate to a specific question or matter.  If that is what the Government means, it is clearly mistaken.  The crime of bribery does not turn on whether an official act is ultimately performed; it turns on whether the briber *agrees to influence* the public official's performance of an official act.  McDonnell, 136 S. Ct. at 2370–71; Evans v. United States, 504 U.S. 255, 268 (1992).  For the reasons discussed in the opening brief, the agreement to influence the performance of an official act must exist at the time of the bribe.  (See MTD 45–46, 50–51).  If a thing of value is provided without any contemplation of a specific question or matter on which the public official will take favorable action, it is not a bribe and cannot retroactively be turned into one.[26]

A third possible interpretation of the Government's statement is that, under McDonnell, when a bribe is consummated, the payor and the official need not identify a specific question or matter on which the official will take action, so long as they agree that, whatever action the public official ends up performing, that action will relate to a "specific" (but as-yet-unidentified)

---

[26]     This is evident from the two examples discussed in McDonnell.  In the first, a union gave a campaign contribution to an official and, thereafter, a union member lobbied that official about the closing of a plant.  In the second, a homeowners' association took a public official to a baseball game and, some time later, asked that official to help restore electricity.  McDonnell, 136 S. Ct. at 2372.  In each case, at the time the thing of value was given, there was no agreement that the official would take action on a specific issue.  In neither case did the later request for official action retroactively transform the earlier thing of value into a bribe.

question or matter. If that is the Government's position, it stakes out a rather bizarre and unrealistic quid pro quo: on this theory, Mr. Kelly hired Percoco's wife in exchange for Percoco's agreement to benefit the Energy Company in some "specific" way in the future, which neither of them could contemplate or identify at the time.[27]

Regardless, this is plainly not what McDonnell requires. McDonnell's reference to a "specific" question or matter means an *identifiable* question or matter—not a question or matter "to-be-determined." The Supreme Court held that, for Governor McDonnell to have had the intent to be influenced in the performance of an official act, he would have needed to accept a payment in exchange for action on an "*identified* 'question, matter, cause, suit, proceeding or controversy,'" 136 S. Ct. at 2374 (emphasis added), such as "whether researchers at any of Virginia's state universities would initiate a study of Anatabloc" or "whether the health insurance plan for state employees in Virginia would include Anatabloc as a covered drug," id. at 2370 (quotation marks omitted). McDonnell requires "something that is relatively circumscribed," which "can be put on an agenda, tracked for progress, and then checked off as complete." Id. at 2369. It is not possible to put something on an agenda or track its progress unless it is identified.[28] The Government's "to-be-determined" theory—that the specific

---

[27] The Government's theory would entail proof of a strange bargain: "If I hire your wife, I want you to perform official action. I have no idea what specific governmental issue that action will relate to, but whatever action you do decide to perform in the future, it will need to relate to some specific governmental issue." This is absurd—among other reasons, the words "official act" have almost certainly never been uttered during the formation of a bribery scheme.

Moreover, the Government's argument that this is what McDonnell requires rests on an odd linguistic use of the word "specific." When one is asked "Do you like athletes of any specific sport?", one usually responds, "Yes, I like basketball players" or "Yes, I like football players." One does not normally respond, "Yes, I like athletes who play sports, so long as that sport is specific."

[28] To be clear, we do *not* contend that the specific question or matter must be identified *explicitly*. A briber and public official may come to an agreement that a bribe will be in

governmental matter need not be identifiable at the time of the bribe—is inconsistent with McDonnell.

Finally, the Government argues that McDonnell does not abrogate the general retainer theory of bribery because an as-opportunities-arise theory was charged in McDonnell, and the "Supreme Court observed no infirmity with a conviction based on performing official action on an as-needed basis, as opportunities arose." (Opp. 41). That argument is specious. It is true that the Government alleged an as-opportunities-arise theory in McDonnell. See 136 S. Ct. at 2365. But that allegation was not challenged before the Supreme Court, and so the Court could not have decided whether there was any infirmity. In any event, even if the issue had been presented (which it was not), the Supreme Court would not have needed to reach it: Governor McDonnell's bribery convictions were vacated.

