UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-Against-

JOSEPH PERCOCO,
a/k/a "Herb,"
ALAIN KALOYEROS,
a/k/a "Dr. K,"
PETER GALBRAITH KELLY, JR.,
a/k/a "Braith,"
STEVEN AIELLO,
JOSEPH GERARDI,
LOUIS CIMINELLI,
MICHAEL LAIPPLE, and
KEVIN SCHULER,

Defendants.

---

No. S1 16 CR 776 (VEC)

**Oral Argument Requested**

**Reply Memorandum of Law in Support of
Joseph Percoco's Motion to Dismiss the Superseding Indictment**

SCHULTE ROTH & ZABEL LLP

Barry A. Bohrer
Michael L. Yaeger
Andrew D. Gladstein
Abigail F. Coster

919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000

*Attorneys for Joseph Percoco*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................1

DISCUSSION ...................................................................................................................3

I.      The Indictment Does Not Adequately Allege that Percoco Could Perform an "Official Act" After His Resignation, and the Government's Brief Does Not Try to Argue Otherwise...............................................................................................................3

II.     The Indictment Does Not Adequately Allege that Percoco Deprived the Public of His Services After His Resignation, and the Government's Brief Does Not Try to Argue Otherwise ...................................................................................................................8

III.    The § 666 Charges Cannot Be Proven by Acts that Percoco Performed During the Period that He Was Not a Government Agent .................................................................9

IV.    The Syracuse Developer Counts Must Be Dismissed Because the Payments that Constitute the Alleged Bribes Were Made When Percoco Was Not an Official..............15

       A.      Hobbs Act Extortion ............................................................................16

       B.      Honest Services Fraud.........................................................................20

       C.      Section 666 Bribery .............................................................................21

CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page(s)**

*Anderson v. U.S. Dep't of Labor*,
    422 F.3d 1155 (10th Cir. 2005)........................................................................................10

*Evans v. United States*,
    504 U.S. 255 (1992) ......................................................................................................16

*Felske v. Hirschmann*,
    No. 10 Civ. 8899 (RMB), 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ...................................4

*McDonnell v. United States*,
    136 S. Ct. 2355 (2016) ...........................................................................................*passim*

*Ocasio v. United States*,
    136 S. Ct. 1423 (2016) .................................................................................................21

*Skilling v. United States*,
    561 U.S. 358 (2010) .......................................................................................................8

*United States v. Beldini*,
    443 F. App'x 709 (3d Cir. 2011) ....................................................................................10

*United States v. Bonito*,
    57 F.3d 167 (2d Cir. 1995) ............................................................................................11

*United States v. Boyland*
    No. 15-3118, --- F.3d ----, 2017 WL 2918840 (2d Cir. July 10, 2017)...............................6, 7

*United States v. Costen*,
    No. 95 Cr. 517 (LMM), 1996 WL 137483 (S.D.N.Y. Mar. 27, 1996) ...................................4

*United States v. Ferber*,
    966 F. Supp. 90 (D. Mass. 1997) ...................................................................................15

*United States v. Ford*,
    435 F.3d 204 (2d Cir. 2006) ..........................................................................................22

*United States v. Ganim*,
    510 F.3d 134 (2d Cir. 2007) .......................................................................................6, 22

*United States v. Hudson*,
    491 F.3d 590 (6th Cir. 2007) .........................................................................................13

*United States v. Kerik*,
    615 F. Supp. 2d 256 (S.D.N.Y. 2009) .............................................................................20

*United States v. Langston*,
 590 F.3d 1226 (11th Cir. 2009)........................................................10

*United States v. Lupton*,
 620 F.3d 790 (7th Cir. 2010) ..........................................................10

*United States v. Manzo*,
 714 F. Supp. 2d 486 (D.N.J. 2010),
 *aff'd*, 636 F.3d 56 (3d Cir. 2011) ...................................... 16, 17, 19, 20

*United States v. Margiotta*,
 688 F.2d 108 (2d Cir. 1982). (*See* Opening Br. 15-16.).......................8

*United States v. Mazer*,
 631 F. App'x 57 (2d Cir. 2015),
 *cert. denied*, 137 S. Ct. 827 (2017) ................................................10

*United States v. McClain*,
 934 F.2d 822 (7th Cir. 1991) .....................................................18, 23

*United States v. Meyers*,
 529 F.2d 1033 (7th Cir. 1976) ........................................................19

*United States v. Moeller*,
 987 F.2d 1134 (5th Cir. 1993) ........................................................11

*United States v. Nouri*,
 711 F.3d 129 (2d Cir. 2013) ...........................................................21

*United States v. Phillips*,
 219 F.3d 404 (5th Cir. 2000) .....................................................10, 12

*United States v. Roebuck*,
 No. 1:11-cr-127-jgm, 2012 WL 4955208 (D. Vt. Oct. 17, 2012) .........13

*United States v. Rooney*,
 37 F.3d 847 (2d Cir. 1994) ...............................................................8

*United States v. Saadey*,
 393 F.3d 669 (6th Cir. 2005) ..........................................................18

*United States v. Silver*,
 203 F. Supp. 3d 370 (S.D.N.Y. 2016),
 *aff'd in part*,
 No. 16-1615-cr, --- F.3d ----, 2017 WL 2978386 (2d Cir. July 13, 2017) ....................*passim*

*United States v. Sotomayor-Vazquez*,
 249 F.3d 1 (1st Cir. 2001)...............................................................13

*United States v. Sun-Diamond Growers of Cal.*,
  526 U.S. 399 (1999) ...................................................................................11

*United States v. Sunia*,
  643 F. Supp. 2d 51 (D.D.C. 2009) ................................................. 10, 12, 14, 15

*United States v. Tomblin*,
  46 F.3d 1369 (5th Cir. 1995) ........................................................ 16, 17, 18, 19

*United States v. Toro*,
  No. 89 CR 0268 (RWS), 1989 WL 63118 (S.D.N.Y. June 8, 1989) ............................. 10, 13

*United States v. Urban*,
  404 F.3d 754 (3d Cir. 2005) ..........................................................................20

*United States v. Vitillo*,
  No. Crim. 03-555, 2005 WL 1693932 (E.D. Pa. July 19, 2005),
  *aff'd*, 490 F.3d 314 (3d Cir. 2007) ................................................................13

*United States v. Watts*,
  No. CR 12-00270 (YGR), 2016 WL 6496448 (N.D. Cal. Oct. 14, 2016) ............................4

*United States v. Whitfield*,
  590 F.3d 325 (5th Cir. 2009) .........................................................................10

*United States v. Willis*,
  844 F.3d 155 (5th Cir. 2016) .................................................................... 10, 12

