

# CONNORS LLP

**Attorneys At Law**
Terrence M. Connors
Randall D. White*
John T. Loss
Vincent E. Doyle III
Michael J. Roach
Lawlor F. Quinlan III
James W. Grable, Jr.
Joseph D. Morath, Jr.
Mollie C. McGorry
Paul A. Woodard
Nicholas A. Romano
Caitlin M. Higgins
Christina S. Parker
Christopher J. Larrabee
Caitlin E. O'Neil
Trevor N. White
Sarah M. Washington

**Paralegals**
Curtis J. Ahrens, Jr.
John P. Kromer
Sara E. Lyons
Christine A. Trojan, R.N.
Katherine M. Grossberg
Margaret Dickey, R.N.
Julie Scott, L.P.N.
Lea Ann Wilczak, R.N.
Dianne M. Lysarz, R.N.

* *Also admitted in*
  *District of Columbia*

August 8, 2017

<u>Via CM-ECF</u>

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   <u>*United States v. Percoco, et al., 16 Cr. 776 (VEC)*</u>

Dear Judge Caproni:

We represent defendant Kevin Schuler. We write on behalf of the Buffalo Defendants, Louis Ciminelli, Michael Laipple, and Mr. Schuler, to provide this Court with pertinent information about a recent decision rendered by the Honorable Loretta A. Preska in *United States v. Davis*, No. 13-CR-923 (S.D.N.Y. Aug. 3, 2017) (attached to this submission as "Exhibit A"). While we join the letter submitted by counsel for Defendant Kaloyeros, we write separately to emphasize the particular relevance of *Davis* to the Buffalo Defendants and their pending motion to dismiss the Superseding Indictment (Docket Nos. 219, 220, 285). The *Davis* decision bears directly on the Buffalo Defendants' motion to dismiss because *Davis* confirms that the right-to-control theory asserted against the Buffalo Defendants fails as a matter of law.

In *Davis*, the government alleged that the defendants engaged in wire fraud and conspiracy to commit wire fraud by depriving a public entity of the right to control its assets. The government, in its response to the Buffalo Defendants' motion to dismiss for failure to sufficiently allege wire fraud and wire fraud conspiracy, claims that the Superseding Indictment alleges the same theory in our case,[1] just as the government

---

[1] As the Buffalo Defendants pointed out in their joint motion to dismiss (Docket No. 220 at 39-40; Docket No. 299 at 41-45), and just as in *Davis*, the

Judge Caproni
Page 2 of 6

argued in *Davis*. S*ee* Exhibit A at 90. Here, however, the supposedly defrauded entity, Fort Schuyler Management Corporation ("Fort Schuyler"), is not and was not a public entity.[2]  In both cases, the government alleges that the defendants purportedly deprived victims of the right to control assets by making "material misrepresentations."  In both cases, the government contends that the purported "victims" would not have acted as they did absent the alleged misrepresentations.

The *Davis* decision affirms that the government's right-to-control theory here is unsustainable.  Judge Preska granted a judgment of acquittal because "the evidence was not sufficient for a rational jury to find that the alleged misrepresentations went to an essential element of the contract or that they exposed the Port Authority to potential or actual harm."  Exhibit A at 40-41.  Here, the government does not even allege that the conduct or alleged misrepresentations of the Buffalo Defendants were an essential element of their contract with Fort Schuyler, or exposed Fort Schuyler to actual or potential harm.  Nor could it.

Indeed, the government's position here is weaker than it was in *Davis* because the Superseding Indictment's allegations of deceit pertain solely to the non-binding, non-contractual RFP process.[3]  After the RFP

---

Superseding Indictment did not allege a right-to-control theory, and this later proposed theory of prosecution is an untenable constructive amendment.

[2] *Davis* centered on a contract between a private company and public entity.  Here, the government's allegations pertain to a non-binding request for proposal ("RFP") issued by, and to, private entities, rendering the allegations in the instant matter even weaker than those in *Davis*.  In fact, the government makes the same distinction with respect to *Davis*.  *See* Transcript of Oral Argument of Apr. 26, 2017, at 26, filed in *United States v. Davis*, No. 13-CR-923 (S.D.N.Y.) at Docket No. 109 (attached to this submission as "Exhibit B") ("[I]n this case what the Port Authority is – what the contract for them is based on is not just simply getting a building built, as it might be the case for a private entity.  It's also concerned and it's bargaining for these MBE requirements because they have a public purpose.  The purpose of the Port Authority is different than a private entity, like in *Binday*'s case, contracting insurance or other similar products.").

