
# CONNORS LLP

*Attorneys At Law*
Terrence M. Connors
Randall D. White*
John T. Loss
Vincent E. Doyle III
Michael J. Roach
Lawlor F. Quinlan III
James W. Grable, Jr.
Joseph D. Morath, Jr.
Mollie C. McGorry
Paul A. Woodard
Nicholas A. Romano
Caitlin M. Higgins
Christina S. Parker
Christopher J. Larrabee
Caitlin E. O'Neil
Trevor N. White
Sarah M. Washington

*Paralegals*
Curtis J. Ahrens, Jr.
John P. Kromer
Sara E. Lyons
Christine A. Trojan, R.N.
Katherine M. Grossberg
Margaret Dickey, R.N.
Julie Scott, L.P.N.
Lea Ann Wilczak, R.N.
Dianne M. Lysarz, R.N.

*Also admitted in District of Columbia*

August 31, 2017

*Via CM-ECF*

Honorable Valerie E. Caproni
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Joseph Percoco, et al.*
             No. 16-CR-776 (VEC) (S.D.N.Y.)

Dear Judge Caproni:

      We represent Defendant Kevin Schuler. We write on behalf of Mr. Schuler, Defendant Louis Ciminelli, and Defendant Michael Laipple (the "Buffalo Defendants") in response to the government's letter, dated August 23, 2017, which discusses Hon. Loretta A. Preska's decision in *United States v. Davis*, No. 13 Cr. 923, 2017 WL 3328240 (S.D.N.Y. Aug. 3, 2017).[1]

      The government starts by claiming that because Judge Preska granted a judgment of acquittal after trial, *Davis* is irrelevant to the pending motions to dismiss. (Dkt. 313 at 1-3.) But if the superseding indictment (Dkt. 162 (the "Indictment")) does not charge a valid right-to-control theory, the government cannot cure the deficiency at trial without constructively amending the Indictment. *See Davis*, 2017 WL 3328240, at *33 (holding that because "a sufficiently pled right to control theory was not contained in the indictment . . . the evidence and jury charge pursuant to a right to control theory worked a constructive amendment").[2] Forcing the defendants and the Court to endure a months-long trial on a futile theory of prosecution is simply perverse. (Dkt. 309 at 4, 6.) Small wonder, then, that the government steps quickly past its procedural distinction and

---

[1]    The Buffalo Defendants join, and incorporate by reference, the arguments submitted by Defendant Alain Kaloyeros in his letter dated August 29, 2017.
[2]    As the Buffalo Defendants have explained (Dkt. 299 at 41-45; Dkt. 309 at 1-2 n.1), the Indictment does not allege a right-to-control theory at all.

attempts to reconcile its theory with *Davis* and the case law *Davis* analyzes. In this, the government fails.

Judge Preska distilled from the Second Circuit's right-to-control jurisprudence two viable iterations of the theory. First, a right-to-control theory can succeed where the defendant's deceit goes to an essential element of the contract between the defendant and the victim. *See Davis*, 2017 WL 3328240, at *9, 15. Cases applying this doctrine have affirmed convictions where the defendant's deceit pertained to the parties' economic exchange (*i.e.*, the benefits and burdens of the parties' bargain), violated the law, or exposed the victim to legal liability. *See id.* at *8-10, 15-17. These cases also hold, however, that the government must do more than establish that the victim would not have entered into the transaction had it been aware of the defendant's deceit. *See id.* at *8, 12-13. Furthermore, if the victim received the full economic benefit of its bargain, any alleged deceit necessarily does not pertain to an essential element. *See id.* at *9, 12-13, 15-16. Second, a right-to-control theory can succeed where the defendant's deceit exposed the victim to actual or potential economic harm. *See id.* at *10, 17.[3]

The government's letter initially adopts the first approach, claiming that the Buffalo Defendants "deprived Fort Schuyler [Management Corporation] of the right to control its assets by making material misrepresentations that went to an essential element of their bargain with Fort Schuyler." (Dkt. 313 at 3.) But the only "bargain" between Fort Schuyler and the Buffalo Defendants' former company, LPCiminelli Inc. ("LPC"), is the Riverbend contract. The deceit alleged in the Indictment, however, pertains only to the request-for-proposal ("RFP") process by which Fort Schuyler identified "preferred" local developers.[4] Indeed, the government's letter does not even argue that the Buffalo Defendants'

