UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

                                 :

  UNITED STATES OF AMERICA        :        <u>SUPERSEDING INDICTMENT</u>

           - v. -                 :

                                  :        ~~S1~~S2 16 Cr. 776 (VEC)

  JOSEPH PERCOCO,
      a/k/a "Herb,"               :
  ALAIN KALOYEROS,
      a/k/a "Dr. K,"              :
  PETER GALBRAITH KELLY, JR.,
      a/k/a "Braith,"             :
  STEVEN AIELLO,
  JOSEPH GERARDI,                 :
  LOUIS CIMINELLI,
  MICHAEL LAIPPLE, and            :
  KEVIN SCHULER,
                                  :

                Defendants.
                                  :

- - - - - - - - - - - - - - - - x


<u>OVERVIEW</u>

1.   As described more fully below, the charges in
this Indictment stem from two wide-ranging and overlapping
criminal schemes involving bribery, corruption, and fraud in the
award of hundreds of millions of dollars in New York State (the
"State") contracts and other official benefits.  The first
scheme concerned the payment of hundreds of thousands of dollars
as directed by STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI,
MICHAEL LAIPPLE, and KEVIN SCHULER, the defendants, to Todd
Howe, who, among other things, was an agent and representative
of SUNY Polytechnic Institute ("SUNY Poly"), a State-funded

public university.  In exchange, Howe worked with ALAIN
KALOYEROS, a/k/a "Dr. K," the defendant, who was the head of
SUNY Poly, to secretly rig the bidding process for State
contracts worth hundreds of millions of dollars in favor of the
companies owned and managed by AIELLO, GERARDI, CIMINELLI,
LAIPPLE, and SCHULER.  The second scheme involved the payment of
hundreds of thousands of dollars in bribes by two of Howe's
clients — the company run by AIELLO and GERARDI, and an energy
company, for which PETER GALBRAITH KELLY, the defendant, was the
head of External Affairs — to JOSEPH PERCOCO, a/k/a "Herb," the
defendant, who served as the Executive Deputy Secretary to the
Governor of the State, in exchange for PERCOCO's assistance in
obtaining official State action, including benefits worth
millions of dollars to the clients.

<u>RELEVANT INDIVIDUALS AND ENTITIES</u>

*New York State Government and the Office of the Governor*

2.    The State's executive branch is headed by the
Governor, who serves as the State's chief executive, managing
various State agencies, including those charged with overseeing
economic development, environmental conservation,
transportation, and energy.  The Governor's closest advisors and
aides are referred to as working in the "Executive Chamber."  In
each year relevant to this Indictment, the government of the

2

State received funds from the federal government in excess of
$10,000 per year.

*JOSEPH PERCOCO*

3.    In or about January 2011, JOSEPH PERCOCO, a/k/a
"Herb," the defendant, was appointed to be the Executive Deputy
Secretary to the Governor.  As Executive Deputy Secretary,
PERCOCO worked in the Executive Chamber and was a high-ranking,
senior, and influential part of the Governor's Executive staff.
PERCOCO also had a longstanding personal relationship with the
Governor and the Governor's family, and was generally seen as
the Governor's "right-hand man," who coordinated access to the
Governor and often spoke for him on a broad array of substantive
and administrative matters.  PERCOCO also served as a primary
"gatekeeper" of opportunities to speak or meet with the
Governor, oversaw logistics of the Governor's official events
and travel, and supervised appointments and administrative
matters for the Executive Chamber.  During all times relevant to
this Indictment, PERCOCO's primary work location was in
Manhattan, New York, although he typically traveled to Albany,
New York approximately several times per month and was an almost
constant presence with the Governor during the Governor's
official events.

4.     On or about April 21, 2014, JOSEPH PERCOCO, a/k/a "Herb," the defendant, officially left New York State employment to serve as campaign manager for the Governor's reelection campaign, and returned to State employment on or about December 8, 2014.  However, during the time period that PERCOCO was the manager of the Governor's reelection campaign, he continued to function in a senior advisory and supervisory role with regard to the Governor's Office, and continued to be involved in the hiring of staff and the coordination of the Governor's official events and priorities, and to travel with the Governor on official business, among other responsibilities.  PERCOCO permanently left his position as Executive Deputy Secretary in or about January 2016.

5.     JOSEPH PERCOCO, a/k/a "Herb," the defendant, has known Todd Howe since PERCOCO was a college student, when Howe hired PERCOCO to work for the Former Governor.

*CNSE, SUNY Poly, and Fort Schuyler*

6.     The College of Nanoscale Science and Engineering ("CNSE") was a public institution of higher education that was funded in part by the State.  In or around September 2014, CNSE merged with the State University of New York Institute of Technology to become a new public university known as SUNY Poly (referred to here collectively with CNSE as "SUNY Poly").  SUNY

4

Poly is a public institution of higher education located principally in Albany, New York, that is part of the New York State University system (the "SUNY System"). The SUNY System is funded in part by the State, and also receives federal funds in excess of $10,000 per year.

