1114 Avenue of the Americas
New York, NY 10036

212 506 3900 main
www.steptoe.com

Michael Campion Miller
212 506 3995 direct
212 506 3950 fax
mmiller@steptoe.com

October 6, 2017

Via ECF

Hon. Valerie E. Caproni
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** ***U.S. v. Percoco, et al.*** **(Case No. 16-cr-00776-VEC)**

Dear Judge Caproni:

We represent Defendant Alain Kaloyeros in the above-referenced matter. We write in response to the Government's September 19, 2017 Second Superseding Indictment and the Court's September 27, 2017 Order permitting the parties to address the indictment's impact on their pending motions. (Docket Nos. 321, 330).

Dr. Kaloyeros' motions all apply to the Second Superseding Indictment and, to the extent necessary, we renew them through this letter. The new indictment, which amends the wire fraud claims against Dr. Kaloyeros, is particularly relevant to Dr. Kaloyeros' pending motion to dismiss, *Brady* motion, and motion to suppress. (Docket Nos. 171, 176, 200). In addition, the new indictment buttresses the Buffalo Defendants' motion for grand jury materials, which Dr. Kaloyeros joins through this letter. (Docket No. 223).

I. The Court Should Dismiss The Case.

Dr. Kaloyeros' motion to dismiss described a plethora of defects with the Government's First Superseding Indictment. (Docket No. 177). Despite the Government's notice of these defects, the Second Superseding Indictment only amplifies them.

A. Background

The First Superseding Indictment alleged that Dr. Kaloyeros—a board member of Fort Schuyler Management Corporation ("FSMC"), a non-profit affiliated with SUNY—"devised a scheme to defraud Fort Schuyler in its award of significant taxpayer-funded development contracts." (Docket No. 162 ¶ 39). It further alleged that the misrepresentation at the heart of the scheme concerned "the bidding processes for these contracts." (*Id.*). The First Superseding Indictment did not specifically cite the "right to control" theory.



In Dr. Kaloyeros' initial motion to dismiss, we explained that: (1) the Government appeared to be alleging a right to control theory of wire fraud; (2) the RFPs' actual terms make clear that the RFP process did not bind FSMC to issue any actual development contracts or to use the winner of the RFP process for any such contracts; and (3) the only misrepresentation alleged in the indictment concerned the RFP process. (Docket No. 177). Over the course of briefing on our motion to dismiss, the Government essentially conceded each of these points. (Docket Nos. 264 at 55-56 (adopting the right to control theory); 313 at 3 (describing contracts "that were likely to be available to the chosen preferred developer"); *Id.* (accepting that Dr. Kaloyeros' alleged representation concerned the preferred developer selections)).

The Government has now formalized these admissions in the Second Superseding Indictment. First, the new indictment makes clear that the Government's charges specifically rest on the right to control theory. (Second Superseding Indictment ¶ 39). Second, the indictment confirms that FSMC's development contracts were separate from the RFP process. It alleges that the purported misrepresentation at issue in the Second Superseding Indictment concerned the "bidding process[] <u>leading</u> to the award of certain significant taxpayer-funded development contracts." (*Id.*) (emphasis added). The Second Superseding Indictment finally acknowledges that the RFP process did not entitle any developer to receive any of the alleged "significant taxpayer-funded development contracts." (*Id.*). Third, the indictment acknowledges that the alleged misrepresentation was "regarding the drafting and selection process related to the RFPs," as opposed to the attributes of the actual construction contracts that were later agreed to by FSMC and the developers. (*Id.* ¶ 25).

B. <u>The Second Superseding Indictment Bolsters the Case for Dismissal.</u>

While Dr. Kaloyeros' motion to dismiss relied in part on facts established through the actual RFPs and admissions by the Government during briefing, those facts are now plain on the face of the Second Superseding Indictment. (*Id.* ¶¶ 25, 39). These admissions confirm the invalidity of the Government's case. The Second Superseding Indictment fails to allege either a scheme to defraud, or money or property as the object of the scheme, as required to allege wire fraud. *See United States v. Davis*, No. 13-CR-923 (LAP), 2017 WL 3328240, at *8 (S.D.N.Y. Aug. 3, 2017).

1. <u>The Second Superseding Indictment Fails to Allege a Scheme to Defraud.</u>

To allege a scheme to defraud under the right to control theory, the Government must allege both intent to defraud and materiality. An intent to defraud requires the potential for economic harm. *See Id.* at *17; *United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015). Materiality requires that the information at issue bear on the ultimate value of the transaction. *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994). The Second Superseding Indictment alleges neither.



