*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 13, 2017

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Joseph Percoco, et al.*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    The Government respectfully writes in response to supplemental letter briefs filed on October 6, 2017, on behalf of defendants Louis Ciminelli, Michael Laipple, and Kevin Schuler [Dkt. Nos. 332 and 334] (the "Ciminelli Letter" and the "Schuler Letter," respectively), and defendant Alain Kaloyeros [Dkt. No. 333] (the "Kaloyeros Letter"). In these letters, the defendants contend, in substance, that allegations contained in the Second Superseding Indictment (the "S2 Indictment")—which did nothing more than provide additional specificity as to the Government's theory on certain counts and divide certain other counts—support the defendants' pending pretrial motions. The defendants' arguments find no basis in the S2 Indictment, and rely on incorrect interpretations of the law and flawed assertions of fact. For the reasons set forth in the Government's Omnibus Memorandum of Law in Opposition to Defendants' Pretrial Motions [Dkt. No. 264] (the "Government's Opposition"), the Government's subsequent letters to the Court, and below, the defendants' arguments continue to lack merit and their pending motions should be denied.

## Background

    Defendants Alain Kaloyeros, Louis Ciminelli, Michael Laipple, and Kevin Schuler were charged by Complaint on September 20, 2016, and by Indictment on November 22, 2016, with, among other things, conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. As described in those documents, as well as the Government's Opposition (*see* Gov.'s Opp'n 2-10), those charges arose from efforts by Kaloyeros and Todd Howe to rig the bidding processes related to large State-funded projects associated with the State University of New York Polytechnic Institute, a public university headed by Kaloyeros and of which Howe was an agent and representative, for the benefit of companies controlled by Steven Aiello and Joseph Gerardi (the "Syracuse Defendants") and by Ciminelli, Laipple, and Schuler (the "Buffalo Defendants"), in exchange for hundreds of thousands of dollars in payments from those companies

October 13, 2017
Page 2

to Howe. On May 11, 2017, a Grand Jury sitting in this district returned a Superseding Indictment (the "S1 Indictment") that included additional specificity regarding the conspiracy engaged in by the Buffalo Defendants, Syracuse Defendants, Kaloyeros, and Howe to rig multiple RFPs, and regarding certain activities that occurred in the Southern District of New York. As the Government confirmed in its Opposition, although the Complaint, original Indictment, and S1 Indictment did not explicitly reference a specific legal theory underlying its wire fraud charges, each charging document relied on a right-to-control theory of wire fraud. (*See* Gov.'s Opp'n 55-58.)

On August 3, 2017, the Honorable Loretta A. Preska issued an opinion and order in *United States* v. *Davis*. No. 13 Cr. 123 (LAP), 2017 WL 3328240 (S.D.N.Y. Aug. 3, 2017). In that opinion, Judge Preska held that the indictment in *Davis* had been constructively amended because the Government had relied on a right-to-control theory at trial, but there was no basis for concluding that such a theory was part of the core of criminality contained in the indictment. *Id.* at *33. So as to prevent any possible claim—however incorrect—after trial that the operative indictment in this case had been constructively amended, a Second Superseding Indictment (the "S2 Indictment") was returned on September 18, 2017, and made explicit what had formerly been implicit in the lengthy recitation of the allegations contained in those documents—namely, that the defendants defrauded Fort Schuyler of its right to control its assets.

To that end, the S2 Indictment contained the following changes from the S1 Indictment:

- In paragraph 25, the S2 Indictment specified that the defendants' fraud exposed Fort Schuyler to the risk of economic harm;

- In paragraph 39, the S2 Indictment specified that the defendants devised a scheme to defraud Fort Schuyler "of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm"; and

- In paragraphs 41 and 45, the S2 Indictment specified that the defendants devised a scheme to defraud Fort Schuyler "of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm."

In order to add the language regarding the right-to-control theory, the relevant sentence in paragraph 39 was changed from "[the defendants] devised a scheme to defraud Fort Schuyler in its award of significant taxpayer-funded development contracts by representing to Fort Schuyler that the bidding processes for those contracts were fair, open, and competitive," to "[the defendants] devised a scheme to defraud Fort Schuyler of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler that the bidding processes leading to the award of certain significant taxpayer-funded development contracts were fair, open, and competitive." As discussed below, the defendants now wish to read into this edit some significance that simply does not exist.

