**LANKLER SIFFERT & WOHL LLP**
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N. Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

October 26, 2017

**BY ECF:**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: **United States v. Percoco, et al.**, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    We represent Peter Galbraith Kelly, Jr. in the above-referenced matter. We respectfully submit this letter on behalf of Mr. Kelly and his co-defendants Joseph Percoco, Steven Aiello, and Joseph Gerardi to request that a display on the first floor of the Thurgood Marshall Courthouse in which the trial will occur be covered or removed during the trial, because it will unfairly influence the jury and jeopardize the defendants' rights to a fair trial.

    As the Court may be aware, in celebration of the 125th Anniversary of the Second Circuit, a hallway-length exhibit about famous cases was erected near the entrance to Courtroom 110, the ceremonial courtroom where the parties have assumed this trial will be held. The exhibit consists of eleven large posters and placards, some with pictures of defendants tried and convicted in newsworthy cases, including text and news clippings describing the cases. The display is clearly meant to capture the eye of anyone passing by. The posters are divided into eleven different categories of cases, including "Government Corruption," "Corporate Crime," "Criminal Securities," "Organized Crime," "Terrorist Prosecutions," and "Domestic Communism and Espionage." The display features approximately 30 criminal cases, nearly all of which resulted in a conviction, with only a couple of "defense-friendly" results (e.g., an affirmed dismissal of an indictment (United States v. Stein) and a reversed conviction (United States v. Newman)), but *none* highlighting an acquittal.

    Potential jurors will have to walk past the display to get to Courtroom 110 during jury selection. Indeed, a representative of this firm was at the Courthouse to review the exhibit as we researched whether to make this application and observed approximately 50 potential jurors gather in the same hallway as the exhibit. As the potential jurors – who do not have access to their phones to pass the time – waited to enter Courtroom 110, many of them read the exhibit. Some discussed it. Even if the trial is in a different courtroom, the display is large enough to attract attention from the Courthouse entrance, is on the way to the first floor restrooms, and is in

LANKLER SIFFERT & WOHL LLP

October 26, 2017
Page 2

the same hallway as the elevator used to access the cafeteria. It is virtually inevitable that most or all of the jurors in this case will read the display.

Especially relevant here, the "Government Corruption" portion of the display features four cases: United States v. Ganim, United States v. Biaggi, United States v. Myers, and United States v. Williams. The display makes clear that these featured prosecutions resulted in convictions and subsequent affirmances by the Second Circuit. Given the charges and legal issues at stake in this case, the description of the Ganim matter is particularly problematic:

> Joseph P. Ganim, the three-term mayor of Bridgeport, Connecticut, was convicted in a jury trial of racketeering, extortion, mail fraud, bribery, conspiracy, and filing false income tax returns. He was sentenced to nine years in prison, followed by three years of supervised release. Ganim appealed, claiming the government was required to link each benefit Ganim received to a specific official act he performed. The Second Circuit rejected his argument and affirmed the judgment. After serving his sentence, Ganim was re-elected mayor in November 2015.

As the Court is well aware, the Ganim case is very much at issue in this matter. The description of the legal argument in that case – whether "the government was required to link each benefit Ganim received to a specific official act he performed" – relates to the law on which this Court will instruct the jury. But the jury should not be permitted to learn the law from the display: it is necessarily incomplete, without context, pre-McDonnell v. United States, and without the surrounding jury instructions that should accompany any statement of the law. Jurors should be focused completely on the law that this Court instructs, and not be shown descriptions of the law in other cases alleging corruption that resulted in convictions.

Moreover, while the defense appreciates that the intent of the exhibit is to commemorate the history of the Second Circuit, the exhibit as a whole may be interpreted by potential jurors as the Court's celebration of criminal convictions in significant cases, and particularly cases involving allegations of public corruption. Implicitly, the Court could be seen by jurors as endorsing criminal convictions. Indeed, a juror might assume from the display that a conviction in a public corruption case will later be celebrated, and this could encourage the juror, either consciously or on a subliminal level, to vote for conviction. Even assuming a potential juror would have time to read and absorb the whole exhibit and find and review the defense-friendly content, the substance of the exhibit does not address, let alone emphasize, the presumption of innocence, the Government's burden, or many of the other safeguards so important to ensuring these defendants a fair trial. As a result, the exhibit impairs the defendants' rights. See, e.g., United States v. Moten, 582 F.2d 654, 664 (2d Cir. 1978) (holding that a defendant has a constitutional right to be tried by impartial jury "unprejudiced by extraneous influence").

Accordingly, the defendants respectfully request that the Court make arrangements to remove or cover the entire exhibit, or at least the portions of the exhibit that feature criminal

LANKLER SIFFERT & WOHL LLP

October 26, 2017
Page 3

cases, for the duration of trial. We have been advised that the Government takes no position on this request. Pursuant to the Court's instruction, we have copied the Circuit Executive on this letter.

                                                          Respectfully submitted,

                                                          Daniel M. Gitner

**CC:** All Counsel (via ECF)
      Karen Greve Milton, Circuit Executive (by hand)