**Schulte Roth&Zabel** LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2380

Writer's E-mail Address
Barry.Bohrer@srz.com

November 1, 2017

**BY ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY  10007

      Re:    **United States v. Percoco, et al., S2 16 Cr. 776 (VEC)**

Dear Judge Caproni:

      We represent Joseph Percoco in the above-referenced matter.  On October 13, 2017, the government wrote a letter to counsel describing conduct that it argued was "admissible as direct proof of the charged crimes" or under Rule 404(b) of the Federal Rules of Evidence (the "404(b) Notice").[1]  We respectfully submit this letter in support of Percoco's motion in limine to exclude certain conduct alleged in the 404(b) Notice.  That conduct is of minimal probative value at best and yet poses a serious risk of unfair prejudice and undue delay at trial.

### BACKGROUND

      The government's 404(b) Notice included two claims that we seek to exclude from Percoco's trial.

      First, the government claims that between 2011 and 2016, Percoco "threaten[ed] at least four New York State employees" that he would "use his extensive influence in New York State to prevent them from finding future employment."  The "at least four" employees are not identified by name, but by title.  The government states that Percoco made threats "on at least three occasions" when he was employed in the Executive Chamber and on "at least two occasions" when employed by Governor Cuomo's reelection campaign.  These assertions are baseless, and their vagueness suggests that they do not arise from interviews of the relevant employees, but rather the opportunistic imagination of Todd Howe, a government cooperator who has demonstrated a penchant for prevarication.

---

[1]    The 404(b) Notice is attached hereto as Exhibit A.

Second, the government claims that "[b]etween in or about November and December 2014," when Percoco was off the State payroll, Percoco acted "in violation of" a memo and related guidance from counsel to the Governor by consulting for Clough Harbor and Associates LLP ("CHA"). The "violation" allegedly occurred when (while out of State government) Percoco received money from CHA "in exchange for setting up meetings, sending emails, and taking other actions on behalf of CHA that were pending before New York State." Then, the government states, when Percoco returned to "New York State employment" he "facilitated a meeting between CHA and the New York Department of Transportation."

For the reasons explained below, none of this conduct has a direct connection to the charges in the Second Superseding Indictment (the "Indictment" or "S2"), and none of it is admissible under Rule 404(b). In addition, allowing the government to admit that conduct into evidence could graft two unrelated mini-trials onto the larger trial.

### A. The Purported "Threats" Are Not Admissible

#### 1. The argument that Percoco had "influence" in New York and "threatened" to use it does not support the Indictment's actual charges.

Direct proof includes only evidence that "'arose out of the same transaction or series of transactions as the charged offense, … is inextricably intertwined with the evidence regarding the charged offense, or … is necessary to complete the story of the crime on trial.'" *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)). Here, the purported threats did not arise out of the charged conduct, are not intertwined with the relevant evidence, and serve no purpose in completing the story of any crime at trial. Rather, they serve only to falsely and unfairly portray Percoco as a bully.

The allegation that Percoco threatened the employment prospects of other officials is irrelevant. Neither the Indictment nor the Complaint alleges that Percoco threatened *anyone* to induce them to take official action, much less that he made a threat using future employment as leverage. Further, the government's 404(b) Notice does not even attempt to show that the purported threats to use "influence" to prevent future employment were made in connection with either of the two alleged bribery schemes—or even with an uncharged and unrelated *quid pro quo*.

In fact, most of the employees alluded to in the 404(b) Notice have no relation to the case whatsoever. Neither the Indictment nor the Complaint makes any reference, explicit or implicit, to the "Deputy Commissioner for Public Affairs of the New York Division of Homeland Security and Emergency Services," the "Executive Deputy Commissioner of the Office of General Services," or the "Executive Chamber employee who sought to work at SUNY Poly." Nor can we divine any other connection that these unnamed individuals may have to the charges in the case.

Accordingly, the conduct that purportedly shows that Percoco had "influence" in New York and "threatened" to use it is not direct proof of the Indictment's actual charges.

