

EDWARD J. O'CONNELL
 1925-1939
SAMUEL E. ARONOWITZ
 1925-1973
LEWIS A. ARONOWITZ
 1951-1979

CORNELIUS D. MURRAY
FRED B. WANDER
STEPHEN R. COFFEY
JEFFREY J. SHERRIN
THOMAS J. DiNOVO
PAMELA A. NICHOLS
JEFFREY A. SIEGEL
JAMI DURANTE ROGOWSKI
DAVID R. ROSS
KURT E. BRATTEN
MICHAEL P. McDERMOTT
KELLY J. MIKULLITZ
WILLIAM F. BERGLUND
ROBERT J. KOSHGARIAN
MATTHEW J. DORSEY
GEORGE R. SLINGERLAND
F. MATTHEW JACKSON

OF COUNSEL

RICHARD S. HARROW
MEREDITH H. SAVITT
PAUL A. FEIGENBAUM
KEITH J. ROLAND
ARTHUR A. PASQUARIELLO
CRISTINA D. COMMISSO

ELIZABETH A. CONNOLLY
CHAD A. JEROME
SCOTT W. ISEMAN
BRITTNAY M. McMAHON
DANIELLE E. HOLLEY
KATHLEEN EVERS BROWN
MARY T. CONNOLLY
COURTNEY L. ALPERT
KELLAN B. POTTS

HOLLY E. VEGAS*
CARLA R. WILLIAMS*
 *HEALTHCARE CONSULTING GROUP)*

*NOT A MEMBER OF THE LEGAL PRACTICE*

**VIA ECF**

Hon. Valerie E. Caproni
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** <u>United States v. Percoco, et al.</u>
Case No. 16-cr-00776-VEC)

Dear Judge Caproni:

We represent Steven Aiello in the above matter and submit this letter jointly on behalf of Joseph Gerardi (collectively the "Syracuse Defendants") and Defendants Percoco and Kelly (all defendants collectively referred to as the "January Trial Group"). We move to preclude the Government from introducing the evidence contained in its Federal Rule of Evidence 404(b) ("Rule 404(b)") notice and to further preclude the Government from raising, offering or in any way mentioning, the allegations and facts associated with the now severed half of Second Superseding Indictment ("S2 Indictment"). On multiple occasions, the Government previously conceded the manifest prejudice, confusion and burdens this evidence will cause. Yet now, shortly before trial, the Government has changed its mind and seeks to offer evidence of the entire severed portion of the S2 Indictment. To now permit the Government to offer this evidence would cause collateral allegations and issues to swallow the January trial with irreparable confusion and incurable prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 2017, after receiving motions from all eight defendants requesting various severances, the Government conceded that a discretionary severance of Counts 1-5 and the associated false statement allegation (the "Buffalo Billion allegations") and Counts 6-15 and the associated false statement allegation (the "bribery allegations") was appropriate. Dkt. No. 264. The Government reaffirmed this position two weeks later when it again conceded the need for severance in correspondence with the Court. Dkt. No. 276. Through these submissions, the Government repeatedly affirmed that severance is necessary to eliminate the prejudicial spillover, confusion, delays, the need for additional severance, and logistical burdens the original trial composition would undoubtedly have caused. In fact, below are the Government's own words regarding the need for a severance:

> As set forth below, the Government, in the interest of facilitating trial preparation, and preventing any risk of logistical difficulties or juror confusion at trial, concedes severance of the charges related to the Buffalo Billion fraud and bribery scheme (Counts One through Five and a false statements count) from charges related to the Percoco bribery scheme (Counts Six through Fourteen and a false statements count).

*See* Dkt. No. 264 at 20.

> Severance in this way would avoid any potential spillover prejudice between the two schemes, while also serving the interests of efficiency, consistency, and fairness that underlie the rules governing joint trials of multiple defendants. As a result, there would be one trial for the six defendants charged with a single conspiracy to rig the RFPs and defraud Fort Schuyler (Counts One through Five and a false statements charge), and a separate trial for the four defendants involved in the bribery of Percoco in exchange for official action (Counts Six through Fourteen and a false statements charge).

