**LANKLER SIFFERT & WOHL LLP**
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

November 1, 2017

**BY ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re: **United States v. Percoco, et al.**, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

  We represent Peter Galbraith Kelly, Jr. in the above-referenced matter. We respectfully submit this letter to join in full Joseph Percoco's objection, dated November 1, 2017, to evidence that the Government seeks to admit pursuant to Federal Rule of Evidence 404(b).[1] See United States v. Gelzer, 50 F.3d 1133, 1140 (2d Cir. 1995) ("Where allegedly prejudicial evidence is admitted solely against one defendant in a multi-defendant trial, the prejudice this might cause to his co-defendants is an appropriate consideration for Rule 403 balancing and may result in the exclusion of such . . . .").

## Background

  Mr. Kelly, a former Senior Vice President at an energy company (the "Energy Company"), is charged in two counts with conspiring to bribe, and bribing, his co-defendant Mr. Percoco (a former aide to Governor Cuomo). The Government alleges that Mr. Kelly hired Mr. Percoco's wife in late 2012 to work at one of the Energy Company's public relations arms in exchange for Mr. Percoco's agreement to commit official acts to benefit the Energy Company as the opportunity arose. (S2 Ind. ¶¶ 28–32; 54–56; 64–65). Mr. Percoco is separately charged with accepting bribes from co-defendants Steven Aiello and Joseph Gerardi.

  By letter dated October 13, 2017, the Government advised Mr. Percoco pursuant to Rule 404(b) that it seeks to admit evidence that, between 2011 and 2016, Mr. Percoco somehow "threatened" "at least" four New York State employees that if they left their jobs in New York State government then he would use his influence to make it difficult for them get a new job. (See Ex. A). The Government has not indicated when each of these "threats" allegedly occurred, other than to say they occurred generally between 2011 and 2016, and that Mr. Percoco made

---

[1] The 404(b) Notice addressed to Mr. Percoco is attached hereto as Exhibit A.

them "at least" three times while employed as Deputy Secretary to the Governor and "at least" twice while employed by the Cuomo campaign (from April 2014 to the end of the year).  While the Government's letter to Mr. Percoco listed the titles of people who received the threats, it has provided no other details.  As a result, it is impossible to know when each "threat" occurred or which one of the four recipients received a threat twice.  Indeed, for at least one of the listed titles, more than one person has held that title during the specified time period, so it is impossible to know who was allegedly threatened.  Nor is it possible to know who Mr. Percoco allegedly threatened while he worked for the Governor or while he worked for the campaign, how Mr. Percoco made the "threats," what the "threats" were, where the "threats" occurred, what precipitated the "threats," or how the recipients responded to or understood the "threats."  The Government has provided no link between the "threats" and the charges.

In the 404(b) notice and two subsequent emails dated October 19, 2017 and October 26, 2017,[2] the Government claims that the material is admissible against Mr. Percoco as "direct" proof and for all the purposes listed in Rule 404(b), in particular to show "opportunity."  (See Exs. A, B, C).

## The Court Should Exclude The Proffered Evidence

As stated in Mr. Percoco's letter regarding this proof, the proffered evidence does not support the S2 Indictment's actual charges.  It has no probative value with respect to the allegations that Mr. Percoco accepted bribes from Mr. Kelly.  None of the alleged threats has anything to do with Mr. Percoco's motive to accept bribes from Mr. Kelly, or with his opportunity or preparation to do so.  Nor do they speak to the absence of mistake or lack of accident, or the identity of any party in issue.  There is no credible argument that because Mr. Percoco somehow purportedly threatened a coworker not to leave New York State government service that Mr. Percoco intended to accept or knew he was accepting bribes from Mr. Kelly.  Similarly, that Mr. Percoco allegedly told another New York State employee not to leave state service has nothing to do with whether Mr. Kelly hired Mr. Percoco's wife in exchange for official acts to benefit the Energy Company.  Nor is there even a suggestion that the "threats" were in any way connected to the "official acts" Mr. Percoco allegedly committed.  Indeed, it appears undisputed that at least three of the individuals possibly at issue have nothing to do with the allegations against Mr. Kelly.

The Government's claim that the threats are somehow proof of Mr. Percoco's "opportunity" to commit the charged acts, and are therefore admissible pursuant to 404(b), is likewise unavailing.  In reality, the Government is offering this evidence for an improper purpose: to show that Percoco allegedly had a propensity to pressure people to demonstrate that "on a particular occasion" it is more likely that he improperly engaged in an "official act" by pressuring state employees to interfere with the contracts related to the Energy Company.  See

---

[2] The email dated October 19, 2017 is attached hereto as Exhibit B.  The email dated October 26, 2017 is attached hereto as Exhibit C.

Fed. R. Evid. 404(b)(1). The Court should not allow this, as "[t]he admission of prior-act evidence intended to demonstrate that a defendant's prior bad act is indicative of a bad character trait that in turn raises the inference that the defendant must have committed the currently charged bad act is, of course, impermissible." United States v. Ozsusamlar, 428 F. Supp. 2d 161, 169 (S.D.N.Y. 2006).

Not only is this evidence inadmissible against Mr. Percoco, the proffered evidence would unfairly prejudice Mr. Kelly, who is charged with bribing Mr. Percoco in exchange for Mr. Percoco's agreement to commit official acts. See Fed. R. Evid. 403. Put simply, improper propensity evidence that Mr. Percoco unlawfully pressured someone unfairly prejudices Mr. Kelly because the S2 Indictment charges Mr. Kelly with engaging in a quid pro quo with Mr. Percoco, and the alleged "quo" may involve alleged pressure Mr. Percoco exerted on others.

Moreover, at least one of the state employees, and maybe more, has left New York State employment and has a successful career in the private sector. Mr. Percoco's supposed threats were therefore empty, or never occurred. In this regard, if the Government presents evidence about the supposed "threats," the defense will be forced factually to rebut the "proof" with the reasons for and circumstances surrounding former employees' departures and their ability to secure employment in New York after their departure. This will quickly devolve into a trial within a trial that will cause unnecessary delay and risk jury confusion.

Lastly, the Government does not need the evidence; we understand that there will be plenty of proof from witnesses and in documents regarding the role that Mr. Percoco played in state government. The "threat" evidence would be cumulative and is therefore inadmissible for that reason alone. See Fed R. Evid. 403 and advisory committee's note ("The availability of other means of proof may also be an appropriate factor [in determining whether to exclude evidence on ground of unfair prejudice].").

For the reasons stated above, Mr. Kelly respectfully requests that the Court exclude the proffered "threats" evidence.

Respectfully submitted,

LANKLER SIFFERT & WOHL LLP

By:  /s/ Daniel M. Gitner
Daniel M. Gitner
Rachel S. Berkowitz

CC: All Counsel (via ECF)