# LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX   (212) 764-3701

November 1, 2017

**BY ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: **United States v. Percoco, et al.**, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    We represent Peter Galbraith Kelly, Jr. in the above-referenced matter. We write on behalf of Mr. Kelly, as well as co-defendants Joseph Gerardi and Steven Aiello (the "Syracuse Defendants"). We respectfully submit this motion in limine to request that the Court exclude any references to a single "Percoco Bribery Scheme" or "Percoco Scheme," and to any argument or suggestion that such a scheme existed.[1]

    As the Court is aware, the original indictment charged Mr. Kelly in a single duplicitous honest services fraud conspiracy count along with Joseph Percoco and the Syracuse Defendants. The supposed basis for the original conspiracy charge was that the Energy Company Bribery Scheme[2] (the bribery allegations against Mr. Kelly and Mr. Percoco) and the Syracuse Bribery Scheme (the bribery allegations against the Syracuse Defendants and Mr. Percoco) were spokes of a wheel with Mr. Percoco and the Government's cooperating witness Todd Howe at the hub. The original indictment titled this purported hub-and-spoke conspiracy the "Percoco Bribery Scheme." (Ind. ¶ 27 header). Problematically, nowhere in the 35-page original indictment was there any allegation of a "rim" for this single "Percoco Bribery Scheme" conspiracy: no common aim or purpose, no mutual dependency between the two alleged schemes, and no

---

[1] The Government's position that it should be able to argue the existence of such a scheme further demonstrates why the Court should grant Mr. Kelly's pending motion for severance from the trial of the Syracuse Defendants. (Doc. No. 234). If the Court declines to grant that motion, the Court should preclude the Government from making this argument at Mr. Kelly's joint trial with the Syracuse Defendants.

[2] The capitalized terms used herein have the same definition set forth in Mr. Kelly's prior motion papers. (See, e.g., Doc. No. 234).

allegation to support an inference that Mr. Kelly was aware that he played a part in a conspiracy larger than just the alleged Energy Company Bribery Scheme.

In apparent recognition of this fatal flaw, the Government filed a superseding indictment splitting the duplicitous conspiracy count.  The superseding indictment charged one conspiracy related to the Energy Bribery Scheme against Mr. Percoco and Mr. Kelly and a different conspiracy related to the Syracuse Bribery Scheme against Mr. Percoco and the Syracuse Defendants.  Indeed, in the Government's omnibus opposition brief dated June 30, 2017, the Government acknowledged that "the Syracuse Defendants and Kelly were not . . . aware of each others' bribery of Percoco and *thus did not share a common plan or scheme*."  (Doc. No. 264 at 99 (emphasis added)).   Consistent with this acknowledgment and common sense, the Government has represented to us that it will not claim that Mr. Kelly knew about the Syracuse Defendants or participated in a scheme with them.

However, bafflingly, the Government will not agree to refrain from characterizing the two conspiracies – the separate allegations against Mr. Kelly and the Syracuse Defendants – as the single "Percoco Bribery Scheme."  Refusing this defense request, the Government clings to a relic of their fatally flawed original indictment.[3]  To refer to the currently charged conduct as the "Percoco Bribery Scheme" or the "Percoco Scheme" implies that there was an overarching scheme or conspiracy encompassing both the Energy Company Bribery Scheme and the Syracuse Bribery Scheme.  The Government has acknowledged that no such overarching scheme or conspiracy in fact existed.  Such false rhetoric and insinuation can only serve to deprive Mr. Kelly of a fair trial.

