LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

November 1, 2017

**BY ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: <u>United States v. Percoco, et al.</u>, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

      We represent Peter Galbraith Kelly, Jr. in the above-referenced matter. The Court currently has before it our motion to sever Mr. Kelly's trial from that of the unrelated bribery charges pending against Joseph Gerardi and Steven Aiello (the "Syracuse Defendants"). (Doc. Nos. 234, 291). We respectfully submit this letter in further support of that motion, because the Government has indicated that it will seek to offer against the Syracuse Defendants proof of a separate RFP bid-rigging conspiracy in which the Syracuse Defendants are alleged to have participated (the "Syracuse RFP Conspiracy"),[1] but in which it is conceded that Mr. Kelly did not participate and had no knowledge of and which the Court already severed from the bribery counts.[2] Admission of this severed, RFP bid-rigging evidence against the Syracuse Defendants will cause additional unfair prejudice to Mr. Kelly, over and above the substantial prejudice already caused by a joint trial of the two unrelated bribery schemes. That prejudice cannot be cured by limiting instructions. Accordingly, the Court should grant Mr. Kelly's remaining severance motion, or preclude the Government from offering in Mr. Kelly's trial any evidence relating to the Syracuse RFP Conspiracy.[3]

---

[1] The Government's Rule 404(b) Notice issued to Mr. Gerardi and Mr. Aiello, dated October 13, 2017, is attached hereto as <u>Exhibit A</u>.

[2] The Syracuse Defendants are set to go to trial on June 11, 2018 on this separate Syracuse RFP Conspiracy.

[3] By this letter, which is also written on behalf of the Syracuse Defendants, we join in full their motion, dated November 1, 2017, about this issue.

**A. The Government represented to the Court that it would "eliminate" the risk of spillover prejudice from the RFP conspiracies at trial, but now proposes to offer evidence of the Syracuse RFP Conspiracy**

The S1 Indictment in this case contemplated a single trial against eight defendants, spanning four distinct schemes: two unrelated bribery schemes and two RFP bid-rigging schemes.  Mr. Kelly—who was charged with participating in only one of the two alleged bribery schemes and neither of the alleged RFP schemes—sought severance of his charges from the charges relating to the three schemes about which he had no knowledge or participation, one of which is the Syracuse RFP Conspiracy. (Doc. Nos. 234, 291).  Mr. Kelly argued that, for a variety of reasons, substantial unfair prejudice would spill over onto him from the introduction of evidence pertaining to those unrelated schemes, that such prejudice could not be averted through limiting instructions, and that a joint trial will infringe upon his right to a fair trial.  (See Doc. Nos. 234 at 37–48; 291 at 10–17).

In response to that motion, as well as similar motions filed by the other seven defendants, the Government admitted that Mr. Kelly did not participate in, or know about, the bribery scheme alleged against the Syracuse Defendants or the two RFP schemes.  The Government also took the extraordinarily rare step of conceding that the charges in the Indictment should be severed.  Acknowledging that evidence regarding the RFP schemes should not spill over into the trial of the bribery schemes, the Government proposed splitting the charges across two trials—a bribery trial on the two alleged bribery schemes and a separate RFP trial on the two alleged RFP schemes.  The Government gave three reasons for its proposal, among them the following:

> … the [] proposed [severed] trial[] would *eliminate the risk of spillover prejudice to . . . Percoco and Kelly with respect to evidence specific to the [RFP schemes],* about which they had no knowledge or awareness.  Accordingly, the Government's proposed severance dispels any 'serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence,' and *obviates the need for any further severance* under Rule 14.

(Doc. No. 264 at 100 (emphasis added and citation omitted)).  In addition to stating that the proposed severance would "eliminate" the risk that evidence of the RFP schemes would "spill over" into the bribery trial, the Government assured the Court that the proposed bribery trial would be "relatively simple and streamlined," precisely because it would include evidence solely about bribery and not bid-rigging, and that this would "moot" Mr. Kelly's concerns that a joint trial would be unfairly complex.  (Id. at 101).  No less importantly, the Government informed the Court that its proposal would reduce the discovery review burden on Mr. Kelly and his alleged co-conspirator Joseph Percoco, again precisely because the proposed bribery trial would *not* involve evidence of the RFP schemes:

>The two proposed trials would permit all the defendants, other than the Syracuse Defendants, to focus on discovery related to *either* the [RFP schemes] *or* the bribery conspiracies.

