*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*



November 1, 2017

**BY ECF**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/2/17
```

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* v. *Joseph Percoco, et al.*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

      The Government respectfully moves *in limine* for the admission at trial of: (1) statements of defendants Steven Aiello and Joseph Gerardi made during their respective proffer sessions with the Government, which are admissible pursuant to the Federal Rules of Evidence under the terms of the defendants' respective proffer agreements; and (2) evidence regarding campaign contributions made or directed by certain defendants, which is demonstrative of the relationships between co-conspirators and of the defendants' intent. The Government also moves to preclude potential evidence and arguments regarding the merits or claimed public value of any agreements made or projects built as a result of the conduct alleged here, including the Reciprocity Agreement and related power plant in New Jersey; the planned power plant in Wawayanda, New York; the Syracuse Inner Harbor Project and the related potential labor peace agreement (the "LPA"); and the Film Hub. Finally, the Government seeks notice of any advice-of-counsel defense by December 1, 2017.

**I.    The Court Should Admit the Proffer Statements of Defendants Steven Aiello and Joseph Gerardi**

      Pursuant to Federal Rules of Evidence 401 ("Rule 401") and 801(d)(2), the Government will seek to admit the statements made by Aiello and Gerardi (the "Syracuse Defendants") at their respective proffer sessions. Because, pursuant to the terms of Aiello and Gerardi's proffer agreements, the introduction of these statements is not barred by Federal Rule of Evidence 410 ("Rule 410"), and their statements during the proffer sessions fall within one of the specifically enumerated exceptions in their proffer agreements, the Government should be permitted to offer Aiello and Gerardi's statements in its case-in-chief.

**A. Relevant Facts**

**1. The Defendants' Proffers Agreements**

On or about June 21, 2016, prior to being charged in the instant case, Aiello and Gerardi each met separately with the Government pursuant to the Government's standard proffer agreement (the "Proffer Agreement").[1] During these proffer sessions, Aiello and Gerardi were each represented by counsel, and after reviewing the Proffer Agreement privately with counsel and again with the Government in the presence of counsel, each of Aiello and Gerardi, along with his respective attorney, signed his own Proffer Agreement (attached as Exhibits A and B). The Proffer Agreement provides, in pertinent part:

> (2) In any prosecution brought against Client by [the United States Attorney's Office for the Southern District of New York], except as provided below the Government will not offer in evidence on its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Client at the meeting, *except . . . in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting*; . . . .
>
> (3) Notwithstanding item (2) above: (a) the Government may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution of Client by the Government; (b) *in any prosecution brought against Client, the Government may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify*; and (c) *the Government may also use statements made by Client at the meeting to rebut any evidence or arguments offered by or on behalf of Client (including arguments made or issues raised* sua sponte *by the District Court) at any stage of the criminal prosecution* (including bail, all phases of trial, and sentencing) in any prosecution brought against Client.
> ….

---

[1] Prior to Aiello's proffer, on or about April 26, 2016, Government agents also conducted an interview of Aiello that was not protected by a proffer agreement. The Government may offer as evidence at trial certain statements from this interview, including Aiello's statement denying paying defendant Joseph Percoco and statements Aiello made regarding communications that he had with Percoco. The defense has not claimed in any of its pretrial motions that these statements are inadmissible, nor is the Government aware of any argument to exclude these consensually-made statements at trial.

> (5) To the extent that the Government is entitled under this Agreement to offer in evidence any statements made by Client or leads obtained therefrom, Client shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is the intent of this Agreement to waive all rights in the foregoing respects.

(Ex. A at 1-2 (emphasis added); Ex. B at 1-2 (emphasis added).)

