**Schulte Roth&Zabel** LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2380

Writer's E-mail Address
Barry.Bohrer@srz.com

November 22, 2017

**BY ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: **United States v. Percoco, et al., S2 16 Cr. 776 (VEC)**

Dear Judge Caproni:

We represent Joseph Percoco in the matter referenced above. With the Court's indulgence, we write on behalf of Percoco and his codefendants[1] because we have discovered that the government has violated the Court's order, dated April 6, 2017, requiring the prompt disclosure of any *Brady* materials. The government silently included exculpatory evidence within yesterday's voluminous production of §3500 material despite being in possession of that material since as early as June 2016. As set forth below, we are concerned that the government's *Brady* violation has harmed our ability to investigate that evidence and prepare for trial.

The Indictment alleges that Percoco performed official acts at a time when he had "officially left New York State employment." (S2 ¶ 4.) As set forth in the very first lines of our opening brief in support of our motion to dismiss, "official acts" must be performed by officials. The government must prove beyond a reasonable doubt that Percoco was an official at the time that he entered into the alleged *quid pro quo* agreement with the Syracuse Defendants. Percoco relied on and explicated these legal principles in his motion to dismiss the indictment,[2] noting that (i) the indictment does not adequately allege that Percoco could perform an "official act" after his resignation from state government; (ii) the indictment does not adequately allege that Percoco deprived the public of his services after his resignation; (iii) the § 666 charges cannot be proven by acts that Percoco performed during the period that he was not a government agent; and (iv) the Syracuse Developer counts must be dismissed because the payments that constitute the

---

[1] Peter Galbraith Kelly, Jr., Steven Aiello, and Joseph Gerardi join this letter.

[2] At the time that Percoco moved the government was proceeding on the first superseding indictment, which was issued on May 11, 2017 (ECF No. 162), not the current "S2" indictment (ECF No. 319) issued on September 19, 2017, but there has been no change to the indictment that moots Percoco's motion to dismiss or affects this letter's *Brady* request.

Honorable Valerie E. Caproni
November 22, 2017
Page 2

alleged bribes were made when Percoco was not an official.  Indeed, these points were the focus of Percoco's motion to dismiss.  But the government did not attempt a response.

We now understand why.  On June 30, 2016, when the government submitted its opposition brief, the government already knew from its interviews of potential witnesses that it could not allege that Percoco was a state official or that he intended to return to State service at the time of certain alleged official acts and the alleged *quid pro quo* agreement with the Syracuse defendants.

We have only been able to review a small portion of the government's large §3500 production, but even in that small portion numerous witnesses confirm that at the relevant time Percoco was not a State official and had no intention of returning to State service.  On November 5, 2016, Governor Cuomo told the government that when Percoco went to work on the campaign, it was decided that Percoco was going to move to the private sector after the campaign was over.  Cuomo also stated that Percoco told Cuomo that he was going to take on private clients during the campaign, and Cuomo considered that intended conduct to be a bridge to Percoco's new life in the private sector.  It was not until near the end of the year that Cuomo asked Percoco to change his plans and come back to work in the Chamber for a period of time to stabilize things.  Cuomo added that the discussion with Percoco about changing his plans was not something that happened within a short period of time; it was a major switch that he was asking Percoco to make and it did not happen in one conversation.

On August 12, 2016, several months before the government interviewed Cuomo, the government spoke to Linda Lacewell.  She stated that she took over State Operations in the Spring of 2014 when Percoco left to work for the Governor's campaign.  She also stated that Percoco told her at that time that he would not be returning to State service; rather, he was leaving to work at the campaign and then to work elsewhere in the private sector.  Lacewell only learned sometime after the election in 2014 that Percoco was returning to the Executive Chamber.  Lacewell also stated that she was not aware of Percoco maintaining any roles in the Executive Chamber while he worked for the campaign.

On June 23, 2016, more than a year before the government submitted its opposition to the motion to dismiss, the government interviewed Theresa Brennan.  She stated that when Percoco left the Governor's office in 2014 his duties were dispersed amongst several other employees.  She also stated that on or about November 14, 2014, she was not sure if Percoco was coming back to work for the Governor.

This is *Brady* material.  These statements not only tend to exculpate Percoco with respect to charges in the indictment, they directly undermine crucial elements of the crime charged: that Percoco was a State official at the time he performed an official act, and that he was a State official, or held himself out as a future State official, at the time that he entered into a *quid pro quo* agreement with the Syracuse Defendants.  The statements of Cuomo, Lacewell, and Brennan also support the theory that the defense has been propounding for half a year.  The fact that such obvious *Brady* material could be withheld more than six months after the Court's order is troublesome, and has already done real harm to the defense.

Honorable Valerie E. Caproni
November 22, 2017
Page 3

      As noted above, the §3500 production made by the government yesterday is voluminous. The government produced separate folders for 56 potential witnesses, and 90 other witnesses. Each folder contains numerous individual files. And many of those individual files contain handwritten reports that are difficult to interpret. Although we received a basic index of the material this afternoon, there is no other roadmap for identifying *Brady* or *Giglio* material that is included in the thousands of pages of material produced. Accordingly, it is a very difficult task to confirm if other *Brady* material exists in the §3500 material, much less to investigate the material that we have found thus far. We are on the eve of one holiday with others soon to follow. Potential witnesses will be traveling and unavailable.

      In order to mitigate this harm, the government should be ordered to identify all similar *Brady* material in its notes and reports, as well as all similar material that it knows of but which it did not record. *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (*Brady* extends to all unrecorded statements of a witness that are favorable to an accused). The government should immediately identify any other evidence tending to show that Percoco was not a State official at the time he performed an official act, or that he was not a State official, or did not hold himself out as a future State official, at the time that he entered into a *quid pro quo* agreement with the Syracuse Defendants.

      Respectfully Submitted,

/s/ Barry A. Bohrer
Barry A. Bohrer
Michael L. Yaeger
Andrew D. Gladstein
Abigail F. Coster

cc: All Counsel (Via ECF)