

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 26, 2017

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     Re:    *United States* v. *Joseph Percoco, et al.*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

     The Government respectfully writes in response to defendant Joseph Percoco's letter dated November 22, 2017, which bears the dramatic and misleading subject line "*Brady* violations." (Dkt. No. 363 (the "Percoco Letter").)  Percoco's claim that the Government has not fulfilled its *Brady* obligations to date is simply wrong, both factually and legally.  Furthermore, the specific relief that Percoco requests is foreclosed by well-established case law.  As a result, Percoco's letter motion should be denied.

     Under the Supreme Court's decision in *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its following cases, the government has a "constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment."  *United States* v. *Coppa*, 267 F.3d 132, 135 (2d Cir. 2001).  "[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that an outcome of a trial in which the evidence had been disclosed would have been different."  *Id.* at 142.

     In an attempt to manufacture a violation of these principles nearly two months in advance of trial, Percoco now contends that three witness statements contained within the Government's production of Jencks Act/*Giglio* material on November 21, 2017—approximately seven weeks before the January 8, 2018 trial—has "harmed [his] ability to investigate [alleged exculpatory] evidence and prepare for trial."  (Percoco Ltr. 1.)  The purportedly exculpatory evidence Percoco claims the Government belatedly produced consists of statements of certain individuals who claim either (1) that they did not know that Percoco was exercising advisory or supervisory power over certain State-related matters during his stint as the Governor's campaign manager in 2014; and/or (2) that Percoco did not initially intend to return, or they were not aware whether or not he intended to return to State service after the campaign.  (Percoco Ltr. 2.)

     Percoco's arguments fail for several reasons.  First, those statements and other similar ones do not constitute exculpatory *Brady* evidence.  There is no dispute that Percoco officially left State

service on or about April 21, 2014 and did not return until on or about December 8, 2014. (S2 Indictment ¶ 4.) However, as set forth in the Complaint, certain witness statements and contemporary documents provided the basis for the allegation that Percoco continued to exercise State-related power and influence throughout the campaign period, even though he had no official State position. (Compl. ¶ 26(c).) The Government also expects to prove at trial that, as early as in or about August 2014, Percoco represented to others that he would return to the State after the election. For example, in a letter attached to his mortgage application and dated on or about August 7, 2014, Percoco described the subject as "RE: Employment post-election" and wrote, in part, that "I am guaranteed a position with Governor Andrew Cuomo post-election with his administration after the November election." Similarly, in an email dated on or about October 15, 2014, Percoco informed a third party: "I cannot do that until I return to state service. [. . .] I am currently barred from asking the 2nd floor to do anything. Its three weeks till election day. Hang in there." Notably, Percoco made those representations before he accepted certain bribe payments from the Syracuse Developer, and before he took official action to benefit the Syracuse Developer in or about December 2014. (*See* S2 Indictment ¶¶ 33-35; Compl. ¶¶ 63-64.)

The fact that some people did not know, or claim that they did not know, about Percoco's State-related activities or his intention to return to State employment is not exculpatory. *Cf. United States* v. *Hennessy*, No. 92 Cr. 709 (WK, JCF), 1993 WL 137766, at *3 (S.D.N.Y. Apr. 23, 1993) (in a case charging the defendant with rigging a union vote, the Court denied the defendant's request for supposed *Brady* evidence of "union members who were not solicited to surrender their ballots" on the ground that "[t]he fact that other union members may not have been subject to extortionate demands would not be exculpatory" and therefore "is simply not *Brady* material"); *Elgabrowny* v. *United States*, No. 00 Civ. 7981 (MBM), 2003 WL 22416167, at *4 (S.D.N.Y. Oct. 22, 2003) (failure of a terrorist co-conspirator in statements to law enforcement to mention the defendant, who joined the conspiracy after the terrorist's 1993 bombing of the World Trade Center, "is not exculpatory; it does not negate guilt, but merely does not further establish it"). Instead, those statements may be, at most, impeachment material against the witnesses who the Government expects will testify that Percoco did have power over State issues throughout 2014. Likewise, the defense may try to impeach the witnesses who the Government anticipates will testify that Percoco told them in advance of the election of his plan to go back to his State position. That is precisely why the statements cited in the Percoco Letter were produced within the Government's production of Jencks Act/*Giglio* material.

