



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 29, 2017

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Joseph Percoco, et al.*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    The Government respectfully writes in response to defendant Peter Galbraith Kelly, Jr.'s letter dated November 26, 2017 (Dkt. No. 365 (the "Kelly Letter")), joining defendant Joseph Percoco's November 22, 2017 letter (Dkt. No. 363), and making additional claims that the Government has not fulfilled its obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963). Specifically, Kelly claims that recently produced Jencks Act material reflecting statements of the then-president of an influential labor union that advocated on behalf of the Energy Company to New York State officials "directly contradicts" the Government's allegation that Kelly hired the union president's daughter to garner continued union support of the Energy Company's proposed New York power plant. These statements are not exculpatory, and, in any case, the Government has produced the purportedly exculpatory statements with more than enough time for its effective use. Accordingly, there is no basis to claim a violation of the rule set forth in *Brady*, and Kelly's various requests for relief should be denied.

    The Government expects the following, in sum and substance, to be presented at trial in support of the Government's bribery and honest services charges against Percoco and Kelly:[1]

---

[1] Although, in an abundance of caution, the Government provided 404(b) notice for this evidence, the evidence is admissible as direct proof of the Government's charges. Among other things, the evidence provides necessary background information regarding the genesis and nature of the education program started by Kelly. *See, e.g.*, *United States* v. *Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."). Moreover, the Government is not arguing that the arrangement between Kelly and the union president constituted a crime, but even if it were considered criminal conduct, related evidence would still be admissible as direct proof of the charges because "it arose out of the same transaction or series of transactions as the charged

- At around the time that Percoco asked Kelly to find a job for his wife, an unemployed teacher, the union president also requested that Kelly find a job for his daughter, who was interested in pursuing a teaching degree. Shortly thereafter, Kelly proposed to others at the Energy Company that the Energy Company should launch an elementary education program. Kelly then decided to hire Percoco's wife and the union president's daughter for part-time jobs working on the education program, paying Percoco's wife $7,500 per month and the union leader's daughter $2,500 per month. Although the union president's daughter was initially paid directly by the Energy Company, Percoco's wife was paid surreptitiously, through a friend and confidant of Kelly, who served as a consultant to the Energy Company. Each month, this consultant would submit an invoice to the Energy Company, which included a request for payment of approximately $5,000 for his own consulting services as well as an additional $7,500, characterized as "expenses on subcontract for educational consulting," which he would then pay, by personal check, to Percoco's wife. The union official's daughter was also later removed from the Energy Company's official payroll and instead paid through the consultant. Percoco's wife and the union official's daughter were the only two people paid through this consultant. After Percoco left State employment, and his wife was thereafter terminated by the Energy Company, the union official's daughter returned to being paid directly by the Energy Company.

- At the same time that the Energy Company was paying Percoco's wife and the union president's daughter tens of thousands of dollars per year for low-show jobs, Kelly repeatedly sought Percoco's assistance in advocating on the Energy Company's behalf to various State officials, and the union president advocated directly to Percoco regarding the union's support for the Energy Company's proposed New York power plant and submitted a letter from his union, addressed to Governor Cuomo, setting forth the union's support for the plant.

Kelly now claims that certain prior statements by the union president are exculpatory. Specifically, Kelly points to the following statements made by the union president, as reflected in a report disclosed by the Government to the defense:

> Kelly did [the union president] a favor by providing [the union president's daughter] an internship. There was nothing [the union president] could provide for

---

offense, [was] inextricably intertwined with the evidence regarding the charged offense, [and] is necessary to complete the story of the crime on trial." *United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). And even if it were to be considered "other act" evidence under Rule 404(b), such evidence would still be admissible to demonstrate, among other things, motive, opportunity, plan, knowledge, and lack of mistake. *See* Fed. R. Evid. 404(b); *Huddleston* v. *United States*, 485 U.S. 681, 691 (1988). It is also worth noting that Kelly did not move *in limine* to preclude evidence relating to the union president and his daughter, and only does so belatedly in the instant letter claiming to identify a *Brady* violation, filed on November 26. In any case, defendants Steven Aiello and Joseph Gerardi have moved to preclude this evidence and the Government intends to respond to their motion with its response to other motions *in limine* due December 1, 2017.

>[the Energy Company] other than advocating for the project which [the union president] does for his members anyway. [The union president] acknowledged that providing his daughter with the internship was a political move but there was nothing wrong with it since [the union president] could not provide anything in return.

None of the union president's statements are exculpatory. First, Kelly argues that the union president's statements demonstrate that the job for the union president's daughter was "merely 'a favor.'" (Kelly Ltr. 2 (quoting report of union president's statements).) The Government does not disagree that hiring the union president's daughter was a favor—it was a favor provided to secure continued support from the union, a fact that does not in any way exculpate Kelly.

