# Walden Macht & Haran LLP



One Battery Park Plaza, 34th Floor
New York, NY 10004
212 335 2030

November 30, 2017

**Via CM-ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re: *United States v. Joseph Percoco, et al.,* No. 16-CR-776 (VEC) (S.D.N.Y.)

Dear Judge Caproni:

      We are counsel for Defendant Joseph Gerardi. This letter is jointly submitted on behalf of Mr. Gerardi and Defendant Steven Aiello (collectively, the "Syracuse Defendants") in response to the Government's November 1, 2017 motion *in limine* (Docket No. 349) to admit at trial (1) proffer statements of the Syracuse Defendants, and (2) evidence regarding campaign contributions made or directed by certain defendants, including the Syracuse Defendants, as well as (3) to preclude Syracuse Defendants from introducing certain important defense evidence.

      The Government's motion *in limine* should be denied. We respectfully request that the Court find that the Government's misconduct precludes it from introducing proffer statements of the Syracuse Defendants, and that the substantial risk of prejudice demands the exclusion of the campaign contribution evidence. We also ask the Court to reject the Government's effort to deprive the jury of critical evidence needed to fairly assess Syracuse Defendants' state of mind.

      As for the Government's request for an order requiring Mr. Gerardi and Mr. Aiello to announce whether they intend to pursue an advice of counsel defense, neither Mr. Gerardi nor Mr. Aiello will not be asserting such a defense.

**I.    Proffer statements by Aiello and Gerardi should not be admitted.**

      The prosecutorial misconduct that induced the Syracuse Defendants to participate in extended voluntary proffer interviews with the Government on June 21, 2016, forms the basis of a pending motion to dismiss the Indictment or, at a minimum, the false statement counts. *See* Doc. No. 236 and 237. That same misconduct – the Government's affirmative misrepresentation to the Syracuse Defendants' that they were merely "subjects" in the investigation when, in fact, the prosecutors considered each Defendant a "target" – also requires that this Court reject the

Government's effort to rely on contract principles as a basis for admitting proffer session statements of each Defendant at trial.

Contract law principles do indeed drive the interpretation of proffer agreements. *See United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016). Here, the contract law theory of "fraud in the inducement" requires the exclusion of Syracuse Defendants' proffer statements, not their admission. As the Second Circuit recently explained: A party has made out a claim of fraudulent inducement if it has pled (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011)).

In this case, fraud in the inducement occurred when the Government misled the Syracuse Defendants about their statuses in the investigation so as to induce them to participate in the proffer sessions. The resulting damages were the statements obtained though this deceit. Moreover, the Government cannot escape the consequences of making misrepresentations on which the Syracuse Defendants relied by pointing to the "merger clause" in paragraph 7 of the proffer agreements. In the course of rejecting an argument that a merger clause precludes a party from demonstrating "reasonable reliance on any purported misrepresentation or omissions," Judge Swain recently noted that

> [p]ersuasive authority is [] to the contrary. *See Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 228 (S.D.N.Y. 2007) (holding that a merger clause will preempt an action for fraud under New York law only "where the merger clause expressly references a specific subject of prior representations"; and "where the clause was included in a multi-million dollar transaction that was executed following negotiations between sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract") (internal citations omitted); *see also Kwon v. Yun*, 606 F. Supp. 2d 344, 357-58 (S.D.N.Y. 2009) (merger clause does not bar allegation of reasonable reliance where no specific representation explicitly referenced in the merger clause as one not being relied upon is apparent on the face of the contract); *CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, 07CV11078-LTS, 2009 WL 2033048, at *5 (S.D.N.Y. July 13, 2009) (merger clause and disclaimer held preclusive of fraud claim in connection with high value complex transaction where fraud claims were inconsistent with disclaimer and express contract provision).

*LP Funding, LLC v. Tantech Holdings, Ltd.*, 15CV4081-LTS, 2016 WL 1706182, at *3 (S.D.N.Y. 2016). Because the merger clause here was a general one, making no reference to any specific prior representations, and because the transaction here was hardly "of such a sophisticated character that preclusion of the fraud claim is warranted," *id.*, it offers the Government no help. Moreover, the proffer agreements, like other contracts in the criminal setting, are to be "construed strictly against" the Government, with ambiguities resolved against the Government. *United States v. Rivera*, 117 F. Supp.3d 172, 194 (E.D.N.Y. 2015); see also *United States v. Jimenez-Bencevi*, 788 F.3d 7, 15-16 (1st Cir. 2015) ("[p]roffer agreements are sui generis, and the contract-law principles that courts use in construing them are glossed with a concern that the defendant's consent to appear at a proffer session should not become a lever that can be used to uproot his right

to fundamental fairness under the Due Process Clause.") (quoting *United States v. Melvin*, 730 F.3d 29, 39 (1st. Cir. 2013)). A contract law analysis thus requires "rescission," which in this case is a declaration that the waivers the Syracuse Defendants were induced to execute are null and void.

