LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

December 1, 2017

**BY ECF:**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: <u>United States v. Percoco, et al.</u>, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    We represent Peter Galbraith Kelly, Jr. in the above-referenced matter. We write on behalf of Mr. Kelly[1] in response to the Government's November 1, 2017 motion <u>in limine</u>, which seeks (1) to preclude the defense from introducing any evidence or making any arguments regarding the merits or public benefit of either the agreements or the projects at issue in the case, and (2) to admit evidence relating to campaign contributions. (Doc. No. 349 ("Gov't MIL")).[2]

    As discussed below, the Government's motion to preclude is baseless and should be denied. In this bribery case, the Government will necessarily attribute Mr. Kelly's conduct, and the conduct of other key participants in the events at issue, to an alleged unlawful <u>quid pro quo</u> bribery agreement between Mr. Kelly and Mr. Percoco, and to advice and pressure flowing from that alleged agreement. Mr. Kelly, in turn, is entitled to present evidence that there was no bribe, and that all the conduct the Government attributes to the supposed bribe actually has an innocent explanation—namely, the facts and circumstances surrounding the agreements and projects at

---

[1]     Co-defendant Joseph Percoco joins our letter brief in full (with the exception of our arguments directed at severance). Co-defendants Steven Aiello and Joseph Gerardi (the "Syracuse Defendants") join Point I of our letter brief. We join in full the letter brief filed by Mr. Percoco and join Point IV of the letter brief filed by Mr. Gerardi on behalf of the Syracuse Defendants to the extent it is applicable to Mr. Kelly.

[2]     Abbreviations and capitalized terms herein have the same meaning as in Mr. Kelly's prior filings with the Court.

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 2

issue—the very evidence the Government seeks to preclude. The evidence the Government seeks to preclude not only will be relevant, it will be crucial to the defense theory.

With respect to the Government's application to admit campaign contributions, we do not oppose the admission of such evidence so long as it is admitted for a proper purpose, clear preliminary and limiting instructions are given, and the defense has ample opportunity to place those campaign contributions in their proper context.

### I. The Government's motion to preclude should be denied

The Government has brought a bribery case alleging that Mr. Kelly entered into an illegal quid pro quo agreement with Mr. Percoco. According to the Government, in exchange for Mr. Kelly's providing a "low-show job" to Mr. Percoco's wife, Mr. Percoco agreed to take, and did take, "official actions" to benefit the Energy Company. Some of those official actions were allegedly taken by Mr. Percoco personally, while others were taken by state officials whom Mr. Percoco allegedly advised or pressured. The Government will necessarily argue at trial that its evidence can be explained *only* by the existence of corruption and the alleged bribery agreement.

The defense will contend that *there was no bribe*. We will argue that Mr. Kelly's actions were motivated *not* by any corrupt intent or any unlawful quid pro quo agreement, but *instead* by his own beliefs as to the merits of the positions he advocated. The defense also will contend that any actions by Mr. Percoco or any state officials the Government claims were corruptly pressured or advised by Mr. Percoco were motivated *not* by any bribe paid to Mr. Percoco or by any unlawful pressure or advice, but *instead* by each individual's own view of the facts and circumstances presented.

The Government's motion would preclude Mr. Kelly from introducing the very evidence necessary to establish the defense theory. The evidence that the Government seeks to preclude is not only relevant, but its preclusion would violate Mr. Kelly's due process right to present a defense. Accordingly, granting the Government's one-and-a-half page motion would constitute reversible error.

### A. The Government seeks to preclude relevant evidence central to Mr. Kelly's defense theory

Under Rule 401, evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The evidence the Government seeks to preclude is plainly "of consequence" to the case, as it bears, either directly or through a chain of inferences, on the essential elements of the crimes charged. See, e.g., Old Chief v. United States, 519 U.S. 172, 179 (1997) (observing that evidence is relevant even if it is just "a step on one evidentiary route to the ultimate fact"). In addition, the right to present a defense encompasses "the right to present the defendant's version of the facts as well as the prosecution's." Washington v. Texas, 388 U.S. 14, 19 (1967); see also United States v. Yousef, 327 F.3d 56, 128 (2d Cir. 2003).