**B.     The Government cites pre-McDonnell Second Circuit authority that does not survive McDonnell**

The Government's defense of the general retainer theory largely skirts McDonnell and rests on a pre-McDonnell case, United States v. Ganim, 510 F.3d 134 (2d Cir. 2007). (Opp. 39–40). But to the extent that Ganim permits bribery prosecutions where there is no effort to influence action on a specific question or matter, it does not survive McDonnell. As the Second Circuit recently recognized in Silver, language suggesting that "quos" were provided "as specific opportunities arose" cannot comfortably be reconciled with McDonnell's definition of "official act." See United States v. Silver, No.16-1615, __ F.3d __, 2017 WL 2978386 at *13 (2d Cir. July 13, 2017). Put simply, if McDonnell requires specificity, then McDonnell controls.

---

exchange for action on a specific, mutually-understood governmental matter, without identifying that matter out loud. See McDonnell, 136 S. Ct. at 2371.

It is important to reiterate that the phrase "as opportunities arise" has been used—in Ganim and elsewhere—to mean different propositions, not all of which this motion challenges. The opening brief devotes an entire section to discussion of all the different aspects of Ganim— and other Second Circuit decisions, such as United States v. Rosen, 716 F.3d 691 (2d Cir. 2013), and United States v. Coyne, 4 F.3d 100 (2d Cir. 1993)—that are *not* challenged by this motion. (See MTD 54–57). Among other things, this motion does not require the Court to resolve whether the specificity requirement can be satisfied if the briber and public official agree on one or more specific *types* of governmental issue on which the official will take action. (See MTD 56–57). No such allegations are made here. Notwithstanding the extensive discussion on this point, the Government ignores this section of the opening brief and accuses us of challenging aspects of Ganim that are not at issue. (Opp. 39–40 & n.13). The Court should consider the argument that has actually been made, rather than the knockoff that the Government seeks to peddle.

Furthermore, for reasons discussed in the opening brief, Ganim's reasoning was always suspect because it relied on an overly narrow interpretation of the Supreme Court's decision in United States v. Sun-Diamond Growers of California, 526 U.S. 398 (1999). (See MTD 46–47, 57–58 & n.31). Sun-Diamond, a section 201 gratuity case, held that section 201's "insistence upon an 'official act,' carefully defined, seems pregnant with the requirement that some particular official act be identified and proved." 526 U.S. at 406. In Ganim, the defendant cited Sun-Diamond to argue that the Government could not charge a theory of bribery under which the alleged official acts were "unspecified" at the time of the bribe. 510 F.3d at 141–47. The Ganim court concluded that Sun-Diamond was inapplicable for two reasons: first, because "there is good reason to limit Sun-Diamond's holding to the statute at issue in that case [section 201]"

and, <u>second</u>, because "[there is no] principled reason to extend <u>Sun-Diamond</u>'s holding beyond the illegal gratuity context." <u>Id.</u> at 146–47. As <u>McDonnell</u> has now made clear, both of those rationales were wrong. 136. S. Ct. at 2370–71 (relying on <u>Sun-Diamond</u> to define "official act" for purposes of bribery charges brought under the honest services fraud and Hobbs Act statutes).

Ultimately, what <u>Ganim</u> may mean is beside the point. The pleading requirement that the Government must satisfy—and which it has failed to satisfy—is the requirement in <u>McDonnell</u> that an official act relate to a "specific" and "concrete" question or matter.

**C.    The Government trivializes the compelling constitutional and policy reasons to reject the general retainer theory**

As discussed in the opening brief, the Government's general retainer theory is not only inconsistent with the requirements of <u>McDonnell</u>, it also presents the very constitutional and policy concerns feared by the Supreme Court. (<u>See</u> MTD 57–61). One purpose of <u>McDonnell</u>'s specificity requirement is to avoid unconstitutional vagueness. 136 S. Ct. at 2375. By requiring agreement on a "specific" and "concrete" matter on which the public official will take action, <u>McDonnell</u> ensures that bribery prosecutions will be limited to <u>quid pro quo</u> arrangements in which there is a definite and mutually agreed-upon "<u>quo</u>"—an official act on a specific issue.