*United States v. Wilson*,
  503 U.S. 329 (1992) ..................................................................................21

**Statutes**

18 U.S.C. § 201............................................................................................5, 6

18 U.S.C. § 665...............................................................................................11

  18 U.S.C. § 665(a).........................................................................................11

18 U.S.C. § 666........................................................................................*passim*

  18 U.S.C. § 666(a)(1)(B) .............................................................................*passim*

  18 U.S.C. § 666(a)(2) .......................................................................................3

  18 U.S.C. § 666(d) ..........................................................................................5

  18 U.S.C. § 666(d)(1)................................................................................ 1, 2, 10

iv

18 U.S.C. § 1951 ..................................................................................................*passim*

    18 U.S.C. § 1951(a) ................................................................................. 16, 20

    18 U.S.C. § 1951(b)(2) ....................................................................... 16, 17, 19

**Other Authorities**

BLACK'S LAW DICTIONARY (10th ed. 2014) ............................................................ 10

Indictment, *United States v. Perez*, No. 3:97-cr-00091-JAF (D.P.R. May 7, 1997) .................... 13

# PRELIMINARY STATEMENT

In the very first lines of our opening brief, we observed that "official acts" must be performed by officials and thus Percoco could not have performed official acts when he was not a government official.  We stated that every count against Percoco in the Superseding Indictment must be dismissed to the extent that it relies upon "official acts" that he allegedly performed in the 7 ½ months between his resignation from State government and his return.  We then explained and pursued this point for the first 11 pages of the Discussion (more than a quarter of the brief).  But the government does not attempt a response; it never even mentions the point in its opposition brief, much less addresses it.  The government's deliberate omission is therefore a concession to this challenge to Counts Six through Twelve.

We also explained in our opening brief that Percoco cannot have deprived the public of his honest services during the period between his resignation and his return.  The Supreme Court has made clear that honest services fraud requires a breach of fiduciary duty, and Percoco did not owe such a duty to the people of New York in that 7 ½ month period.  But once again the government offers no response, and again its silence is a concession—this time on our challenge to Counts Nine and Ten.

The government only begins to respond when it reaches our third point:  after Percoco resigned from his official position and before he chose to return, Percoco was not "a person authorized to act on behalf of" the State for purposes of 18 U.S.C. § 666(d)(1).  And the government seeks to avoid having to prove that Percoco was authorized to act on behalf of the State.  Rather, it would like to prove only that Percoco "function[ed]" in a senior "role" and was "involved" with State government after he resigned to work on a political campaign.  (S1 ¶ 4; *see*

*also* Gov't Br. 74.)[1,2]  In this way the government would replace the statutory requirement of **authorized** action with **mere** action.  But as much as the executive branch might like to amend the statute, it lacks the authority to do so.  The allegations about Percoco's involvement cannot make him an "agent" under § 666(d)(1) during the period between his resignation and return, and therefore the two counts that charge Percoco with violating § 666(a)(1)(B)—Counts Eleven and Twelve—must be dismissed to the extent that they charge violations during that period.

Percoco's resignation from State government also prevents the government from adequately alleging a "*quid*" in the four Counts related to the Syracuse Developer:  Counts Six,[3] Eight, Ten, and Twelve (the "Syracuse-related Counts").  The government alleges that the illicit "*quid*" in each of these counts—the alleged "cash payment," "bribe," "cash," or "thing of value" from the Syracuse Developer (S1 ¶¶ 49, 53, 59, 63)—was received by Percoco during the months that he was not a State official, had no duty to the State, and lacked authority to act on behalf of State government.  (*See id.* at ¶¶ 4, 33.)  In addition, the Indictment alleges that the "*quo*" for each of these acts was performed by Percoco, *not* someone else.  Accordingly, the theory of the Indictment's Syracuse-related Counts against Percoco is that he was, while out of office, selling his own future official acts for a time "after he returned to State service."  (Gov't Br. 75.)  But the Indictment does not allege that in the period between his resignation and return Percoco held himself out to the Syracuse Developer as a current or future officeholder.  Accordingly, it does not adequately allege that Percoco was selling his own future official acts.

---

[1]    The allegations herein are drawn from the May 11, 2017 Superseding Indictment, ECF No. 162 ("S1" or the "Indictment") and the September 20, 2016 Sealed Complaint, ECF No. 1 ("Compl.").

[2]    Percoco's opening brief, ECF No. 187, is cited herein as "Opening Br."  The government's omnibus opposition brief, ECF No. 264, is cited as "Gov't Br."  Unless defined herein, all other abbreviations conform to those in the opening brief.

[3]    Count Six charges Percoco with Hobbs Act conspiracy with regards to purported payments from both the Syracuse Developer and the Energy Company.  (*See* S1 ¶¶ 48-49.)  Percoco's argument for dismissal in Section IV, *infra*, pertains only to the portion of that Count that relates to the Syracuse Developer.

Counts Eight, Ten, and Twelve must therefore be dismissed in full, and Count Six must be dismissed to the extent that it relies upon payments Percoco obtained from the Syracuse Developer.

Finally, regarding the unconstitutionality of § 666, the problems with applying the "general retainer" theory of bribery in this case, and the flaws in any attempt to allege a gratuity theory against Percoco under § 666, Percoco hereby joins and incorporates the reasons set forth in Points I, II, and III of the Reply Memorandum of Law in Further Support of Defendant Peter Galbraith Kelly, Jr.'s Motion to Dismiss, ECF No. 290.[4]

## DISCUSSION

## I.   The Indictment Does Not Adequately Allege that Percoco Could Perform an "Official Act" After His Resignation, and the Government's Brief Does Not Try to Argue Otherwise

The first point in our opening brief is that official acts must be performed by officials—people vested with official authority by government entities—and therefore the Indictment must be dismissed to the extent that it relies upon purported "official acts" by Percoco after he resigned from New York State government. But despite our opening brief's prominent and detailed discussion of the point, the government's opposition brief does not discuss it. That silence is especially striking given the ubiquity of the word "official" throughout the Indictment; paragraphs are replete with terms like "Official State action" (S1 ¶ 1), "official benefits" (*id.*), "official business" (*id.* at ¶ 4), "official position (*id.* at ¶ 28), "official State favors" (*id.* at ¶ 28), "official assistance" (*id.* at ¶¶ 29-30, 33), and "official action" (*id.* at ¶¶ 31-32, 35, 49, 51, 53, 56, 59, 61, 63).[5]   And crucially, the formal charging language of all the counts

---

[4]   Although Kelly argues specifically that § 666(a)(2) is unconstitutional, we adopt the same arguments with respect to its reciprocal statute provision in § 666(a)(1)(B).  (*See* Opening Br. 4 n.2.)