[3] In fact, in *Davis*, the government conceded that the Second Circuit has reversed a mail-fraud conviction where the alleged deceit "had nothing to do with the underlying contracts" between the defendant and the supposed victims.  Letter from the government to District Judge Loretta A. Preska, dated May 5, 2017, at 5, filed in *United States v. Davis*, No. 13-CR-923 (S.D.N.Y.) at Docket No. 111 (attached to this submission as "Exhibit C") (attempting to

Judge Caproni
Page 3 of 6

process, LPCiminelli Inc. ("LPCiminelli") undertook an arms-length negotiation via counsel that led to a contract to manage the construction at Riverbend, which LPCiminelli delivered on time and on budget. The government has not, and cannot, allege that Fort Schuyler received anything other than what it bargained for with regard to the subsequently negotiated contract. As *Davis* explains, this failure is fatal. Exhibit A at 25 ("Where the purported victim received the full economic benefit of its bargain, an essential element of the bargain is not implicated, and thus the wire fraud statute does not apply." (internal citation marks omitted)).

Prior to the decision in *Davis*, the government responded by arguing that Fort Schuyler would have wanted to know about the alleged misrepresentations in deciding whether to grant LPCiminelli preferred-developer status. *See, e.g.,* Gov't R. Br. at 54; Complaint (Docket No. 1) ¶ 85. *Davis* shows why this argument fails. Indeed, Judge Preska dismissed the charges in *Davis* because the government established only that no "sale" would have occurred absent the defendants' deceit. Exhibit A at 67 ("The proof the Government offered . . . boiled down to testimony that the Port Authority would not have entered into the contracts or approved Solera/DCM to work on the WTC site if it knew that Defendants did not intend to comply with the MWBE program. . . . This 'no-sale' theory of harm . . . has been the Government's chief argument as to why Defendants' alleged misrepresentations went beyond mere deceit and amounted to wire fraud. The cases, however, could not be clearer: it is not enough for the Government to show that but for the misrepresentation, the transaction would not have occurred."). Here, the Superseding Indictment does not even allege that much: there is no allegation that the Buffalo Defendants' alleged misrepresentations were necessary to receiving preferred-developer status, let alone the subsequent and independent "sale" (*i.e.,* the Riverbend contract). The RFP process was not entry into a contract, the RFP process did not involve a sale, being awarded preferred-developer status guaranteed LPCiminelli nothing, and, much later and after arms-length negotiations, LPCiminelli delivered Fort Schuyler exactly what it bargained for: construction management and construction of a state-of-the-art manufacturing facility.

Although *Davis* was decided on a Rule 29 motion, in this case the Court can already ascertain that the government's theory fails as a

---

distinguish *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006)).

Judge Caproni
Page 4 of 6

matter of law. Its right-to-control theory as to the Buffalo Defendants is, unavoidably, the same theory that failed in *Davis*. There is no way around it. Even if a jury were to convict the Buffalo Defendants under the right-to-control theory articulated in the government's motion papers, but not in the Superseding Indictment (*see* Docket No. 220 at 39-40; Docket No. 299 at 41-50), the Court would have to vacate that conviction and enter a judgment of acquittal for the reasons given in *Davis*. There is no reason to subject the Buffalo Defendants to a trial based on a legal theory that, as *Davis* explains, is simply untenable.

The government may attempt to circumnavigate *Davis* by doing what it did in *Davis* itself – repeatedly changing theories, none of which are alleged in the Superseding Indictment, to entice the jury to ignore the absence of cognizable harm and, instead, convict based on alleged non-material misrepresentations. But those efforts fail, and should fail, just as they did in *Davis*.