---

[3] *Davis* suggests that this second iteration is an alternative to the essential-element theory. But as discussed below, the Second Circuit's recent decision in *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017)—not discussed in *Davis*—holds that in every right-to-control case the government must prove that the alleged misrepresentations "can or do result in tangible economic harm." *Id.* at 111. This requirement is distinct from the rule that the defendant must contemplate economic harm to the victim.

[4] Thus, when the government claims that the Indictment "contains ample allegations regarding the relevance of the deceit to the object of the contract and to the nature of the bargain" it cites paragraphs 22, 39, 41, and 45 of the Indictment (Dkt. 313 at 2 n.2), all of which allege deceit in the RFP process, not deceit in the contracting process. (*See also* Dkt. 264 at 53 (arguing that the Indictment alleges "material misrepresentations and omissions" by accusing the defendants of deceit in the RFP process)).

alleged misrepresentations pertained to the benefits and burdens of the Riverbend contract or exposed Fort Schuyler to legal liability. Nor does it dispute that Fort Schuyler received the full economic benefit of the Riverbend contract.

Instead, the government argues that the Buffalo Defendants' alleged misrepresentations influenced the RFP process, which in turn influenced the award of the Riverbend contract. (Dkt. 313 at 3.) But the government cites no authority for eliminating the required connection between the alleged deceit and an essential element of the parties' contract. *See, e.g.*, *United States v. Shellef*, 507 F.3d 82, 109 (2d Cir. 2007) (finding the indictment legally insufficient because "it fails to allege that [the defendant] misrepresented the nature of the bargain" (internal quotation marks omitted)). The government also fails to explain how the Second Circuit's essential-element doctrine could apply to the RFP award. When Fort Schuyler designated LPC a preferred developer, it did not agree to give, receive, or do anything; it simply expressed a judgment about LPC's qualifications.[5] Thus, it makes no sense to ask whether the Buffalo Defendants' alleged deceit pertained to the economic benefits and burdens of the RFP award, or whether Fort Schuyler received the full economic benefit of the RFP award. The RFP award was not an economic decision.[6]

The government tries to give the RFP award an economic tint by arguing that "the selection of a preferred developer . . . would permit Fort Schuyler to award additional contracts quickly to the developer without a further bidding process on each future project." (*Id.*) This statement misleadingly suggests that it is the selection of a preferred developer that permits Fort Schuyler to act quickly and forego competitive bidding. As the government well knows, Fort Schuyler can award contracts however it likes because it is a private entity. Fort Schuyler chose to award contracts without competitive bidding before it ever prepared the Buffalo RFP, and it could have awarded the Riverbend contract to any company it wished, with or without competitive bidding and regardless of who had "won" the Buffalo RFP. Thus, notwithstanding its vague hints, the government is unwilling to directly assert, and could not hope to prove, that the RFP award precluded economically valuable competition for the Riverbend contract that would otherwise have occurred.

---

[5]  For this reason, the government's reference to "preferred developer *agreements*" (Dkt. 313 at 4 (emphasis added)) is a misnomer.

[6]  In any event, there is no dispute that the alleged deceit did not pertain to the essence of the RFP submission—LPC's qualifications.

Try as it might to argue otherwise, the government's essential-element theory boils down to but-for causation: absent the Buffalo Defendants' alleged deceit, Fort Schuyler would not have named LPC a preferred developer. (Dkt. 1 ¶¶ 74, 76, 78-79, 85; Dkt. 264 at 49, 53-54.) That is not sufficient. *See Davis*, 2017 WL 3328240, at *24 ("The cases . . . could not be clearer: it is not enough for the Government to show that but for the misrepresentation, the transaction would not have occurred.").