7.   In or around 2009, Fort Schuyler Management Corporation ("Fort Schuyler"), located in Albany, New York, was created as a non-profit real estate corporation affiliated with SUNY Poly that could enter into contracts with private companies on SUNY Poly's behalf, for the purpose of carrying out development projects paid for with State funding.  Fort Schuyler was governed by a Board of Directors, which, among other things, was charged with selecting private companies to partner with Fort Schuyler in SUNY Poly-related development projects. Certain public funding for SUNY Poly came through the Research Foundation for the State University of New York (the "Research Foundation"), which paid, at least in part, the salaries of many individuals affiliated with SUNY Poly and Fort Schuyler, including ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, and Todd Howe (as a retained consultant), during the times relevant to this Indictment. During each year relevant to this Indictment, the Research Foundation received more than $10,000 in federal funding.

*ALAIN KALOYEROS*

8.    ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, served as the head of SUNY Poly at all times relevant to this Indictment.  KALOYEROS also served as a member of the Board of Directors of Fort Schuyler.  KALOYEROS selected and provided direction to Fort Schuyler's officers and others working on behalf of Fort Schuyler.

*Todd Howe*

9.    Todd Howe has held several public positions, including working for the Governor of New York when the Governor was United States Secretary of Housing and Urban Development, and for a former Governor of New York, who was the father of the current Governor.

10.    During all times relevant to this Indictment, Howe was the president and primary employee of a government relations and lobbying firm (the "Government Relations Firm") that had an office located in Washington, D.C.

11.    Beginning in or about 2012, Howe was retained as a consultant to SUNY Poly.  In his role as a consultant for SUNY Poly, Howe served as a close advisor to ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, and maintained an office at SUNY Poly in Albany, New York.  Howe acted as an agent of SUNY Poly with respect to, among other things, SUNY Poly's development

6

projects, including large, State-funded development projects in Syracuse and Buffalo, New York.  Howe also served as a primary liaison between SUNY Poly and the Governor's senior staff.

12.  At various times relevant to this Indictment, Howe also was retained by and received payments from (a) a large real estate development firm located in Syracuse, New York (the "Syracuse Developer"); (b) a large Buffalo-based construction and development company (the "Buffalo Developer"); and (c) a privately-owned electric power generation development and asset management company (the "Energy Company").

*STEVEN AIELLO, JOSEPH GERARDI, and the Syracuse Developer*

13.  At all times relevant to this Indictment, the Syracuse Developer, through various corporate affiliates, built, owned, and managed real estate in and around New York State.  In or around December 2013, the Syracuse Developer was awarded a contract with Fort Schuyler to serve as the preferred developer for projects of SUNY Poly to be created in Syracuse, New York. This contract permitted the Syracuse Developer to be chosen for SUNY Poly development projects of any size in or around Syracuse without further competitive bidding, and, indeed, shortly thereafter, the Syracuse Developer received a contract worth approximately $15 million to build a film studio (the "Film Studio"), and in or around October 2015, the Syracuse Developer

received a contract worth approximately $90 million to build a manufacturing plant, both in the vicinity of Syracuse, New York.

14.   STEVEN AIELLO, the defendant, was a founder of the Syracuse Developer and served as its President during all times relevant to this Indictment.

15.   JOSEPH GERARDI, the defendant, was a founder of the Syracuse Developer and served as its General Counsel during all times relevant to this Indictment.

### *LOUIS CIMINELLI, MICHAEL LAIPPLE, KEVIN SCHULER, and the Buffalo Developer*

16.   At all times relevant to this Indictment, the Buffalo Developer provided construction management and general contracting services on various public and private projects in the State.  In or around January 2014, the Buffalo Developer was named by Fort Schuyler as a preferred developer for projects of SUNY Poly to be built in Buffalo, New York.  This award permitted the Buffalo Developer to be chosen for SUNY Poly development projects of any size in or around Buffalo without further competitive bidding, and, indeed, in or around March 2014, as a result of its position as a preferred developer, the Buffalo Developer received a contract worth approximately $225 million to build a manufacturing plant in Buffalo, New York. That contract ultimately expanded to be worth approximately $750 million.

17.  LOUIS CIMINELLI, the defendant, was the Chairman and CEO of the Buffalo Developer, and served in that role at all times relevant to this Indictment.

18.  MICHAEL LAIPPLE, the defendant, was the President of a division of the Buffalo Developer that focused, among other things, on initiatives involving public-private infrastructure projects, and served in that role at all times relevant to this Indictment.

19.  KEVIN SCHULER, the defendant, was a Senior Vice President for the Buffalo Developer, and served in that role at all times relevant to this Indictment.

*PETER GALBRAITH KELLY and the Energy Company*

20.  As is relevant to this Indictment, since in or about 2008, the Energy Company had been working to develop a power plant in Wawayanda, New York (the "New York Power Plant"), that was estimated to cost approximately $900 million.  At around the same time, the Energy Company also was developing a Power Plant in New Jersey (the "New Jersey Power Plant").

21.  At all times relevant to this Indictment, PETER GALBRAITH KELLY, JR., a/k/a "Braith," the defendant, was the Senior Vice President of External Affairs at the Energy Company. In that role, KELLY was responsible for, among other things, public relations and governmental affairs for the Energy

9

Company, in particular as it related to the building of new power plants across the United States.

<u>THE BUFFALO BILLION FRAUD AND BRIBERY SCHEME</u>

22.   As part of the first criminal scheme alleged in this Indictment, Todd Howe arranged for the Syracuse Developer, at the direction of STEVEN AIELLO and JOSEPH GERARDI, the defendants, and the Buffalo Developer, at the direction of LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN SCHULER, the defendants, to obtain official State favors through Howe's position at SUNY Poly.  More specifically, in exchange for hundreds of thousands of dollars in payments to Howe from the Syracuse Developer and the Buffalo Developer, respectively, Howe and ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, devised a plan to secretly rig Fort Schuyler's bidding process so that State contracts that were ultimately worth hundreds of millions of dollars would be awarded to the Syracuse Developer and the Buffalo Developer.