First, with respect to intent to defraud, the only potential harm alleged is to the RFP process. (Second Superseding Indictment ¶ 25). And that process did not obligate FSMC to issue any development contracts or to use the winner of the RPF if any such contracts were issued. Thus, the Second Superseding Indictment contains no allegation of impact on the "basis of the [] bargain"—i.e., the separately negotiated development contracts—and any intended harm is "metaphysical." *United States v. Starr*, 816 F.2d 94, 100 (2d Cir. 1987).

Second, with respect to materiality, the indictment lacks any allegation that the RFP process had (or could have had) any impact on the price, quality, or other terms of the separately-negotiated development contracts. This is significant because a purported misrepresentation about the drafting and selection process (as opposed to the characteristics of the ultimate contracts) is insufficient to allege materiality. *See United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007) (recognizing that "schemes that do no more than cause their victims to enter into transactions they would otherwise avoid . . . do not violate the mail or wire fraud statutes."); *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994) (recognizing that "information that might have an impact on the decision regarding where . . . money is spent, without more, is not a tangible harm").

Accordingly, the Second Superseding Indictment fails to allege an intent to defraud or materiality and is defective on its face.[1]

2. <u>The Second Superseding Indictment Fails to Allege Money or Property.</u>

While the Government claims the loss of the right to control satisfies this element, the Second Superseding Indictment confirms that FSMC did not lose its right to control anything as a result of the RFP process.

We showed in our prior briefing that FSMC took on no legal obligation and ceded no legal right as a result of the non-binding RFP process. (Docket No. 177 at 12-13; Docket No. 286 at 3-4). Instead, the RFP process resulted in, at most, a non-binding internal recommendation, where FSMC did not commit to issuing development contracts or to picking the winner of the RFP to handle any such contracts. Now, the Government acknowledges that its

[1] Permitting claims like this one would upend the Supreme Court's decisions in *Skilling* and *McDonnell* limiting the scope of honest services fraud. It would allow almost any deficient honest services fraud case to be re-packaged as a "right to control" wire fraud. It would only require: (1) an allegation that a defendant made a misrepresentation; and (2) a conclusory allegation that that misrepresentation led to an unidentified economic risk. The tension between the right to control theory and the Supreme Court's honest services case law is among the reasons why, as explained in Dr. Kaloyeros' motion to dismiss, the right to control theory is no longer tenable at all. (Docket No. 177 at 17-20).



case rests on a claim of FSMC's non-binding RFP process "leading" eventually to an award of development contracts. (Second Superseding Indictment ¶ 39). A "nonbinding internal recommendation" that "might lead eventually to an investment that would be beneficial to private parties," is not sufficient to establish money or property for wire fraud. *Sekhar v. United States*, 133 S. Ct. 2720, 2728 (2013) (concurring opinion by Justice Alito, joined by Justice Kennedy and Justice Sotomayor) (emphasis added).

*   *   *

At bottom, the Second Superseding Indictment's reworked wire fraud allegations buttress what Dr. Kaloyeros has said from the outset: that this is a flawed prosecution born of an overzealous prosecutor's desire to bolster his own tough-on-corruption reputation. Indeed, following an intensive investigation and four bites at the charging apple, the best the Government can muster is an indictment that reinforces the fact that Dr. Kaloyeros has committed no crime. And, unlike *Silver* and *Skelos*, where the Government asserts that it may have had support for its legal position at the trial stage, it is clear today that the Government has no support for its charges against Dr. Kaloyeros. This case must be dismissed, and it should be dismissed now so that Dr. Kaloyeros is saved from the intense financial and personal burden of a trial for alleged conduct that is simply not a crime.

## II. The Court Should Grant Dr. Kaloyeros' *Brady* Motion.

As discussed below, the Second Superseding Indictment highlights additional potential *Brady* issues and supports granting Dr. Kaloyeros' *Brady* motion.

### A. Background

Dr. Kaloyeros' *Brady* motion explained that, at a meet and confer, the Government (1) took the position that it was unaware of any *Brady* material in witness statements or attorney proffers; and (2) appeared to take the remarkable position that a witness statement defending the RFPs' terms as vanilla, meritorious, and likely to lead to additional developer participation would not be exculpatory *Brady* material. (Docket No. 201). Dr. Kaloyeros' *Brady* motion showed that, in fact, the Government had failed to disclose *Brady* material.