The S2 Indictment also contained the following changes from the S1 Indictment to provide additional specificity and precision regarding the charges:

- In paragraph 25, the S2 Indictment specified that the defendants deceived and concealed material information from Fort Schuyler "regarding the drafting and selection process related to the RFPs"; and

- In paragraph 25(a), the S2 Indictment specified that Kaloyeros and Howe had "designed the RFPs so" that the Syracuse Developer would be awarded the Syracuse RFP and the Buffalo Developer would be awarded the Buffalo RFP, rather than, as described in the S1 Indictment, "predetermined" that the Syracuse Developer would be awarded the Syracuse RFP and the Buffalo Developer would be awarded the Buffalo RFP.[1]

On October 6, 2017, the Ciminelli, Schuler, and Kaloyeros Letters were filed, pursuant to a schedule ordered by the Court, arguing that certain of the defendants' pretrial motions remain meritorious.

## **Argument**

As the Court is aware, the dismissal of an indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States* v. *De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted); *United States* v. *Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (courts should not dismiss an indictment for lack of specificity absent a showing of prejudice). The law is well-settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello* v. *United States*, 350 U.S. 359, 363 (1956). A valid "'indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States* v. *Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States* v. *Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)).

As described in the Government's Opposition and numerous letter responses to various submissions by the defendants, each Indictment returned in this case has validly set forth the elements of the charges in this case, and the Government is entitled to proceed to try the defendants before a jury. (*See* Gov.'s Opp'n 46-60.) The S2 Indictment does nothing to undermine this conclusion—to the contrary, the S2 Indictment provides additional specificity requested by the defendants. The defendants nonetheless advance several arguments that changes from the S1 to the S2 Indictment support their motion to dismiss, as well as several related motions. None of these arguments has merit.

*First*, in order to manufacture controversy where there is none, the defendants devote a substantial portion of their recent letters to an attempt to twist an edit to the phrasing of the "to-wit" clause in paragraph 39 of the S2 Indictment into a concession regarding the relationship between the Preferred Developer RFPs and the resultant contracts for publicly-funded work. (*See*

---

[1] The S2 Indictment also divided Count 15 (as charged in the S1 Indictment)—the false statements charge against Aiello and Gerardi—into four separate charges, organized by defendant and subject matter, as the Government stated it intended to do in its Opposition, and as the Court referenced in its July 18, 2017 Order [Dkt. No. 279].

October 13, 2017
Page 4

Ciminelli Letter 4; Kaloyeros Letter 2.)  Specifically, as noted above, the defendants focus on the changes from:

> . . . [the defendants] devised a scheme to defraud Fort Schuyler **in its award of significant taxpayer-funded development contracts** by representing to Fort Schuyler that the bidding processes for those contracts were fair, open, and competitive . . .

to

> . . . [the defendants] devised a scheme to defraud Fort Schuyler of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler **that the bidding processes leading to the award of certain significant taxpayer-funded development contracts** were fair, open, and competitive . . . .

(S2 Indictment ¶ 39 (emphasis supplied).)  According to the defendants, this change reflects a concession that the Preferred Developer RFPs were separate from the contracts for work awarded to the Buffalo and Syracuse Developers.  The defendants contend therefore that any deceit or misrepresentation with respect to the Preferred Developer RFPs could not have defrauded Fort Schuyler of its right to control the assets awarded to the Buffalo and Syracuse Developers; that the defendants could not have intended any risk of economic harm; that the Grand Jury proceedings must have been improper; and that the probable cause sections of certain search warrants were defective.  (*See* Ciminelli Letter 4, 7; Kaloyeros Letter 2, 6-9.)