### 2. Evidence of unrelated "threats" to use influence is of minimal probative value to the jury, highly prejudicial, and likely to cause undue delay at trial.

Nor are the purported threats admissible under Rule 404(b). To introduce evidence under Rule 404(b), the prosecution must show that "(1) it [is] offered for a proper purpose; (2) it [is] relevant to a material issue in dispute; [and] (3) its probative value is [not] substantially outweighed by its prejudicial effect." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (citation omitted).

In an email sent on October 19, 2017, the government explained that to the extent it was relying on Rule 404(b) as a basis to admit the purported threats to use influence, it was doing so "to show, among other things, opportunity."[2] The implication seems to be that Percoco's ability to make such threats about influence is relevant because it would show that Percoco had the "opportunity" to exercise influence in State government. But here, as noted above, there is no apparent connection between the purported threats regarding employment and ***any*** *quid pro quo*—charged or uncharged. The government's "threats" are empty and contain virtually no probative value for the jury.

Further, the government clearly does not need the purported threats to demonstrate that Percoco had the "opportunity" to exercise "influence"; the mere fact that Percoco was employed as Executive Deputy Secretary to the Governor for most of the time between 2010 and 2016 would establish that. *See* Fed R. Evid. 403 advisory committee's note ("The availability of other means of proof may also be an appropriate factor [in considering whether to exclude evidence on ground of unfair prejudice].").

At the same time, presenting the jury with claims that a defendant made threats is obviously prejudicial. It is hard to imagine many cases where it would benefit a defendant to be described as threatening, menacing, or bullying. And here such a description would be especially prejudicial because the case turns in large part on whether the defendant "pressure[d]" or "advi[sed]" other state officials to take official action. (*See* S2 ¶¶ 31, 35.) "Threats" call to mind "pressure." The probative value of the purported threats is therefore greatly outweighed by the unfair prejudice they bring. *See Scott,* 677 F.3d at 79; Fed. R. Evid. 403.

Moreover, precisely because the purported threats are so unrelated and irrelevant, allowing the government to introduce evidence of this conduct has the potential to expand the trial considerably. Numerous witnesses that would otherwise be irrelevant might have to be called by the defense. The jury might even have to be educated on the administration of government agencies that otherwise have no relation to this case. It is hard to believe that the government would engage in such an extended detour just to establish Percoco's "opportunity."

---

[2] The email dated October 19, 2017 is attached hereto as <u>Exhibit B</u>.

The true value of the conduct to the government is far more obvious. And far uglier. Unrelated "threats" could be used to improperly suggest that Percoco is a bully who regularly throws his weight around; to insinuate that if he bullied some State officials on employment matters he must also have bullied other State officials into taking the alleged official acts. But that is an improper attempt to use character evidence in violation of Rule 404(b). *See United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009) (evidence suggesting prior bad acts invites "generalized reasoning about a defendant's criminal propensity and thereby undermines the presumption of innocence"). There is no good reason to allow evidence of this purported conduct into the trial, and real danger in doing so.

### 3. At a bare minimum, Percoco is entitled to particulars as to the alleged threats.

The purported threats should be excluded. But at the very least Percoco is entitled to particulars on the allegations. The government does not identify the people who were allegedly threatened by name, but merely by title. Further, it does not limit itself to the officials named by title because it states only that there were "at least" four of them. Also, the government does not provide detail regarding when the purported threats were made to each of the officials; it does not place a particular threat in a particular year, and it does not even specify which officials were allegedly threatened while Percoco was working for the campaign and which were allegedly threatened while he was working for the Executive Chamber. Accordingly, the Court should, at a minimum, require the government to provide Percoco with the information serving as the basis for the allegations in the 404(b) Notice, including: (i) the name of the State employees(s) Percoco allegedly threatened; (ii) the time period in which the threat was allegedly made; (iii) what position Percoco held in the alleged time period and; (iv) the sum and substance of what Percoco allegedly said and did to convey the alleged threat.