*See* id. at 82-83.

> [After discussing why a discretionary severance is permissible] [T]he Government concedes discretionary severance under Rule 14 of the charges related to the Percoco Scheme from the charges related to the Buffalo Billion Scheme in order to avoid potential spillover prejudice between the two schemes.

*See* id. at 87.

> However, the Court need not rule on joinder because the Government acknowledges that the defendants and charges should be severed into two trials pursuant to Rule 14 to significantly reduce the risk of spillover prejudice, simplify the logistics and proof of the trials, and decrease the burden of trial preparation on the defendants. As explained in detail below, the least prejudicial and most efficient division is to try the defendants and counts related to the Buffalo Billion Scheme separately from those related to the Percoco Scheme.

*See* id. at 88.

> There are several reasons that counsel in favor of two trials. *First*, the two proposed trials would eliminate the risk of spillover prejudice to (1) Kaloyeros, Ciminelli, Laipple, and Schuler with respect to evidence specific to the Percoco Scheme, about which these defendants had no knowledge or awareness, and (2) Percoco and Kelly with respect to evidence specific to the Buffalo Billion Scheme, about which they had no knowledge or awareness. Accordingly, the Government's proposed severance dispels any "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Harwood*, 998 F.2d at 95 (internal quotation marks omitted), and obviates any need for further severance under Rule 14.

*See* id. at 100.

> *Second*, severance would result in two relatively simple and streamlined trials. Each trial would present an easy-to-understand corruption scheme: namely, one scheme to rig a competitive bidding process, and one scheme to bribe a high-level State official for official actions.

*See* id. at 101.

> *Third*, and relatedly, the Government's proposed severance also significantly reduces the burden on the defendants as they prepare for trial.

*See* Id. at 102. On July 18, 2017, the Court granted the Government's proposed severance. Dkt. No. 279.

Understandably, the Syracuse Defendants relied on that severance and the representations made by the Government in preparing for the January trial by focusing on the facts and legal issues regarding the January trial ahead of the June trial.

Nearly three months after the Court's severance order, and just three weeks before the Motions in Limine deadline, on October 11, 2017, the Syracuse Defendants were alarmed to hear during a conference call with the January Trial Group and the Government that despite its concession to the severance, the Government intended to offer evidence regarding the Buffalo Billion allegations in the January trial. The Government stated that the evidence was part of its principle cooperating witness, Todd R. Howe's ("Howe"), background testimony and his relationship with the Syracuse Defendants. The Government claimed the evidence was appropriate to cross-examine the Syracuse Defendants on the Buffalo Billion allegations should they testify.

Two days after the conference call, on October 13, 2017, the Government notified the Syracuse Defendants that it intended to offer, not just background testimony of Howe, but evidence of the Buffalo Billion allegations at the January Trial as direct evidence of the charged crimes and of the Syracuse Defendants' alleged motive, opportunity, intent, preparation, plan, knowledge, identity, and/or absence of mistake or accident with respect to the charges in the S2 Indictment under Rule 404(b). Attached as Exhibit "A" is the Government's Rule 404(b) Notice. Of course, the Government's proposed use of the inflammatory propensity evidence merely tracks the language of Rule 404(b).

Thereafter, the January Trial Group and the Government conferred on how the Government intended to use evidence related to the Buffalo Billion allegations. During the initial conference call and numerous follow up conversations and email communications, the Defendants collectively expressed their deep concern regarding the confusion and spillover prejudice the Buffalo Billion allegations, including the Rule 404(b) evidence, would cause the defendants individually and collectively. In response, apparently finding defendants' efforts to preclude the admission of prejudicial evidence to be a basis for limiting the defendant's access to

impeachment material relating to Howe, the Government coyly proposed withholding Howe's 3500 and associated *Giglio* materials relative to the Buffalo Billion allegations in exchange for not offering, or pursuing on cross examination, evidence related to the Buffalo Billion allegations.