The evidence presented at trial must be the basis for any argument by the Government.  Although the Government may suggest inferences based on the evidence, it is well-settled that the Government must not "refer to 'facts' that are not in the record" or "misstate the evidence."  See United States v. Suarez, 588 F.2d 352, 354 (2d Cir. 1978).  In other words, the Government is not permitted to argue inferences which are not supported by the evidence.  The Government has already conceded that Mr. Kelly and the Syracuse Defendants "did not share a common plan or scheme."  (See Doc. No. 264 at 99).  Because no common plan or scheme exists, there will, of course, be no evidence to support it.  Any attempt to link – rhetorically or otherwise – allegations against Mr. Kelly with the allegations against the Syracuse Defendants should be prohibited because no such link actually exists. Any suggestion to the contrary is completely improper because it would be an unfair attempt to insinuate a broader, more sweeping conspiracy than the Government can actually prove.  See, e.g., United States v. Hollier, 306 F. Supp. 2d 345, 346 (S.D.N.Y. 2004) (sustaining an objection to closing argument where "there was absolutely no evidence during the trial" concerning counsel's line of argument).  Indeed, to suggest that a single "Percoco Bribery Scheme" existed would be worse than misstating the evidence – it

---

[3] The term "Percoco Bribery Scheme" is also challenged in Mr. Kelly's pending motion to strike prejudicial surplusage.  (See Doc. No. 234 at 59).  The Court should grant that motion and this application for similar reasons.

would be deliberately misusing the evidence to imply a theory of the case that the Government has assured the Court and the parties it has abandoned as contrary to the facts. It would be inviting the jury to speculate and render a verdict based on insinuation, not evidence.

Federal Rule of Evidence 403 also prohibits the Government from arguing the existence of a single "Percoco Bribery Scheme" because of "a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury . . . ." Fed. R. Evid. 403. The Advisory Committee Notes explain that "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis." Fed R. Evid. 403 advisory committee's note. What the Government seeks to do here invites unfair prejudice in its purest form. The words "scheme" and "conspiracy" will be viewed as virtually synonymous in the mind of a juror. Allowing the Government to argue that the evidence supports a single Percoco-centric scheme would unmistakably convey to the jury that the Syracuse Bribery Scheme is relevant to Mr. Kelly's conduct and the conspiracy charges against him, when in fact (and as the Government has acknowledged) it is not.

Indeed, the jury will be asked to determine if the conspiracy to bribe Mr. Percoco, with which Mr. Kelly is charged, existed. See Leonard B. Sand et al. Modern Federal Jury Instructions: Criminal ¶ 19-04, at 19-12 (2017) (the first element of a conspiracy is the existence of an agreement). By referring to that conspiracy as part and parcel of a "Percoco Bribery Scheme" that included the conduct of the Syracuse Defendants, the Government would confuse the jury into believing the Syracuse conduct is part of the same conspiracy as Mr. Kelly's conduct – even though it has already conceded they were separate and distinct. Thus, the Government would implicitly be inviting the jury to find Mr. Kelly guilty based on conduct unrelated to the conspiracy for which he is charged and wholly disconnected from him.[4]

Rule 14(a) of the Federal Rules of Criminal Procedure provides, in relevant part, that "[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." If the Court decides not to sever Mr. Kelly's trial from the trial of the Syracuse Defendants, then the Court should use its discretion to mitigate the prejudice to Mr. Kelly and "provide any other relief that justice requires." See Zafiro v. United States, 506 U.S. 534, 541 (1993) ("Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts."). The Court may remedy some of the prejudice threatened by a joint trial with a simple measure that does not impinge on the Government's ability to offer its proof: prohibit the Government from making reference to a single Percoco scheme and preclude the Government from arguing that the evidence supports such an overarching scheme.

---

[4] The Government should not be allowed to invite the jury to make decisions about the culpability of Mr. Kelly based on evidence of separate charges against the Syracuse Defendants.

      Moreover, there is no conceivable need for the Government to employ this prejudicial rhetoric. If the Government wants to argue there was a plan between Mr. Percoco and Mr. Howe, it is free to do so if the evidence supports that argument. The Government is not free to lump Mr. Kelly and the Syracuse Defendants together as well.

      For the reasons set forth above, Mr. Kelly respectfully requests that the Court grant his motion in limine and prohibit the Government from making reference to a single Percoco Scheme or arguing that such a scheme exists.

Respectfully submitted,

LANKLER SIFFERT & WOHL LLP

By: _/s/ Daniel M. Gitner_
Daniel M. Gitner
Rachel S. Berkowitz

CC: All Counsel (via ECF)