(Id. at 102 (emphases added)). The Government also represented the following: "[s]everance in this way would avoid any potential spillover prejudice between the [bribery schemes and the RFP schemes], while also serving the interests of efficiency, consistency, and fairness" and "the defendants and charges should be severed into two trials . . . to significantly reduce the risk of spillover prejudice, simplify the logistics and proof of the trials, and decrease the burden of trial preparation on the defendants." (Id. at 83, 98).

After receiving the Government's brief and the reasons advanced by the Government for the proposed severance, the Court issued an order (a) concurring with the Government's proposal, (b) severing the case into a bribery trial and an RFP trial, and (c) setting Mr. Kelly for trial with Mr. Percoco, together with the unrelated bribery charges against the Syracuse Defendants. (Doc. No. 279). As a result, Mr. Kelly's reply brief did not focus on how evidence of the alleged RFP schemes would unfairly prejudice him in a trial related to the bribery conspiracies only (Doc. No. 291 at 1 n.1), but instead explained how the proposed bribery trial still left Mr. Kelly in an untenable and unfair position compelling a complete severance from the Syracuse Defendants under both Rules 8 and 14 of the Federal Rules of Criminal Procedure. (Id. at 3–17). Mr. Kelly's motion for a complete severance from the Syracuse Defendants remains pending.

Now—in a 180-degree turn from its unequivocal representation that the proposed severance would "eliminate the risk of prejudicial spillover" from the RFP schemes and "obviate" the need for severance of the two bribery schemes from each other—the Government has informed the defense that it may seek to admit *in the bribery trial* evidence relating to the alleged participation by the Syracuse Defendants in the Syracuse RFP Conspiracy that the Court ordered severed and will be the subject of the RFP trial. (See Ex. A). Unless Mr. Kelly's pending severance motion is granted in full, or the Syracuse RFP Conspiracy evidence the Government now wants to offer is precluded from the bribery trial, Mr. Kelly will suffer the same type of unfair spillover prejudice from the RFP schemes that the Government promised its severance proposal would "eliminate" and "moot." Indeed, the Government has stated during telephone calls that it may offer the evidence for multiple purposes, including as background, as Rule 404(b) evidence against the Syracuse Defendants, and as impeachment evidence should either of the Syracuse Defendants testify. The Government also apparently plans to elicit that its star cooperating witness, Todd Howe, pled guilty to participating in this RFP conspiracy scheme.

Moreover, rather than itself seeking permission to use the evidence that it previously proposed to the Court to keep out of the bribery trial in order to "eliminate" the risk of unfair prejudice to Mr. Kelly, the Government by email indicated that the defense should move in the first instance to preclude the evidence.

The Government's prior representations to the Court when it proposed severance and stated that the risk of unfair prejudice to Mr. Kelly would be "eliminate[d]," that there was no need to further sever the bribery conspiracies from each other, and that the defense need not worry about the review of millions of pages of discovery, were of great moment to Mr. Kelly. Defense counsel took the Government at its word. In reliance on the Government's representations to the Court, we stopped reviewing and attempting to understand the evidence, or even the Government's basic theories relating solely to the Syracuse RFP Conspiracy. Furthermore, we stopped seeking to identify areas of harmful potential spillover or particular items of evidence and arguments that might lead to juror confusion. We did so because the Government expressly led us to believe that the risk of spillover prejudice from the Syracuse RFP Conspiracy would be "eliminated" from the bribery trial, and that our concerns were "moot." The Government's new decision to offer the evidence has whipsawed our trial preparation. If the Government is now permitted to renege and inject the Syracuse RFP Conspiracy into the bribery trial, the Government will have successfully sandbagged the defense, and Mr. Kelly's defense will have been hampered in its ability to predict, prepare for, and argue the issues raised by the evidence. As discussed below, if the RFP evidence is not precluded from the bribery trial, defendants will suffer additional and significant unfair prejudice.