### 2. Aiello's Proffer Statements

As charged in Count Seventeen of the S2 Indictment, at his June 21, 2016 proffer session, Aiello made false statements denying involvement in paying defendant Joseph Percoco, when, in truth and in fact, Aiello directed payments to Percoco. (S2 Indictment ¶ 73.) Specifically, Aiello stated, in sum and substance, that he declined an invitation from Todd Howe—his then-consultant and co-conspirator in the charged scheme—to pay Percoco for Percoco's assistance with labor issues; that he (Aiello) was not aware of any money being paid to Percoco for any services that Percoco provided for Aiello's company (the "Syracuse Developer"); and that two payments (in the amounts of $15,000 and $20,000) made to Howe's LLC by the Syracuse Developer were for a financing project unrelated to Percoco. Aiello made additional false statements regarding, among other things, his reasons for not paying Percoco and Aiello's involvement in tailoring the Syracuse request for proposal at issue in Counts One through Three of the S2 Indictment (the "Syracuse RFP") to benefit Aiello's company.[2] Finally, Aiello made numerous other admissions or statements regarding, among other things, the change with respect to the need for the LPA by Empire State Development ("ESD"), the New York state agency charged with deciding whether an LPA was required if state money was to be allocated to the Syracuse Defendant's proposed

---

[2] On October 13, 2017, the Government provided notice to Aiello and Gerardi reserving the Government's right to introduce evidence regarding the tailoring of the Syracuse RFP. The Government anticipates that any such evidence would be introduced in a limited manner, likely through cooperating witness Todd Howe and associated documents, and would provide direct evidence regarding the relationship between Howe, Aiello, and Gerardi, as well as evidence regarding motive, opportunity, intent, preparation, plan, knowledge, and/or absence of mistake or accident as to each of Aiello and Gerardi. The Government anticipates that the defendants may seek to exclude such evidence from the January trial, and the Government will respond to such motions as appropriate.

The Government has also proposed to defense counsel that it would modify any statements made by Aiello regarding Gerardi and by Gerardi referring Aiello by referring to "another COR executive," to address any potential concerns flowing from the rule announced by the Supreme Court in *Bruton* v. *United States*, 391 U.S. 123 (1968). In discussions with the Government, counsel for Aiello and Gerardi have indicated that they do not agree with the Government's proposal but have not proposed an alternative. The Government expects the defense may raise the issue in their motions, and the Government will respond as appropriate.

project; and Aiello's desire to obtain a raise for his son, who worked in the Executive Chamber of the Governor of New York.

### 3. Gerardi's Proffer Statements

As charged in Count Eighteen of the S2 Indictment, at his June 21, 2016 proffer session, Gerardi made false statements denying involvement in paying Percoco, when, in truth and in fact, Aiello directed payments to Percoco. (S2 Indictment ¶ 75.) Specifically, Gerardi stated, in sum and substance, that he declined an invitation from Todd Howe to pay Percoco for Percoco's assistance with resolving the LPA issue; that he (Gerardi) never approved in any way any payments to Percoco; and that two payments (in the amounts of $15,000 and $20,000) made to Howe's LLC by the Syracuse Developer were for a financing project unrelated to Percoco. Gerardi made additional false statements regarding, among other things, his reasons for not paying Percoco, and Gerardi's involvement in tailoring the Syracuse RFP to benefit Gerardi's company. Finally, Gerardi made numerous other admissions or statements regarding, among other things, the change by ESD with respect to the need for the LPA.

## B. Applicable Law

Although "[o]rdinarily, statements made by a defendant during plea negotiations, including proffer sessions, are inadmissible at trial" pursuant to Rule 410, a defendant may waive the protection of Rule 410, including through the signing of a proffer agreement. *United States* v. *Velez*, 354 F.3d 190, 194 (2d Cir. 2004) (relying on *United States* v. *Mezzanatto*, 513 U.S. 196, 210 (1995)). "Proffer agreements are contracts to be interpreted according to ordinary principles of contract law." *United States* v. *Rosemund*, 841 F.3d 95, 107 (2d Cir. 2016). Thus, "[l]ike all contracts, proffer agreements must be interpreted to give effect to the intent of the parties," *id.* (internal quotation marks omitted), and "[w]here the language of a contract is unambiguous, the parties' intent is discerned from the four corners of their agreement," *United States* v. *Barrow*, 400 F.3d 109, 117-18 (2d Cir. 2005) (internal quotation marks omitted).