Second, Percoco's claim of prejudice—that the disclosure of these materials on November 21, 2017 somehow interfered with his ability to investigate his case—is wholly unbelievable. It is difficult to imagine that Percoco first recognized only after he received the Jencks Act material a need to investigate his own actions and interactions with respect to State issues during the 2014 campaign. In fact, Percoco has known from the beginning of this case that those actions would form critical facts at trial. The Government has consistently alleged that Percoco committed crimes in or about 2014 because, although he had officially left State employment, he "nevertheless continued to function in a senior advisory and supervisory role with regard to the Governor's Office during [the campaign], and continued to be involved in the hiring of staff and the coordination of the Governor's official events and priorities, among other things, and to travel with the Governor on official business." (Compl. ¶ 26(c); *see also* Indictment ¶ 20; S1 Indictment ¶ 4; S2 Indictment ¶ 4.)

       Percoco himself acknowledges that he is rehashing an argument already presented to the Court.  (Percoco Ltr. 1.)  This past May, Percoco and the other defendants moved to dismiss portions of the indictment on the ground that Percoco was not a State employee during his time with the Governor's campaign.  (*See, e.g.*, Dkt. No. 187.)  Although Percoco strangely and incorrectly now claims that the Government "did not attempt a response" (Percoco Ltr. 2), the Government did in fact respond that the bribery statute is broad enough to apply to a person who "can act on behalf of an organization or government [. . .] irrespective of his official title or position."  (Dkt. No. 264 ("Gov. Opp'n"), at 71.)  Because the indictment[1] alleges that Percoco exercised State-related advisory and supervisory authority during his time as campaign manager, and also exerted influence and provided advice to State officials in a successful effort to reverse a decision of the Empire State Development Corporation, the indictment properly charges Percoco with bribery.[2]  (*Id.* at 74.)  Meanwhile, the Government explained that the indictment sufficiently alleges honest services wire fraud and Hobbs Act extortion because "Percoco received bribe payments from Aiello and Gerardi while he was on the campaign, but [. . .] took official action to benefit the Syracuse Developer and Aiello in exchange for those bribes *after* he returned to State service."[3]  (*Id.* at 75; *see also id.* at 75-77.)  As detailed above, the Government has been clear and consistent about its legal theory, and the factual basis, of Percoco's criminal liability with respect to his 2014 stint with the Governor's campaign.  If Percoco has failed to investigate his actions and interactions with others during the 2014 campaign, that is not because the Government ever obfuscated the importance of those facts.[4]

---

[1] The then-operative indictment was the basis for the pretrial motions.  The current indictment, the S2 Indictment, makes the same allegations.

[2] Because Percoco qualified as an "agent" of the State under the bribery statute during his stint as the Governor's campaign manager, it is irrelevant to the bribery charge whether or not Percoco intended to return to State service after the election.  (*See* Gov. Opp'n 70-75.)

[3] As explained above, Percoco began representing to others that he would return to State service before he accepted certain bribe payments and took official action to benefit the Syracuse Developer.

[4] It is well-established that "there is no improper suppression [by the Government] within the meaning of *Brady* where the facts are already known by the defendant."  *United States* v. *Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990).  Put another way, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence."  *Id.* (quotation marks and internal citations omitted); *see also United States* v. *Rowland*, 826 F.3d 100, 113 (2d Cir. 2016) (same).  Percoco himself knows whether he exercised power and influence over State activities and officials while he was out of office, as the Government has alleged.  He also knows when he decided to return to his State position.  In addition, the Government understands from its conversations with outside counsel for the Office of the Governor ("Governor's Office Counsel") that Governor's Office Counsel has been proffering to the defendants the substance of statements made to the Government by witnesses represented by Governor's Office Counsel, including Governor Cuomo, Linda Lacewell, and Theresa Brennan—*i.e.*, the three individuals cited in the Percoco Letter.  Because