Second, the union president's statements that there was "nothing [the union president] could provide for [the Energy Company] other than advocating for the project" and that he "could not provide anything in return" (other than advocating for the plant) are not exculpatory. The Government does not claim that the union president could provide any action with respect to the power plant other than advocating on its behalf, which is precisely what the union president stated and what the evidence will show occurred. Moreover, the union president's understanding of the value of what he could provide to Kelly and the Energy Company has no bearing on the allegations concerning Kelly's state of mind in hiring the union president's daughter—i.e., to curry favor and secure the union president's support.

Third, and relatedly, the union president's assertion that he may have advocated in support of the plant on behalf of his members, as opposed to in response to a request from Kelly, is not exculpatory. Again, this statement has no bearing on Kelly's intent, nor on the nature and circumstances of the education program. Indeed, it is well established that, in bribery and fraud prosecutions, an official's willingness to otherwise take the same actions without being bribed does not undermine the illicit nature of a bribe payment. *See, e.g., City of Columbia* v. *Omni Outdoor Adver., Inc.*, 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid."); *United States* v. *Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (proper to charge jury that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act" (internal quotation marks omitted)); *United States* v. *Quinn*, 359 F.3d 666, 675 (4th Cir. 2004) ("[I]t does not matter whether the government official would have to change his or her conduct to satisfy the payor's expectations.").

Fourth, and finally, the union president's claim that "there was nothing wrong with it" is not a statement of fact, let alone exculpatory evidence with respect to Kelly. At most, it goes to the union president's state of mind with respect to whether his own conduct was improper or illegal and might be used as impeachment material.

Accordingly, none of these statements are exculpatory within the meaning of *Brady*. *See, e.g.*, *United States* v. *Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) ("The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment."); *see also id.* at 142 ("[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that an outcome of a trial in which the evidence had been disclosed would have been different.").

Even if the statements described above were exculpatory (which they are not), there is no prejudice to Kelly and he claims none, and therefore there was no "*Brady* violation." As the Second Circuit has repeatedly made clear, "as long as a defendant possesses *Brady* evidence in time for its effective use, there can be no *Brady* violation." *United States* v. *Halloran*, 821 F.3d 321, 341 (2d Cir. 2016). As the Court is aware, the Government completed production of the vast bulk of discovery pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16") more than eight months ago, in or about early March 2017. (*See* Dkt. No. 118.) The Government has also promptly produced additional documents obtained during its ongoing investigation. Kelly has long possessed emails relating to his hiring of the union president's daughter through the Government's discovery, if not through his own files. And it goes without saying that Kelly himself is aware of the interactions and discussions, or lack thereof, that he had with the union president. More to the point, Kelly received the report of the union president's statements that gave rise to his recent letter approximately seven weeks prior to the beginning of trial—more than enough time to make whatever use of the statements he wishes, particularly given that Kelly himself knows full well the nature and origins of the education program he started and the individuals he hired. *See, e.g.*, *United States* v. *Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." (quotation marks and internal citations omitted)); *see also United States* v. *Rowland*, 826 F.3d 100, 113 (2d Cir. 2016) (same).

Finally, as with the relief requested by Percoco, the relief requested by Kelly is not required by law.[2] *See, e.g.*, *United States* v. *Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012) ("In the *Brady* context, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence, even when that larger mass is enormous . . . ." (internal quotations marks and citation omitted)); *United States* v. *Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("The Government is under no general obligation to sort or organize *Brady* material disclosed to defendants." (citation omitted)); *United States* v. *Ohle*, No. 08 Cr. 1109 (JSR), 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011) (While "the Government may not properly conceal exculpatory evidence from a defendant, [the rule] does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." (quoting *United States* v. *Marrero*, 904 F.2d 251, 261 (5th Cir. 1990))). In practice, Kelly, like Percoco, is requesting that the Government set aside preparation for trial to do for the defense what the defense will undoubtedly and necessarily do for itself.[3]

---

[2] In fact, the Government provided, among other things, a detailed discovery index setting forth the bates range for each category of discovery and, in an abundance of caution and in order to help the defense prepare its case, produced approximately seven weeks before trial Jencks Act and *Giglio* materials both for potential witnesses and for other individuals interviewed in the course of its investigation, which the Government divided into "Potential Witnesses" (essentially providing the defense a draft witness list seven weeks in advance of trial) and "Other," for the benefit of the defense.

[3] Although Kelly references a Jencks Act and *Giglio* material page count of 4,300 pages, this significantly overstates the number of pages that contain unique witness statements because, as is the Government's practice (and also at the request of Kelly's counsel), the Government produced the handwritten notes that correspond with each typed interview report.

      As explained above and in the Government's November 27, 2017 letter (Dkt. No. 364), the Government has not withheld exculpatory material, and has fully discharged its *Brady* and *Giglio* obligations by producing Rule 16 discovery and Jencks Act and *Giglio* materials to the defense far in advance of trial. Kelly's requests for further assistance should be denied.

                                        Respectfully submitted,

                                          JOON H. KIM
                                          Acting United States Attorney

                                        By: /s/
                                            Janis Echenberg/Robert Boone/
                                            David Zhou/Matthew Podolsky
                                            Assistant United States Attorneys
                                            (212) 637-2597/2208/2438/1947

cc: Counsel for all defendants (via ECF)