Should the Court require additional clarification of the record as to the Government's conduct, it should hold a hearing to determine the nature, scope and intent of the misconduct issues we have already raised.[1] We submit, however, that because the Government has failed to attempt to defend its actions, there is ample evidence to support a ruling barring the Government from relying on the proffer agreements to introduce statements that are otherwise barred by Fed. R. Evid. 410.

Even if it accepts the Government's contract law analysis, this Court should substantially limit admission of proffer statements to those implicated by the charges in this trial. In its motion *in limine*, the Government, for the first time, stated that the Syracuse Defendants made *additional* false statements that were neither the subject of any charge nor previously noticed under Fed. R. Evid. 404(b). Without explanation or support, the Government now states that "Aiello made additional false statements regarding, *among other things*, his reasons for not paying Percoco" and that "Gerardi made additional false statements regarding, *among other things*, his reasons for not paying Percoco." Doc. No. 351 at 3 and 4 (emphasis added). The Syracuse Defendants do not know what the Government is specifically referring to as the "reasons for not paying Percoco" that the Government believes are false, nor do they know what "other things" the Government believes are false. The Syracuse Defendants remain in the dark because the Government has failed to specify which proffer statements were allegedly false, save those denying culpability for the charged crimes.[2] In the absence of any clarification by the Government, we ask this Court, at a minimum, to limit the scope of the admitted statements in order to cabin the confusion and prejudice the Government seeks to create.

Finally, and as we argued in our motion *in limine*, admitting the proffer statements related to the severed Buffalo Billion allegations would moot this Court's severance order and lead inexorably to a substantial side trial that would confuse the jury and unfairly prejudice the Syracuse Defendants. We therefore ask for the exclusion of those statements as well.

## II. Proffer references by Aiello to Gerardi and by Gerardi to Aiello should not be redacted.

In its *in limine* motion at 3 n.2, the Government notes its plan to "modify" proffer statement references by Aiello to Gerardi and by Gerardi to Aiello by substituting "another COR executive," so as to address *Bruton* concerns. Syracuse Defendants object to any such redactions. Central to their defense will be the claim that they had nothing to hide from the Government when they were questioned about Howe and Percoco and that they made no effort to withhold information. Any redaction would suggest a lack of candor and, therefore, be both misleading and unfairly prejudicial, particularly given the importance of intent to the false statement charges.

---

[1] The Syracuse Defendants previously requested a hearing regarding this issue. *See* Doc. No. 237 at 5.

[2] The Syracuse Defendants previously moved for a Bill of Particulars requesting that the Court order the Government to identify the exact false statements that form the basis of the 18 U.S.C. § 1001 counts.

The only basis for the proposed redaction is the rule in *Bruton* and its progeny, which seeks to protect the Confrontation Clause right of each Defendant in situations like this. But Aiello and Girardi seek no such protection with respect to their references to each other. Each waives any Confrontation Clause objection on this limited point. Moreover, the references by each Defendant to the other are easily admissible under the Rule of Completeness, Fed. R. Evid. 106, as they are necessary "to avoid misleading the jury" and "to ensure fair and impartial understanding of" the admitted statements. *United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012) (quoting *United States v. Kopp* 562 F.3d 141, 144 (2d Cir. 2009)).

Given the Syracuse Defendants' commitment not to raise a Confrontation Clause objection to the references each makes to the other, the relevance of these references to their case, and the requirements of the Rule of Completeness, there is no basis for the proposed redactions. Moreover, the Syracuse Defendants would strongly oppose any move by the Government or any other party to redact any part of their proffer statements. Particularly where the charge is based on false statements, any such redaction would violate the rule of completeness in a highly prejudicial way by excluding information "substantially exculpatory of the declarant[s]." *United States v. Benitez*, 920 F.2d 1080, 1087 (2d Cir. 1990).