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 3

   The fundamental—and fatal—flaw in the Government's position is that it makes no allowance for the possibility that *there was no bribe*. If there was no bribe, as the defense contends, then all of the Government's evidence of conduct that occurred after the Energy Company hired Ms. Percoco—including conversations between and among the supposed co-conspirators, email communications, telephone calls, meetings, and the "official actions" upon which the Government intends to rely—necessarily have other innocent explanations or rationales. The Government cannot present evidence and arguments to support a claim that conduct is attributable to corruption, and at the same time prevent presentation of alternative, legitimate motivations that explain the very same conduct. Yet, that is exactly what the Government seeks to do here.

   The Government has refused the defense's request to identify all of the official acts upon which it intends to rely at trial.[3] Nonetheless, the S2 Indictment refers to two specific matters in relation to which official acts were allegedly performed as part of the supposed quid pro quo. Each is addressed below. And for each, the defense is entitled to introduce evidence of an alternative explanation consistent with innocence.

   The first alleged "official act" involved approval of the Reciprocity Agreement between New York and New Jersey, under which the Energy Company would be able to purchase emissions credits in New York for use by the New Jersey Power Plant. (S2 Ind. ¶ 31(a)).[4] The Government alleges that, as a result of the alleged bribe, Mr. Percoco "exerted pressure on and provided advice to" certain state officials "with the intent that those officials secure" the Reciprocity Agreement for the Energy Company. (Id.). As further described in the Complaint, after Mr. Kelly allegedly bribed Mr. Percoco, and as a result of Mr. Percoco's alleged pressure or advice, the former State Operations Director and/or his Deputy approved the Reciprocity Agreement. (Compl. ¶¶ 47–48). The Government further alleges that without this intervention by Mr. Percoco, the New York State Department of Environmental Conservation ("DEC") "likely would not have entered into the Reciprocity Agreement." (Id. ¶ 47(d)). In support of that conclusion, the Complaint states that the DEC had "not identified a material state interest to be served" by the Reciprocity Agreement. (Id. n.5). In other words, to advance the inference that a bribe caused Mr. Percoco to influence the approval process, *the Government itself* will offer evidence that the underlying merits of the Reciprocity Agreement were lacking. The Government's own Complaint thus reveals the irony of the instant motion.

---

[3] Mr. Kelly's motion for an order dismissing the indictment because it fails to specify the official acts upon which the Government relies, as well as his alternative motion for an order directing the Government to identify those acts in a bill of particulars, are pending. (See Doc. Nos. 230, 231).

[4] The Government refers to this agreement variously as the "Emissions Credits Agreement" and the "Reciprocity Agreement."

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 4

  Given these allegations, the defense is plainly entitled to offer evidence that Mr. Kelly did not bribe Mr. Percoco, that Mr. Percoco did not intervene in the approval process for the Reciprocity Agreement, *and* that the approval of that agreement was premised on a legitimate rationale. To the extent that this legitimate rationale involved considerations of the Reciprocity Agreement's "public benefits or legal or practical merits" (Gov't MIL at 9), such evidence is relevant and admissible. Indeed, in the minds of the jurors, such evidence could be dispositive of the guilt or innocence of the defendants. Moreover, the Government's theory specifically puts at issue the legitimacy of the basis upon which the Reciprocity Agreement was approved. The defense will argue that no bribe occurred, and therefore is entitled to introduce evidence that the agreement's approval was, indeed, legitimate—i.e., that the relevant actor approved of the agreement for legitimate reasons associated with its "public benefits or legal or practical merits." Such facts are relevant because they tend to show that the approval decision was made absent any unlawful advice or pressure, and instead based on the merits. If the underlying facts could not be introduced, the Government would be free to argue—and the jury might infer even if the Government did not argue—that any claim that the approval was based on legitimate considerations was nothing more than a pretext.[5] The Government's effort to preclude the defense from undermining *all* of the Government's inferences with evidence of what *actually* motivated approval of the Reciprocity Agreement represents the height of absurdity, and reflects a complete disregard for the due process rights of these defendants.