The Government's theory of bribery would effectively eliminate <u>McDonnell</u>'s specificity requirement and would, consequently, open constituents and public officials up to prosecution in circumstances where neither party has any idea what governmental issue an alleged bribe is intended to influence. Absent a requirement that the "<u>quo</u>" be specific and agreed upon, the alleged briber and the public official could have divergent understandings of what the contours of their "as opportunities arise" agreement may be. Not only may they have different "opportunities" in mind, they may hold different—or even incompatible—beliefs as to what actions the public official will take in response to such opportunities. The alleged briber may,

for instance, contemplate only that the public official will facilitate political access, in which case no bribery has occurred at all.  As the Second Circuit observed in <u>Silver</u>, the jury in a bribery case must determine whether any act by the public official was "part of a <u>quid pro quo</u> scheme" agreed upon at the time of the bribe.  <u>Silver</u>, 2017 WL 2978386 at *16.  That is an impossible task, unless the terms of the alleged "scheme" are specific.

Put more broadly, the Supreme Court's public corruption jurisprudence reflects an effort to balance two competing interests.  (MTD 57–61).  On the one hand, the Government has a legitimate interest in combating actual <u>quid pro quo</u> bribery.  On the other hand, given the ubiquity of "<u>quids</u>,"  an overbroad definition of what constitutes a "<u>quo</u>" risks unduly restricting legitimate activity.[29]  <u>See</u> <u>McDonnell</u>, 136 S. Ct. at 2372–73; <u>Sun-Diamond</u>, 526 U.S. at 406–07. Faced with this tension, the Supreme Court has chosen to narrowly define the contours of what counts as a "<u>quo</u>," so as not to "cast a pall of potential prosecution" over commonplace interactions.  <u>McDonnell</u>, 136 S. Ct. at 2372; <u>see also</u> <u>Sun-Diamond</u>, 526 U.S. at 412 ("[A] statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter."); <u>see generally</u> Albert W. Alschuler, Criminal Corruption: Why Broad Definitions of Bribery Make Things Worse, 84 Fordham L. Rev. 463 (2015).  Among other things, the Court has determined that "goodwill that might ultimately affect one or more of a multitude of unspecified acts" does not count as a legally sufficient "<u>quo</u>."  <u>Sun-Diamond</u>, 526 U.S. at 405.

The Government cavalierly dismisses the Supreme Court's policy concerns—just as it does in response to the constitutional challenge to section 666.  (<u>See</u>, <u>supra</u>, Point I).  In its view,

---

[29]     Public officials and their family members receive things of value, or "<u>quids</u>," all the time. The law does not bar the family members of public officials from participating in the private sector.

any attempt to set a limit on what constitutes bribery is "untenable as a practical matter" and would "immunize[] against prosecution" certain bribery arrangements.  (Opp. 42–43).  The Government refuses to acknowledge what the Second Circuit made clear in <u>Silver</u>: that the Government's appetite to endlessly stretch what "bribery" means would criminalize "virtually all actions taken on behalf of constituents, subjecting public officials to prosecution without fair notice. "  <u>Silver</u>, 2017 WL 2978386 at *11 (citing <u>McDonnell</u>).  As <u>McDonnell</u> explains, such an approach comes at a real cost to the "basic compact underlying representative government [which] *assumes* that public officials will hear from their constituents and act appropriately on their concerns."  <u>McDonnell</u>, 136 S. Ct. at 2372.