[5]   The Second Circuit recently has cast doubt on the efficacy of such pleading.  *See United States v. Silver*, No. 16-1615-cr, --- F.3d ----, 2017 WL 2978386, at *13 (2d Cir. July 13, 2017) ("We are not persuaded that the

against Percoco (including Counts Eleven and Twelve, the § 666(a)(1)(B) counts) allege that Percoco performed "official action[s]"[6] from April through December 2014,[7] the time period when, the Indictment admits, Percoco had resigned from New York State government.[8] Thus, all of the Counts against Percoco rely in part upon purported "official acts" that cannot be official. Nevertheless, the government chose not to respond to the first point in Percoco's opening brief.

In this context the government's silence is extraordinary and should be deemed a concession. *See, e.g.*, *United States v. Watts*, No. CR 12-00270 (YGR), 2016 WL 6496448, at *3 (N.D. Cal. Oct. 14, 2016) (granting a motion to vacate a conviction after "constru[ing] the government's silence [regarding the defendant's argument] as a concession"); *United States v. Costen*, No. 95 Cr. 517 (LMM), 1996 WL 137483, at *2 (S.D.N.Y. Mar. 27, 1996) (granting a request in a defendant's motion for a bill of particulars because the "[t]he Government's Memorandum of Law in Opposition to the Pretrial Motions … d[id] not specifically address this Request"); *see also Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (granting defendant's motion to dismiss based on lack of jurisdiction on the ground that "Plaintiffs fail[ed] to respond to th[at] argument in their memoranda of law[,] … effectively conced[ing] that there [was] no basis for jurisdiction").

The closest that the government comes to addressing the point is not while discussing official acts, but rather while discussing the meaning of the term "agent" in the context of

---

terms 'public duties,' 'official influence,' and 'official decisions' convey the requisite specificity that, to qualify as an 'official act,' the given 'question, matter, cause, suit, proceeding or controversy' must involve the *formal exercise* of governmental power; nor do these terms specify that the 'question, matter, cause, proceeding or controversy' must be specific and focused like a hearing or lawsuit.") (emphasis in original) (quoting *McDonnell v. United States*, 136 S. Ct. 2355, 2371-72 (2016)).

[6]  *See* S1 ¶¶ 49, 51, 53, 56, 59, 61, 63.

[7]  *See id.* at ¶¶ 49, 51, 53, 55, 58, 61, 63.

[8]  *See id.* at ¶ 4; *see also* Gov't Br. 74. Each Count against Percoco also incorporates ¶ 35(a) (*see* S1 ¶¶ 48, 50, 52, 54, 57, 60, 62), which alleges that Percoco performed "[o]fficial actions" between April 21, 2014 and December 8, 2014.  (S1 ¶ 35(a); *see also* Compl. ¶ 64 (setting forth dates).)

§ 666(d). (*See* Gov't. Br. 70-75.) In the setting of that separate argument,[9] the government quotes the Indictment's allegations in ¶ 4 regarding Percoco's status after his resignation: "PERCOCO … function[ed] in a senior advisory and supervisory role with regard to the Governor's Office," was "involved in" the hiring of staff and the coordination of events, and "travel[ed] with the Governor on official business." (*Id.* at 74 (quoting S1 ¶ 4).) But those allegations cannot be squared with the Supreme Court's decision in *McDonnell v. United States*, 136 S.Ct. 2355 (2016).

For even if the government were to prove the allegations in ¶ 4, it would not establish that Percoco still had the requisite "official capacity" to make a "formal exercise of governmental power" that was "conferred by the authority of his office" after he resigned from State office. (*See* Opening Br. 12 (quoting *McDonnell*, 136 S.Ct. at 2367, 2368, and 2369, respectively).) After all, in *McDonnell*, the Supreme Court held that an official act could be performed only on a specific and focused matter that was "within the specific duties of an official's position." 136 S.Ct. at 2369. That holding requires that the person performing the official act have an official position. But the government's Indictment improperly presumes that official capacity, the authority of office, the specific duties of an official's position, and all other formalities can be dispensed with.

This problem—the *McDonnell* problem with ¶ 4—is not cured by the government's choice to charge § 666(a)(1)(B). Although the Supreme Court's decision in *McDonnell* interpreted the text of a statute (18 U.S.C. § 201), the Court's interpretation of that statute was informed by "significant constitutional concerns" about the government's overly permissive view of what constituted a proper "*quo*":

---

[9]    We address the government's contention that Percoco was an "agent" for purposes of § 666(a)(1)(B) between April 21 and December 8, 2014 in Section III, *infra*.

> In addition to being inconsistent with both text and precedent, **the Government's expansive interpretation of "official act" would raise significant constitutional concerns**. Section 201 prohibits *quid pro quo* corruption—the exchange of a thing of value for an "official act." ***In the Government's view***, nearly anything a public official accepts—from a campaign contribution to lunch—counts as a *quid*; and **nearly anything a public official does—from arranging a meeting to inviting a guest to an event—counts as a quo**. But conscientious public officials arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time.

136 S.Ct. 2372 (emphasis added) (citation omitted).  Accordingly, the Supreme Court's analysis in *McDonnell* should be taken into account when considering any public corruption statute that requires the government to prove a *quid pro quo*.  Also, any such statute will be constitutional only if it requires a "*quo*" beyond acts such as arranging a meeting, inviting a guest to an event, or contacting other officials on behalf of a constituent.  Section 666, of course, is a statute that requires proof of a *quid pro quo*.  *See United States v. Ganim*, 510 F.3d 134, 141 (2d Cir. 2007) (explaining that § 666 criminalizes a *quid pro quo* agreement).  Section 666 is therefore constitutional only if it can satisfy the requirements explained in *McDonnell*.  It cannot simultaneously be constitutional and yet unbound by *McDonnell*'s requirement for what constitutes a proper "*quo*."

Moreover, the legal framework established by the Supreme Court in *McDonnell* was not altered by the recent decision of the Court of Appeals in *United States v. Boyland*, No. 15-3118, --- F.3d ----, 2017 WL 2918840 (2d Cir. July 10, 2017), which affirmed the conviction of William Boyland, an elected state official, on public corruption charges.  On appeal, Boyland "acknowledge[d] that he did not object to the [jury] instructions [at trial] but argue[d] that he [was] entitled to relief upon plain-error review."  *Boyland*, 2017 WL 2918840, at *6.  In its letter to this Court about *Boyland* (ECF No. 275), the government seems to suggest that the constitutional principles discussed in *McDonnell* do not apply to 18 U.S.C. § 666(a)(1)(B).  But that view misreads *Boyland*.  First, the opinion does not hold that the *quo* required to prove § 666

could be performed by a person who is not vested with official authority by government entities. The defendant was an elected official at the time of his offenses, so the Court of Appeals had no occasion to consider the issue. Second, the government exaggerates the significance of the opinion's short discussion of § 666 by ignoring the fact that the jury charges in that case were only before the Second Circuit on plain error review. Given that posture, the Circuit's holding does not go beyond the conclusion that the district court's charge to the jury on § 666 had no "clear or obvious" error.