The government may suggest that Todd Howe, a cooperating informant, and the Buffalo Defendants acted deceitfully by not telling the Fort Schuyler board about the relationship and dealings among Howe, co-defendant Kaloyeros, and the Buffalo Defendants. But this effort is in vain, as *Davis* reaffirms that alleged deceit[4] without actual or potential harm is not enough. *See* Exhibit A at 26 ("In analyzing these right to control/essential element cases, it appears that convictions have been upheld where the deceit had the potential to cause economic harm to the victim or where it involved a violation of the law. Convictions where these factors were not present were reversed, even though the victim would not have entered into the transaction had it known of the deceit.").

Similarly, the government may adhere to its argument that the procurement policies of the SUNY Research Foundation constitute evidence that Fort Schuyler was required to administer a "fair, open, and competitive" process, and that the Buffalo Defendants' conduct resulted

---

[4] The Buffalo Defendants engaged in no deceit and the government struggles to even identify any supposed deceit by them (as opposed to Howe, who apparently was deceiving many). The government's theories on this score include a supposedly "rigged" process to become a qualified developer and failure to disclose that Howe had done work for the Buffalo Defendants' construction-management company. None of this changes the impact of *Davis* – or the reality that the government has no cognizable theory of criminal liability as to the Buffalo Defendants.

Judge Caproni
Page 5 of 6

in a process that was not fair, open, or competitive.  The government's pre-*Davis* submission, however, argues only that "Fort Schuyler used the procurement policies of the SUNY Research Foundation, which were "intended 'to promote open and free competition in procurement transactions' and 'to ensure that procurements are priced competitively and that the selection process is not influenced improperly.'" Gov't R. Br. at 49 (citing Compl. ¶ 76).  Judge Preska's decision recognizes that the harm analysis requires something more.  *See* Exhibit A at 45 (finding no evidence that the defendants' deceit "went to an essential element of the bargain because defendants violated laws or exposed their counterparties to legal liability").  The government has implicitly conceded that the SUNY Research Foundation's procurement policies do not constitute law and are not binding in any way.  *See* Gov't R. Br. at 49.[5]  Nor does the government contend that a violation of these policies would have exposed Fort Schuyler to legal liability.  *See* Gov't R. Br. at 49.  This fact is also fatal to the government's case.

*Davis* shows that the right-to-control theory does not free the government from having to establish actual or potential harm.  But avoiding this requirement is exactly what the government tries to do in this case.  After nearly twelve months, and an investigation spanning almost three years, the government has yet to articulate a cognizable theory of harm.  Simply put, the government is prosecuting the <u>exact</u> same case against the Buffalo Defendants that it prosecuted in *Davis*, on an equally flawed theory, except that the case against the Buffalo Defendants concerns a non-binding RFP process, less evidence, and more meager allegations.  As in *Davis*, the government is pursuing an amorphous right-to-control theory without any legal basis to support it.

Judge Preska did not render her decision in *Davis* lightly, acknowledging that "[t]o the Court's recollection, this is the only case in which it has granted a new trial."  Exhibit A at 71.  But she was driven to this result by her "great concern that innocent person(s) may have been convicted."  Exhibit A at 71.  That same grave concern is implicated no

---

[5] Unlike the Port Authority's policies in *Davis*, which clearly applied to the contract at issue there, the SUNY Research Foundation's procurement policies are not binding upon Fort Schuyler.  The government in our case carefully alleges that Fort Schuyler <u>used</u> these policies, *see* Gov't R. Br. at 49 (emphasis added), but never alleges, and could not honestly allege, that Fort Schuyler was bound by the policies, that the policies had the force of law, or that the policies were incorporated into the RFP or the RFP process.

Judge Caproni
Page **6** of **6**

less forcefully or meaningfully here.  And the Court should not wait for
the Buffalo Defendants to be wrongfully convicted, after enduring the
ordeal of a lengthy trial, before holding that the government's wire-fraud
theory fails as a matter of law.  After *Davis*, it is clear that it does and,
thus, no reason exists to continue this torturous exercise against the
Buffalo Defendants.  Counts One and Four, and the Superseding
Indictment, therefore, should be dismissed.

      We remain available to discuss the import of *Davis* and to argue
the pending motions.

                        Respectfully submitted,

                        */s/ Terrence M. Connors*

                        Terrence M. Connors

cc: All counsel of record (via CM-ECF)
Attachments (Exhibit A; Exhibit B; Exhibit C)