Toward the end of its letter, the government also claims that "the defendants contemplated that Fort Schuyler would be exposed to potential or actual economic harm, as the design of the fraud was to forestall other competitors from being chosen" as preferred developers—*i.e.*, was designed to help LPC "win" the preferred-developer designation. (Dkt. 313 at 4.) This passing attempt at an alternative right-to-control theory fares no better than the essential-element argument. For one thing, the government's explanation is a non-sequitur: the government offers no reason why a scheme to be one of the companies awarded the preferred-developer designation—an award that does not oblige Fort Schuyler to spend, do, or promise anything—shows contemplated economic harm to Fort Schuyler.[7] Moreover, contemplated economic harm is necessary (Dkt. 220 at 12, 17-18; Dkt. 299 at 28), but not sufficient. As the Second Circuit explained earlier this year, "misrepresentations or non-disclosure of information cannot support a conviction under the 'right to control' theory unless those misrepresentations or non-disclosures *can or do* result in tangible economic harm." *United States v. Finazzo*, 850 F.3d 94, 111 (2d Cir. 2017) (emphasis added); *see also Davis*, 2017 WL 3328240, at *17 ("There was also insufficient evidence for a rational jury to find that Defendants' deceit exposed the Port Authority to risk of economic harm or undisclosed economic risk.").[8] The government does not (and could not) argue that either the alleged deceit or LPC's selection as a preferred developer was designed to or did prevent competition on the Riverbend contract, expose Fort Schuyler to an unforeseen economic risk, cause Fort Schuyler to overpay on the Riverbend contract, or saddle Fort Schuyler with a deficient product.

The cases the government cites only highlight the gulf between a valid right-to-control theory and its theories in this case:

---

[7] In *United States v. Yaron*, No. 10 Cr. 363, 2012 WL 2477646 (S.D.N.Y. June 28, 2012), by contrast, the defendants' scheme ensured that they would be awarded construction contracts even if another company was the low bidder. *See id.* at *2.

[8] As the quoted language indicates, *Finazzo* does not limit the "tangible economic harm" requirement to any specific iteration of the right-to-control theory.

- In *United States v. Viloski*, 557 F. App'x 28 (2d Cir. 2014), the defendant exposed the victim to actual and potential economic harm by incurring consulting fees without doing any consulting work, and preventing the victim from negotiating better deals for itself. *See id.* at 31, 34. Here, the government does not allege that Fort Schuyler paid for a service it never received, or was prevented from negotiating better terms on the Riverbend contract.

- In *United States v. Chandler*, 98 F.3d 711 (2d Cir. 1996), the court held that the intent to harm required by the bank-fraud statute "can be inferred from exposure to potential loss." *Id.* at 716. Because the defendant had obtained credit under an assumed name, the bank was exposed "to the risk that the [defendant] was less creditworthy than it believed." *Id.* Here, the government does not allege that the Buffalo Defendants misrepresented LPC's qualifications, or in any other way exposed Fort Schuyler to the risk that LPC was less proficient than Fort Schuyler believed.[9]

- In *United States v. Coyne*, 4 F.3d 100 (2d Cir. 1993), the court held that the government had proved a deprivation of money or property by showing that the defendant, a county executive, "intended to rig the bidding [for a contract to supply a government car] and *caused the County to pay more for the car*." *Id.* at 110 (emphasis added). Here, the government does not even claim that Fort Schuyler overpaid on the Riverbend contract, much less that the Buffalo Defendants' alleged deceit caused the overpayment.[10]

The government's letter confirms that its wire-fraud theories in this case bend the right-to-control concept well beyond its breaking point. Counts 1 and 4 should be dismissed.

---

[9] Indeed, as *Davis* points out, "all of the wire fraud cases where convictions were upheld where intent was found based on a risk of economic harm involved financial instruments." 2017 WL 3328240, at *17.

[10] The remaining right-to-control cases cited in the government's letter have been addressed in the Buffalo Defendants' prior briefing. (Dkt. 220 at 17, 20, 24-25, 32 n.9, 36, 40.)

Respectfully,

*[signature: Terrence M. Connors]*

Terrence M. Connors

TMC/dab

cc:   All counsel of record (*via CM-ECF*)