23.   As part of their plan, Todd Howe and ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, had Fort Schuyler issue two requests for proposals (the "RFPs"), one for Syracuse (the "Syracuse RFP") and one for Buffalo (the "Buffalo RFP"), that would give the appearance of an open competition to choose "preferred developers" in Syracuse and Buffalo, respectively. However, the Syracuse Developer and the Buffalo Developer had

10

been preselected by Howe and KALOYEROS to become the preferred developers, after the Syracuse Developer and the Buffalo Developer had each made sizeable contributions to the Governor's reelection campaign and had begun paying Howe in exchange for Howe's influence over the RFP processes.  These preferred developer contracts were particularly lucrative for the Syracuse Developer and the Buffalo Developer, as the Syracuse Developer and the Buffalo Developer were then entitled to be awarded future development contracts of any size in Syracuse or Buffalo, respectively, without additional competitive bidding, and thus without competing on price or qualifications for particular projects.

24.  To carry out their criminal scheme, Todd Howe and ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, agreed to and did provide secret information concerning the Syracuse RFP to STEVEN AIELLO and JOSEPH GERARDI, the defendants, including advance copies of the RFP that were provided to no other developers. Howe and KALOYEROS also worked with AIELLO and GERARDI to secretly tailor the Syracuse RFP to include qualifications that would favor the Syracuse Developer in Fort Schuyler's selection process for the Syracuse RFP.  Similarly, further to carry out their criminal scheme, Howe and KALOYEROS agreed to and did provide secret information regarding the Buffalo RFP to LOUIS

11

CIMINELLI, MICHAEL LAIPPLE, and KEVIN SCHULER, the defendants, including advance copies of the RFP that were provided to no other developers, as well as information regarding the location and purpose of the first preferred developer project – information that likewise was provided to no other developer. Howe and KALOYEROS also worked with CIMINELLI, LAIPPLE, and SCHULER to secretly tailor the Buffalo RFP to include qualifications that would favor the Buffalo Developer in Fort Schuyler's selection process for the Buffalo RFP.  Furthermore, KALOYEROS, Howe, STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN SCHULER, the defendants, collaborated in secretly tailoring the Syracuse and Buffalo RFPs by, among other things, exchanging through Howe ideas for potential qualifications to be included in the Syracuse and Buffalo RFPs.

        25.  As part of their criminal scheme, Todd Howe and ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN SCHULER, the defendants, deceived and concealed material information regarding the drafting and selection process related to the RFPs from Fort Schuyler and its Board of Directors in the following ways, among others, and thereby exposed Fort Schuyler to risk of economic harm:

a.    KALOYEROS falsely represented to Fort Schuyler and its Board of Directors that the bidding processes for the Syracuse RFP and the Buffalo RFP were fair, open, and competitive, when in truth and in fact, KALOYEROS and Howe had ~~predetermined~~designed the RFPs so that the Syracuse Developer would be awarded the Syracuse RFP and the Buffalo Developer would be awarded the Buffalo RFP.

b.    The Syracuse Developer falsely certified that no one was retained, employed, or designated by or on behalf of the Syracuse Developer to attempt to influence the procurement process, when, in truth and in fact, the Syracuse Developer had retained Howe to influence the procurement process.

c.    The Buffalo Developer falsely certified that no one was retained, employed, or designated by or on behalf of the Buffalo Developer to attempt to influence the procurement process, when, in truth and in fact, the Buffalo Developer had retained Howe to influence the procurement process.

26.    In the course of, and in furtherance of, the criminal scheme, ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN SCHULER, the defendants, and Todd Howe, as well as others, including employees of SUNY Poly and Fort Schuyler, exchanged

13

interstate emails and telephone calls with individuals located in Manhattan, New York, including (i) the then-assistant secretary for economic development for New York State (the "Assistant Secretary"), who worked part-time at the Governor's offices in Manhattan, New York; and (ii) Manhattan-based employees of the Empire State Development Corporation, which is the State's main economic development agency and was the administrator of funding for certain development projects awarded to the Syracuse Developer and to the Buffalo Developer.

27.   As a result of the criminal conduct alleged herein, the Syracuse Developer was awarded two State contracts worth a total of approximately $105 million, and the Buffalo Developer was awarded a State contract that was ultimately worth approximately $750 million.

<u>THE PERCOCO BRIBERY SCHEME</u>

28.   The second scheme alleged in this Indictment involved Todd Howe arranging for two of his clients – the Syracuse Developer and the Energy Company – to pay bribes to JOSEPH PERCOCO, a/k/a "Herb," the defendant, in exchange for PERCOCO's use of his official position as Executive Deputy Secretary to the Governor and his far-reaching influence within the Executive Chamber to provide official State favors to the

Syracuse Developer and the Energy Company worth millions of dollars.

*PERCOCO's Receipt of Bribes from the Energy Company*

29. From at least in or about 2012 up through and including at least in or about 2016, Todd Howe and PETER GALBRAITH KELLY, JR., a/k/a "Braith," the defendant, arranged for the Energy Company to pay more than $287,000 in bribes to JOSEPH PERCOCO, a/k/a "Herb," the defendant, in exchange for PERCOCO'S official assistance to benefit the Energy Company on an as-needed basis.