It explained that the Government had failed to disclose witness interviews and attorney proffers that were known to be exculpatory. (*Id.*). It also demonstrated that it was implausible that there was no other *Brady* material because a review of the documents produced in discovery showed that: (1) FSMC personnel were aware of pre-RFP contact with potential developers; (2) the RFPs at issue were drafted and reviewed by FSMC staff, inside and outside counsel, and at least one board member; (3) other FSMC officials contemporaneously took responsibility for the inclusion of a term in the Buffalo RFP calling for 50 years of experience, described the figure as an error, and promptly corrected it; (4) the RFPs at issue contained vanilla terms that were substantially similar to other RFPs issued by FSMC and not tailored to favor any particular



developer; (5) an independent team evaluated the response to the RFPs; (6) the RFPs were non-binding, the actual contracts for the projects were separately negotiated, and FSMC had the right to negotiate with other developers without issuing a new RFP; and (7) the negotiations with the Buffalo and Syracuse Developers were conducted at arm's length. (*Id.*).

Following Dr. Kaloyeros' motion, the Government disclosed several witness statements and attorney proffers that contained these very types of exculpatory material, yet continued to deny that it was aware of *Brady* material. It confirmed these positions in writing in opposing the *Brady* motion. (Docket No. 264 at 154).

And, in the same pleading, the Government highlighted an additional potential *Brady* issue: its failure to memorialize its own efforts to shape critical witness statements. (*Id.* at 169, 171). Dr. Kaloyeros flagged this issue in his *Brady* reply briefing and again in letter briefing concerning Judge Preska's decision in *United States v. Davis*. (Docket Nos. 288, 308, 314). The Government has failed to address this issue despite opportunity to do so. (Docket No. 313).

B. The Second Superseding Indictment Creates More Potential *Brady* Issues.

Now, the Second Superseding Indictment creates still more potential *Brady* issues.

First, the Second Superseding Indictment highlights potential *Brady* material as to Dr. Kaloyeros' intent. The First Superseding Indictment claimed that Dr. Kaloyeros and Todd Howe "predetermined" the outcome of the RFP process. (First Superseding Indictment ¶ 25). In contrast, the Second Superseding Indictment alleges that the RFPs were merely "designed" to lead to the award of contracts to the Syracuse and Buffalo Developers. (Second Superseding Indictment ¶ 25).

This change of language reflects directly on the alleged intent of Dr. Kaloyeros and Howe. Given its focus on mental state, we believe the change is attributable to witness statements, likely from Howe, a cooperating witness, as opposed to documentary evidence. The Government has not disclosed any such statements. If these statements exist, they should have been disclosed previously. Among other things, the statements would have been exculpatory at the time of the First Superseding Indictment because they contradict the Government's allegation that the result of the RFP process was "predetermined." (First Superseding Indictment ¶ 25).

Second, the Government's belated admission that the RFP process and development contracts were separate also highlights a potential *Brady* issue. That change is exculpatory for the reasons discussed above. And, because the terms of the RFPs have not changed, it is fair to infer that the Government's changed position is the product of witness statements. Again, if these statements exist, they should be disclosed.

* * *

Throughout this litigation, Dr. Kaloyeros has raised serious *Brady* concerns and had those concerns validated by the Government's subsequent conduct. The Second Superseding Indictment continues this disturbing trend. We therefore request that: (1) the Government identify the basis for the Second Superseding Indictment's changes in language; (2) if the changes are based on some non-documentary source like proffers from Howe, the Government explain why it has not turned over such materials and immediately turn over such materials; and (3) the Court order a hearing and oral argument on Dr. Kaloyeros' *Brady* motion.

III.  The Court Should Grant Dr. Kaloyeros' Suppression Motion.

Dr. Kaloyeros' Motion to Suppress demonstrated that the Government's December 2015 and March 2016 search warrants directed at Dr. Kaloyeros' personal email account: (1) lacked probable cause; (2) were overbroad and unparticularized; and (3) were not entitled to the good faith exception. (Docket No. 172). The Government's conduct following the motion and the Second Superseding Indictment bolster the case for suppression.

A.  The Warrants Were Treated as General Warrants.

The Government's subsequent conduct has removed any doubt that it treated the warrants as general warrants. Following the filing of the motion, the parties briefed the import of the Government's choice to forego appeal in *United States v. Wey*, a decision in which the court suppressed similarly deficient warrants. (Docket Nos. 312, 316, 317). In that briefing, Dr. Kaloyeros explained that the Government had not disputed that it treated the warrants at issue as general warrants. (Docket No. 317). The Government failed to: (1) identify any search terms or other protocol used to cabin the universe of records it reviewed; (2) identify any protocol employed to ensure that any review of irrelevant documents was limited and that irrelevant documents were promptly segregated; or (3) return any non-seized documents to Dr. Kaloyeros. (*Id.*). Dr. Kaloyeros also specifically requested that the Government return any non-seized documents. (*Id.*).