To the contrary, the Government has been clear and consistent regarding the bidding processes relevant to this case.  (*See, e.g.*, S2 Indictment ¶¶ 13, 16, 22-27; S1 Indictment ¶¶ 13, 16, 22-27; Indictment ¶¶ 10, 13, 22-26; Compl. ¶¶ 75-77; Gov.'s Opp'n 9-10; Gov.'s Letter, Aug. 23, 2017 [Dkt No. 313] ("*Davis* Letter") 3.)  As the defendants were well aware, the bidding processes leading to certain large, publicly-funded projects were designed so that Fort Schuyler would cede to Kaloyeros the authority to award those projects to any company that had been determined to be a "preferred developer."  Kaloyeros and his co-conspirators gained control over Fort Schuyler's assets by tailoring the RFPs so that the Buffalo and Syracuse Developers were selected as preferred developers, to whom Kaloyeros then was authorized to award valuable contracts without further oversight from Fort Schuyler's board of directors.  By falsely representing that the Preferred Developer RFPs constituted competitive, fair, and open bidding processes, but in fact rigging the RFPs so that the Buffalo and Syracuse Defendants would be selected, the defendants thereby denied Fort Schuyler the opportunity to select a potentially more suitable developer—and exposed Fort Schuyler to criminal and civil liability for bid-rigging.  Put differently, Fort Schuyler relinquished control over the negotiation of the contracts for publicly-funded projects, including for the Riverbend project, to Kaloyeros because it falsely believed—based on the defendants' misrepresentations—that the preferred developers with whom Kaloyeros would be negotiating were selected in an open and fair process.

October 13, 2017
Page 5

Thus, the defendants' assertion that "the S2 Indictment alleges that a supposedly deceitful prelude to an untainted, arms-length contract negotiation constitutes wire fraud" (Ciminelli Letter 6) is wrong as a factual matter and, most importantly at this stage, does not find support in the S2 Indictment.[2] The allegations contained in the S2 Indictment clearly set forth the elements of a wire fraud charge, including the defendants' intent to expose Fort Schuyler to the risk of economic harm. (S2 Indictment ¶¶ 25, 39, 41, 45.) Nothing more is required at this stage.[3] *Stavroulakis*, 952 F.2d at 693.

*Second*, the defendants argue that the S2 Indictment is deficient with respect to wire fraud counts based on a right-to-control theory because the S2 Indictment does not contain the allegations required by the Second Circuit in *United States* v. *Shellef*, 507 F.3d 82 (2d Cir. 2007). (*See* Ciminelli Letter 3-4; Kaloyeros Letter 3.) As previously explained in the Government's letter

---

[2] Nor is the defendants' analogy to the Second Circuit's opinion in *United States* v. *Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970), apt or helpful to them. In *Regent Office Supply Co.*, the Second Circuit was presented with the unusual question of whether, in the abstract, it would be fraud for a telemarketer to make certain false representations (such as that the telemarketer was referred to the customer by a friend) in order to convince the customer to listen to the telemarketer's otherwise honest sales pitch. 421 F.2d at 1176-78. In the "unique" posture of the case, *id.* at 1179, the Second Circuit concluded that "the skeletal facts presented by the stipulation do not evidence a fraudulent scheme within the meaning of 18 U.S.C. § 1341," *id.* at 1182, "[b]ut this is not to say that we could not, on different facts or more specific proof, arrive at a different conclusion," *id.* at 1179.

More to the point, in *Regent Office Supply Co.*, based on the stipulated facts, the Second Circuit could not conclude that the defendants contemplated harm to victims; rather, the court could conclude only that the defendants intended to obtain a non-exclusive audience in which to present their offers. *Id.* at 1181-82; *see also In re Seizure of All Funds in Accounts in Names Registry Pub. Inc.,* 68 F.3d 577, 581 (2d Cir. 1995) (explaining that, in *Regent Office Supply Co.*, the "misrepresentations were made by the stationery companies in order to gain the attention of the customers"). In this case, by contrast, the Government expects to prove that the defendants contemplated harm to Fort Schuyler by preventing Fort Schuyler from fairly considering other bids, whether or not those bids may have been more suitable and beneficial to Fort Schuyler, resulting in an exclusive or semi-exclusive right to "negotiate" a valuable contract with a co-conspirator. *See United States* v. *Yaron*, No. 10 Cr. 363 (GBD), 2012 WL 2477646, at *2 (S.D.N.Y. June 28, 2012) ("The evidence indicated that the bribery payments were to ensure that contracts were awarded to the defendants even where it might have been otherwise awarded to a different company," and therefore "there was sufficient evidence for a rational trier of fact to find that the defendants intended to deprive [the victim] of its property right to control the awarding of contracts."). Indeed, unlike in *Regent Office Supply Co.*, the false representations made by the Buffalo Defendants, Syracuse Defendants, and Kaloyeros were "capable of affecting [Fort Schuyler's] understanding of the bargain [and] of influencing [its] assessment of the value of the bargain to it." 421 F.2d at 1182.