## B. The CHA Conduct Is Not Admissible

### 1. The consulting work for CHA is not direct proof of the charges.

First and foremost, there is no mention of CHA in either the Indictment or the Complaint, and there is no apparent connection between CHA and the companies related to the charged conduct (i.e., the "Energy Company" and the "Syracuse Developer" mentioned in the Indictment). The government's 404(b) Notice does not establish a connection to the charged conspiracies beyond stating that CHA was once a client of government cooperator Todd Howe. *See United States v. Cummings*, 60 F.Supp. 3d 434, 438 (S.D.N.Y. 2014) (refusing to consider proffered acts as distinct evidence of underlying conspiracy due to limited information provided by the government). The transactions relating to CHA are therefore apparently distinct from the ones charged in the Indictment and Complaint, and thus are not direct evidence. *See United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (declining to consider acts as direct evidence in part because they appeared to involve transactions distinct from the charged crimes).

Furthermore, in the wake of the Supreme Court's decision in *McDonnell v. United* States, 136 S. Ct. 2355 (2016), the CHA conduct could not have been charged in the Indictment as a

separate bribery scheme, because it does not contain any official act. The government's own description of the conduct in the 404(b) Notice does not specify any actions beyond "sending emails," "setting up meetings," or "facilita[ting]"meetings, and under *McDonnell* none of those actions are enough by themselves to constitute an official act.

In this context it is clear why the government chose to include the CHA conduct in the Rule 404(b) Notice instead of simply charging the conduct in the Indictment; doing so was the only way to have any chance of admitting the CHA conduct at trial.

> 2. **Percoco's consulting for CHA is of minimal probative value, poses a serious risk of unfair prejudice, and could dramatically expand the trial by adding a third alleged bribery scheme to the case.**

The import of the CHA consulting conduct to the government's case appears to center on the government's assertion that Percoco's consulting work was "in violation of" guidance that Percoco had received from counsel to the Governor. In other words, the alleged bad act is ignoring counsel's advice. But even if that assumption were true, it would not make the CHA consulting conduct more than minimally relevant to the actual charges in this case. Percoco is not charged with violating guidance from counsel. Rather, he is charged with violating federal criminal statutes, and those statutes do not incorporate New York ethics rules.

Moreover, suggesting to the jury that violating such guidance is a crime would of course be improper. We do not believe that the government intends to make such a suggestion, but there is a real risk that presenting the CHA allegations to the jury will confuse the jury on this crucial point. Given the minimal relevance of the CHA conduct, the serious potential for confusion is reason enough to exclude it. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (evidence is inadmissible when it "lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged"); *United States v. Martoma*, No. 12-cr-973 (PGG), 2014 WL 31191, at *5-6 (S.D.N.Y. Jan. 6, 2014) (in insider trading case, excluding evidence that defendant obtained information that had been publicly released but was nevertheless considered "confidential" because it "present[ed] some risk of juror confusion as to the type of information that can be relied on for purposes of a conviction").

Finally, the government's description of the CHA conduct makes clear that presenting such evidence could dramatically expand the case and the length of trial. The CHA conduct involves individuals and State entities that are wholly unrelated to the alleged schemes, and therefore may require additional prosecution and defense witnesses. It also involves a significant number of additional documents. In effect, the government would be adding a third, separate bribery scheme to the case without having to supersede the Indictment. This should not be permitted. *See United States v. James*, 609 F.2d 36, 46 n. 11 (2d Cir. 1979) (exclusion under Rule 403 warranted where evidence "might have bogged down the court in a 'mini-trial'").

Honorable Valerie E. Caproni
November 1, 2017
Page 6

## CONCLUSION

For the reasons set forth above, Joseph Percoco respectfully requests that the Court grant his motion in limine to exclude evidence of the purported threats and the CHA conduct.

                                              Respectfully Submitted,

                                              /s/ Barry A. Bohrer
                                              Barry A. Bohrer
                                              Michael L. Yaeger
                                              Andrew D. Gladstein
                                              Abigail F. Coster

cc: All Counsel (Via ECF)