In response, the Defendants reluctantly but collectively offered to forego the related *Giglio* material and not cross examine Howe on anything related to the Buffalo Billion allegations or otherwise open the door to the matter in exchange for the Government not offering the proffered Rule 404(b) evidence or any other evidence related to the Buffalo Billion allegations; or in other words, in exchange for the Government abiding by the existing severance. Ultimately, no arrangement could be made and the Government refused to commit to not introduce the evidence related to the Buffalo Billion allegations.

The Syracuse Defendants, in reliance on the Government's express representations and the Court's severance, have prepared the legal and factual issues associated with the bribery allegations and spent comparatively little time preparing the Buffalo Billion allegations. Like the instant matter, the June trial regarding the Buffalo Billion allegations will not be simple or short as it contains novel, evolving and disputed theories of criminality, dozens of witnesses and millions of pages of materials. The Government's resurrection of what was a resolved issue now places us in the impossible position of preparing to defend against the second trial just as we enter the critical preparatory stage for the January trial. Unfortunately, the Government's reversal, its timing and the inherent prejudice of the proffered evidence, force us to make the instant motion.

## ARGUMENT

The Government, having previously conceded the unwieldiness of their hodgepodge of charges, now proposes a strategy that will cause the very prejudice, confusion, and trial management issues that the Government, the Defendants and the Court sought to avoid with severance. The Government should not be permitted to pursue this strategy in any form as it will cause the quintessential "trial within a trial" that will defeat the purpose of the severance, cause utter confusion for the jury and force the Defendants to defend against the Buffalo Billion allegations in a trial concerning wholly separate and different issues. Moreover, the Government's duplicity on this issue should not be tolerated.

### I.      The proffered evidence is not proper 404(b) evidence

The proffered evidence is not admissible under Rule 404(b) or any other basis because it is inadmissible propensity evidence. Under Rule 404(b) prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial.

*United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002). While this Circuit takes an "inclusionary approach" to Rule 404(b) evidence, "[e]ven under this approach [ ] district courts should not presume that such evidence is relevant or admissible." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011). As Judge Forrest recently noted:

> Once the Government has proffered a proper purpose for "other act" evidence, the Court must then determine whether the other act is in fact probative of the crimes charged. In this regard, the Government must identify a similarity or connection between the other act and an element of a charged offense. To be relevant, the other act must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw an inference from the act that the state of mind of the actor is as the proponent of the evidence asserts. The court abuses its discretion if the chain of inferences necessary to connect the other act with the charged crime is unduly long.

*United States v. Levin*, 2016 WL 8711458 *6 (S.D.N.Y. 2016) (internal citations and quotations omitted).

It is apparent that the Government is trying to make up for its lack of bribery evidence at the January trial with the Buffalo Billion allegations – allegations involving bribes and contract awards with far-larger amounts of money with no relevance to the January case. By bringing these two very different theories of criminality together, one an alleged bribery involving sundry business and personal issues and the other, allegations of a massive RFP rigging scheme, the Government wants to send a powerful and sophistic message to the jury: "If you want to do business in Albany, you have to bribe people and Todd Howe knows how to bribe the right people. Ergo, the Syracuse Defendants hired Todd Howe." Because the connection and similarity between the January allegations and the Buffalo Billion allegations lack the specifically that would make the Buffalo Billion evidence anything more than propensity evidence in this case, that evidence fails to satisfy FRE 404(b) and must be precluded. *United States v. Carboni*, 204 F.3d 39, 44 (2d. Cir. 2000).
Moreover, the Government does not need the proffered evidence to prosecute this case, complete any related narrative, provide any background or place evidence in any required context. After all, the Government conceded severing the Buffalo Billion and bribery allegations into two distinct trials because the cases are substantially unrelated. *See United States v. Ulbricht,* 79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015) (precluding unrelated 404(b) evidence that was not necessary to Government's case); See also *United States v. Williams*, 585 F.3d 703, 707-708 (2d Cir. 2009) (vacating conviction where improper 404(b) evidence was admitted that "[t]he Government did not need" to explain or prove its case).