Now that the Government has revealed its intent to inject the Syracuse RFP Conspiracy into the January bribery trial, the arguments for severance set forth in Mr. Kelly's pending severance motion apply with even greater force. We respectfully refer the Court to pages 17 through 48 of our original severance motion (Doc. No. 234) and pages 3 through 17 of our reply brief (Doc. No. 291), in which we addressed why Mr. Kelly was entitled under Rules 8 and 14 to a trial on the counts relating to his alleged scheme alone.

> **B. The admission of evidence regarding the Syracuse RFP Conspiracy against the Syracuse Defendants in the bribery trial will result in spillover prejudice and transference of guilt to Mr. Kelly, and is further reason to sever Mr. Kelly's bribery charges from those against the Syracuse Defendants**

A defendant's rights are compromised when "evidence that the jury should not consider against [him] and that would not be admissible if [he] were tried alone is admitted against a codefendant." Zafiro v. United States, 506 U.S. 534, 539 (1993). Spillover prejudice is most likely to infect a trial where, as here, co-defendants are not charged in the same conspiracy or the same course of events. This is particularly true where evidence offered against one co-defendant obviously would not be admissible in a separate trial against the other co-defendant. See United States v. Salemeh, 152 F.3d 88, 115 (2d Cir. 1998) ("'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper. This is an unlikely occurrence when all the defendants are charged under the same conspiracy count." (internal citation omitted)); cf. United States v. Miller, 116 F.3d 641, 679 (2d Cir. 1997).

As slated, the bribery trial will involve two complicated and unrelated sets of facts: one relating to allegations that Mr. Kelly conspired with cooperating witness Mr. Howe to bribe

Mr. Percoco to benefit Mr. Kelly's employer, an energy company, and another relating to allegations that the Syracuse Defendants separately conspired with Mr. Howe to bribe Mr. Percoco to benefit a real estate developer.  For the reasons set forth herein and in Mr. Kelly's severance motion and reply, joinder of those two sets of facts will make it difficult for the jury to focus on, remember, and assess the evidence against Mr. Kelly, and make it likely that he will suffer an unfair "guilt by association" even though he never associated with the Syracuse Defendants.  (See Doc. Nos. 234 at 37–48; 291 at 10–17).  Mr. Kelly will suffer substantial unfair spillover prejudice so long as he remains joined with the Syracuse Defendants—*even if no evidence of the Syracuse RFP scheme is introduced*.  See United States v. Cardascia, 951 F.2d 474, 483 (2d Cir. 1991) (noting that "[t]he joinder of an unrelated conspiracy . . . is an aggravated variation of the scenario presented when minor players in a conspiracy trial are joined with co-conspirators who played more significant roles").

Allowing the Government to inject the Syracuse RFP Conspiracy allegations against the Syracuse Defendants, on top of the allegations that they committed bribery, into *Mr. Kelly's* bribery trial would compound the unfair prejudice to Mr. Kelly—who, by the Government's admission, had nothing to do with the alleged Syracuse bribery scheme or the Syracuse RFP Conspiracy.  Adding evidence of a third contested fraud makes it even more likely that the jury will become confused or forget key aspects of Mr. Kelly's case, mistakenly apply unrelated facts to Mr. Kelly's case in their assessment of the evidence against him, or simply conclude that something wrong worthy of conviction must have occurred.  For example, since Mr. Howe was involved in all three sets of allegations, the jury could confuse his role in one with his role in another, even though those roles were distinct and occurred at different points in time.  Moreover, the jury will likely forget which of the thousands of emails and facts in this case relate to which of the three schemes that would be in issue.  It is hard enough to follow the email correspondence and factual development relating to any one of the alleged schemes; three would be impossible.  As Mr. Howe claims to have participated in all three schemes, the jury could determine that the evidence of the Syracuse RFP Conspiracy demonstrates his propensity to corrupt New York State government and therefore that his alleged co-conspirators (including Mr. Kelly) are more likely to have committed the acts for which they are charged—even though the Syracuse RFP Conspiracy has nothing to do with Mr. Kelly.  The jury would simply be unable to make "a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.[4]

---

[4] Given the complexity of each alleged scheme, even well-crafted limiting instructions will not guarantee Mr. Kelly a fair trial free of unfair prejudice.  While it may be true in some situations that a jury can reasonably be expected to keep track of such instructions and follow them, in circumstances like this, where the "prejudicial spillover" is "overwhelming," jurors cannot reasonably be expected to follow such instructions.  United States v. McDermott, 245 F.3d 133, 139–40 (2d Cir. 2001) (noting that the presumption that jurors follow limiting instructions "fades when there is an overwhelming probability that the jury will be called upon to perform humanly impossible feats of mental dexterity").