Accordingly, proffer agreements such as the ones executed by the parties here have been repeatedly upheld by and within the Second Circuit, and statements made pursuant to such proffer agreements have been deemed admissible where one of the exceptions has been triggered. *See Barrow*, 400 F.3d at 117; *Velez*, 354 F.3d at 195-97; *United States* v. *Parra*, 302 F. Supp. 2d 226, 235-40 (S.D.N.Y. 2004); *United States* v. *Chan*, 185 F. Supp. 2d 305, 308 (S.D.N.Y. 2002); *United States* v. *Chaparro*, 181 F. Supp. 2d 323, 334 (S.D.N.Y. 2002). As Judge Cote explained in *Chaparro*, there is "no unfairness to [the defendant] in allowing use of his statements during proffer sessions once he has opened the door to their use by his arguments and evidence," because the "design of the [Proffer] Agreement provides any defendant who decides to speak with the Government strong incentives to speak truthfully, and discourages anyone from speaking at all if she intends to lie . . . ." 181 F. Supp. 2d at 334.

## C. Argument

Aiello and Gerardi each knowingly and voluntarily signed his Proffer Agreement, through which each unambiguously waived his rights to preclude his statements under Rule 410, provided that any exception contained in the Proffer Agreement applies. *See Velez*, 354 F.3d at 196

November 1, 2017
Page 5

("[B]efore the waiver can be deemed unenforceable, the trial judge must find 'some affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily.'" (quoting *Mezzanatto*, 513 U.S. at 210)).

   Here, the exception contained in Paragraph 2 of the Proffer Agreement applies. Specifically, the Proffer Agreement states, clearly and unambiguously, that the Proffer Agreement provides no protection and the Government may introduce any of a defendant's statements where the defendant is charged with false statements arising from the statements made pursuant to the Proffer Agreement. Specifically, the Proffer Agreement states straightforwardly that, "[i]n any prosecution brought against Client by [the United States Attorney's Office for the Southern District of New York], . . . the Government will not offer in evidence on its case-in-chief . . . any statements made by Client at the meeting, except . . . in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting." (Ex. A at 1; Ex. B at 1.)

   A Grand Jury has found probable cause to believe that Aiello and Gerardi made false statements at their respective proffer sessions, and therefore, pursuant to Paragraph 2 of the Proffer Agreement, in this prosecution for false statements, the Government may offer in evidence on its case-in-chief any statements made by Aiello or Gerardi.[3] Nor is there any unfairness to the admission of their statements, as the Proffer Agreement's terms discouraged them each from speaking at all if either intended to lie during the proffer sessions or to make a later statement to the Court inconsistent with the statements he made to the Government. *See Velez*, 354 F.3d at 195 ("'[F]airness dictates that the [proffer] agreement be enforced.'" (quoting *United States* v. *Gomez*, 210 F. Supp. 2d 465, 485 (S.D.N.Y. 2002)); *Chaparro*, 181 F. Supp. 2d at 334; *see also FNU LNU* v. *United States*, Nos. 12 Civ. 7897 (RJS), 09 Cr. 543 (RJS), 2015 WL 5893723, at *10 (S.D.N.Y. Oct. 7, 2015) ("[I]n light of the clarity of the government's oral statements and written Proffer Agreement, Petitioner cannot claim that he was unaware of the consequences of making false statements concerning his identity during the proffer session.").

   Accordingly, the Government respectfully seeks an *in limine* ruling permitting the jury to hear the statements made by the defendants at their respective proffers.

## II. The Court Should Admit Evidence Regarding Campaign Donations

   Pursuant to Rule 401, the Government will seek to admit evidence of certain contributions made or directed by the Syracuse Defendants and defendant Peter Kelly to the campaigns of New York Governor Andrew Cuomo. The Government does not contend, and will not argue, that the campaign contributions were unlawful. However, the defendants' contributions are highly

---

[3] Even if the entirety of Aiello and Gerardi's statements (i.e., statements other than Aiello and Gerardi's respective false statements and statements required for context) were not admissible in the Government's case-in-chief under Paragraph 2 of the Proffer Agreement, the entirety of their respective statements would still be admissible on cross-examination, should either testify, and in rebutting evidence or arguments made by the defendants on the basis of the exceptions contained in Paragraph 3 of the Proffer Agreement. *See, e.g.*, *Barrow*, 400 F.3d at 117; *Velez*, 354 F.3d at 195-97.

probative evidence of the genesis and evolution of their relationships with co-conspirators Percoco and Howe, and of the various co-conspirators' states of mind. Accordingly, the Government should be permitted to offer such evidence in its case-in-chief.