In any event, Percoco has more than enough time to use the Jencks Act/*Giglio* materials to support his defense. It is a "longstanding constitutional principle that as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Coppa*, 267 F.3d at 144. The same rule applies to *Giglio* material. *Id.* at 142. In this case, the Government has fully discharged its *Brady* and *Giglio* disclosure obligations. As the Court is aware, the Government completed production of the vast bulk of discovery pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16") more than eight months ago, in or about early March 2017. (*See* Dkt. No. 118.) The Government has also promptly produced additional documents obtained during its ongoing investigation. More recently, the Government produced Jencks Act and *Giglio* materials for potential witnesses, as well as other individuals interviewed in the course of its investigation, on November 21, 2017, approximately seven weeks in advance of trial—which is at least seven weeks earlier than required by law—and the trial is expected to last several weeks, providing even more time to investigate as trial is ongoing. In light of these early disclosures, the Government has not violated *Brady* or *Giglio* as a matter of law.

Ultimately, Percoco's sole request is that the Court order the Government to "identify any other evidence tending to show that Percoco was not a State official at the time he performed an official act, or that he was not a State official, or did not hold himself out as a future State official, at the time that he entered into a *quid pro quo* agreement with the Syracuse Defendants." (Percoco Ltr. 3.) Among other things, Percoco complains that the Jencks Act/*Giglio* materials are voluminous and that the upcoming holidays will hamper his ability to investigate the witness statements. (*Id.*) In an effort to facilitate the defendants' preparation for trial, however, the Government has already substantially aided the defendants' review by dividing the material into "Potential Witnesses" (essentially providing the defense a draft witness list seven weeks in advance of trial) and "Other" (containing statements of all other individuals interviewed in the broader investigation), and by providing the defendants with approximately seven weeks to review and use the materials even before trial begins. The Government has already far exceeded its obligations under *Giglio* or any other provision of law, and *Giglio*'s rule places no burden on the Government to identify helpful impeachment material for the defense. *See, e.g.*, *United States* v. *Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012) ("In the *Brady* context, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence, even when that larger mass is enormous . . . ." (internal quotations marks and citation omitted)); *United States* v. *Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("The Government is under no general obligation to sort or organize *Brady* material disclosed to defendants." (citation omitted)); *United States* v. *Ohle*, No. 08 Cr. 1109 (JSR), 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011) (While "the Government may not properly conceal exculpatory evidence from a defendant, [the rule] does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." (quoting *United States* v. *Marrero*, 904 F.2d 251, 261 (5th Cir. 1990))).

The defense, which includes twelve counsel of record (four for Percoco alone) from four law firms, no doubt has the capacity and the time between now and January 8, 2018 to thoroughly

---

Percoco has had both knowledge of the essential facts and understanding of the importance of those facts, there can be no *Brady* violation.

November 26, 2017
Page 5

review and use the Jencks Act/*Giglio* material. Indeed, since the materials were produced last week, the Government has received and responded to several detailed questions regarding the materials, which shows that the defense has already progressed substantially and will undoubtedly review all of the Jencks Act/*Giglio* material for statements that the defense believes are beneficial to its case.

In sum, the Government has fully discharged its *Brady* and *Giglio* obligations by producing Rule 16 discovery and Jencks Act/*Giglio* materials to the defense far in advance of trial. Percoco's claims to the contrary should be rejected. Moreover, Percoco's demand that the Government assist him with identifying favorable impeachment material should be denied.

      Respectfully submitted,

      JOON H. KIM
      Acting United States Attorney

      By: /s/
          Janis Echenberg/Robert Boone/
          David Zhou/Matthew Podolsky
          Assistant United States Attorneys
          (212) 637-2597/2208/2438/1947

cc: Counsel for all defendants (via ECF)