### III. Evidence of the Syracuse Defendants' campaign contributions should be barred.

Despite its effective concession that the Syracuse Defendants' contributions to Governor Cuomo's campaign were lawful, the Government nonetheless seeks to introduce evidence of those campaign contributions as "highly probative evidence of the genesis and evolution of [Syracuse Defendants'] relationships with co-conspirators Percoco and Howe, and of the various co-conspirators' states of mind." Gov't MIL at 6. The evidence in question is far from "highly probative," and adds little to the Government's case. What it would do at trial, however, is inflict substantial unfair prejudice on the Syracuse Defendants and confuse the jury.

The Government's theory is that the Syracuse Defendants' lawful political contributions shows their interest in "strengthening connections" with the Office of the Governor, which in turn explains why they would be "willing to pay [Percoco] bribes in exchange for helpful state action." Gov't MIL at 6. The Government even goes so far as to say that the "donations are clearly relevant to show . . . the creation of the conspiracy . . . [and] Percoco's motivation in seeking illicit bribe payments from the Syracuse Defendants." Gov't MIL at 8.

The Syracuse Defendants' contributions were not only legal, but protected by the First Amendment. *See generally Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010). Moreover, that protection comes with the assumption that contributions are often made with an eye to policy or programmatic outcomes. As the Supreme Court has repeatedly reaffirmed:

> [I]nfluence over or access to elected officials does not mean that these officials are corrupt: "Favoritism and influence are not . . . avoidable in representative politics. It is in the nature of an elected representative to favor certain policies, and, by necessary corollary, to favor the voters and contributors who support those policies. It is well understood that a substantial and legitimate reason, if not the only reason, to cast a vote for, or to make a contribution to, one candidate over another is that the candidate will respond by producing those political outcomes the supporter favors. Democracy is premised on responsiveness."

*Id.* at 359 (quoting *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 297 (2003) (opinion of Kennedy, J.).

Nor is this a case where the campaign contributions have special relevance. It is thus easily distinguished from *United States v. Silver* and *United States v. Ring*, 706 F.3d 460 (D.C. Cir. 2013), on which the Government relies. In *Silver*, Glenwood Management gave legal political contributions directly to Mr. Silver and $700,000 in illicit kickbacks. That evidence was deemed admissible because the contributions could "prove that Silver knew the importance Glenwood placed on favorable New York State action." 15 Cr. 93 (VEC) Order at 2 (S.D.N.Y Oct. 20, 2015) (Dkt. No. 88). Similarly, in *Ring*, the defendant lobbyist made political contributions directly to the public officials he was also convicted of bribing. *Ring*, 706 F.3d at 464-65. Here, in contrast, the Syracuse Defendants contributed to Governor Cuomo's campaign, not to Percoco. And it can hardly be claimed that their political contributions were "inexorably intertwined" with the alleged bribes. *Id*. at 473; *see also Silver*, 15 Cr. 93 (VEC) Order at 2.

While the relevance of Syracuse Defendants' campaign contributions is minimal, the substantial prejudice that will inevitably result from their admission compels exclusion under Fed. R. Evid. 403. Indeed, far more so than in *Silver* or *Ring*, the minimal probative value would itself be a source of unfair prejudice. At its heart, the Government's theory of relevance is little more than the sort of propensity theory prohibited by Fed. R. Evid. 404(b). To be sure, the Government frames it in subjective term: Percoco's awareness of the contributions by the Syracuse Defendants and their families gave him reason to think that the Syracuse Defendants were interested in State action and would be willing to obtain it corruptly. But the implication that legal campaign contributions are a gateway to bribes is unescapable, misleading, and unfairly prejudicial.

Moreover, when constitutionally-protected contributions are trotted out as evidence of a bribery scheme – particularly when they have scant relevance to the alleged scheme – jurors are unlikely to consider them merely on the convoluted signaling theories the Government relies on for its assertion of probative value. Rather, they will jump to the conclusion that the contributions are part of a *quid pro quo*, something the Government does not and cannot show. No limiting instruction, or parade of instructions, *see Ring*, 706 F.3d at 473, will restrain this highly prejudicial inference.

The already-strong arguments for exclusion under Rule 403 are bolstered when one considers the First Amendment ramifications of allowing the contributions to be used as evidence. As we noted in our Motion to Strike Surplusage, "[j]ust as legislatures must take care not to violate First Amendment rights when regulating political contributions, a criminal jury must take special pains when asked to draw inferences of criminal activity from what might be a campaign contribution spurred by a candidate's platform." Mem. In Support of Deft's Omnibus Motion, Dkt. No. 237 at 41 (citing *Buckley v. Valeo*, 424 U.S. 1, 14 (1976); *Fed. Election Comm'n v. Wisconsin Right to Life*, 551 U.S. 449, 486 (2007) (Scalia, J., concurring*); Ognibene v. Parkes*, 671 F.3d 174, 182-84 (2d Cir. 2012)). Should the minimally probative use of campaign contributions proposed by the Government be allowed, everyone who engages in this constitutionally-protected activity will have good cause to fear that her actions will be used as evidence of some corrupt scheme at a future trial.