  The second matter the Government has identified as the subject of "official action" allegedly undertaken in exchange for Ms. Percoco's job at the Energy Company involved the PPA sought by the Energy Company in connection with the New York Power Plant. (S2 Ind. ¶¶ 20, 31(b)). The Government alleges with respect to that matter that Mr. Percoco "exerted pressure on and provided advice to certain other State officials, with the intent that those officials work to secure for the Energy Company [the PPA]." (Id. ¶ 31(b); see also Compl. ¶ 49). With respect to the PPA (as with the Reciprocity Agreement), the Government will apparently contend that a series of events was motivated by, and can only reasonably be explained by, an underlying illegal quid pro quo agreement between Mr. Kelly and Mr. Percoco.

  Because the defense will assert at trial that *there was no bribe*, the defense will necessarily also assert that Mr. Kelly's own behavior with respect to the PPA, and the behavior

---

[5]  In fact, the Government's motion suggests that it might seek to challenge the factual basis for any claim that there was an innocent rationale underlying the relevant decisions. The Government states, "Were the defendant to offer evidence concerning the purported public benefits or merits of these issues or projects, the Government would expect to offer evidence to the contrary." (Gov't MIL at 10). For the reasons stated above, the Government's proposal to alleviate the burden of additional trial time needed to allow an explanation of the innocent factual basis for relevant decisions—i.e., precluding any reference to the underlying merits—would allow the Government to attribute those decisions to corruption, while preventing the defense from disputing that critical inference.

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 5

of everyone else who dealt with that issue, was motivated by considerations having nothing to do with a bribe.  To the extent those considerations involved the "public benefits or legal or practical merits" associated with the PPA, or views of the "public benefits or legal or practical merits" associated with the New York Power Plant, then those considerations are highly relevant.  They explain why the actors at issue did what they did.  Nothing could be more relevant to the defense than facts tending to support an alternative, innocent explanation for every document, conversation, email, meeting, and "official action" that the Government relies upon in an effort to prove its bribery case.

As set forth below, the facts and circumstances of these projects and agreements are central to the defense theory for a variety of other reasons as well.  For example, the Complaint alleges that after it became apparent to Todd Howe and Mr. Percoco that the Energy Company would not be awarded a PPA, they set up a series of meetings between Mr. Kelly and various state officials.  (Compl. ¶ 53).  According to the Government, the purpose of these meetings was for Mr. Howe and Mr. Percoco to deceive Mr. Kelly into believing that a PPA for the Energy Company might still be in the works.  (Id.).  The defense is entitled to offer its own view of these meetings.  Among other things, the defense is entitled to prove that despite any unlikelihood that the Energy Company would be awarded a PPA, Mr. Kelly believed fervently in the merits of building the New York Power Plant, that he hoped state officials would be convinced of those merits as well, and that he asked for those meetings in an effort to explore all avenues that might yield positive results.  The fact that Mr. Kelly sought these meetings, and the *reasons* he sought them, are exculpatory.  Such evidence shows that, in his mind, the way to achieve the Energy Company's objectives was not to bribe Mr. Percoco—who had no role in either determining the award of a PPA or determining the direction of New York State energy policy—but instead to meet with and persuade those individuals who did have those responsibilities.  Mr. Kelly's requests for those meetings reflects his understanding that he could *not* simply ask Mr. Percoco to influence those officials, with respect to the PPA or anything else.  The fact that others at the Energy Company shared Mr. Kelly's views, and participated in those same meetings, bolsters that inference.