**POINT III**

**TO THE EXTENT COUNT THIRTEEN CHARGES A GRATUITY OFFENSE, IT MUST BE DISMISSED**

The Government's half-hearted defense of the gratuity theory purportedly charged in Count Thirteen merits little response.[30]  (Opp. 43–46).  The Government's response does not include a single citation to—much less a discussion of—the Supreme Court case directly on point, <u>Sun-Diamond</u>.  Under <u>Sun-Diamond</u>, a gratuity charge must identify and prove, as to each gratuity, "a link between [the] thing of value conferred upon a public official and a specific 'official act' for or because of which it was given."  526 U.S. at 414; <u>see also</u> <u>id.</u> at 406.  The S1 Indictment does not identify anything as a "gratuity," much less link any such gratuity to a "specific 'official act' for or because of which it was given."  To the contrary, the S1 Indictment advances an as-opportunities-arise theory of gratuities, which is forbidden under <u>Sun-Diamond</u>.

---

[30]      On the issue of whether 18 U.S.C. § 666(a)(2) should be interpreted to reach a gratuity offense, we respectfully refer the Court to the discussion in the opening brief.  (MTD 62–63).  As discussed therein, although there is contrary Second Circuit authority, we make the argument to preserve the issue for potential Second Circuit <u>en banc</u> review or Supreme Court review.

(See MTD 63–64).  Because the theory on which the S1 Indictment relies is legally defective, the insufficiency of the allegations cannot be cured by a bill of particulars.  Walsh, 194 F.3d at 45.

A gratuity charge is properly dismissed as insufficient where, as here, no specific link to an official act is alleged.  In fact, in Sun-Diamond, the Supreme Court pointedly noted that while the sufficiency of the indictment was not before the Court, the indictment's failure to allege a specific link between any alleged gratuity and any specific official act meant that the indictment was unlikely to survive on remand.  Sun-Diamond, 526 U.S. at 414 ("Our decision today casts doubt upon the lower courts' resolution of respondent's challenge to the sufficiency of the indictment—an issue on which certiorari was neither sought nor granted.").  To the extent Count Thirteen purports to charge a gratuity offense, it must be dismissed for failure to satisfy the specificity requirement of Sun-Diamond.[31]

## POINT IV

## THE CHARGES AGAINST MR. KELLY CANNOT REST ON ALLEGED CONDUCT BY PERCOCO WHEN PERCOCO WAS NOT A GOVERNMENT OFFICIAL

Mr. Kelly continues to join in full and adopt by reference all of the arguments set forth in Joseph Percoco's motion to dismiss (including as set forth in Percoco's reply brief) relating to alleged conduct that occurred between April 21 and December 8, 2014—when Percoco was not a government official.  As Percoco's motion cogently explains, someone who is not a government official cannot perform an "official act," as defined in McDonnell.  Nor does such a person owe

---

[31]     The Government drops a footnote acknowledging that, if Count Thirteen charges both a bribery offense and a gratuity offense, the count is duplicitous and one of those two theories must be abandoned before trial.  (Opp. 45 n.16).  If that is meant to signal that the Government is not serious about its gratuity theory, then it should say so.  As set forth in our July 7, 2017 letter to the Court, the Government has wasted an extraordinary amount of the defense's time by taking meritless positions, only to retreat after the defense has expended resources to litigate.  (See Doc. No. 270).  It is the height of unfairness for the Government to force us to divert resources to defend improperly charged phantom counts.

a fiduciary duty of honest services to the public (an element of the honest services fraud conspiracy charged in Count Nine) or act as an "agent" of the government (an element of the section 666(a)(2) offense charged in Count Thirteen).  Similar, any "thing of value" received by Percoco when he was not a government official cannot be the "quid" of a quid pro quo. Therefore, the charges against Mr. Kelly cannot rest on alleged conduct by Percoco during this period.

## **CONCLUSION**

For all the reasons stated above and in our opening brief, the charges against Mr. Kelly, Counts Nine and Thirteen, must be dismissed.

Dated: July 21, 2017
New York, NY

Respectfully submitted,

LANKLER SIFFERT & WOHL LLP

By:     /s/ Daniel M. Gitner
        Daniel M. Gitner
        Jun Xiang
        Samantha J. Reitz

        500 Fifth Avenue
        New York, NY 10110
        (212) 921-8399

        *Attorneys for Defendant*
        *Peter Galbraith Kelly, Jr.*