At most, the Circuit was implying that the language in the trial court's § 666 charge would not have clearly and obviously misled the jury in Boyland's case into believing that "merely contacting another government agency sufficed to constitute a misuse of his 'official powers.'" *Boyland*, 2017 WL 2918840, at *9. In other words, the most that the Circuit was suggesting was that the trial court's § 666 charge to the jury did not clearly and obviously permit a conviction on the kind of overly expansive "*quo*" rejected by the Supreme Court in *McDonnell*: a "*quo*" that was nothing more than setting up a meeting, hosting an event, or contacting another official, or agreeing to do those acts.

This interpretation of *Boyland* is consistent with the Second Circuit's decision three days later in *United States v. Silver*, No. 16-1615-cr, --- F.3d ----, 2017 WL 2978386 (2d Cir. July 13, 2017), in which the Court held that jury instructions for honest services fraud and Hobbs Act extortion charges must define the "*quo*" in a way that allays the constitutional concerns expressed in *McDonnell*. *See Silver*, 2017 WL 2978386, at *12 n.84 ("In *United States v. Boyland*, we recently rejected overbroad jury instructions that did not comport with *McDonnell* … We similarly reject the official act instructions given at Silver's trial because of the constitutional concerns stemming from the breadth of the interpretation advanced by the

government.") (citations omitted); *id.* at *12 ("Like the improper instruction in *McDonnell*, the plain language of the instruction at Silver's trial captured lawful conduct, such as arranging meetings or hosting events with constituents.").

## II.   The Indictment Does Not Adequately Allege that Percoco Deprived the Public of His Services After His Resignation, and the Government's Brief Does Not Try to Argue Otherwise

The government's silence regarding the second point in our opening brief is also a concession. As we observed in our opening brief, the Supreme Court made clear in *Skilling v. United States*, 561 U.S. 358 (2010), that there can be no honest services fraud without a breach of fiduciary duty. (Opening Br. 20-21.) [10] Accordingly, to properly allege an honest services fraud conspiracy, the government must allege that the acts that Percoco agreed to take were to be performed while he owed fiduciary duties to the public. But the government does not (and cannot) make such an allegation for acts falling in the period between Percoco's resignation and his return. The government has not alleged that Percoco was employed by, contracting with, or compensated by any government entity during that period.

Moreover, as discussed in our opening brief, the allegations in ¶ 4 of the Indictment regarding Percoco's involvement with the Office of the Governor after he had resigned from his government position do not remotely approach the extreme facts in *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982). (*See* Opening Br. 15-16.) Percoco did not at any time (much less after his resignation) so "dominate" the Office of the Governor "as [its] de facto public leader" such that he had a "stranglehold" on the entity. (*Id.* at 16 (quoting *Margiotta*, 688 F.2d at 122).)

*       *       *

---

[10]   *Cf. United States v. Rooney*, 37 F.3d 847, 852 (2d Cir. 1994) (reversing conviction under § 666(a)(1)(B) and holding that "[a]s is evident in many of our cases dealing with bribery, a fundamental component of a 'corrupt' act is a breach of some official duty owed to the government or the public at large").

It is telling that the government chose not to address any of the specific arguments raised in the first two sections of our opening brief. The government offered no basis to support its allegation that Percoco could have performed official acts after having resigned from State government. Nor did it attempt to explain how he could have breached a duty to the general public during that time. The government's silence on these points amounts to an admission: acts performed by Percoco after he resigned from State government cannot support any of the seven charges against him (Counts Six through Twelve).

## III. The § 666 Charges Cannot Be Proven by Acts that Percoco Performed During the Period that He Was Not a Government Agent

After ignoring the first 21 pages of our opening brief, the government begins its response to Percoco by confusing which counts of the Indictment charge violations of § 666 and which defendants are charged in which counts. The government's brief states that Percoco, Kelly, Aiello, and Gerardi challenge five counts; namely, "Counts Six, Eight, Ten, Eleven, and Twelve," on the basis that "Percoco was not an agent of the State" for part of the time period charged in those counts and "therefore cannot be prosecuted under Section 666." (Gov't Br. 60.) But in fact, only two of the counts mentioned by the government even charge § 666—Counts Eleven and Twelve—and those counts only charge Percoco. (*Compare* S1 ¶¶ 48-49 (Count Six, Hobbs Act conspiracy), *id.* at ¶¶ 52-53 (Count Eight, Hobbs Act), and *id.* at ¶¶ 57-59 (Count Ten, honest services fraud conspiracy) *with id.* at ¶¶ 60-63 (Counts Eleven and Twelve, "Solicitation of Bribes and Gratuities").[11] Accordingly, Percoco challenges only Counts Eleven and Twelve of the Indictment on the basis that he was not an "agent" under § 666. (*See, e.g.*, Opening Br. 2, 22-26.)

---

[11] The § 666 charge against Kelly is in Count Thirteen, and the § 666 charge against Aiello and Gerardi is in Count Fourteen.

9

Section 666 defines an "agent" as a "person authorized to act on behalf of" a government or agency. 18 U.S.C. § 666(d)(1). The plain meaning of this statutory language is that mere action is not enough; "authorized to act" is not synonymous with "to act." The agency relationship must manifest some kind of formality: an elected position, a state or local law, a contract—something official. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) ("authority" is "[t]he official right or permission to act, … to act legally on another's behalf"); *see also Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1180 (10th Cir. 2005) ("Here, the plain meaning of 'authorized' is '1: gave authority to: empowered; 2: gave legal or official approval to' … '[]gave legal authority; empowered … formally approved[]' … Therefore, based solely on the statutory language used, the term 'authorized representative' appears to require some sort of tangible delegation to act in one's shoes.") (alterations omitted) (quoting WEBSTER'S COLLEGE DICTIONARY (2003) and BLACK'S LAW DICTIONARY (7th ed. 1999)).