30. As relevant here, the relationship between JOSEPH PERCOCO, a/k/a "Herb," and PETER GALBRAITH KELLY, JR., a/k/a "Braith," the defendants, began in or about 2010, when KELLY began offering and providing things of value to PERCOCO in an effort to obtain PERCOCO's official assistance on behalf of the Energy Company. Beginning in or about 2012, in response to repeated pressure from PERCOCO, KELLY agreed to and arranged for the Energy Company to create a "low-show" job for PERCOCO's wife that resulted in payment to the PERCOCOs of $7,500 per month. To conceal the nature and source of the payments, PERCOCO, KELLY, and Howe took the following steps, among others:

a.    A consultant who worked for the Energy Company ("Consultant-1") was used as a pass-through to conceal the payments to the PERCOCOs.

b.    KELLY, and others at KELLY's direction, purposefully kept PERCOCO's wife's last name and photograph out of certain work related documents and directed PERCOCO's wife to refer to herself by her first name when dealing with certain individuals when doing work for the Energy company.

c.    KELLY falsely claimed to other executives at the Energy Company that he had obtained an ethics opinion from the Governor's office approving the Energy Company's arrangement with PERCOCO's wife.

d.    In his required financial disclosure statements for the years 2012 and 2014, PERCOCO represented that his wife was employed by a limited liability company in the name of Consultant-1, and did not list the Energy Company.

31.    In exchange for the bribe payments paid through PERCOCO's wife as directed by PETER GALBRAITH KELLY, JR., a/k/a "Braith," the defendant, JOSEPH PERCOCO, a/k/a "Herb," the defendant, agreed to take, and in fact took, official actions for the benefit of the Energy Company as the opportunity arose. Official actions taken by PERCOCO for the benefit of the Energy Company included, but were not limited to, the following:

a.   PERCOCO exerted pressure on and provided advice to certain other State officials, with the intent that those officials secure for the Energy Company an agreement between a New Jersey state agency and the New York State Department of Environmental Conservation ("DEC") that would allow the Energy Company to purchase emissions credits in New York worth millions of dollars to the Energy Company in connection with the New Jersey Power Plant (the "Emissions Credits Agreement").  After PERCOCO took these actions, the Energy Company did in fact receive the Emissions Credits Agreement.

b.   PERCOCO exerted pressure on and provided advice to certain other State officials, with the intent that those officials work to secure for the Energy Company a lucrative long-term power purchase agreement (the "PPA") with the State that would guarantee a buyer for the power to be produced by the New York Power Plant.

32.  After JOSEPH PERCOCO, a/k/a "Herb," the defendant, learned that the Energy Company would not be awarded the PPA, PERCOCO worked with Todd Howe to continue to extort payments from the Energy Company by promising PETER GALBRAITH KELLY, JR., a/k/a "Braith," the defendant, that PERCOCO would continue to take official action to help the Energy Company

obtain the PPA and taking steps to make KELLY believe PERCOCO
was continuing to take such action.

*PERCOCO's Receipt of Bribes from the Syracuse Developer*

33.  From at least in or about August 2014 up through
and including at least in or about October 2014, Todd Howe
arranged for the Syracuse Developer to pay approximately $35,000
in bribe payments to JOSEPH PERCOCO, a/k/a "Herb," the
defendant, in exchange for PERCOCO's official assistance to the
Syracuse Developer on an as-needed basis.

34.  To conceal the nature and source of the payments,
the Syracuse Developer and Todd Howe arranged to pay JOSEPH
PERCOCO, a/k/a "Herb," the defendant, through a shell company
controlled by Howe.

35.  In exchange for the bribe payments paid to JOSEPH
PERCOCO, a/k/a "Herb," the defendant, by STEVEN AIELLO and
JOSEPH GERARDI, the defendants, through Todd Howe's shell
company, PERCOCO agreed to take, and in fact took, official
actions for the benefit of the Syracuse Developer as the
opportunity arose.  Official actions taken by PERCOCO for the
benefit of the Syracuse Developer included, but were not limited
to, the following:

a.   PERCOCO exerted pressure on and provided
advice to certain other State officials, with the intent that

those officials reverse an adverse decision by the Empire State
Development Corporation that would have required the Syracuse
Developer to enter into a costly agreement with labor unions
(the "Labor Agreement").  After PERCOCO took these actions, the
adverse decision on the Labor Agreement was in fact reversed.

        b.    PERCOCO exerted pressure on and provided
advice to certain other State officials, with the intent that
those officials secure the release of millions of dollars in
State funds that had been allocated to the Syracuse Developer to
build the Film Studio.  After PERCOCO took these actions, the
New York State Division of Budget did in fact approve the
release of the funds, which was a necessary step toward the
ultimate disbursement of the funds to the Syracuse Developer.

        c.    PERCOCO exerted pressure on and provided
advice to certain other State officials, with the intent that
those officials secure a raise for the son of STEVEN AIELLO, the
defendant, who worked in the Executive Chamber.  After PERCOCO
took these actions, AIELLO's son did in fact receive a State-
funded raise.

        36.   In the course of, and in furtherance of, their
criminal scheme, JOSEPH PERCOCO, a/k/a "Herb," the defendant,
exchanged interstate emails and telephone calls with, among
others, PETER GALBRAITH KELLY, JR., a/k/a "Braith," STEVEN

AIELLO, and JOSEPH GERARDI, the defendants; the Assistant
Secretary; and Todd Howe.