Now, over three weeks after that letter briefing concluded, the Government still offers nothing to dispute that the warrants were treated as general warrants. Nor has it returned any non-seized documents. The Government's continued silence and failure to return documents demonstrate that it has treated the warrants as general warrants.

B.  The Warrants Lacked Probable Cause and Were Not Entitled to the Good Faith Exception.

The Second Superseding Indictment reinforces the Government's lack of probable cause and lack of good faith.



1. The Affidavits Did Not Support Probable Cause.

Dr. Kaloyeros' suppression motion showed that the affidavits were simply too thin to establish probable cause for any fraud claim because they failed to identify: (1) any false representation; (2) any money or property; and (3) any harm or potential harm. (Docket No. 172 at 12; Docket No. 287 at 4-5).

The Second Superseding Indictment bolsters this conclusion. This is because: (1) the indictment confirms that the Government's case is premised on the right to control theory; (2) that theory, as discussed above, requires money or property, actual or potential economic harm, and that the information at issue bear on the characteristics of the ultimate transaction; and (3) the affidavits lack any allegations that would support these elements.

2. The Warrants Were Not Entitled to the Good Faith Exception.

The motion showed that the warrants were not entitled to the good faith exception because, among other things, their supporting affidavits were materially misleading. Specifically, the affidavits misleadingly suggested that, by virtue of winning the RFP, the Developers had a right to a subsequent award of specific compensable work. (Docket No. 248, Ex. B ¶ 23) ("I learned from a review of publicly available FSMC documents that . . . the FSMC board of directors adopted a resolution that, among other things, authorized awarding LPCiminelli one or more taxpayer-funded projects set forth in the RFP."); (*Id.* at Ex. D ¶ 32) (alleging the same).

Worse yet, the affidavits failed to attach or appropriately reference the actual RFPs at issue. Those documents make clear what the Government obviously knew when it sought the warrants: that the RFP process was non-binding and did not commit FSMC to issue any specific development contracts or award them to the "winners."

The Government's misleading description of the RFP process and non-disclosure of the actual RFP terms was significant. While Dr. Kaloyeros' motion showed that the warrants' supporting affidavits (which ignored the RFPs' plain language) were insufficient to establish probable cause, only the Government's misleading omission of the RFPs' true terms allowed the affidavits to even approach a finding of probable cause. This is because the missing facts foreclose the Government from proving a mail or wire fraud charge for the reasons discussed above.

Now, through the Second Superseding Indictment, the Government acknowledges the separation between the RFP process and any development contracts. (Second Superseding Indictment ¶ 39). With this admission, there can be no dispute that the warrant affidavits were materially misleading. Accordingly, the warrants are not entitled to the good faith exception.

* * *

For these reasons, and those stated in the Motion to Suppress, the warrants should be suppressed. At a minimum, a hearing is warranted.

IV. The New Indictment Supports Disclosure of Grand Jury Materials.

We said at the outset of this case that the Government's understanding of the case was deeply flawed. The newly articulated "right to control" theory and new acknowledgment that the RFP process and contract awards were separate crystallize that the Government brought this case on an undeveloped legal theory and incorrect understanding of the facts. These amendments to the indictment raise two troubling questions as to the Government's presentation to the grand jury.

First, what evidence was presented and what instructions were given regarding the Government's wire fraud claims in connection with the initial and First Superseding Indictments? The new indictment raises the substantial risk that the Government: (1) incorrectly represented to the jury that the RFP process awarded development contracts; and (2) failed to provide appropriate legal instruction on the requirements of the right to control theory.

Second, what instructions were given regarding the Second Superseding Indictment? A properly instructed grand jury could not return an indictment on a "right to control" theory on the facts alleged in the Second Superseding Indictment.

These questions buttress the need for the disclosure of grand jury minutes and instructions, as discussed in the Buffalo Defendants' motion for grand jury material. (Docket No. 223).

V. Conclusion

We respectfully request that the Court hold oral argument and hearings, as necessary, on our pending motions. We particularly request oral argument on our motion to dismiss, a hearing and oral argument on our *Brady* motion, and a hearing and oral argument on our motion to suppress.

We thank the Court for its attention to this matter and are available to the Court should it require any additional information.

Respectfully submitted,

/JAN

Michael C. Miller

cc: All Counsel (via ECF)