[3] For these reasons, the defendants' attempt to analogize the facts in this case to facts proven by evidence adduced at trial in other cases is premature and irrelevant. (*See* Ciminelli Letter 5-6.)

October 13, 2017
Page 6

to the Court dated August 23, 2017, *Shellef* does not require that an indictment contain certain magic words to be sufficient in a right-to-control case. (*Davis* Letter 2 n.2.) Rather, that case merely holds that in a case proceeding under a "no sale" theory of wire fraud, it is not sufficient to allege "only that [the defendant]'s misrepresentation induced [the victim] to enter into a transaction it would otherwise have avoided." *Shellef*, 507 F.3d at 109. The Government's case here is not analogous. There is no claim that the defendants convinced Fort Schuyler to enter into a bargain it might otherwise have avoided; rather the defendants deceived Fort Schuyler so as to guarantee that their companies would receive contracts that might otherwise have gone to others. *See United States* v. *Yaron*, No. 10 Cr. 363 (GBD), 2012 WL 2477646, at *2 (S.D.N.Y. June 28, 2012). Regardless, the S2 Indictment contains ample allegations regarding the relevance of the deceit to the object of the contract and to the nature of the bargain, therefore fulfilling any possible requirements set forth in *Shellef*. (*See, e.g.*, S2 Indictment ¶¶ 22-27, 39, 41, 45.)

*Third*, the defendants contend that the Government has "continually flailed about for a valid theory" and attempt to document changing theories by the Government in a chart that quotes language from various filings, apparently in order to show that different sentences in different documents are different from one another. (Ciminelli Letter 1-2.) The chart appears also to contain the assertion that the Government has not always proceeded pursuant to the right-to-control theory of wire fraud. These claims are entirely baseless, and the suggestion that the Government has changed its case to rely on the right-to-control theory is simply wrong. Regardless, even if there were any truth to the defendants' narration, the Government is not aware of any basis for dismissing an indictment because a superseding indictment contains a new or different theory than a prior indictment, nor have the defendants pointed to one.

*Fourth*, Schuler argues, at some length, that a recent complaint in another case in this district that concerns the right-to-control theory included more extensive information regarding the nature of the potential economic harm at issue. Whatever information may have been included in another charging instrument in a separate case has no relevance to whether the S2 Indictment is sufficient. *See Stavroulakis*, 952 F.2d at 693.

*Fifth*, Kaloyeros contends that the change in paragraph 25(a) of the S2 Indictment from stating that the winner of the RFPs was "predetermined" to stating that Kaloyeros and Howe "designed the RFPs" so that the Syracuse and Buffalo Developers would win in some way relates to Kaloyeros's intent, and that therefore the Government must be aware of some *Brady* material. (*See* Kaloyeros Letter 4-5.) This change, which merely makes more precise what was clear in the prior indictments—namely, that Kaloyeros had already determined who should win the RFPs and receive the publicly-funded contracts and, with his co-conspirators, designed the RFPs to serve that purpose—has no bearing on Kaloyeros's intent. In any case, the Government is aware of its *Brady* obligations, have made multiple disclosures in response to the defendants' *Brady* requests, and is unaware of any additional *Brady* material related to this change or otherwise.

Additionally, the defendants renew arguments regarding their claims to dismiss the bribery counts, transferring venue, and suppressing evidence. (Ciminelli Letter 8-10; Kaloyeros Letter 6-7.) To the extent these arguments rely on the purported concession that the Preferred Developer RFPs and publicly-funded contracts at issue in this case were separate, that claim has been addressed above. The remainder of the defendants' arguments have been discussed in the extensive briefing to date on the defendants' motions.

October 13, 2017
Page 7

      For the reasons set forth above, and in the Government's Opposition and various letters to the Court, the defendants' pending motions should be denied.

                      Respectfully submitted,

                      JOON H. KIM
                      Acting United States Attorney

                      By: /s/
                          Janis Echenberg/Robert Boone/
                          David Zhou/Matthew Podolsky
                          Assistant United States Attorneys
                          (212) 637-2597/2208/2438/1947

cc: Counsel for all defendants (via ECF)