**II.     The proffered evidence is also not admissible under Rule 403**

Even were this Court to find the evidence to pass muster under FRE 404(b), it would fail under FRE 403, which precludes otherwise admissible evidence when the probative value of that evidence is outweighed by the substantial prejudice or confusion the evidence will cause the jury. Pursuant to Rule 403, a trial judge retains discretion to exclude even plainly relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; see *Huddleston v. United States*, 485 U.S. 681, 687-88, (1988); *United States v. Reifler*, 446 F.3d 65, 91 (2d Cir. 2006).

If the proffered evidence were admitted, not only would the defendants be unfairly prejudiced by the likelihood that the jury will draw the broad-brush inferences discussed above, but the prejudice would be heightened by the very fact that the January jury will not be presented with the counts that will be tried in the subsequent trial. Jurors might rightly wonder why the Syracuse Defendants have not been charged for the Buffalo Billion allegations, and be inclined to convict on the bribery allegations, even in the absence of sufficient proof, for fear that the Syracuse Defendants will get away with the other (allegedly more significant) misconduct.

Make no mistake, once the Government is permitted to introduce *any* of the facts related to the Buffalo Billion allegations, the Syracuse Defendants will be forced to defend against a complex and convoluted theory of criminality that has shifted and evolved throughout the inception of this case. This defense will require dozens of defense witnesses (likely including expert testimony), will lengthen the trial by weeks and raises complex issues of law and fact that the Syracuse Defendants believed would be addressed in during the June trial, where they rightly belong. As a result, the Buffalo Billion allegations will swallow the bribery allegations, undermining the Court's sensible decision to have two separate trials, and effectively threatening defendants with two trials worth of proof in each of two trials. This will surely open the way to all the spillover prejudice and confusion threatened by the initial indictment.

At the very least, the Government's strategy will categorically reduce if not eliminate, the likelihood that jurors will focus on the evidence (or lack thereof) offered by the Government and any evidence offered by the Defendants for the allegations that are actually at issue in January. Since the Government has already conceded that severance is required to reduce juror confusion, it should not be permitted to argue that the confusion is now either unforeseeable or otherwise tolerable.

Furthermore, regardless of the outcome of the first trial, the Government plans to put the Syracuse Defendants on trial for the Buffalo Billion allegations come June 18, 2018, presumably after curing any problems with the way the Buffalo Billion proof went in during its January dress rehearsal and getting a better sense of defense efforts to undermine it. It is hard to imagine how this door can be opened slightly without swinging all the way. Permitting the Government to proceed as planned will cause the quintessential "trial within a trial." Even permitting the

Government to proceed under a Solomonic Compromise or limiting instruction will cause substantial prejudice compounded by the Syracuse Defendants inability to fully defend against that evidence. As a consequence, anything short of full preclusion both irreparably prejudices defendants and nullifies the Court's severance order. In more simple terms, if the Government is allowed to offer any evidence related to the Buffalo Billion allegations, the January trial will be a mess.

## CONCLUSION

The Government's about-face on the severance it previously supported raises too many issues for this Court to allow the Government to have its cake and eat it too. Anything short of complete preclusion totally frustrates the severance and irreparably prejudices the Syracuse Defendants. The Government well knows that the only genuine purpose for its proffered evidence is to prejudice the Syracuse Defendants and, by extension, inflict additional prejudice on Defendants Percoco and Kelly. For these reasons the proffered evidence must be entirely precluded.

Thank you for your attention to this matter.

Very truly yours,

O'CONNELL AND ARONOWITZ

By:     /s/ *Stephen R. Coffey*

Stephen R. Coffey
Scott W. Iseman


cc:     All counsel of record (via ECF)

{O0077378.3}