In this respect, while the proof of the allegations against Mr. Kelly will differ substantially from the proof against the Syracuse Defendants, the bribery allegations against Mr. Kelly contain elements superficially similar to those connected to the Syracuse RFP Conspiracy, even though it is undisputed that they are unrelated. This will cause juror confusion and may lead the jury to unfairly associate Mr. Kelly with the Syracuse Defendants and the proof against them. For example, the Government claims that Mr. Kelly hired Mr. Percoco's wife in exchange for Mr. Percoco's agreement to provide "official acts" to benefit Mr. Kelly's employer, an energy company, as the opportunity to do so arose. The Government further claims that in late 2013, Mr. Howe encouraged Mr. Percoco to commit official acts to benefit the energy company by interfering in a New York State RFP process in which the energy company had applied to receive a state contract to build a power plant. Meanwhile, with respect to the Syracuse RFP Conspiracy, the Government likewise alleges that Mr. Howe helped "rig" a state RFP process so that the Syracuse Defendants could win a development contract. Mr. Howe acted through a front company called "Potomac Strategies" in both sets of accusations. There is a real risk that the jury will find in each set of allegations facts similar to the other, and thereby give more weight to the allegations against Mr. Kelly than they otherwise would if they were only faced with judging the charges against him. This, alone, warrants severance. See United States v. Cervone, 907 F.2d 332, 342 (2d Cir. 1990) (noting that severance may be warranted in cases where "spillover might influence a jury to attribute criminal intent to ambiguous conduct associating a particular defendant with a conspiracy").

Faced with three unrelated sets of allegations, there is a substantial risk that the jury will confuse which facts relate to which alleged scheme. See United States v. Upton, 856 F. Supp. 727, 736 (E.D.N.Y. 1994) (severing defendants in part because the jury may have found it difficult to distinguish the evidence relating specifically to certain defendants). Given the complexity of the allegations, with each new set the jury is more likely to conflate facts relating to different schemes, lump them all together, or conclude, based on the sheer number of allegations, that something corrupt "must have" occurred. This is particularly true because the only individual common to all three sets of allegations is the Government's cooperating witness, Mr. Howe. If the jury is allowed to learn of Mr. Howe's purported involvement in a third instance of corruption, it may simply conclude that everything he touched must have been dirty. See, e.g., United States v. Rajaratnam, 753 F. Supp. 2d 299, 316 (S.D.N.Y. 2010) (concluding that defendant could not be tried in the same case as conspiracy counts against her co-defendant covering dozens of incidents of alleged insider trading, not involving her in any way, because "mounting proof of the guilt of one is likely to affect another" (internal quotation marks and citation omitted)). Put simply, piling on the evidence against the co-defendants an entirely new and unrelated set of allegations would make the resulting prejudice and guilt by association insurmountable.

Moreover, admission of the evidence threatens to substantially lengthen the trial. The Syracuse Defendants undoubtedly will want to demonstrate that they did not participate in the Syracuse RFP Conspiracy—and be prepared to defend the charge, given the fact that a separate trial on the RFP allegations looms around the corner. It appears that at least hundreds of

thousands of pages of discovery relate to the matter, not to mention the testimony of many witnesses. The length of Mr. Kelly's trial is already doubled if he must share a jury with the Syracuse Defendants on their bribery charges, and the Court should not allow a trial within a trial of another matter completely irrelevant to him to lengthen the trial even further. See, e.g., United States v. Bertolotti, 529 F.2d 149, 157 (2d Cir. 1975) (noting that "[t]he possibilities of spill-over effect . . . are patent when the number of conspiracies, the number of defendants and *the volume of evidence* are weighed against the ability of the jury to give each defendant the individual consideration our system requires" (emphasis added)).