### A. Relevant Facts

Campaign contributions were a critical part of the relationship between the co-conspirators. With respect to the Syracuse Defendants, the Government expects to show at trial that the two defendants, their relatives, and their company made campaign contributions in part to develop and then strengthen connections with the Office of the Governor and its senior officials, which they believed would, in turn, lead to benefits and opportunities for the Syracuse Developer. (Compl. ¶ 73.) The Government also expects to prove that Percoco learned that the Syracuse Developer had become both a client of Howe and a major campaign donor. In fact, Percoco made specific requests to Howe for the Syracuse Developer to contribute to the Governor's campaign, and Howe passed along those requests. (Compl. ¶ 73(d).)

These interactions and relationships are important to understanding Percoco's decision to solicit bribes from the Syracuse Defendants, using Howe as an intermediary, as well as the importance of state action (*e.g.*, obtaining state contracts) to the Syracuse Defendants. Percoco knew, including through Percoco's awareness of the general number and size of the campaign contributions made by the Syracuse Defendants, that the Syracuse Defendants were eager to increase their influence and that of their company in Albany, and he believed that they would therefore be willing to pay him bribes in exchange for helpful state action. As a result, when Howe suggested, on or about January 15, 2014, that Percoco could give Aiello a role in influencing the Governor's upcoming reelection campaign as it related to Syracuse, Percoco responded, "only if that other thing happens!"—referring to his expectation that the Syracuse Developer would pay him personally. (Compl. ¶ 58(b).)

Similarly, Kelly arranged for multiple campaign contributions to be made by the Energy Company as a way to ingratiate himself and his company to Percoco and the Governor's Office. The Government expects to show that, as early as February 2010, Howe, through Percoco, arranged for Kelly's company to make a $25,000 donation to the Governor's campaign in exchange for which Kelly and others from his company would have a private breakfast with the Governor (who was then the Attorney General and a candidate for Governor). The Government also expects to show that, later in 2010, when the Governor was poised to win his first term, Kelly understood that Percoco had the ability to influence the development of the Energy Company's planned Hudson Valley power plant (the "Power Plant") given his closeness to the Governor. (Compl. ¶ 36.) That is why, starting in or about late 2010, Kelly offered and provided certain benefits, including a weekend fishing trip and a steak lunch, in an effort to curry favor with Percoco. (Compl. ¶ 37(a), (c).) Of specific relevance to this motion, less than a week before the 2010 election, on or about October 27, 2010, Kelly arranged, at Percoco's request, for the Energy Company to donate a private jet to transport the Governor and his staff to certain campaign events. (Compl. ¶ 37(b).) Soon after the Governor took office, Kelly, with the assistance of Howe, sought to capitalize on his relationship with Percoco by asking him to use his influence to assist in the development of the Power Plant. (Compl. ¶ 38.)

      This history between the co-conspirators is crucial to understanding why Percoco turned to Howe and Kelly for bribes when his financial problems mounted in or around the spring of 2012, and demonstrates the importance of state action to Kelly. (Compl. ¶ 39.) The Government expects to show at trial that, over the years, Kelly continued to ask for help with State-related issues affecting the Power Plant, and he was willing to give and facilitate benefits—including the jet donation—in an effort to please and gain access to Percoco. That is why, facing a looming balloon payment of approximately $800,000 on his home mortgage in or about the summer of 2012, Percoco decided to pressure Kelly, directly and through Howe, to hire his wife, an out-of-work foreign-language schoolteacher. (Compl. ¶¶ 40, 42.) Kelly, who understood the influence that Percoco had over the Governor and his Administration, agreed and set up a low-show job that paid Percoco's wife approximately $90,000 per year. (Compl. ¶ 43.)

      **B. Applicable Law**

      Rule 401 permits the introduction of relevant evidence at trial. "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). Evidence does not need to establish an element of the charged crime to be relevant. *Id.* Instead, relevant evidence may "provide background for the events alleged in the indictment" in order to "show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id.* (quotation marks omitted); *cf. United States* v. *Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (Evidence of prior acts is admissible " to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." (quotation marks omitted)). Furthermore, in prosecutions for extortion under color of official right, courts routinely have held that evidence bearing on the victim's state of mind is relevant and admissible. *See, e.g.*, *United States* v. *McDonough*, 56 F.3d 381, 388 (2d Cir. 1995) (the Government must prove, among other things, that "the victims were motivated to make payments as a result of the defendant's control or influence").