## IV. Evidence of the alleged merits or public benefit of agreements or projects at issue should not be precluded.

The Government's asserted interest in teasing out the Syracuse Defendants' motivations seems to vanish when it comes to evidence of why the Syracuse Defendants might have been interested in pursuing the construction projects in this case. The Government seemingly prefers that jurors assume businessmen simply pursue economic gain and are easily willing to engage in corruption. It asks that the Court preclude the Syracuse Defendants from introducing evidence of projects like the Film Hub or Inner Harbor "had merit or were beneficial to New York or the public." Govn't MIL at 9. The Court should reject this effort to mislead the jury about the Syracuse Defendants' motivations.

Evidence of why the Syracuse Defendants were interested in pursuing these projects is certainly relevant in a trial where intent is the central issue of the case. Fed. R. Evid. 401. That the Syracuse Defendants needed to be persuaded by the former mayor of Syracuse to even get involved in a project that required state funding and bureaucratic red tape, and that they took on the Inner Harbor project not simply to generate revenue but to create jobs and stimulate the area's economy, go the heart of their dealings with Howe -- whom the evidence will show took criminal advantage of their naiveté. Thus, this evidence is not about the Syracuse Defendants showing some general public spirit, but goes to their mindset in the transactions at the heart of the trial.

Nor does the Government offer a substantial Fed. R. Evid. 403 argument for exclusion. Allowing the Syracuse Defendants to introduce a modicum of evidence regarding the public value of the Film Hub and the Inner Harbor projects would hardly drag the Court into arcane land-use disputes. This is not an issue that needs to be resolved, but just needs to be aired. The Government's effort to misleadingly present the Syracuse Defendants as jaded insiders, greedy for profits, should not be tolerated. Moreover, evidence of the perceived public value of the projects in this case is critical to the Syracuse Defendants' defense. The Film Studio, for example, was a major part of Governor Cuomo's central New York economic revitalization policy. The evidence at trial will show that funding issues imperiled the project and could have embarrassed the Governor and negatively impact his economic revitalization plan. This fully explains why Mr. Percoco may have been involved in the funding process for reasons that had nothing to do with bribery from the Syracuse Defendants.

The Court should similarly reject the Government's effort to preclude evidence that the Syracuse Defendants did not believe they needed a Labor Agreement ("LPA") to develop a parking lot for the Inner Harbor, and that one was not in fact needed. First, as the Government concedes, evidence that an LPA was not necessary would certainly be relevant if the Syracuse Defendants were contemporaneously aware of it, as it would indicate that they had "less of a reason to engage in bribery." Govn't MIL at 10. We intend to introduce direct proof of just this knowledge. Second, and contrary to the Government's suggestion, the probative value of this evidence does not turn solely on whether the Syracuse Defendants were aware of it at the time they acted. Even if the Syracuse Defendants were not aware of a particular official's remarks, the opinion of someone with knowledge of the relevant legal framework that an LPA was not needed is powerful evidence that an LPA was not in fact needed, which powerfully corroborates Syracuse Defendants' argument that they knew an LPA was not needed. And, of course, the Syracuse Defendants'

knowledge of that fact is highly probative to the issue of intent, since they therefore would have no motive to bribe anyone to avoid the LPA.  Evidence about why the Inner Harbor Project was in the public interest similarly sheds critical light on the Syracuse Defendants' states of mind.  The point is not that, objectively, this was a good public works project.  It is rather that the Syracuse Defendants' understandings of the importance of the project added to their high confidence that they would not be required to get an LPA.  Indeed, the issue of whether an LPA was required turned on the very issue of whether the parking lot's primary function was public or private.  Were such evidence precluded from the case, the jury would not be able to understand why the Syracuse Defendants took the actions they did with respect to the LPA issue.

        Thank you for your attention to this matter.

        Very truly yours,

        WALDEN MACHT AND HARAN

        By:    */s/ Milton L. Williams*

        Milton L. Williams
        Avni P. Patel

cc:    All counsel of record (via ECF)

{O0111305.1}