Evidence of the "merits" of various projects and agreements is also relevant to Mr. Kelly's defense against the Government's claim that the "quid" for the bribe was Mr. Kelly's having arranged for the Energy Company to provide Mr. Percoco's wife with a "low-show job."  (S2 Ind. ¶ 30).  In support of that claim, the Government has alleged in the Complaint that the work performed by Ms. Percoco "did not come close to justifying the $7,500 per month salary she was receiving."  (Compl. ¶ 44(d)).  To counter this allegation, the defense must be permitted to explain her work for the Energy Company.  Specifically, Ms. Percoco worked as a consultant for the public relations arm of the company, on an outreach program that provided energy education to students and informed students about the benefits of the Energy Company's projects—including, most immediately, the New Jersey Power Plant at issue.  If the defense is precluded from mentioning the "merits" or the "public benefits" of that power plant, it will be precluded from demonstrating the purpose of Ms. Percoco's job.

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 6

The merits of the New York Power Plant are also relevant to the defense to rebut evidence the Government intends to offer pursuant to Rule 404(b). The Government has advised Mr. Kelly that it plans to introduce evidence that Mr. Kelly hired a labor leader's daughter in exchange for the labor leader's agreement to support the New York Power Plant. If the Government offers that evidence, the defense must be permitted to undermine that claim by showing that the labor leader's support for the New York Power Plant had nothing to do with any quid pro quo involving his daughter, but was instead motivated by his own view of the merits of the plant. In its conclusory motion, the Government ignores the obvious relevance of such evidence, including the above examples, and the importance of such evidence to the defense theory that there was no bribery.

It is important to note what we told the Government in a pre-motion call: the defense does *not* intend to argue the objective merits of these various projects and transactions, except insofar as that evidence supports an innocent rationale for the conduct of relevant participants in the matters at issue. The defense does not intend to argue, for example, that the Energy Company's proposal for a PPA was, objectively, the best proposal offered, and therefore that the Energy Company should have been awarded a PPA. Similarly, the defense does not intend to argue that the merits of the Reciprocity Agreement objectively outweighed any potential drawbacks, and therefore that New York State correctly approved the agreement. Nor, obviously, will the defense seek to prove that, in fact, the Energy Company's development of the New York Power Plant or its development of the New Jersey Power Plant was or is the best solution to the area's power needs. Those types of arguments are not relevant here; but the facts that might support such conclusions are relevant if offered for a proper purpose supporting a proffered rationale for an act or decision that is at issue. Mr. Kelly should not be precluded from offering that evidence for a proper purpose.

### B. The Government's motion to preclude finds no support in the case law

The Government's motion to preclude appears to be driven by two related lines of cases. (See Gov't MIL at 9–10). One line of cases stands for the proposition that, *if a government official has accepted a bribe*, then the fact that the official action was otherwise justifiable on the merits is legally immaterial. See, e.g., United States v. Manton, 107 F.2d 834, 846 (2d Cir. 1939) ("Judicial action, whether just or unjust, right or wrong, is not for sale."); United States v. Miller, 340 F.2d 421, 424 (4th Cir. 1965).

The second line of cases states that, *if a government official has accepted a bribe*, then the fact that he would have taken the same action even without the bribe is not a legal defense. See, e.g., United States v. Silver, 184 F. Supp. 3d 33, 46 (S.D.N.Y. 2016) ("[T]he law allows a jury to find that there is a *quid pro quo* relationship even if the public official would have taken

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 7

the same official action without the bribe, *so long as the public official was motivated, at least in part, by the bribe.*" (emphasis added)).[6]

None of these cases suggests that the evidence at issue is irrelevant to the question of *whether there was a bribe*; they stand only for the proposition that, *if a bribe has been paid*, it is not a cognizable legal defense that the government official either could or would have taken the same action without the bribe. As we told the Government in a pre-motion call, the defense has no intention of advancing legal arguments that these cases hold are not cognizable.