This understanding of the plain meaning of "authorized to act" is supported by the cases cited in our opening brief. (*See* Opening Br. 23-24.) As those cases illustrate, for criminal liability under § 666 to attach, the defendant must be vested with some degree of actual legal authority to act—whether by virtue of his formal employment, elected official position,[12] state or local law,[13] or a contract deputizing him to act on behalf of the principal government or organization for a particular project or initiative.[14] In sum, there must be a formal, official relationship or legal command conferring authority upon a defendant.

---

[12] *See, e.g., United States v. Willis*, 844 F.3d 155, 167 (5th Cir. 2016); *United States v. Beldini*, 443 F. App'x 709, 719 (3d Cir. 2011).

[13] *See, e.g., United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009); *United States v. Langston*, 590 F.3d 1226, 1234 (11th Cir. 2009); *United States v. Phillips*, 219 F.3d 404, 412-13 & n.13 (5th Cir. 2000); *United States v. Sunia*, 643 F. Supp. 2d 51, 67-68 (D.D.C. 2009).

[14] *See, e.g., United States v. Mazer*, 631 F. App'x 57, 61 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 827 (2017); *United States v. Lupton*, 620 F.3d 790, 793, 801 (7th Cir. 2010); *United States v. Toro*, No. 89 CR 0268 (RWS),

Our interpretation of the text of § 666 also draws support from a comparison to similar statutes, such as 18 U.S.C. § 665, the immediately preceding statute in the code. Section 665 criminalizes theft or embezzlement by an "officer, director, agent, or employee" of an organization receiving assistance under the Workforce Innovation and Opportunity Act. However, § 665 does not directly define "agent," and it broadens the term beyond persons authorized to act for an organization. In addition to covering "officer[s], director[s], agent[s], [and] employee[s]," the statute reaches persons "***connected in any capacity with any agency or organization*** receiving financial assistance or any funds." 18 U.S.C. § 665(a) (emphasis added). Section 666 is narrower in this respect.

Such distinctions deserve careful attention, as the Supreme Court has expressly stated that judges should take a narrow interpretation of the bribery statutes in particular. In *United States v. Sun-Diamond Growers of California*, 526 U.S. 399 (1999), the Court wrote that the "intricate web of [statutes and] regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials," 526 U.S. at 409, has created "an area where precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions." *Id.* at 412. "Given that reality," the Court opined, "a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." *Id.*; *see also McDonnell*, 136 S. Ct. at 2373 (quoting the "scalpel vs. meat axe" passage approvingly). Accordingly, this Court should reject the government's attempt to broaden the statutory language of § 666.

The government's efforts to do so begin with an attempt to distinguish the cases cited in our opening brief on the basis that they "examined whether the evidence at trial was sufficient to

---

1989 WL 63118, at *2 (S.D.N.Y. June 8, 1989); *see also United States v. Bonito*, 57 F.3d 167, 173 (2d Cir. 1995); *United States v. Moeller*, 987 F.2d 1134, 1137-38 (5th Cir. 1993).

prove the agent element" rather than deciding a motion to dismiss. (*See* Gov't Br. 72-73 & n.26.) That argument is misguided. The decisions that we cited, including the two cases that the government mentions in footnote 26 of its brief, *United States v. Willis*, 844 F.3d 155 (3d Cir. 2016) and *United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000), did not contest the relevant facts proven at trial but merely determined whether, as a matter of law, those proven facts were sufficient to show that a defendant was an agent. *See, e.g., Willis*, 844 F.3d at 167 ("[t]estimony at trial established that Willis, as Executive Director of the Legislature, had the authority to … unilaterally enter into a contract for whatever price"); *Phillips*, 219 F.3d at 413 ("There is nothing in the record to indicate that Phillips had … legal authority to bind the parish … [B]ecause Phillips, as a matter of law, was not an employee or officer of the parish and because he was not authorized to act on behalf of the parish with respect to its funds, Phillips's actions did not and could not have threatened the integrity of federal funds or programs.").

Notably, the government ignores a case in our opening brief,[15] *United States v. Sunia*, 643 F. Supp. 2d 51 (D.D.C. 2009), in which the court dismissed § 666 charges after rejecting the precise contention that the government makes here. (*Compare* Gov't Br. 72-73 & n.26 *with Sunia*, 643 F. Supp. 2d at 68 ("The government suggests that any reliance by this Court on *Phillips* would be 'misplaced' because the Fifth Circuit's analysis occurred after Phillips had been convicted and with the benefit of a record of review. But as the defendants correctly point out, 'there is no basis for deferring resolution of the 'agent' issue given the government's failure to dispute that, as a matter of American Samoa law, neither the Legal Counsel to the Fono nor a Member of the Senate may act on behalf of or control any of the executive branch departments at issue.'") (alterations and citations omitted) (quoting briefing).)

---

[15] *See* Opening Br. 24.

The five cases cited by the government underscore its misinterpretation of the statute—indeed, they prove Percoco's point. In one case, a state law set forth the defendant's official state duties. (*See* Gov't Br. 61 (citing *United States v. Roebuck*, No. 1:11-cr-127-jgm, 2012 WL 4955208, at *3 (D. Vt. Oct. 17, 2012) (Vermont statute was source of agency relationship between town and its fire district)).) And the four other cases that the government relies on involved defendants that, pursuant to a contract, were granted legal authority to act on behalf of the relevant government or organization. (*See* Gov't Br. 71-72 (citing *United States v. Hudson*, 491 F.3d 590, 594 (6th Cir. 2007) ("The two contracts gave Hudson broad authority to set up a television station in the high school …"); *United States v. Sotomayor-Vazquez*, 249 F.3d 1, 8 (1st Cir. 2001) (outside consultant for organization who approved all decisions of organization could qualify as organization's agent);[16] *United States v. Vitillo*, No. Crim. 03-555, 2005 WL 1693932, at *4-5 (E.D. Pa. July 19, 2005) (contract between organization and company owned and controlled by defendant demonstrated that defendant was agent of organization), *aff'd*, 490 F.3d 314 (3d Cir. 2007); *United States v. Toro*, No. 89 Cr. 0268 (RWS), 1989 WL 63118, at *1-2 (S.D.N.Y. June 8, 1989) (independent contractor was agent of organization)).)

But the government does not meet the standard set in its own cases. For the period between April 21, 2014 and December 21, 2014, when Percoco had "officially left New York State employment" (S1 ¶ 4) and was working for the Governor's privately-funded reelection campaign, the government has not alleged that Percoco was party to a consulting agreement or other contract for services with the State, or was employed by an organization that had such a contract with the state; or that he had authority to act on behalf of the State by virtue of any local

---

[16]  In *Sotomayor-Vazquez*, the Indictment specifically alleged, among other things, that the defendant owned a number of businesses that "contract[ed] with" the relevant entity. *See* Indictment at ¶¶ 19, 33, *United States v. Perez*, No. 3:97-cr-00091-JAF (D.P.R. May 7, 1997).

or State law. Nonetheless, the government charged Percoco with violating § 666 during that time period. (*See id.* at ¶¶ 4, 29, 35(a), 61, 63; Compl. ¶¶ 61-64; *see also* Gov't Br. 74.)