COUNT ONE

(Wire Fraud Conspiracy – The Preferred Developer RFPs)

The Grand Jury charges:

37.   The allegations contained in paragraphs 1 through
19 and 22 through 27 above are hereby repeated, realleged, and
incorporated by reference as if fully set forth herein.

38.   From at least in or about 2013, up to and
including in or about 2015, in the Southern District of New York
and elsewhere, ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO,
JOSEPH GERARDI, LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN
SCHULER, the defendants, and others known and unknown, willfully
and knowingly did combine, conspire, confederate, and agree
together and with each other to commit wire fraud in violation
of Section 1343 of Title 18, United States Code.

39.   It was a part and an object of the conspiracy
that ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH
GERARDI, LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN SCHULER,
the defendants, and others known and unknown, willfully, and
knowingly, having devised and intending to devise a scheme and
artifice to defraud, and for obtaining money and property by
means of false and fraudulent pretenses, representations, and

promises, would and did transmit and cause to be transmitted by
means of wire and radio communication in interstate and foreign
commerce, writings, signs, signals, pictures, and sounds for the
purpose of executing such scheme and artifice, in violation of
Title 18, United States Code, Section 1343, to wit, KALOYEROS,
AIELLO, GERARDI, CIMINELLI, LAIPPLE, SCHULER, and their co-
conspirators, devised a scheme to defraud Fort Schuyler ~~in~~of its
~~award of significant taxpayer-funded development contracts~~right
to control its assets, and thereby exposed Fort Schuyler to risk
of economic harm, by representing to Fort Schuyler that the
bidding processes ~~for those~~leading to the award of certain
significant taxpayer-funded development contracts were fair,
open, and competitive, when, in truth and in fact, KALOYEROS and
Todd Howe, in collaboration and in concert with AIELLO, GERARDI,
CIMINELLI, LAIPPLE, and SCHULER, used their official positions
to secretly tailor the requests for proposals ("RFPs") for those
contracts so that companies that were owned, controlled, and
managed by AIELLO, GERARDI, CIMINELLI, LAIPPLE, and SCHULER
would be favored to win in the selection process for the
contracts, and did transmit and cause to be transmitted

interstate email and telephonic communications in furtherance of

21

their scheme to defraud.

(Title 18, United States Code, Section 1349.)

COUNT TWO

(Wire Fraud – The Syracuse RFP)

The Grand Jury further charges:

40.   The allegations contained in paragraphs 1 through 19 and 22 through 27 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

41.   From in or about 2013, up to and including in or about 2015, in the Southern District of New York and elsewhere, ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, and JOSEPH GERARDI, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, KALOYEROS, AIELLO, and GERARDI devised a scheme to defraud Fort Schuyler ~~in its award of the Syracuse RFP~~of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler that the bidding process for the

22

Syracuse Preferred Developer contract was fair, open, and competitive, when, in truth and in fact, KALOYEROS and Todd Howe, in collaboration and in concert with AIELLO and GERARDI, used their official positions to secretly tailor the RFP for the contract so that the Syracuse Developer, which was owned, controlled, and managed by AIELLO and GERARDI, would be favored to win in the selection process for the contract, and did transmit and cause to be transmitted interstate email and telephonic communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE

(Payments of Bribes and Gratuities – The Syracuse RFP)

The Grand Jury further charges:

42.   The allegations contained in paragraphs 1 through 19 and 22 through 27 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

43.   From at least in or about 2013 to at least in or about 2015, in the Southern District of New York and elsewhere, STEVEN AIELLO and JOSEPH GERARDI, the defendants, willfully and knowingly did corruptly give, offer, and agree to give a thing of value to a person, with intent to influence an agent of a State government agency in connection with business,

transactions, and series of transactions of such State agency
involving a thing of value of $5,000 and more, while such
government and agency was in receipt of, in any one year period,
benefits in excess of $10,000 under a Federal program involving
a grant, contract, subsidy, loan, guarantee, insurance, and
other form of Federal assistance, to wit, AIELLO and GERARDI
paid bribes to Todd Howe in exchange for, to influence, and to
reward the taking of official action in his capacity as an agent
and representative of SUNY Poly, in connection with obtaining
the Syracuse RFP.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

<u>COUNT FOUR</u>

(Wire Fraud – The Buffalo RFP)

The Grand Jury further charges:

44.   The allegations contained in paragraphs 1 through
19 and 22 through 27 above are hereby repeated, realleged, and
incorporated by reference as if fully set forth herein.

45.   From in or about 2013, up to and including in or
about 2015, in the Southern District of New York and elsewhere,
ALAIN KALOYEROS, a/k/a "Dr. K," LOUIS CIMINELLI, MICHAEL
LAIPPLE, and KEVIN SCHULER, the defendants, willfully and
knowingly, having devised and intending to devise a scheme and
artifice to defraud, and for obtaining money and property by

24

means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, KALOYEROS, CIMINELLI, LAIPPLE, and SCHULER devised a scheme to defraud Fort Schuyler ~~in its award of the Buffalo RFP~~of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler that the bidding process for the Buffalo Preferred Developer contract was fair, open, and competitive, when, in truth and in fact, KALOYEROS and Todd Howe, in collaboration and in concert with CIMINELLI, LAIPPLE, and SCHULER, secretly used their official positions to tailor the RFP for the contract so that the Buffalo Developer, which was owned, controlled, and managed by CIMINELLI, LAIPPLE, and SCHULER, would be favored to win in the selection process for the contract, and did transmit and cause to be transmitted interstate email and telephonic communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Sections 1343 and 2.)