Two cases, which the Government neglected to address in opposing the severance motions, are particularly instructive. In United States v. Catapano, 05-CR-229 (SJ) (SMG), 2008 WL 2222013 (E.D.N.Y May 22, 2008) the Court recommended severance because it would be too difficult for the jury to assess the case against the moving defendant (alleged to have participated in a single scheme) at the same time as his co-defendants (alleged to have participated in two schemes). Id. at *17. The Court concluded that deliberating "independently" on the two conspiracy charges—which involved (as is the case here) different agreements, different time periods, and different participants—would pose a "substantial challenge" that could "prevent the jury from making a reliable judgement about guilt or lack of guilt." Id. (internal quotation marks and citation omitted). Likewise, the jury here cannot reasonably be expected to deliberate independently with respect to the charges against Mr. Kelly after hearing weeks of evidence about the bribery charges against the Syracuse Defendants, much less additional evidence about the Syracuse RFP Conspiracy. Each of the fact patterns are too complicated, and it will be impossible for any jury to keep the facts straight and not let the evidence of one scheme spill over into the evaluation of the others.

Similarly, in United States v. Villanueva Madrid, 302 F. Supp. 2d 187 (S.D.N.Y. 2003), the Court exercised its discretion under Rule 14 to sever money laundering charges from bank and wire fraud charges. Id. at 190. There, the Court explained that the money laundering trial would involve evidence connecting the defendant to a corrupt politician and a narcotics cartel, while the fraud charges did not. Id. at 191. The Court expressed concern that the evidence connected to the money laundering charges "may well arouse jury animus that could, in a joint trial, spill over into the jury's consideration of the fraud charges." Id. The analysis here is similar. The Government seeks to offer evidence of a Syracuse RFP Conspiracy that allegedly demonstrates that the Syracuse Defendants—with Mr. Howe's help—successfully rigged a bid for a state contract and won over $100 million worth of state business. By contrast, the charges against Mr. Kelly involve an alleged quid pro quo relationship in which Mr. Percoco—with Mr. Howe's help and at Mr. Howe's behest—allegedly interfered in a state RFP process which did not result in the award of any business to the energy company. Mr. Kelly will show that Mr. Percoco did not act pursuant to any quid pro quo relationship, and that to the extent he and Mr. Howe did anything, they were motivated by other factors. Yet, if the jury hears that Mr. Howe corruptly rigged a state bid for the Syracuse Defendants, its animus with respect to that rigged Syracuse bid likely will spill over into the jury's consideration of the bribery charges against Mr. Kelly and affect its consideration of the evidence against him. Simply put, if the jury

learns that Mr. Howe corruptly rigged a state bid for the Syracuse Defendants, it will be more likely to find that Mr. Howe's actions with respect to the energy company's relationship with New York State were also corrupt—particularly since they also involved an RFP for a state contract. The admission of the Syracuse RFP Conspiracy will function as evidence that Mr. Howe has a "propensity" to rig bids. Mr. Kelly is entitled to a trial based on the evidence against him, alone, and to a jury that is not influenced by evidence that may show that others committed other, unrelated bad acts.

### C. If the Court determines not to sever the charges against Mr. Kelly from the charges against the Syracuse Defendants, it should preclude admission of evidence concerning the Syracuse RFP Conspiracy

If the Court does not sever Mr. Kelly from the Syracuse Defendants, it should at least preclude evidence of the Syracuse RFP Conspiracy from their shared bribery trial. In this respect, the Court need not linger on the question of whether sufficient prejudicial spillover would exist if the evidence of the Syracuse RFP Conspiracy is admitted. The Government conceded as much when it proposed severing the RFP conspiracies from the bribery conspiracies.

At the threshold, as stated in the Syracuse Defendants' applications, the Syracuse RFP Conspiracy is simply not relevant or properly admissible under Rule 404(b) in this trial. It certainly is not background evidence, as it is not "necessary to complete the story of the crime *on trial*." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (emphasis added) (punctuation and citation omitted); see also United States v. Rittweger, 524 F.3d 171, 180 (2d Cir. 2008) (admission of background evidence was "highly questionable" where evidence was "not strictly necessary to understanding" the crime charged). Indeed, the fact that the Government so quickly agreed to a severance of the Syracuse RFP Conspiracy out of this trial, and at least originally made clear that the evidence of the conspiracy would not intrude on the trial, makes clear that the proffered proof does not explain the relevant bribery charges pending in *this* trial, and that even the Government does not believe it "needs" the evidence to explain, let alone prove, the charges. United States v. Williams, 585 F.3d 703, 707–08 (2d Cir. 2009) (court abused its discretion by admitting background evidence that was not helpful to explain the crime charged and where the Government did not need the evidence to explain its theory of the case).