      Contributions to political campaigns constitute one form of evidence that may be admitted to establish state of mind, to prove motive and intent, to show the relationship of the conspirators, or as background related to the conduct charged in a case. *See*, *e.g.*, *United States* v. *Silver*, 15 Cr. 93 (VEC), Order (the "*Silver* Order") (S.D.N.Y. Oct. 20, 2015) (Dkt. No. 88) (denying the defendant's motion *in limine* to preclude the Government from offering evidence of a developer's campaign contributions to show intent and motivation of the developer and the defendant to enter into unlawful quid pro quo relationship); *United States* v. *Skelos*, 15 Cr. 317 (KMW), Trial Tr. 2144-46 (the "*Skelos* Conference Tr.") (S.D.N.Y. Dec. 4, 2015) (Dkt. No. 140) (denying the defendants' request for a *McCormick* "explicit promise" quid pro quo jury charge where the Government had introduced evidence of campaign contributions "solely for the purpose of showing just how important some of these issues are to the payors" and not to prove the illegality of those contributions); *United States* v. *Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (evidence of the defendant lobbyist's campaign contributions "gave jurors a window into the way in which lobbyists like [the defendant] gain influence" and access to public officials, and also "amounted

to strong modus operandi evidence that demonstrated [the defendant's] transactional relationship with officials and the manner in which he pursued his clients' political aims").

Such evidence is admissible in cases where, as here, the Government does not allege that the contributions themselves were the quid in a kickback scheme and thus unlawful. *Cf. McCormick* v. *United States*, 500 U.S. 257, 273 (1991) (campaign contributions constitute an illegal quid only where they are exchanged for an explicit promise to perform an official action). Limiting instructions to the jury are sufficient to mitigate and control the risk of unfair prejudice or confusion caused by the admission of campaign contribution evidence. *See, e.g.*, *Silver* Order at 3; *Skelos* Conference Tr. 2146; *Ring*, 706 F.3d at 471.

**C. Discussion**

Campaign contribution evidence will be important and relevant at the January trial to show the background of the two bribery conspiracies involving Percoco and Howe, and to explain the understanding and intent of the conspirators. The Government has not, and will not, argue that the defendants donated to the Governor's campaigns in exchange for an explicit promise to perform an official action, and will agree to a limiting instruction regarding the legality of campaign contributions. Instead, the Government submits that the Syracuse Defendants' donations are clearly relevant to show, among other things, the creation of the conspiracy, the relationship between the conspirators, Percoco's motivation in seeking illicit bribe payments from the Syracuse Defendants, and the Syracuse Defendants' beliefs about the importance of Percoco and currying favor with him. *See, e.g.*, *Silver* Order at 2 (evidence of the developer's campaign contributions was circumstantial evidence of its belief in the importance of state action, from which "a jury could conclude that [the developer] was motivated to curry favor with Silver"). By the same token, evidence of the Energy Company's campaign donations facilitated by Kelly, Percoco, and Howe are certainly probative as to the separate bribery scheme involving Kelly, Percoco, and Howe.

Relevant evidence may be excluded pursuant to Federal Rule of Evidence 403 ("Rule 403") "if its probative value is substantially outweighed by a danger of," among other things, "*unfair* prejudice, confusing the issues, [or] misleading the jury." Rule 403 (emphasis added).[4] As set forth above, the campaign contribution evidence is highly probative. On the other side of the ledger, introduction of such evidence would not subject the defendants to the risk of unfair prejudice. Defendants in similar cases have argued that the controversial nature of campaign contributions could inflame the jury's passions or cause the jury to conclude that someone who accepted lawful contributions would also engage in the illegal quid pro quo scheme. But, as in *Silver*, the potential of such prejudice is "rather remote," and limiting instructions that make clear that the contributions were lawful would mitigate any risk. *See Silver* Order at 3; *see also Ring*, 706 F.3d at 472 (approving of the district court's limiting instructions).

---

[4] While political contributions implicate First Amendment rights, *see Buckley* v. *Valeo*, 424 U.S. 1, 20-23 (1976), it is well established that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin* v. *Mitchell*, 508 U.S. 476, 489 (1993); *see also United States* v. *Salameh*, 152 F.3d 88 111-12 (2d Cir. 1998) (affirming admission of defendant's reading materials as probative of involvement in terrorist activity).