Without any citation to case law, the Government seeks to impose a nonsensical limit to the defense's ability to introduce so-called "merits" evidence. The Government asserts that Mr. Kelly be permitted to offer evidence of the "public benefits or legal or practical merits" associated with the Reciprocity Agreement, the PPA, and the New York and New Jersey Power Plants "for the limited purpose of establishing [Mr. Kelly's] intent by demonstrating *what [he] knew about another individual's view on a particular project or agreement*." (Gov't MIL at 9 (emphasis added)). Elsewhere in its short application, the Government argues that the evidence it seeks to preclude can only be relevant insofar as it has a "contemporaneous connection to the defendant's personal knowledge." (Id. at 10). The Government offers no authority for this proposed limitation; there is none.

To be clear, insofar as Mr. Kelly was motivated to act based upon his own beliefs as to the merits or public benefit of the Reciprocity Agreement, the PPA, and/or the New York and New Jersey Power Plants, his beliefs and motivations are relevant standing alone. Their relevance is not contingent upon his knowledge of any other person's views. To the extent others shared Mr. Kelly's views of the merits—including others employed by the Energy Company who were also involved in the relevant transactions—their views make it more likely that Mr. Kelly actually held those views, and acted based on those views, rather than any corrupt intent. Moreover, there is no logical basis to require the defense to establish, as a foundation to the admissibility of evidence undermining the Government's bribe theory, that Mr. Kelly knew anything whatsoever about the views of individuals involved in approving the Reciprocity Agreement or taking action with respect to the PPA. Irrespective of Mr. Kelly's knowledge, those individuals' views explain why those individuals took action in the absence of pressure or advice, thereby disproving that they acted due to any unlawful pressure or advice. That proof, in turn, supports the defense that there was no bribery agreement. By way of hypothetical example, if a relevant state official were to deny having been pressured or advised by Mr. Percoco to take official action, and were to offer instead an alternative explanation for having taken action, that testimony would undermine the Government's claim that an official act was performed and that a

---

[6] These two propositions from these two lines of cases are so similar that they are sometimes stated together. See, e.g., City of Columbia v. Omni Outdoor Advert., Inc., 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid.").

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 8

quid pro quo existed, irrespective of Mr. Kelly's knowledge. Yet, to the extent any alternative explanation reflected the official's view of the merits of his or her action, the Government would have this Court preclude the explanation as immaterial.

Finally, if the Government believes that evidence is relevant *only* if it bears directly on a defendant's state of mind, because the defendant's state of mind is an element of the crimes charged, the Government is wrong.[7]  As discussed above, Mr. Kelly's own state of mind is not the only matter on which "merits" evidence might bear in this case—it also bears on the motivations of other relevant actors and separately establishes the reasonableness of various individuals' innocent explanations for their conduct. Indeed, evidence need not establish an element of the crime charged to be relevant. So long as the evidence is part of an "evidentiary route to the ultimate fact," it is relevant to that ultimate fact. Old Chief, 519 U.S. at 179. In this regard, the Government will argue that Mr. Kelly bribed Mr. Percoco, that they each acted according to that corrupt agreement, and that others acted due to Mr. Percoco's corrupt advice or pressure. The defense will be that there was no bribe, that Mr. Kelly and Mr. Percoco acted for reasons grounded in the facts and circumstances of the projects and agreements at issue and their perspectives of them, and that others did so, as well. The defense must be entitled to introduce evidence showing the facts and circumstances explaining why each relevant actor acted the way he or she did in the absence of bribery and unlawful advice or pressure.

### C. The Government's claim that so-called "merits" evidence would be unfairly prejudicial is baseless

The Court should reject the Government's conclusory assertion that the evidence at issue should be precluded under Rule 403. (Gov't MIL at 9–10). With respect to the Energy Company, the substantial prejudice cited by the Government includes a concern that the jury might be confused when presented with evidence "regarding the economics of [the] particular business[es]" involved. (Id. at 10).[8] Evidently, the Government worries that jurors may not be smart enough to understand testimony about the energy industry.

The Government's apparent lack of faith in the jury is not only offensive, it also contradicts the Government's previous representations to the Court—in opposition to the

---

[7]   Elsewhere in its letter motion, the Government appears to understand that the test for relevance is not whether the evidence directly establishes or negates an element of the crime. (See Gov't MIL at 7 ("Evidence does not need to establish an element of the charged crime to be relevant.")).