In an attempt to save its § 666 charges against Percoco for the period that he was "manager [of] the Governor's reelection campaign," the government alleges that Percoco "function[ed]" and remained "involved" with the Governor's office during that time. (S1 ¶ 4.) The government also alleges that Percoco "travel[led] with the Governor" and had a hand in "coordinat[ing his] … events." (*Id.*) But nothing in those allegations suggests that Percoco was "authorized to act on behalf" of the State while working on the campaign. The absence of such a claim is fatal to the § 666 charges.

Indeed, the district court for the District of Columbia dismissed § 666 charges after finding similar allegations insufficient to charge an agency relationship. In *United States v. Sunia*, the case that the government ignores in its brief, the prosecution alleged that for a portion of the time period charged the defendants had "membership" in layers of government and "personal cachet appurtenant to [their] role[s]." 643 F. Supp. 2d at 67. The court in *Sunia* held that those allegations failed to "allege that the defendants used any official authority … conferred upon them by law" during that period. *Id.* (alterations omitted). Accordingly, the court dismissed those counts "to the extent [they were] based on acts that purportedly occurred" during that period. *Id.* at 58. The allegations against Percoco in ¶ 4 should fare no better.

Nor is it enough that the Indictment alleges that, "prior to his official return to the Executive Chamber, Percoco was ***able*** to exert pressure and provide advice to State officials in an effort to reverse an ESD[C] decision that was unfavorable for the Syracuse Developer, and ESD[C] did in fact change its position." (Gov't Br. 74 (citing S1 ¶ 35(a) and Compl. ¶ 64) (emphasis added); *but see* S1 ¶ 35 (alleging such conduct to be "[o]fficial action[]").) Merely

being "able" to act is different than being "authorized to act." *See Sunia*, 643 F. Supp. 2d at 67 ("alleging that the defendants planned to 'use their positions' in the legislative branch in some unspecified way is not the same as alleging that they actually used the authority conferred upon them by law") (alterations omitted) (quoting indictment); *see also United States v. Ferber*, 966 F. Supp. 90, 100 (D. Mass. 1997) ("Ferber's role was solely advisory in nature … While Ferber often made suggestions or recommendations concerning various courses of action, the power to actually act on those decisions was retained by the Public Entity Clients themselves.").

In sum, the Indictment contains no allegation that Percoco had actual authority to act for the State during the months after he resigned from his State position. By alleging facts showing only that Percoco "was *able* to" act (Gov't Br. 74 (emphasis added)), the Indictment avoids the actual words of § 666: "authorized to act on behalf of." But the government cannot plead around the statute.

## IV. The Syracuse Developer Counts Must Be Dismissed Because the Payments that Constitute the Alleged Bribes Were Made When Percoco Was Not an Official

All of the Syracuse-related Counts against Percoco—*i.e.*, the counts charging him with taking bribes from Aiello and Gerardi in exchange for performing official acts—require dismissal for a separate reason: Percoco is only alleged to have received those purported bribes "during the months that he was *not* a State official," and therefore had no office to sell. (Opening Br. 26 (citing S1 ¶¶ 33, 48-49, 52-53, 57-59, 62-63) (emphasis added).) The government attempts to circumvent the problem and criminalize the payments at issue by alleging that Percoco agreed to exchange the payments for official acts he would perform in the future, "*after* he returned to State service." (Gov't Br. 75 (emphasis in original).) In other words, the Indictment's theory is that Percoco sold the Syracuse Developer his future official acts. But the Indictment never alleges that between April 21 and December 8, 2014, when

15

Percoco received the money, he held himself out to the Syracuse Developer as a State official. Nor does it allege that he made representations to the Syracuse Developer regarding any plans to return to State government. Accordingly, the Indictment fails to adequately allege that Percoco was selling his future official acts, and thus fails to state an offense under the Hobbs Act, the honest services fraud statute, and § 666. Counts Six, Eight, Ten, and Twelve must therefore be dismissed.[17]

### A.     Hobbs Act Extortion

The Hobbs Act is directed at "[w]hoever in any way or degree obstructs, delays, or affects commerce … by robbery or extortion or attempts or conspires so to do." 18 U.S.C. § 1951(a). It defines extortion as "the ***obtaining*** of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." § 1951(b)(2) (emphasis added). If there is no use of actual or threatened force, violence, or fear, "the official's position provides the [necessary] coercive element." *United States v. Tomblin*, 46 F.3d 1369, 1383 (5th Cir. 1995). But in either situation the obtaining of property of another determines the time of the offense. Thus, under the "color of official right" prong alleged here, an "offense is completed ***at the time when the public official receives a payment*** in return for his agreement to perform specific official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992) (emphasis added). "In other words, … [the statute] criminalizes exchanges coerced by the wrongful use of office, without reference to whether the promises of official acts which underlie the exchanges do or could come to fruition." *United States v. Manzo*, 714 F. Supp. 2d 486, 491 (D.N.J. 2010), *aff'd*, 636 F.3d 56 (3d Cir. 2011) (quotations omitted).

---

[17]     As noted previously, *see supra* note 3, Count Six is required to be dismissed on this basis only to the extent it relies upon payments from the Syracuse Developer.

There can be no primary Hobbs Act liability unless, *at the time that money changes hands*, the payee is a public official, in the process of becoming a public official, or masquerading as a public official to his purported victims. (*See* Opening Br. 27; *see also Tomblin*, 46 F.3d at 1382 ("Private persons have been convicted of extortion under color of official right, but these cases have been limited to ones in which a person masqueraded as a public official, was in the process of becoming a public official, or aided and abetted a public official's receipt of money to which he was not entitled.").)

As set forth in our opening brief, in *United States v. Manzo*, the Third Circuit affirmed the dismissal of both conspiracy and substantive Hobbs Act charges against an unsuccessful mayoral candidate and his campaign manager-brother because they were not public officials, nor alleged to be "act[ing] []or pretend[ing] to act in an official capacity." 636 F.3d 56, 64 (3d Cir. 2011). The government attempts to distinguish *Manzo* on the grounds that "the candidate lost the vote and never took public office" (Gov't Br. 77), but the government misses the point. What mattered was the defendants' status at the time of the exchange. *Manzo*, 636 F.3d at 67 ("the *central* status element of an 'under color of official right" Hobbs Act violation [is] acting 'under color of official right'") (emphasis in original). Were that not the case at the time of the exchange, as in the situation before the Third Circuit in *Manzo*, there would be nothing to "induce[]" the purported victims into making the allegedly criminal payments. *Cf.* 18 U.S.C. § 1951(b)(2).