<u>COUNT FIVE</u>

(Payments of Bribes and Gratuities – The Buffalo RFP)

The Grand Jury further charges:

25

46.   The allegations contained in paragraphs 1 through 19 and 22 through 27 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

47.   From at least in or about 2013 to at least in or about 2015, in the Southern District of New York and elsewhere, LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN SCHULER, the defendants, willfully and knowingly did corruptly give, offer, and agree to give a thing of value to a person, with intent to influence an agent of a State government agency in connection with business, transactions, and series of transactions of such State agency involving a thing of value of $5,000 and more, while such government and agency was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, CIMINELLI, LAIPPLE, and SCHULER paid bribes to Todd Howe in exchange for, to influence, and to reward the taking of official action in his capacity as an agent and representative of SUNY Poly, in connection with obtaining the Buffalo RFP.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

## COUNT SIX

(Conspiracy to Commit Extortion Under Color of Official Right)

The Grand Jury further charges:

26

48.   The allegations contained in paragraphs 1 through 15, 20 through 21, and 28 through 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

49.   From at least in or about 2012, up to and including in or about 2016, in the Southern District of New York and elsewhere, JOSEPH PERCOCO, a/k/a "Herb," the defendant, while serving in the Office of the Governor, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit extortion as that term is defined in Title 18, United States Code, Section 1951(b)(2), that is, by obtaining cash payments from the Energy Company and the Syracuse Developer, with their consent, such consent having been induced under color of official right, and thereby did obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, PERCOCO would and did agree to cause companies with business before the State – namely, the Energy Company and the Syracuse Developer – to direct payments to PERCOCO in exchange for official actions taken and agreed to be taken by PERCOCO for the benefit of the companies paying him.

(Title 18, United States Code, Sections 1951.)

27

<u>COUNT SEVEN</u>

(Extortion Under Color of Official Right – The Energy Company)

The Grand Jury further charges:

50.   The allegations contained in paragraphs 1 through 15, 20 through 21, and 28 through 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

51.   From at least in or about 2012, up to and including in or about 2016, in the Southern District of New York and elsewhere, JOSEPH PERCOCO, a/k/a "Herb," the defendant, while serving in the Office of the Governor, willfully and knowingly, did commit extortion as that term is defined in Title 18, United States Code, Section 1951(b)(2), that is, by obtaining cash payments from the Energy Company, with its consent, such consent having been induced under color of official right, and thereby did obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, PERCOCO used his official State position and power and authority within the Office of the Governor to cause the Energy Company to make and direct payments to PERCOCO's wife in exchange for official actions taken and agreed to be taken by PERCOCO for the benefit of the Energy Company.

(Title 18, United States Code, Sections 1951 and 2.)

COUNT EIGHT

(Extortion Under Color of Official Right – The Syracuse
Developer)

The Grand Jury further charges:

52.  The allegations contained in paragraphs 1 through
15, 20 through 21, and 28 through 36 above are hereby repeated,
realleged, and incorporated by reference as if fully set forth
herein.

53.  From at least in or about 2014, up to and
including in or about 2015, in the Southern District of New York
and elsewhere, JOSEPH PERCOCO, a/k/a "Herb," the defendant,
while serving in the Office of the Governor, willfully and
knowingly, did commit extortion as that term is defined in Title
18, United States Code, Section 1951(b)(2), that is, by
obtaining cash payments from the Syracuse Developer, with its
consent, such consent having been induced under color of
official right, and thereby did obstruct, delay, and affect
commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3), to wit, PERCOCO used his official
State position and power and authority within the Office of the
Governor to cause the Syracuse Developer to make and direct
payments to PERCOCO in exchange for official actions taken and

29

agreed to be taken by PERCOCO for the benefit of the Syracuse
Developer.

(Title 18, United States Code, Sections 1951 and 2.)

COUNT NINE

(Conspiracy to Commit Honest Services Wire Fraud – the Energy
Company)

The Grand Jury further charges:

54.  The allegations contained in paragraphs 1 through
15, 20 through 21, and 28 through 36 above are hereby repeated,
realleged, and incorporated by reference as if fully set forth
herein.

55.  From at least in or about 2012, up to and
including in or about 2015, in the Southern District of New York
and elsewhere, JOSEPH PERCOCO, a/k/a "Herb," and PETER GALBRAITH
KELLY, JR., a/k/a "Braith," the defendants, Todd Howe, and
others known and unknown, willfully and knowingly did combine,
conspire, confederate and agree together and with each other to
violate Title 18, United States Code, Sections 1343 and 1346.

56.  It was a part and an object of the conspiracy
that JOSEPH PERCOCO, a/k/a "Herb," and PETER GALBRAITH KELLY,
JR., a/k/a "Braith," the defendants, Todd Howe, and others known
and unknown, willfully and knowingly, having devised and
intending to devise a scheme and artifice to defraud, and to
deprive the public of its intangible right to PERCOCO's honest

30

services as a senior official in the Office of the Governor,
would and did transmit and cause to be transmitted by means of
wire communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of
executing such scheme and artifice, in violation of Title 18,
United States Code, Sections 1343 and 1346, to wit, PERCOCO,
while serving as Executive Deputy Secretary to the Governor, and
KELLY agreed that PERCOCO would take official action in exchange
for bribes paid at the direction of KELLY, and did transmit and
cause to be transmitted interstate email and telephonic
communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Section 1349.)