Regardless, the Court's authority for precluding the admission of the Syracuse RFP Conspiracy evidence is well-grounded in both Federal Rule of Evidence 403 and Federal Rule of Criminal Procedure 14. Rule 403 states that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Government has admitted that admission of the Syracuse RFP Conspiracy evidence presents a risk of unfair prejudice and could confuse the issues, cause undue delay, and waste time. (Doc. No. 264 at 100–02 (noting that severance of the RFP charges from the bribery charges "would eliminate the risk of spillover prejudice," would result in a "relatively simple and streamlined" trial about "an easy-to-

understand corruption scheme," would "also reduce the expected length of each trial," and would "significantly reduce[] the burden on the defendants as they prepare for trial")). For the reasons stated above, admission of the evidence would cause substantial unfair prejudice to Mr. Kelly, but obviously has no probative value in any case against him. Moreover, for the reasons set forth by the Syracuse Defendants in their letter dated November 1, 2017, it has little to no probative value as to the bribery charges against them either.

Additionally, Rule 14 provides that, if joinder "appears to prejudice a defendant," the Court "may provide any other . . . relief that justice requires." Fed. R. Crim. P. 14(a). There is no question that admission of evidence of the Syracuse RFP Conspiracy would "appear to prejudice" Mr. Kelly. He faces trial with the Syracuse Defendants even though the Government agrees that he never met them, had no knowledge of their activities, and did not participate in any conspiracy with them. That causes him unfair prejudice, let alone the appearance of it. Piling on even more allegations that the Syracuse Defendants engaged in a second alleged scheme—in which Mr. Kelly likewise knew nothing about—only adds to that "appearance" of prejudice and actually causes him substantial unfair prejudice.

The injection of the Syracuse RFP Conspiracy into the bribery trial will cause Mr. Kelly additional unfair prejudice on top of that suffered simply due to his joinder with the Syracuse Defendants on their separate bribery charges. The Government chose to patch together an eight-defendant Indictment charging four unrelated crimes. It has admitted that the Indictment should be split at least in half, due to the unfair prejudice that Mr. Kelly and Mr. Percoco would suffer from joining their bribery trial with the charges on the unrelated RFP bid-rigging charges in which it is conceded they did not participate. The Government should not be permitted to reintroduce that unfair prejudice back into their bribery trial by offering evidence relating to the Syracuse RFP Conspiracy.

**Conclusion**

The Government's attempt to inject evidence of the Syracuse RFP Conspiracy in the January bribery trial underscores why Mr. Kelly should be severed entirely from the Syracuse Defendants. Notwithstanding its admission that Mr. Kelly had no involvement in either the alleged Syracuse bribery or the Syracuse RFP Conspiracy, the Government presently intends to introduce evidence of both schemes in Mr. Kelly's trial. Mr. Kelly's right to a fair trial must trump the Government's arguments that the evidence is admissible against the Syracuse Defendants. See United States v. Shkreli, 15-CR-637 (KAM), 2017 WL 4019387, at *6 (E.D.N.Y. Apr. 19, 2017) ("[W]here judicial economy is butting up against a defendant's right to a fair trial, judicial economy must give way to fairness." (citing Zafiro, 506 U.S. at 539)).

If the Court determines not to sever Mr. Kelly from the Syracuse Defendants in the bribery trial, the Government should at least be precluded from offering evidence of the Syracuse RFP Conspiracy in the bribery trial, because allowing that evidence not only would "appear" to cause Mr. Kelly prejudice, but also in fact would cause him substantial unfair prejudice that far outweighs the probative value of the evidence, simply because he happens to share a jury with

the Syracuse Defendants.  See United States v. Kouzmine, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996) (noting that a defendant should not be exposed to "the risks inherent in joinder of [multiple] alleged conspiracies simply because he had the misfortune of being charged with another defendant who was subject also to other accusations").

    Respectfully submitted,

    LANKLER SIFFERT & WOHL LLP

    By:    */s/ Daniel M. Gitner*
    Daniel M. Gitner
    Rachel S. Berkowitz

CC: All Counsel (via ECF)