Furthermore, as the Government did during the *Silver* and *Skelos* trials, the Government will take care to avoid the kinds of evidence that troubled the *Ring* Court. *See Ring*, 706 F.3d at 472 (expressing concerns about "conflat[ing] the contribution evidence with evidence about the things of value that were actually at issue"). The Government expects that its evidence of campaign contributions will be limited to evidence regarding the contributions that Aiello, Gerardi, and Kelly made or caused to be made during the relevant period to the Governor's campaigns; the manners in which the Syracuse Defendants and Kelly, and their companies and relatives, made their contributions; the reasons those defendants made such contributions; the ways in which Percoco and Howe solicited such contributions; and Percoco and Howe's knowledge of those defendants' contributions.

In view of the foregoing, evidence of the campaign contributions made or directed by the Syracuse Defendants and Kelly, respectively, should be admitted.

### III. Evidence or Argument Concerning Any Alleged Merits or Public Benefit of Agreements or Projects at Issue Should Be Precluded

In response to inquiry from the Government, the Syracuse Defendants have declined to confirm whether or not they may seek to introduce evidence or make arguments regarding the merits or claimed public value of any agreements made or projects built as a result of the conduct alleged here, including the Syracuse Inner Harbor Project, the LPA, and the Film Hub. Percoco and Kelly have indicated that, while they do not intend to introduce evidence for the purpose of establishing that the Reciprocity Agreement or related power plant in New Jersey or the planned power plant in Wawayanda, New York, were "good" as a general matter, they may introduce evidence relating to certain witness's views of the projects. As explained below, any evidence or arguments seeking to establish that any of these agreements or projects had merit or were beneficial to New York or the public, other than for the limited purpose of establishing a defendant's intent by demonstrating what that defendant knew about another individual's view on a particular project or agreement, would be improper and should be precluded.

At trial the jury will determine whether the defendants participated in the charged bribery, fraud, and extortion scheme. The "merits" of the issues as to which the defendants sought Percoco's help through bribery or Percoco provided official assistance in exchange for bribe payments are irrelevant to the defendants' guilt, and thus precluded by Rule 401. *See City of Columbia* v. *Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 378 (1991) (an official "is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid"); *United States* v. *Silver*, 184 F. Supp. 2d 33, 43 (S.D.N.Y. 2016) ("[A] quid pro quo is illegal even if the public official would have taken the same official action without the bribe or even if the public official did not take an official act, so long as the public official intended to do so."); *see also, e.g., United States* v. *Miller*, 340 F.2d 421, 424-25 (4th Cir. 1965) ("It is immaterial whether the official action which the briber seeks to influence is right or wrong . . . ."); *United States* v. *Labovitz,* 251 F.2d 393, 394 (3d Cir. 1958) ("to constitute the offense of attempted bribery it is immaterial whether the official action sought to be influenced be right or wrong" (internal quotation marks omitted)).

Moreover, even if evidence of or arguments regarding the purported public benefits or legal or practical merits of the Reciprocity Agreement or related power plant in New Jersey, the planned

power plant in Wawayanda, New York, the Syracuse Inner Harbor Project and related LPA, or the Film Hub were relevant, such evidence or arguments should be precluded under Rule 403 because they would be substantially more prejudicial, confusing, and/or misleading than probative, and would materially and unduly lengthen and complicate the trial. Were the defendant to offer evidence concerning the purported public benefits or merits of these issues or projects, the Government would expect to offer evidence to the contrary. For example, based on Aiello and Gerardi's proffer statements and emails produced during discovery, it appears that Aiello or Gerardi may argue that, regardless of whether Percoco helped preempt the requirement of a labor peace agreement, Aiello and Gerardi were "right," legally, that no labor peace agreement should have been required for their project. Should Aiello or Gerardi put on such evidence, the jury would be subjected to unnecessary and confusing evidence and argument regarding an intricate state legal question—whether the LPA was required for a parking lot project of the type at issue. Similarly, should Aiello or Gerardi seek to introduce evidence or argument regarding the value of the Film Hub, the jury would be subjected to unnecessary and confusing argument and evidence regarding the economics of that particular business and building. The same would be true of the other agreements and projects at issue in this prosecution, in particular for the Wawayanda power plant, about which there has been significant community resistance.