[8]   The Government directs this argument primarily toward the allegations relating to the Syracuse Defendants, then summarily adds that the "same would be true" of the allegations relating to the Energy Company. (Gov't MIL at 10). To the extent the Government views the charges against the Syracuse Defendants as the primary driver of potential trial delay or

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 9

defendants' motions for severance—that juries in this District routinely decide complex matters. (See Doc. No. 264 at 101). If the Government is concerned about juror confusion, delays, or extended trials from admissible evidence, then severance is the solution rather than limiting Mr. Kelly's right to present a complete defense. The Government's worry that this case will become too complicated if witnesses are permitted to explain the reasoning behind their actions and decisions is a factor for the Government to consider—if at all—when it determines whether to bring a case; it is not a reason to preclude a valid defense. Presumably, prior to bringing criminal charges against Mr. Kelly and Mr. Percoco, the Government made appropriate efforts to understand the workings of the energy industry and the various policy issues surrounding the PPA and the Reciprocity Agreement. There is simply no reason why skilled and experienced prosecutors cannot now communicate their understanding of those matters in a manner the jury can also understand.

The Government also cites a concern that the trial will be "unduly lengthen[ed]" if the evidence is permitted. (Gov't MIL at 10). For the reasons stated above, the Government's proposal to alleviate the slight burden of additional trial time needed to allow an explanation of the innocent factual basis for relevant decisions—preclusion of any reference to the underlying merits—would allow the Government to attribute those decisions to corruption, while preventing the defense from disputing that critical inference. Surely, the Government cares more about the fundamental rights of these defendants than about ensuring that this trial concludes in the shortest possible time.

It is certainly in no one's interest to confuse or bore the jury with needless arcana, or to unnecessarily prolong the trial, and we have no intention of doing so. The goal of the defense is to exonerate Mr. Kelly; it is not to persuade the jury to award a PPA to the Energy Company or to proselytize about the value of interstate energy agreements. At the same time, to the extent the jury cannot fully understand why various individuals behaved the way they did without having a proper understanding of the Energy Company's projects and concerns—including, as necessary, the contracts at issue, the relevant state and federal regulators, financial considerations, and the energy industry at large—as well as the interests and concerns of the relevant state officials, that evidence must be permitted. The Government chose to bring these charges; it cannot now be heard to complain that the facts tending to undermine its theory are too complex for a jury to comprehend.

---

confusion, its concern provides yet another reason to grant Mr. Kelly's pending motion to be severed entirely from the Syracuse Defendants. (See Doc. Nos. 234 at 17–47, 291 at 3–16).

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 10

## II. The Government's Motion To Admit Evidence Of Campaign Donations

The Government moves to admit evidence that the Energy Company made lawful donations to Andrew Cuomo's gubernatorial campaigns.  (See Gov't MIL 5–7).

As a general matter, we do not oppose the introduction of campaign contributions so long as (1) the Court gives a preliminary instruction, as well as limiting instructions, that the exchange of campaign contributions for access is a lawful aspect of American democracy, and (2) the defense is permitted to offer evidence placing the Energy Company's campaign contributions in context and showing that campaign contributions to government officials were part of a routine business strategy.

In this regard, the Government's proposed framing of campaign contributions is alarming.  While the Government promises that it will not contend that any campaign contributions from the Energy Company to Governor Cuomo's campaigns were unlawful, the Government intends to argue that the campaign donations were a sort of precursor, or gateway activity, to bribery.  (See Gov't MIL at 5–6 (campaign contributions are "highly probative evidence of the genesis" of Mr. Kelly's "relationship[] with co-conspirators Percoco and Howe, and of the various co-conspirators' states of mind")).  The Government is talking out of both sides of its mouth: reciting, as it must, that campaign contributions are lawful, but also suggesting that this legal, constitutionally-protected conduct is evidence of intent to commit a crime.  The Government should not be allowed at trial to put a veneer of criminality on perfectly legal conduct.