The government's brief suggests two arguments as to why Percoco's alleged receipt of payments from the Syracuse Developer between April 21, 2014 and December 8, 2014 might have been "under color of official right"—both of which are fatally flawed.

*First*, the government argues that "Percoco had authority to act as an agent of the Governor" during the period he received payments from the Syracuse Developer. (Gov't Br. 76 (citing S1 ¶ 4).) As we explained in our opening brief, the allegations in ¶ 4, "[a]t most, … alleg[e] that Percoco accepted payments while having mere 'unofficial power over an official.'" (Opening Br. 28 (citing S1 ¶ 4 and quoting *Tomblin,* 46 F.3d at 1383); *see also Tomblin*, 46 F.3d at 1383 (overturning conviction of defendant who was not a public official even though he "'cloaked' himself in the Senator's authority"); *United States v. McClain*, 934 F.2d 822, 830-31 (7th Cir. 1991) (even where persons "maintain … a vise-like grip on power, even without office … proceeding against [them] on an 'official right' theory is inappropriate under the literal and historical meaning of the Hobbs Act, irrespective of the actual 'control' that citizen purports to maintain over governmental activity"); *United States v. Saadey*, 393 F.3d 669, 672, 674-76 (6th Cir. 2005) (extortion charges not proper against private citizen who sought money under pretense that he could assist in having pending charges reduced, even though he was a former investigator with the prosecutor's office).)

*Second*, the government argues that the Syracuse-related Counts are valid because they allege that "Percoco received bribe payments from Aiello and Gerardi while he was on the campaign, but … took official action to benefit the Syracuse Developer and Aiello in exchange for those bribes *after* he returned to State service." (Gov't Br. 75 (emphasis in original) (citing S1 ¶ 35(b)-(c)).)[18] But that allegation does not show inducement. It does not establish that Percoco held himself out as a future official at the time of the payment (*i.e.*, after he resigned

---

[18] The government skips over S1 ¶ 35(a), which alleges conduct in the months between Percoco's resignation and return (*see* Compl. ¶ 64), and goes straight to ¶¶ 35(b) and 35(c), which allege later events. (*See* Compl. ¶ 65-66.) The omission highlights the flaws in the Indictment. Our argument that Percoco could not perform an official act when he was not an official leads, among other things, to the dismissal of ¶ 35(a). But in an attempt to tie the payments to acts by Percoco when he was back in office, the government omits ¶ 35(a) and the events to which it refers. In so doing, it tacitly acknowledges that the actions between Percoco's resignation and his return cannot be official acts, and thus tacitly agrees with the first point in Percoco's opening brief.

from government and before he returned). Nor is there any allegation that he told or gave any indication to Aiello or Gerardi that he planned to go back to State government (or any other public office) in the future. Under the facts alleged here, as in *Manzo*, the payments that Percoco purportedly accepted from the Syracuse Developer could not have been "induced" under "color of [any] official right." 18 U.S.C. § 1951(b)(2); *see also Tomblin*, 46 F.3d at 1383 (conviction improper where "no one believed that [defendant] was a public official, especially not his purported victims").

*United States v. Meyers*, 529 F.2d 1033 (7th Cir. 1976), a case relied upon by the government (*see* Gov't Br. 75-76), does not compel a different result. In *Meyers*, the Seventh Circuit reversed the district court's dismissal of an indictment, reinstating charges against two local officials for Hobbs Act conspiracy in connection with bribes that they accepted prior to taking office, while they were candidates. Further, it alleged that they conspired to accept payments while candidates "in consideration for their future official acts as trustees … [to] suspend their independent and unbiased judgment on the merits when considering the awarding of contracts." *Id.* (quoting indictment). Thus, the indictment in *Meyers* alleged that the defendants held themselves out as future public officials to their purported victims.

The Indictment here is much different. It did not allege that Percoco held himself out as a future public official to Aiello or Gerardi. Indeed, the government has previously alleged that Percoco obtained payments at a time when Aiello and Gerardi knew he was not a public official (*see* Compl. ¶ 62(a)) and had no reason to believe he would be returning to State government. In this scenario, there can be no Hobbs Act liability. That Percoco later returned to State government and took actions in the Syracuse Developer's favor does not magically make the past payments extortionate. *See Manzo*, 714 F. Supp. 2d at 497 ("The Hobbs Act criminalizes

*coercive exchanges*, without reference to the occurrence of actual official action … the *end* of a Hobbs Act crime executed under color of official right is the *exchange* of a promise of official action for the receipt of property, not the subsequent action that may or may not occur.") (emphasis in original); *see also United States v. Urban*, 404 F.3d 754, 768 (3d Cir. 2005) (showing that the "public official [actually] acted or refrained from acting as a result of payments made" is not enough).[19]

### B.     Honest Services Fraud

For the same reasons, the honest services fraud charges against Percoco in Count Ten must be dismissed for failure to state a claim.

Like the Hobbs Act, the honest services fraud statute criminalizes the acceptance of payments in exchange for a "formal exercise of governmental power." *McDonnell*, 136 S. Ct. at 2369; *see also United States v. Silver*, No. 16-1615-cr, --- F.3d ----, 2017 WL 2978386, at *6 (2d Cir. July 13, 2017) ("To succeed on a bribery theory of honest services fraud and Hobbs Act extortion, the Government had to prove, beyond a reasonable doubt, the existence of a *quid pro quo* agreement—that the defendant received, or intended to receive, something of value in exchange for an official act."); *cf. United States v. Kerik*, 615 F. Supp. 2d 256, 269 (S.D.N.Y. 2009) ("the honest services scheme necessarily terminated when Kerik left office—after all, one stripped of his influence has nothing left to peddle").  Indeed, the government admits that the honest services charges and the Hobbs Act charges against Percoco are based on the same theory.  (*See* Gov't Br. 75.)

---

[19]    This is true of both the conspiracy count (Count Six) and the substantive count (Count Eight).  *See* 18 U.S.C. § 1951(a) ("Whoever in any way or degree obstructs, delays, or affects commerce … by robbery or extortion or attempts or **conspires** so to do.") (emphasis added); *see also Manzo*, 636 F.3d at 66 ("[T]he Hobbs Act, by its own terms, encompasses the inchoate offenses of attempt and conspiracy to extort.") (quotations omitted).  Conspiracy is not a "legal alchemy with the power to transform any gap in the facts into a cohesive extortion charge … inchoate charges … are not so magical as to altogether substitute for the coercion required by the statute."  *Manzo*, 714 F. Supp. 2d at 497.