COUNT TEN

(Conspiracy to Commit Honest Services Wire Fraud – The Syracuse
Developer)

The Grand Jury further charges:

57.   The allegations contained in paragraphs 1 through
15, 20 through 21, and paragraphs 28 through 36 above are hereby
repeated, realleged, and incorporated by reference as if fully
set forth herein.

58.   From at least in or about 2014, up to and
including in or about 2015, in the Southern District of New York
and elsewhere, JOSEPH PERCOCO, a/k/a "Herb," STEVEN AIELLO, and
JOSEPH GERARDI, the defendants, Todd Howe, and others known and

31

unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

59.   It was a part and an object of the conspiracy that JOSEPH PERCOCO, a/k/a "Herb," STEVEN AIELLO, and JOSEPH GERARDI, the defendants, Todd Howe, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to PERCOCO's honest services as a senior official in the Office of the Governor, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, PERCOCO, while serving as Executive Deputy Secretary to the Governor, and AIELLO and GERARDI agreed that PERCOCO would take official action in exchange for bribes paid at the direction of AIELLO and GERARDI, and did transmit and cause to be transmitted interstate email and telephonic communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Section 1349.)

COUNT ELEVEN

(Solicitation of Bribes and Gratuities from the Energy Company)

The Grand Jury further charges:

60.   The allegations contained in paragraphs 1 through 15, 20 through 21, and 28 through 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

61.   From at least in or about 2012, up to and including in or about 2016, in the Southern District of New York and elsewhere, JOSEPH PERCOCO, a/k/a "Herb," the defendant, being an agent and representative of a State government, to wit, a senior official in the Office of the Governor, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such government involving a thing of value of $5,000 and more, while such government was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, PERCOCO solicited and accepted cash and things of value from the Energy Company in exchange for

official actions by PERCOCO to benefit the Energy Company and
with the intent that PERCOCO be influenced and rewarded.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

<u>COUNT TWELVE</u>

(Solicitation of Bribes and Gratuities from the Syracuse
Developer)

The Grand Jury further charges:

62.   The allegations contained in paragraphs 1 through
15, 20 through 21, and 28 through 36 above are hereby repeated,
realleged, and incorporated by reference as if fully set forth
herein.

63.   From at least in or about 2014, up to and
including in or about 2015, in the Southern District of New York
and elsewhere, JOSEPH PERCOCO, a/k/a "Herb," the defendant,
being an agent and representative of a State government, to wit,
a senior official in the Office of the Governor, corruptly
solicited and demanded for the benefit of a person, and accepted
and agreed to accept, a thing of value from a person, intending
to be influenced and rewarded in connection with a business,
transaction, and series of transactions of such government
involving a thing of value of $5,000 and more, while such
government was in receipt of, in any one year period, benefits
in excess of $10,000 under a Federal program involving a grant,
contract, subsidy, loan, guarantee, insurance, and other form of

34

Federal assistance, to wit, PERCOCO solicited and accepted cash and things of value from the Syracuse Developer in exchange for official actions by PERCOCO to benefit the Syracuse Developer and with the intent that PERCOCO be influenced and rewarded.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

COUNT THIRTEEN

(Payments of Bribes and Gratuities – The Energy Company)

The Grand Jury further charges:

64.  The allegations contained in paragraphs 1 through 15, 20 through 21, and 28 through 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

65.  From at least in or about 2012 to at least in or about 2016, in the Southern District of New York and elsewhere, PETER GALBRAITH KELLY, JR., a/k/a "Braith," the defendant, who was an executive at the Energy Company, willfully and knowingly did corruptly give, offer, and agree to give a thing of value to a person, with intent to influence an agent of a State government, in connection with business, transactions, and series of transactions of such government, involving a thing of value of $5,000 and more, while such government was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan,

35

guarantee, insurance, and other form of Federal assistance, to wit, KELLY paid JOSEPH PERCOCO, a/k/a "Herb," the defendant, in exchange for, to influence, and to reward the taking of official action to benefit the Energy Company, including official action to advance the development of the New York Power Plant and the New Jersey Power Plant.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

<u>COUNT FOURTEEN</u>

(Payments of Bribes and Gratuities – The Syracuse Developer)

The Grand Jury further charges:

66. The allegations contained in paragraphs 1 through 15, 20 through 21, and 28 through 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

67. From at least in or about 2014 to at least in or about 2015, in the Southern District of New York and elsewhere, STEVEN AIELLO and JOSEPH GERARDI, the defendants, who were executives at the Syracuse Developer, willfully and knowingly did corruptly give, offer, and agree to give a thing of value to a person, with intent to influence an agent of a State government, in connection with business, transactions, and series of transactions of such government, involving a thing of value of $5,000 and more, while such government was in receipt

36

of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, AIELLO and GERARDI paid JOSEPH PERCOCO, a/k/a "Herb," the defendant, in exchange for, to influence, and to reward the taking of official action to benefit the Syracuse Developer, including official action to advance its development projects in the State.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

<u>COUNT FIFTEEN</u>

(False Statements to Federal Officers)

The Grand Jury further charges:

68.   The allegations contained in paragraphs 1 through 19 and 22 through 27 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein. 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

69.   On or about June 21, 2016, in the Southern District of New York and elsewhere, STEVEN AIELLO and JOSEPH GERARDI, the defendantsdefendant, willfully and knowingly did make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit,

37

AIELLO and, while meeting with federal agents and representatives of the United States Attorney's Office for the Southern District of New York, made statements denying involvement in tailoring the Syracuse RFP for the benefit of his company, the Syracuse Developer, when, in truth and in fact, AIELLO conspired to tailor and did tailor the Syracuse RFP for the benefit of his company.