Nor, for the same reasons, should the bribe-paying defendants (Kelly and the Syracuse Defendants) be permitted to perform an end-run around Rules 401 and 403 by introducing substantially the same evidence purportedly to demonstrate that individuals not otherwise at issue in this case were independently supportive of the defendants' positions on the issues at stake here. Such evidence might be relevant only if a given defendant, *at the time he acted*, knew that a particular individual who had the power to help achieve the defendant's goal was supportive, an alleged fact that might permit an argument that the defendant had less of a reason to engage in bribery. But absent such a contemporaneous connection to the defendant's personal knowledge, the only purpose of eliciting such evidence would be to suggest to the jury that the defendant's goal was a worthy one—precisely what should be precluded.

To the extent that such evidence were offered, in the alternative, to show that, even if a given defendant did not know it at the time he acted, his goal might have been achieved without bribery, that too is irrelevant, and thus also cannot support the evidence's admission. *See, e.g.*, *United States* v. *Orenuga,* 430 F.3d 1158, 1165 (D.C. Cir. 2005) (proper to charge jury that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act" (internal quotation marks omitted)); *United States* v. *Quinn,* 359 F.3d 666, 675 (4th Cir. 2004) ("it does not matter whether the government official would have to change his or her conduct to satisfy the payor's expectations"); *United States* v. *Jannotti,* 673 F.2d 578, 601 (3d Cir. 1982) ("it is neither material nor a defense to bribery that had there been no bribe, the [public official] might, on the available data, lawfully and properly have made the very recommendation that [the briber] wanted him to make" (internal quotation marks omitted)).

Accordingly, with the possible exception of the contemporaneous knowledge example set forth above, any evidence or arguments seeking to establish that any of these agreements or projects had merit or were beneficial to New York or the public would be improper and should be precluded.

November 1, 2017
Page 11

### IV. The Defendants Should Be Required to Give the Government Notice of Any Advice-of-Counsel Defense by December 1, 2017

In response to inquiry from the Government, Aiello has indicated that he cannot state whether or not he intends to assert an advice of counsel defense, and Gerardi has not provided a response as to whether he intends to assert such a defense.[5] The Government seeks a ruling requiring Aiello and Gerardi each to advise the Government and the Court, by the motion *in limine* response deadline of December 1, 2017, of whether he intends to pursue an advice of counsel defense, and the precise subject matter about which he will assert that defense. The Government must be apprised of this information in a timely fashion so that the Government can seek any documents or testimony no longer covered by the attorney client privilege. *In re Grand Jury Proceedings*, 219 F.3d 175, 182-83 (2d Cir. 2000) ("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter."); Fed. R. Evid. 502(a). In addition, the Government needs time to consider whether to seek a hearing regarding whether any defendant can establish that he (1) honestly and in good faith sought the advice of counsel; (2) fully and honestly laid all the facts before his counsel; and (3) in good faith and honestly followed counsel's advice, believing it to be correct and intending that his acts be lawful, as required to benefit from an advice of counsel defense. *United States* v. *Colasuomo*, 697 F.3d 164, 181 (2d Cir. 2012).

The Government therefore requests that the Court order Aiello and Gerardi each to advise the Government and the Court, by the motion *in limine* response deadline of December 1, 2017, of whether he intends to pursue an advice of counsel defense, and the precise subject matter about which he will assert that defense.

Application GRANTED IN PART. Defendants Aiello and Gerardi are ordered to advise the Government and the Court of their intentions to assert an advice-of-counsel defense and the subject matter of such defense by December 1, 2017. The Court reserves its decision on the remainder of this motion until the motion is fully briefed.

SO ORDERED.

*Valerie Caproni*  11/2/17

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

cc: Counsel for all defendants (via ECF)

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By: /s/
Janis Echenberg/Robert Boone/
David Zhou/Matthew Podolsky
Assistant United States Attorneys
(212) 637-2597/2208/2438/1947

---

[5] Percoco and Kelly have stated that, at this time, they do not intend to assert an advice-of-counsel defense. Should either of Percoco or Kelly determine that he does wish to assert an advice-of-counsel defense, the Government would request the same timely notice.