The dangers of the line of argument the Government intends to pursue are well-documented in the case law.  As the Government concedes, campaign contributions are a form of First Amendment-protected speech.  Buckley v. Valeo, 424 U.S. 1, 20 (1976) (per curiam); see also McCutcheon v. FEC, 134 S. Ct. 1434, 1448 (2014) (plurality opinion).  Not only is it perfectly lawful to give campaign contributions, it is lawful to give them *for the purpose* of obtaining goodwill and access in return.  See McCutcheon, 134 S. Ct. at 1441 ("[G]overnment regulation may not target the general gratitude a candidate may feel toward those who support him or his allies, or the political access such support may afford."); Citizens United v. FEC, 558 U.S. 310, 360 (2010) ("Ingratiation and access, in any event, are not corruption.").  Indeed, the threatened chill to campaign contributions was one of the reasons the Supreme Court circumscribed the constitutionally allowable scope of bribery prosecutions in McDonnell v. United States.  136 S. Ct. 2355, 2372–73 (2016).

Accordingly, given that the Government seeks to introduce evidence that Mr. Kelly facilitated campaign contributions from the Energy Company to the campaigns of the Governor, the Court must take appropriate steps to protect the defendants' rights.  First, the Government should not be allowed to argue that campaign contributions are evidence of the defendants' intent to commit the crimes charged.  The contributions are protected speech for which goodwill and access is expected in the normal course.  Second, the jury should be instructed—at the very

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 11

least—that the exchange of campaign contributions for political access is not only lawful, but also a healthy and legitimate part of American democracy.  See Citizens United, 558 U.S. at 359 ("It is well understood that *a substantial and legitimate reason*, if not the only reason . . . to make a contribution to, one candidate over another is that the candidate will respond by producing those political outcomes the supporter favors." (citation omitted)).  Third, given the current political climate (including reports in local newspapers suggesting that campaign contributions to Mayor de Blasio improperly purchased access to the Mayor), the jury voir dire (including a questionnaire) must include questions designed to explore whether any potential juror harbors the commonly-held view, notwithstanding the law, that obtaining access to political figures through campaign contributions is improper.

      Finally, the defense should be permitted to introduce its own evidence relating to the campaign contribution practices at the Energy Company.  The Government will argue that the Energy Company's contributions to the Governor's campaigns were precursors to Mr. Kelly's bribery of Mr. Percoco.  To rebut that contention, the defense must be permitted to elicit evidence relating to, among other things: the Energy Company's practices with respect to campaign contributions (including contributions to other candidates, both in New York and elsewhere), and the knowledge and/or participation of those at the Energy Company in the decision to make campaign contributions (both in New York and elsewhere).  Because the Government will ask the jury to draw inculpatory inferences from campaign contributions, the defense is entitled to offer evidence from which exculpatory inferences can be drawn.[9]

---

[9] Indeed, the campaign contribution evidence is another reason why the Government's motion to preclude should be swiftly denied.  To the extent the Government wants the jury to conclude that campaign contributions were a precursor to bribery, the defense will rebut that inference by showing, among other things, that one reason the Energy Company made those contributions was to gain access to campaign staff and other officials so that the company could present *the merits* of its positions to key decision-makers.

LANKLER SIFFERT & WOHL LLP

December 1, 2017
Page 12

## Conclusion

       For the foregoing reasons, the Government's motion to preclude should be swiftly denied. With respect to the motion to admit campaign contribution evidence, we do not object to the application so long as steps are taken to prevent the jury from drawing improper inferences from that evidence (including an appropriate voir dire and preliminary and limiting instructions), and that the defense be able to offer evidence to place the contributions in context.

                                              Respectfully submitted,

                                              LANKLER SIFFERT & WOHL LLP

                                              By:      */s/ Daniel M. Gitner*
                                              Daniel M. Gitner
                                              Jun Xiang
                                              Rachel S. Berkowitz

CC: All Counsel (via ECF)