With respect to the Syracuse Developer, Percoco is alleged only to have received money during a time he was not working for the State, and did not owe duties to the public.  (*See* S1 ¶¶ 4, 33.)  But the Indictment fails to allege any facts showing that at the time of those payments, the Syracuse Developer was aware that Percoco would return to State government.  Under those facts, Percoco could not have "received[] … something of value in exchange for an official act." *Silver*, 2017 WL 2978386, at *6.  Nor could Aiello and Gerardi—without knowledge that Percoco would return to his post in the "Office of the Governor" (S1 ¶ 59)—have agreed to pay Percoco money in exchange for official actions he would later take "while serving as Executive Deputy Secretary to the Governor."  (*Id.*; *see also Ocasio v. United States*, 136 S. Ct. 1423, 1249 (2016) (conspiracy requires that defendants "reach an agreement with the specific intent that the underlying crime be committed") (quotation marks omitted).)[20]

## C.    Section 666 Bribery

With regard to § 666 bribery dismissal is required for two reasons.

*First*, the statute's plain terms "make[] the status of the payee as a current 'agent' a necessary element of the offense."  (Opening Br. 27.)  Accordingly, only payments "accept[ed]" by Percoco while he was "being an agent" of the government fall within its scope.  18 U.S.C. § 666(a)(1)(B); *see also United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").  Indeed, it appears the government concedes this to be the case.  (*See* Gov't Br. 74.)  But for the same reasons set forth previously, the Indictment does not properly allege that Percoco was an agent for purposes of § 666 during the

---

[20]  Moreover, the government has not alleged facts adducing how Percoco breached a fiduciary duty to the public (*see supra* Sec. II) by accepting payments during private employment and later performing acts on behalf of his payors.  (*Compare* Compl. ¶ 63(d) n.9 (Percoco disclosed payments from the Syracuse Developer on disclosure forms required of State employees, and which are accessible by the public) *with United States v. Nouri*, 711 F.3d 129, 144-45 (2d Cir. 2013) (deprivation of honest services where defendants fail to disclose the existence and source of outside payments to those owed their duty of honest services).)

time he had left State service because it fails to allege facts sufficient to demonstrate his actual authority to act on the State's behalf. (*See generally supra* Sec. III; *see also* Opening Br. 22-26.) But the only payments from the Syracuse Developer that Percoco allegedly accepted fell within that time period. (S1 ¶ 33.) Accordingly, Count Twelve must be dismissed.

Additionally, dismissal is required for the same reason the Court must dismiss the other Syracuse-related Counts. Section 666 bribery, like Hobbs Act extortion and honest services fraud, requires a *quid pro quo* agreement. (*See* Opening Br. 27 (citing *United States v. Ford*, 435 F.3d 204, 210 (2d Cir. 2006))); *see also United States v. Ganim*, 510 F.3d 134, 141 (2d Cir. 2007).) As set forth previously, § 666 would be constitutional only if it requires a "*quo*" beyond acts such as arranging a meeting, inviting a guest to an event, or contacting other officials on behalf of a constituent. (*See generally* Opening Br. 32-37; *see also McDonnell*, 136 S. Ct. at 2372-73; *United States v. Silver*, 203 F. Supp. 3d 370, 378 n.8 (S.D.N.Y. 2016), *aff'd in part*, No. 16-1615-cr, --- F.3d ----, 2017 WL 2978386 (2d Cir. July 13, 2017).) The government recognized as much when charging this case—Count Twelve alleges that Percoco "accepted cash and things of value from the Syracuse Developer in exchange for official actions." (S1 ¶ 63.)

But here, Percoco is only alleged to have received payments from the Syracuse Developer during a time after he had left State government (*id.* at ¶¶ 4, 33), and there are no allegations that he held himself out as a public official or informed the Syracuse Developer that he would return to State office. (*Cf.* Compl. ¶ 62(a).)

\*　　\*　　\*

The Indictment charges Percoco with accepting payments from a developer during the time he was a private citizen without any authority to act on the State's behalf. It does not allege that he pretended to be a public official to that developer. It does not allege that that developer

paid Percoco knowing that he planned to return to State government. Yet it charges Percoco under three federal criminal statutes for accepting such payments because he later returned to State employment and, nearly a year after receiving the last payment, allegedly took certain actions that benefitted the developer. Under this logic, the government could criminalize legal lobbying. *See United States v. McClain*, 934 F.2d 822, 830-31 (7th Cir. 1991). This Court should decline to follow that path.

## CONCLUSION

For the reasons set forth above and in his opening brief, Joseph Percoco respectfully requests that the Court:

a. Dismiss Counts Six through Twelve of the Superseding Indictment in their entirety for failure to allege the required specific intent or criminal agreement, or, in the alternative, to the extent the Court finds that the Superseding Indictment adequately alleges specific other official acts in paragraphs 31 and 35, to limit the government to that theory at trial and foreclose it from presenting evidence or argument on any other official acts purportedly taken by Percoco;

or, in the alternative, grant the following relief:

b. Dismissal of Counts Eleven and Twelve on the basis that 18 U.S.C. § 666(a)(1)(B) is unconstitutionally vague, overbroad, and violates federalism principles;

c. Dismissal of Counts Six through Twelve to the extent that they rely upon acts taken by Percoco, or agreed to be taken by Percoco, between April 21, 2014 and December 8, 2014, while he was not employed by the State;

d. Dismissal of Counts Eleven and Twelve to the extent that they rely upon acts taken by Percoco, or agreed to be taken by Percoco, between April 21, 2014 and December 8, 2014, while he was not an agent of the State or any other governmental entity receiving at least $10,000 in federal funds on an annual basis;

e. Dismissal of Counts Eight, Ten, and Twelve in their entirety, and partial dismissal of Count Six the extent it relies on payments from the Syracuse Developer, because all payments from the Syracuse Developer were received by Percoco between April 21, 2014 and December 8, 2014, while he was not a State official or State agent;

f.    Dismissal of Counts Eleven and Twelve to the extent that they state a gratuity offense against Percoco; and

g.    Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 21, 2017

SCHULTE ROTH & ZABEL LLP

By:   /s/ Barry A. Bohrer
      Barry A. Bohrer
      Michael L. Yaeger
      Andrew D. Gladstein
      Abigail F. Coster

      919 Third Avenue
      New York, NY 10022
      Telephone: 212.756.2000

      *Attorneys for Joseph Percoco*