(Title 18, United States Code, Section 1001(a)(2).)

COUNT SIXTEEN

(False Statements to Federal Officers)

The Grand Jury further charges:

70.  The allegations contained in paragraphs 1 through 19 and 22 through 27 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

69. 71.   On or about June 21, 2016, in the Southern District of New York and elsewhere, JOSEPH GERARDI, the defendant, willfully and knowingly did make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, GERARDI, while meeting with federal agents and representatives of the United States Attorney's Office for the Southern District of New York, each separately made statements denying involvement in paying JOSEPH

38

~~PERCOCO, a/k/a "Herb," the defendant, and in~~ tailoring the
Syracuse RFP for the benefit of ~~their~~his company, the Syracuse
Developer, when, in truth and in fact, ~~AIELLO and~~ GERARDI
~~directed payments to PERCOCO and~~ conspired to tailor and did
tailor the Syracuse RFP for the benefit of ~~their~~his company.

(Title 18, United States Code, Section 1001(a)(2).)

COUNT SEVENTEEN

(False Statements to Federal Officers)

The Grand Jury further charges:

72.  The allegations contained in paragraphs 1 through
15, 20 through 21, and 28 through 36 above are hereby repeated,
realleged, and incorporated by reference as if fully set forth
herein.

73.  On or about June 21, 2016, in the Southern
District of New York and elsewhere, STEVEN AIELLO, the
defendant, willfully and knowingly did make materially false,
fictitious, and fraudulent statements and representations in a
matter within the jurisdiction of the executive branch of the
Government of the United States, to wit, AIELLO, while meeting
with federal agents and representatives of the United States
Attorney's Office for the Southern District of New York, made
statements denying involvement in paying JOSEPH PERCOCO, a/k/a

39

"Herb," the defendant, when, in truth and in fact, AIELLO directed payments to PERCOCO.

(Title 18, United States Code, Section 1001(a)(2).)

COUNT EIGHTEEN

(False Statements to Federal Officers)

The Grand Jury further charges:

74.   The allegations contained in paragraphs 1 through 15, 20 through 21, and 28 through 36 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

75.   On or about June 21, 2016, in the Southern District of New York and elsewhere, JOSEPH GERARDI, the defendant, willfully and knowingly did make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, GERARDI, while meeting with federal agents and representatives of the United States Attorney's Office for the Southern District of New York, made statements denying involvement in paying JOSEPH PERCOCO, a/k/a "Herb," the defendant, when, in truth and in fact, GERARDI directed payments to PERCOCO.

(Title 18, United States Code, Section 1001(a)(2).)

FORFEITURE ALLEGATIONS

40

~~70.~~76.    As the result of committing the offenses
charged in Counts One through Fourteen of this Indictment,
JOSEPH PERCOCO, a/k/a "Herb," ALAIN KALOYEROS, a/k/a "Dr. K,"
PETER GALBRAITH KELLY, JR., a/k/a "Braith," STEVEN AIELLO,
JOSEPH GERARDI, LOUIS CIMINELLI, MICHAEL LAIPPLE, and KEVIN
SCHULER, the defendants, shall forfeit to the United States,
pursuant to Title 18, United States, Code, Section 981(a)(1)(C)
and Title 28, United States Code, Section 2461(c), any and all
property, real and personal, that constitutes or is derived from
proceeds traceable to the commission of said offenses, including
but not limited to a sum of money in United States currency
representing the amount of proceeds traceable to the commission
of said offenses.

Substitute Asset Provision

~~71.~~77.    If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or
deposited with, a third person;

c.    has been placed beyond the jurisdiction of
the Court;

          d.    has been substantially diminished in value;
or

          e.    has been commingled with other property that
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property

of said ~~defendant~~defendants up to the value of the above

forfeitable property.

  (Title 18, United States Code, Sections 981; Title 21, United
    States Code, Section 853(p); Title 28, United States Code,
                    Section 2461.)


_____       _____
FOREPERSON                    JOON H. KIM
                                 Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

**- v. -**

**JOSEPH PERCOCO, a/k/a "Herb,"
ALAIN KALOYEROS, a/k/a "Dr. K,"
PETER GALBRAITH KELLY, JR., a/k/a
"Braith," STEVEN AIELLO, JOSEPH GERARDI,
LOUIS CIMINELLI, MICHAEL LAIPPLE, and
KEVIN SCHULER,**

**Defendants.**

---

**<u>SUPERSEDING INDICTMENT</u>**

~~S1~~S2 16 Cr. 776 (VEC)

(18 U.S.C. Sections 1951, 1349, 1343,
666(a)(1)(B), 666(a)(2), 1001(a)(2) and
2.)

_____   JOON H. KIM
                    Acting United States Attorney.

_____