UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    - v. -

JOSEPH PERCOCO, a/k/a "Herb,"
PETER GALBRAITH KELLY, JR., a/k/a "Braith,"
STEVEN AIELLO, and
JOSEPH GERARDI,

               Defendants.

No. S2 16 Cr. 776 (VEC)

---

## DEFENDANTS' PROPOSED FINAL JURY INSTRUCTIONS

Defendants Joseph Percoco, Peter Galbraith Kelly, Jr., Steven Aiello, and Joseph Gerardi respectfully request that the Court give the following instructions to the jury at the conclusion of the trial commencing on January 8, 2017.[1]

\*      \*      \*

## PART I: GENERAL INSTRUCTIONS

### Role of the Court

1.      It is my duty to instruct you on the law, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant for your consideration.  It is your duty to accept my instructions on the law and to apply them to the facts as you determine them.[2]

---

[1]     The defendants' motions to dismiss and to sever are currently pending before the Court. These Proposed Final Jury Instructions are based on the charges in the S2 Indictment; the defendants do not waive any of the arguments in the pending motions as to the insufficiency of the charges.  Upon the Court's decision on the pending motions, the defendants may file supplemental or revised Proposed Final Jury Instructions, as necessary.

[2]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

2.      On legal matters, you must take the law as I give it to you.  You may not

substitute your own notions or opinions of what the law is or ought to be.  You should not be

concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may

have as to what the law may be—or should be—it would violate your sworn duty to base a

verdict upon any view of the law other than that which I give you.[3]

3.      If any attorney has stated a legal principle different from what I tell you, you must

follow my instructions.  You should not single out any particular instruction as alone stating the

law.  You should consider my instructions as a whole as you deliberate.[4]

4.      You should not infer from anything I have said or done during this trial that I have

any view on the credibility of the witnesses or any view about how you should decide the case.  I

have no opinion as to the facts or the verdict that you should render in this case.[5]

**<u>Role of the Jury</u>**

5.      You are the sole and exclusive judges of the facts.  You determine the credibility

of the witnesses.  You resolve any conflicts that might exist in the evidence.  You draw whatever

reasonable inferences you decide to draw from the facts as you have determined them, and you

determine the weight to give the various pieces of evidence.[6]

---

[3]      Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[4]      Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[5]      Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[6]      Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

6.      You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.[7]

**Role of Counsel/Objections**

7.      As I told you at the outset of the case, it is the duty of the attorneys to object when the other side offers testimony or evidence that the attorney believes is not properly admissible.  Therefore, you should draw no inference if an attorney objected to evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.[8]

**Sympathy or Bias**

8.      You are required to evaluate the evidence calmly and objectively, and you must be completely fair and impartial.  Your verdict must be based solely on the evidence introduced at this trial, or the lack of evidence.  The parties in this case are entitled to a trial free from prejudice or bias for or against either side.  Our judicial system only works if you reach your verdict through a completely fair and impartial consideration of the evidence.[9]

9.      You must not be influenced by any personal likes or dislikes, opinions, prejudices, sympathy, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.[10]  It would be improper for you to consider any personal feelings you may have about any party or any witness, or any other such irrelevant factor.  This case must be decided by you as an action between parties of equal

---

[7]      Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[8]      Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[9]      Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[10]      Adapted from Model Ninth Circuit Criminal Instruction 1.1.

standing in the community and of equal worth.  All parties are entitled to the same fair trial.  All

parties stand equal before the law and are to be dealt with as equals in this Court.[11]

### Presumption of Innocence and Burden of Proof

10.     The defendants—Joseph Percoco, Peter Galbraith Kelly, Jr., Steven Aiello, and

Joseph Gerardi—are each charged with federal crimes about which I will instruct you shortly.

Please bear in mind, however, that a charge is not itself evidence of anything.  An indictment is

not evidence.  Each defendant is presumed to be innocent.[12]

11.     Each of the defendants has pleaded not guilty.  To convict any defendant on any

charge, the Government must prove each essential element of that charge beyond a reasonable

doubt.  If the Government fails to meet its burden, your verdict must be not guilty on that charge.

The burden of proof never shifts to any defendant.  The law presumes a defendant to be innocent

and therefore never imposes upon a defendant in a criminal case the burden or duty of calling

any witness or producing any evidence.[13]

12.     In other words, as to each charge, each defendant starts with a clean slate and is

presumed innocent of each charge until such time, if ever, that you as a jury are satisfied that the

Government has proven that he is guilty of that charge beyond a reasonable doubt.[14]

### Reasonable Doubt

13.     What is proof beyond a reasonable doubt?  It is proof of such a convincing

character that a reasonable person would not hesitate to rely and act upon it in the most important

---

[11]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[12]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[13]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[14]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

of his or her own affairs.  Yet proof beyond a reasonable doubt does not mean proof beyond all

doubt.  A reasonable doubt is a doubt based upon reason and common sense.  It is a doubt that a

reasonable person has after carefully weighing all of the evidence.  It is a doubt that would cause

a reasonable person to hesitate to act in a matter of importance in his or her personal life.  A lack

of evidence alone may provide a reasonable doubt upon which a jury can find a defendant not

guilty.[15]

14.     If, after fair and impartial consideration of the evidence, you have a reasonable

doubt as to a defendant's guilt with respect to a particular charge against him, then you must find

that defendant not guilty of that charge.  For the same reason, if you view the evidence as

reasonably permitting either guilt or innocence as to a particular charge, you must acquit the

defendant of that charge.  On the other hand, if after fair and impartial consideration of all the

evidence, you are satisfied beyond a reasonable doubt of a defendant's guilt with respect to a

particular charge against him, you must find that defendant guilty of that charge.  Proof beyond a

reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.[16]

**Consider Each Defendant and Each Count Separately**

15.     The Indictment charges each of the defendants with more than one count.  Each

count charges a defendant with a different crime.  You must consider each count separately and

return a separate verdict of guilty or not guilty for each.  Whether you find a defendant guilty or

---

[15]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge);
United States v. Johnson, 16 Cr. 457 (NGG), Doc. No. 162 (jury charge).

[16]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge);
United States v. Johnson, 16 Cr. 457 (NGG), Doc. No. 162 (jury charge).

not guilty as to one offense should not affect your verdict as to any other offense charged against that defendant.[17]

16.     The Indictment charges four defendants who are on trial together: Mr. Percoco, Mr. Kelly, Mr. Aiello, and Mr. Gerardi.  In reaching a verdict, however, you must keep in mind that innocence or guilt is individual.  Your verdict as to each defendant must be determined separately with respect to that defendant, solely on the evidence, or lack of evidence, presented against him—without regard to the innocence or guilt of anyone else.[18]

17.     None of the charges against Mr. Kelly relate to Mr. Aiello and Mr. Gerardi—and vice versa.

18.     In summary, the case against each defendant, on each count, stands or falls upon the proof or lack of proof against that defendant alone, and your verdict as to any defendant on any count should not control your decision as to any other defendant on that count or any other count.[19]

**Evidence Admitted Solely Against Certain Defendants**

19.     Much of the evidence in this case was admitted solely against one or more specific defendants.  Any evidence admitted solely against one or more specific defendants may

---

[17]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instructions 3-6 (2017).

[18]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instructions 3-5, 3-7 (2017).

[19]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instructions 3-7, 3-8 (2017).

be considered only as against those specific defendants and may not be considered in any respect as to any other defendant.[20]

20.     None of the evidence that was admitted solely against Mr. Aiello and Mr. Gerardi—or solely against Mr. Percoco based on his interactions with Mr. Aiello and Mr. Gerardi—may be considered as to Mr. Kelly.  Thus, when you consider the charges against Mr. Kelly, you must put that evidence out of your mind—as if you never heard it.  Similarly, none of the evidence that was admitted solely against Mr. Kelly—or solely against Mr. Percoco based on his interactions with Mr. Kelly—may be considered as to Mr. Aiello and Mr. Gerardi.

**What Is and Is Not Evidence**

21.     I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses, the exhibits, and the stipulations that were received in evidence.  Other things are not evidence.

> a.     The Indictment is not evidence.  The Indictment is only an accusation, which is necessary to bring this case to trial.  It is not proof of guilt or anything else.
>
> b.     A question by a lawyer is not evidence.  The witnesses' answers are evidence, not the questions.  Similarly, documents that lawyers provided to witnesses to refresh their recollection are not evidence; only the witnesses' answers are evidence.
>
> c.     Arguments by lawyers are not evidence.  What the attorneys said in their opening statements and in their summations was intended to help you

---

[20]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instructions 3-5 (2017).

understand the evidence and to reach a verdict.  If your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

d.      Statements that I may have made concerning the evidence are not evidence.

e.      Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

f.      Anything you may have seen or heard outside the courtroom is not evidence.[21]

22.      Now I will discuss what is evidence.  Evidence may come in several forms:

a.      The sworn testimony of witnesses, regardless of who called the witness, is evidence.  This is true of the witnesses' answers on both direct and cross examination.

b.      The exhibits that were admitted during the trial are evidence.

c.      The stipulations that both parties agreed to and read during the trial are evidence.  You must accept as true the facts to which the parties stipulated.  Some of the stipulations were about what witnesses would have said if they had been called to testify.  You must accept as true the fact that those witnesses would have given that testimony, but it is up to you to determine the weight or importance of that testimony, if any.[22]

---

[21]      Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[22]      Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

**Direct and Circumstantial Evidence**

23.     Generally, there are two types of evidence that you may consider in reaching your verdict—direct and circumstantial.[23]

24.     Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses—something that he or she has done, seen, felt, touched or heard. For example, if a witness testified that on the day in question she was in her office and she could see that it was raining all day, that would be direct evidence about the weather on that day.[24]

25.     Circumstantial evidence is evidence of one fact from which you may infer the existence of other facts.  For example, assume that a witness testified that his office does not have a window.  On the day in question, however, he saw numerous people coming into the office with wet raincoats and carrying dripping umbrellas.  That testimony about the wet raincoats and dripping umbrellas is circumstantial evidence that it was raining that day.  So even though you have no direct evidence regarding the weather, you have circumstantial evidence that it was raining.[25]

26.     With circumstantial evidence, you must be careful to draw reasonable inferences that reflect all of the evidence.  For example, if you live in the city and wake up in the morning and see that the sidewalk is wet but the street is dry, it is not reasonable to infer that it rained last night.  Instead, a more reasonable inference is that the building staff has hosed down the sidewalk. [26]

---

[23]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[24]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[25]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[26]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

**Witness Credibility–General**

27.     You have had the opportunity to observe the witnesses.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.  Decide what testimony to believe and what not to believe.  Consider: each witness's demeanor and manner of testifying; the witness's opportunity to see, hear, and know about the events described; the witness's ability to recall and describe those things; any motive the witness may have to testify falsely or incompletely; any interest the witness may have in the outcome of the case; and the reasonableness of the testimony in light of all the other evidence in the case.  Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what the witness said or did on a prior occasion, by the testimony of other witnesses, or by other evidence, including exhibits.[27]

28.     If you find that a witness has willfully testified falsely as to an important matter, you may disregard the witness's entire testimony, or you may accept as much of the testimony as you find to be true and disregard what you find to be false.[28]

**Credibility of Cooperating Witness**

29.     You have heard from a witness, Todd Howe, who is cooperating with the Government and who has pleaded guilty to a number of crimes—including crimes unrelated to the allegations in this case.  The Government has promised Mr. Howe that, in exchange for his testimony, the Government will file a letter that Mr. Howe hopes will result in favorable treatment when he is sentenced for the crimes he has pleaded guilty to—including crimes

---

[27]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[28]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

unrelated to the allegations in this case.  This promise was arranged directly between the

Government and Mr. Howe, without any supervision by the Court.[29]

30.     I have already given you some general considerations on credibility, and I will not

repeat them all here.  Nor will I repeat all of the arguments made on both sides.  Nevertheless, let

me say a few things that you may want to consider during your deliberations on the subject of

Mr. Howe.[30]

31.     The testimony of Mr. Howe should be examined by you with greater care and

caution than an ordinary witness.  That is particularly true in this case because [to be filled at the

conclusion of trial].  A cooperating witness, confronted with the realization that he can win his

freedom by helping to convict another, has a motive to falsify or embellish his testimony.  You

should ask yourself whether he would benefit more by lying than by telling the truth.  If you

believe that the witness was motivated by self-interest, ask yourself whether that motivation

could lead the witness to lie or to be misleading or incomplete in his testimony.  You must ask

yourself: Did this motivation color the witness's testimony?  Is the witness's testimony

corroborated by the testimony of other witnesses or by reliable documentary evidence?  You

should look at all of the evidence to decide whether Mr. Howe's testimony is entitled to any

credence or weight.[31]

32.     You have heard testimony that certain crimes Mr. Howe pleaded guilty to are

related to allegations in this case.  You are instructed that you are not permitted to draw

---

[29]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge);
Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 7-5 (2017).

[30]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[31]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge);
United States v. Johnson, 16 Cr. 457 (NGG), Doc. No. 162 (jury charge).

conclusions or inferences of any kind about the guilt of any of the defendants on trial from the fact that Mr. Howe pleaded guilty. Mr. Howe's decision to plead guilty was a personal decision about his own guilt that was motivated by his own self-interest. It may not be used in any way as evidence against or unfavorable to any of the defendants on trial.[32]

**Expert Witnesses (If Applicable)**

33.     In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence in reaching an independent decision on the facts.[33]

34.     In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.[34]

**Law Enforcement Witness (If Applicable)**

35.     You have also heard the testimony of a law enforcement witness, Agent [NAME]. The fact that a witness may be employed as a law enforcement official or employee does not

---

[32]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 7-10 (2017).

[33]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 7-21 (2017).

[34]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 7-21 (2017).

mean that his or her testimony is deserving of more or less consideration or greater or lesser weight than that of a witness who is not employed by law enforcement.[35]

36.     At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.  It is your decision whether to accept the testimony of a law enforcement witness and to give that testimony whatever weight, if any, you find it deserves.[36]

**Witness Credibility–General**

37.     You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, there is nothing unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultations.[37]

38.     Going back to witnesses generally, you should consider whether a witness had an opportunity to observe the facts he or she testified about.  You should also consider whether the witness's recollection of the facts stands up in light of the other evidence in the case.  In other words, what you must try to do in deciding credibility is to size up a person just as you would in

---

[35]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[36]     Adapted from <u>United States v. Johnson</u>, 16 Cr. 457 (NGG), Doc. No. 162 (jury charge).

[37]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

any important matter in your own life where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.[38]

## Summary Charts (If Applicable)

39.     The parties have presented exhibits in the form of charts and summaries.  These exhibits purport to summarize the underlying evidence that was used to prepare them.  I decided to admit these charts and summaries in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[39]

## Defendants' Right Not to Testify (If Applicable)

40.     One or more defendants did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant's guilt beyond a reasonable doubt.  A defendant is never required to prove that he is innocent.  Therefore, you must not attach any significance to the fact that one or more defendants did not testify.  You may not draw any adverse inference against any defendant because he did not testify, and you may not consider it against that defendant in any way during your deliberations. [40]

---

[38]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[39]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[40]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

## PART II: SUBSTANTIVE INSTRUCTIONS

**Summary of the Indictment/Multiple Counts**[41]

41.     Let us now turn to the specific charges in this case.  I will, at times, refer to each count by the number assigned to it in the Indictment.  You should know that there is no significance to the order of the counts or the specific number of counts charged.

42.     I remind you again that the Indictment is an accusation only.  It is not evidence of anything.  You may not consider the Indictment as evidence against any defendant for any purpose.

43.     Count Six charges that, from approximately 2012 through approximately 2016, Mr. Percoco and others participated in a conspiracy to commit extortion under color of official right by obtaining cash payments from Competitive Power Ventures ("CPV") and COR Development ("COR") with their consent, such consent having been induced under color of official right, when Mr. Percoco and others agreed to cause CPV and COR to direct payments to Mr. Percoco in exchange for official acts by Mr. Percoco to benefit CPV and COR.

44.     Count Seven charges that, from approximately 2012 through approximately 2016, Mr. Percoco committed extortion under color official right by obtaining cash payments from CPV, with its consent, such consent having been induced under color of official right, when Mr. Percoco used his official State position and power and authority within the Office of the Governor to cause CPV to make and direct payments to Mr. Percoco's wife, Lisa Percoco, in exchange for official acts by Mr. Percoco to benefit CPV.

---

[41]     The defense assumes that the version of the Indictment that is used at trial will be redrafted by the Government to remove all reference to counts and allegations relating to the June trial and that the counts will be renumbered.

45.     Count Eight charges that, from approximately 2014 through approximately 2015, Mr. Percoco committed extortion under color official right by obtaining cash payments from COR, with its consent, such consent having been induced under color of official right, when Mr. Percoco used his official State position and power and authority within the Office of the Governor to cause COR to make and direct payments to Mr. Percoco in exchange for official acts by Mr. Percoco to benefit COR.

46.     Count Nine charges that, from approximately 2012 through approximately 2015, Mr. Percoco, Mr. Kelly, Todd Howe, and others participated in a conspiracy to commit honest services fraud by engaging in a bribery scheme in which Mr. Kelly's employer, CPV, retained Lisa Percoco for consulting work in exchange for official acts by Mr. Percoco to benefit CPV.

47.     Count Ten charges that, from approximately 2014 through approximately 2015, Mr. Percoco, Mr. Aiello, Mr. Gerardi, Todd Howe, and others participated in a conspiracy to commit honest services fraud by engaging in a bribery scheme in which Mr. Aiello and Mr. Gerardi arranged for funds to be paid to Mr. Percoco in exchange for official acts by Mr. Percoco to benefit COR.

48.     Count Eleven charges that, from approximately 2012 through approximately 2016, Mr. Percoco, being an official in the Office of the Governor, corruptly solicited and accepted a bribe from CPV when he caused CPV to retain Lisa Percoco in exchange for official acts by Mr. Percoco to benefit CPV.

49.     Count Twelve charges that, from approximately 2014 through approximately 2015, Mr. Percoco, being an official in the Office of the Governor, corruptly solicited and accepted a bribe from COR when he solicited and accepted cash and things of value from COR in exchange for official acts by Mr. Percoco to benefit COR.

50.     Count Thirteen charges that, from approximately 2012 through approximately 2016, Mr. Kelly bribed Mr. Percoco by causing Mr. Kelly's employer, CPV, to retain Lisa Percoco for consulting work, in exchange for official acts by Mr. Percoco to benefit CPV.

51.     Count Fourteen charges that, from approximately 2014 through approximately 2015, Mr. Aiello and Mr. Gerardi bribed Mr. Percoco by arranging for funds to be paid to Mr. Percoco in exchange for official acts by Mr. Percoco to benefit COR.

52.     Count Seventeen charges that when Mr. Aiello met with federal agents and representatives of the U.S. Attorney's Office on June 21, 2016, he made specific false statements denying involvement in making payments to Mr. Percoco: [to be inserted when Government specifies particular false statements].

53.     Count Eighteen charges that when Mr. Gerardi met with federal agents and representatives of the U.S. Attorney's Office on June 21, 2016, he made specific false statements denying involvement in making payments to Mr. Percoco: [to be inserted when Government specifies particular false statements].

54.     In a moment, I will instruct you on each of these charges in more detail.  As I have said, you must consider each charge separately and evaluate each on the evidence or lack of evidence that relates to that charge.  Furthermore, as I have said, you must consider each defendant separately and evaluate each defendant on the evidence or lack of evidence that relates to that defendant.[42]

---

[42]     Adapted from Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instructions 3-5, 3-6, 3-7, 3-8 (2017).

55.     The Indictment will be sent into the jury room.  Again, I remind you that the Indictment is not evidence.  It is merely an accusation, and it cannot be used by you as proof of anything.[43]

**Counts Six Through Fourteen: Quid Pro Quo**

56.     Before I go through each count, I need to explain a key concept: what is a <u>quid pro quo</u>?  With the exception of the false statements counts (Counts Seventeen and Eighteen), every count charged in the Indictment involves allegations of bribery.  Bribery requires the Government to prove beyond a reasonable doubt that the defendant or defendants charged in that count engaged in a <u>quid pro quo</u>.[44]

57.     The concept of a <u>quid pro quo</u> is central to this case.  I explained the concept at the beginning of trial, but now I will give you a more detailed explanation.  Because Counts Six through Fourteen all require proof of a <u>quid pro quo</u>, I will instruct you on what the term "<u>quid pro quo</u>" means now, rather than repeat these instructions when I go over the individual counts.  When I later instruct you on the elements of Counts Six through Fourteen, I will remind you that you must find a <u>quid pro quo</u> for each of those counts and refer you to these instructions.  You must remember that these instructions apply fully to each of those counts.

58.     As I told you when trial began, <u>quid pro quo</u> is a Latin phrase and it means "this for that" or "these for those."  In the context of bribery allegations, <u>quid pro quo</u> means that a

---

[43]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[44]     <u>See</u> <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge) (requiring <u>quid pro quo</u> for honest services fraud and Hobbs Act extortion bribery charges); <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge) (requiring <u>quid pro quo</u> for honest services fraud, Hobbs Act extortion, and 18 U.S.C. § 666 bribery charges); <u>see also</u> <u>McDonnell v. United States</u>, 136 S. Ct. 2355, 2365 (2016) (bribery charged as honest services fraud or Hobbs Act extortion requires proof of <u>quid pro quo</u>); <u>United States v. Bahel</u>, 662 F.3d 610, 636 (2d Cir. 2011) (bribery charged under 18 U.S.C. § 666 requires <u>quid pro quo</u>).

thing of value is provided in exchange for an official act by a government official on a specific issue pending before the government.[45]

59.     To satisfy the <u>quid pro quo</u> element of the charges relating to the alleged CPV scheme, the Government must prove beyond a reasonable doubt that Mr. Percoco and Mr. Kelly agreed at the time CPV retained Lisa Percoco as a consultant that, in exchange for CPV retaining her, Mr. Percoco would take official acts on specific matters pending before the government in favor of CPV.  Specifically, the Government must prove that Mr. Percoco and Mr. Kelly agreed that, in exchange for CPV retaining Lisa Percoco, Mr. Percoco would perform official acts on the Power Purchase Agreement and the Reciprocity Agreement.

60.     Likewise, with respect to the alleged COR scheme, the Government must prove beyond a reasonable doubt that Mr. Percoco, Mr. Aiello, and Mr. Gerardi agreed at the time Mr. Percoco allegedly received payments from Mr. Aiello and Mr. Gerardi that, in exchange for those payments, Mr. Percoco would perform official acts on specific matters pending before the government in favor of COR.  Specifically, the Government must prove that Mr. Percoco, Mr. Aiello, and Mr. Gerardi agreed that, in exchange for the alleged payments to Mr. Percoco, Mr. Percoco would perform official acts on the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr., who was working in the Office of the Governor.

---

[45]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 140 (preliminary jury charge); <u>see also</u> <u>McDonnell v. United States</u>, 136 S. Ct. 2355, 2371 (2016) ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged <u>quid pro quo</u>."); <u>id.</u> at 2372 ("The 'question, matter, cause, suit, proceeding or controversy' . . . must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official."); <u>Evans v. United States</u>, 504 U.S. 255, 268 (1992) ("[T]he offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts.").

61.     A quid pro quo has three parts: a thing of value (the "quid"), an official act (the "quo"), and the requirement that the thing of value be given in exchange for the official act (the "pro").  Let me now go through each of those.

**"Quid"—Thing of Value**

62.     As I stated, the "quid" in a quid pro quo is the thing of value that is given to a government official in exchange for official action.  Put simply, the "quid" is the alleged bribe. The thing of value can be cash, but it does not always have to be.  The thing of value is often provided directly to the government official, but it does not always have to be.[46]

**"Quo"—Official Act**

63.     The "quo" in a quid pro quo is the official act that the government official agrees to perform in exchange for the "quid"—in other words, the official act that the government official has been bribed to perform.  Now, I just used the term "official act."  The term "official act" is very important to this case.   Not everything that a government official does in his official capacity is an "official act."  Under the law, the term "official act" has a very specific and narrow meaning.[47]  Specifically, an "official act" requires proof of two things:

**First Element of "Official Act": Specific Governmental Matter**

64.     First, in order for a government official to perform an official act, he or she must take action on a specific matter before the government.  To be specific, a governmental matter has to be concrete and identifiable—it has to be the sort of thing that can be put an on agenda,

---

[46]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[47]     See McDonnell v. United States, 136 S. Ct. 2355, 2371 (2016) ("In sum, an 'official act' is a decision or action on a 'question, matter, cause, suit, proceeding or controversy.'"); id. ("That does not mean, however, that every decision or action customarily performed by a public official—such as the myriad decisions to refer a constituent to another official—counts as an 'official act.'").

tracked for progress, or checked off as complete.  Examples of specific governmental matters include whether the legislature will pass a particular tax bill, whether an administrative agency will issue a particular permit, or whether the DMV will grant you a driver's license.  Broad topics are not specific.  For example, even though the government is responsible for broad issues like economic development or national security, those broad areas do not count as specific governmental matters.[48]

    65.    The specific matter on which the government official agrees to take official action must be identified at the time of the alleged bribe.[49]

---

[48]    <u>See</u> <u>McDonnell v. United States</u>, 136 S. Ct. 2355, 2372 (2016) ("The 'question, matter, cause, suit, proceeding or controversy' must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee.  It must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official."); <u>id.</u> at 2369 ("'Pending' and 'may by law be brought' suggest something that is relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete. . . . Economic development is not naturally described as a matter 'pending' before a public official—or something that may be brought 'by law' before him—any more than 'justice' is pending or may be brought by law before a judge, or 'national security' is pending or may be brought by law before an officer of the Armed Forces.").

[49]    <u>See</u> <u>McDonnell v. United States</u>, 136 S. Ct. 2355, 2374 (2016) (vacating conviction because district court "did not instruct the jury that to convict . . . , it had to find that he made a decision or took an action—or agreed to do so—on the *identified* 'question, matter, cause, suit, proceeding or controversy'" (emphasis added)); <u>id.</u> at 2371 ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' *at the time of the alleged quid pro quo*." (emphasis added)); <u>Evans v. United States</u>, 504 U.S. 255, 268 (1992) ("[T]he offense is completed *at the time when the public official receives a payment* in return for his agreement to perform specific official acts." (emphasis added)); <u>United States v. Terry</u>, 707 F.3d 607, 613 (6th Cir. 2013) ("A donor who gives money in the hope of unspecified future assistance does not agree to exchange payments for actions.  *No bribe thus occurs if the elected official later does something that benefits the donor.*" (emphasis added)).

**Second Element of "Official Act": Formal Action or Decision**

66.     Second, and in addition to what I just told you, in order for a government official to perform an official act, that official must make a formal decision or take a formal action on the specific governmental matter.[50]

67.     Only someone who is a government official can perform an official act.  In order for a government official to perform an official act, that official's action or decision must be made within the specific duties of the official's position, as conferred by the authority of his or her office.[51]

68.     There are two ways for a government official to perform an official act.  The government official either must make a formal decision or take a formal action himself—that is, he must be the direct decision-maker on the matter at issue—or he must pressure or advise another government official with the knowledge or the intent that his pressure or advice will form the basis of an official act by that other government official.[52]

---

[50]     See McDonnell v. United States, 136 S. Ct. 2355, 2371–72 (2016) ("To qualify as an 'official act,' the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so.").

[51]     See McDonnell v. United States, 136 S. Ct. 2355, 2369 (2016) (the question or matter on which the government official performs an official act must be "something within the specific duties of an official's position—the function *conferred by the authority of his office*" (emphasis added)); Dixson v. United States, 465 U.S. 482, 499–500 (1984) ("To be a public official under section 201(a), an individual must possess some degree of *official responsibility* for carrying out a [government] program or policy . . . [and] assume some duties of an official nature." (emphasis added)); id. at 496 (relevant inquiry is "whether the person occupies a position of public trust with official [governmental] responsibilities"); Laverpool v. N.Y. City Transit Auth., 835 F. Supp. 1440, 1462 (E.D.N.Y. 1993) (where an arbitrator had been approached about a government job during a hearing and later accepted that job, he was "neither a public official [n]or a public officer at the time" of the purported bribes alleged as a predicate RICO offense), aff'd, 41 F.3d 1501 (2d Cir. 1994).

[52]     See McDonnell v. United States, 136 S. Ct. 2355, 2371–72 (2016) ("To qualify as an 'official act,' the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so.  That decision or action may include

69.     In this case, there is no allegation that Mr. Percoco made any formal decision or took any formal action himself.  Rather, the Government alleges that Mr. Percoco performed "official acts" by giving "advice" to, or exerting "pressure" on, other government officials with the knowledge or the intent that his pressure or advice would form the basis of an official act by that other government official.

### "Official Act": Pressure or Advice

70.     Let me explain what the Government has to prove in order to show that Mr. Percoco performed or promised to perform an "official act" by advising or pressuring another government official.

71.     "Advice" means something very specific in the context of a bribery case such as this.  A government official gives "advice" only if the government official provides advice to another government official with the expectation that the other official will necessarily rely on that advice as the basis of an official action or decision.  In other words, the government official who provides the advice must intend that the advice will actually determine the specific governmental matter at issue.  When considering whether the official who received the advice would necessarily rely on it, you should consider whether the official who provided the advice was more directly acquainted with the facts and circumstances of the governmental matter at issue than the other official was.  You should also consider whether giving advice on that specific matter was within the official duties of the official who gave the advice, and whether the other official was under any obligation to follow the advice.[53]

---

using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form *the basis for an 'official act'* by another official." (emphasis added)).

[53]     See United States v. Birdsall, 233 U.S. 223, 234 (1914) (finding advice amounted to official acts where superiors "necessarily rely largely upon the reports and advice of subordinates

72.     Let me tell you what it means in this case for a government official to pressure another government official.  Just as "advice" means something specific in a bribery case, so does the word "pressure."  As the word is used in this case, a government official exerts "pressure" if he uses his official authority to threaten, or coerce, or otherwise apply force on another government official.  The government official who exerts pressure must do so with the intent that the pressure will form the basis of an official act by the official being pressured.[54]

73.     When considering whether a government official exerted pressure, you must consider what the official actually did—not simply what his title or position was.  Just because a government official holds a position of considerable authority does not mean that everything the official does amounts to pressure.

74.     As I have said, not everything that a government official does in his official capacity in connection with a governmental matter is an "official act."  Under the law, certain actions by government officials are not considered official acts, even if those acts are performed in an official capacity.  Hosting or setting up a call or a meeting, getting information on behalf of

---

in the department who were more directly acquainted with the existing conditions, the records of offenders, and the facts and circumstances of particular cases"); McDonnell v. United States, 136 S. Ct. 2355, 2371 (2016) (citing Birdsall as demonstrating circumstances under which advice constitutes "official act"); United States v. Jones, 207 F. Supp. 576, 582 (E.D.N.C. 2016) (conduct qualified as an "official act" because it "falls square within the specific duties of a [officer] for the FBI"); United States v. Repak, 852 F.3d 230, 254 (3d Cir. 2017) (defendant engaged in official act because "in his capacity as the [agency] Executive Director, [he] made recommendations to the [agency] Board of Directors as to which contractors should be used on specific projects").

[54]     See McDonnell v. United States, 136 S. Ct. 2355, 2369 (2016) (the question or matter on which the government official performs an official act must be "something within the specific duties of an official's position—the function conferred by the authority of his office"); United States v. Silver, 203 F. Supp. 3d 370 (S.D.N.Y. 2016) (suggesting that, absent evidence to suggest that legislator communicated an "implicit threat" to "cut the court's funding if he did not comply," a jury could find that legislator's request to judge was not an official act).

a constituent, or referring a person to another government official are not, by themselves, official acts.[55]

76.    This may come as a surprise to some of you, and you may even feel a bit uncomfortable with the idea that someone can give a government official something of value in exchange for these types of assistance—but, under the law, doing so is not a federal crime.[57]

**"Pro"—In Exchange For**

77.    Now, remember I told you that the phrase "quid pro quo" means that a thing of value is provided in exchange for an official act by a government official on a specific matter pending before the government.  I have explained what "quid" and "quo" mean.  Let me now explain the phrase "in exchange for," which is the "pro" of the quid pro quo.  That phrase also

---

[55]    See McDonnell v. United States, 136 S. Ct. 2355, 2371 (2016) ("Setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a [pending issue] or to gather additional information, however, does not qualify as a decision or action on the [pending issue]."); id. (excluding from "official act" the "myriad decisions to refer a constituent to another official").

[56]    See McDonnell v. United States, 136 S. Ct. 2355, 2371 (2016) ("Simply expressing support for [a certain outcome on the pending issue] at a meeting, event, or call—or sending a subordinate to such a meeting, event, or call—similarly does not qualify as a decision or action on the [pending issue], as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act.'"); United States v. Silver, 864 F.3d 102, 122 (2d Cir. 2017) ("Taking a public position on an issue, by itself, is not a formal exercise of governmental power, and is therefore not an 'official act' under McDonnell.").

[57]    See McDonnell v. United States, 136 S. Ct. 2355, 2375 (2016) ("There is no doubt that this case is distasteful; it may be worse than that.  But our concern is not with tawdry tales of Ferraris, Rolexes, and ball gowns. . . . A more limited interpretation of the term 'official act' leaves ample room for prosecuting corruption, while comporting with the text of the statute and the precedent of this Court.").

has a specific legal meaning.  A thing of value is given "in exchange for" an official act if it is meant to induce or cause the official act.  The "in exchange for" requirement is not satisfied simply because a thing of value is followed by an official act; the thing of value must be given to procure the official act.  Put another way, the bribe must be conditioned on the official's agreement to perform an official act.[58]

78.     When considering this "in exchange for" element, ask yourself: has the Government proven beyond a reasonable doubt that there was a specific link in the minds of the defendants between the alleged thing of value given to the government official and a specific official act for which that thing of value was given?  Has the Government proven beyond a reasonable doubt that the thing of value was offered or accepted with the intent that a specific official act be performed in return?  If not, the quid pro quo requirement has not been proven.[59]

79.     The requirement that the thing of value be exchanged for an official act is not satisfied simply because a person gives a thing of value to a government official with the intent to foster goodwill with that official, or to build a relationship with the official.  The same

---

[58]    See United States v. Sun-Diamond Growers of California, 526 U.S. 398, 404 (1999) ("Bribery requires intent 'to influence' an official act or 'to be influenced' in an official act."); United States v. Alfisi, 308 F.3d 144, 149 (2d Cir. 2002) ("[T]here must be "a specific intent to give . . . something of value *in exchange* for an official act." (citation omitted)); id. ("Putting it only slightly differently, bribery involves the giving of value to procure a specific official action from a public official."); United States v. Ring, 706 F.3d 460, 468 (D.C. Cir. 2013) ("These careful instructions touched all the necessary bases, requiring a specific intent to influence official acts, an intent that the official 'realize or know' that the corrupt exchange is being proposed, and a showing that the gifts 'were conditioned upon' the official's act or agreement.").

[59]    See United States v. Sun-Diamond Growers of California, 526 U.S. 398, 414 (1999) (holding that "the Government must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given" to prove a corrupt gratuity); McDonnell v. United States, 136 S. Ct. 2355, 2370 (2016) (extending Sun-Diamond to bribery charges); id. at 2365 ("[T]he Government was required to prove that Governor McDonnell committed or agreed to commit an 'official act' in exchange for the loans and gifts from Williams.").

principle applies from the perspective of the official.  The exchange requirement is not satisfied

simply because the official receives a thing of value; if the official believes it was given merely

with the intent to build a relationship with him or to foster goodwill, there is no exchange.  The

requirement is also not satisfied if a defendant gives something of value to gain access to a

government official, or to ingratiate himself with a government official.  "Ingratiate" means to

establish good favor with someone.  Providing a benefit to a government official to build a

relationship, to obtain goodwill, or to ingratiate oneself is not a crime.  That may also come as a

surprise to some of you, and you may even feel uncomfortable with the idea that someone can

give a government official something of value for access, goodwill, or ingratiation.  But those

activities are lawful.  Our system of representative government assumes that public officials will

hear from constituents—including individuals and corporations—and act appropriately on their

concerns, even if the public official previously received things of value from those constituents.[60]

80.     If you find that a defendant participated in a <u>quid pro quo</u>, it is not a defense that

the official act promised as part of that <u>quid pro quo</u> was never actually performed.  It is the

agreement to enter into a <u>quid pro quo</u> that is the crime, not the performance of the official act.

---

[60]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge); <u>United States v. Skelos</u>, Doc. No. 148 (transcript of jury charge); <u>see also</u> <u>McDonnell v. United States</u>, 136 S. Ct. 2355, 2372 (2016) ("The basic compact underlying representative government assumes that public officials will hear from their constituents and act appropriately on their concerns" even if the public official previously received a benefit.); <u>Citizens United v. FEC</u>, 558 U.S. 310, 360 (2010) ("Ingratiation and access, in any event, are not corruption."); <u>United States v. Rabbitt</u>, 583 F.2d 1014, 1027 (8th Cir. 1978) ("The evidence further indicates Berger-Field was a willing collaborator who sought and paid for Rabbitt's good words to influential people, thus giving Berger-Field access on a friendly basis to state officials who awarded architectural contracts on merit."); <u>United States v. Carpenter</u>, 961 F.2d 824, 827 (9th Cir. 1992) ("granting or denying access . . . not an 'official act'").

However, you may consider evidence that a government official could not or did not perform an official act as proof that there was in fact no quid pro quo.[61]

81.     When you assess whether or not a defendant participated in a quid pro quo, you must consider the defendant's state of mind at the time of the alleged bribe.  If a thing of value was not a bribe when it was provided or accepted—that is, if the thing of value was provided or accepted with an innocent state of mind and not as part of a quid pro quo—then no later action can transform it into a bribe.  If a person provides a thing of value to a government official for innocent reasons, the fact that the official later performs an official act favorable to that person does not transform the previously innocent thing of value into a bribe.  The intent to commit bribery must exist at the outset; it cannot be formed retroactively.[62]

82.     If you find that a defendant participated in a quid pro quo and that, as part of that quid pro quo, a government official took official acts, it is not a defense that the official acts taken were desirable or beneficial to the public or were part of an otherwise lawful process.  An official act can be part of a quid pro quo even if the same official act would have been performed without a quid pro quo.  The bribery laws are concerned with the manner in which public officials take action, not with whether the official's actions are good or bad or beneficial or detrimental to the public good in the abstract.  However, if you conclude from the evidence that a

---

[61]     See Evans v. United States, 504 U.S. 255, 256 (1992) ("[T]he offense is completed when the public official receives payment in return for his agreement to perform specific official acts; fulfillment of the quid pro quo is not an element of the offense.").

[62]     See Evans v. United States, 504 U.S. 255, 256 (1992) ("[T]he offense is completed when the public official receives payment in return for his agreement to perform specific official acts."); United States v. Terry, 707 F.3d 607, 613 (6th Cir. 2013) ("A donor who gives money in the hope of unspecified future assistance does not agree to exchange payments for actions.  No bribe thus occurs if the elected official later does something that benefits the donor."); McCormick v. United States, 500 U.S. 257, 283 (1991) (Stevens, J., dissenting) ("What [the public official] did thereafter might have evidentiary significance, but could neither undo a completed crime nor complete an uncommitted offense.").

government official would have performed the official act in any event, you may consider that evidence as proof that there was in fact no quid pro quo.[63]

83.     A quid pro quo need not be explicit.  A defendant can participate in a quid pro quo, even if there is no explicit discussion of the quid pro quo, so long as the defendant understood that a thing of value was being provided in exchange for official acts.[64]

**Quid Pro Quo: Summary**

84.     In determining whether the Government has satisfied its burden of proving the quid pro quo element of the charges relating to the CPV allegations, you must determine whether the evidence shows, beyond a reasonable doubt, that Mr. Percoco accepted—and that Mr. Kelly provided—things of value in exchange for official acts by Mr. Percoco on the Power Purchase Agreement and the Reciprocity Agreement.

85.     Likewise, in determining whether the Government has satisfied its burden of proving the quid pro quo element of the charges relating to the COR allegations, you must determine whether the evidence shows, beyond a reasonable doubt, that Mr. Percoco accepted—and that Mr. Aiello and Mr. Gerardi provided—money in exchange for official acts by Mr. Percoco on the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.

86.     Some of you may feel that the law is too narrow or technical, or that conduct that falls outside of the legal definition of quid pro quo should be unlawful.  While you are entitled to your personal beliefs, you must set those personal feelings aside during this trial.  As a juror in

---

[63]     See United States v. Silver, 864 F.3d 102, 123 (2d Cir. 2017) (holding that "that a rational jury could have concluded that the official acts proven were not part of a quid pro quo arrangement" based on evidence that the official acts would have been performed anyway because they were not "particularly controversial").

[64]     See United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

this trial, the question you must answer is simply whether the Government has proved beyond a reasonable doubt that the defendants violated the specific federal criminal statutes with which they have been charged.  As I instructed you at the very beginning, you must take the law as I give it to you.  Regardless of any opinion that you may have as to what the law is—or should be—it would violate your sworn duty to base a verdict upon any view of the law other than that which I give you.[65]

87.     Now that I have instructed you on what a <u>quid pro quo</u> is, I will go through each of the counts charged in the Indictment and explain the elements that the Government must prove beyond a reasonable doubt as to each count.

**<u>Count Six, Seven, and Eight: Extortion Conspiracy and Extortion</u>**

88.     Count Six of the Indictment charges Mr. Percoco with conspiracy to commit extortion under color of official right by obtaining payments from CPV and COR.

89.     Count Seven of the Indictment charges Mr. Percoco not with conspiracy, but with the substantive offense of extortion under color of official right for extorting CPV.

90.     Count Eight of the Indictment charges Mr. Percoco with the substantive offense of extortion under color of official right for extorting COR.

91.     Because all three charges are based on the same type of underlying offense, namely, extortion under color of official right, I will explain the law applicable to all three at the same time.

92.     Unlike Counts Seven and Eight, Count Six is a conspiracy count.  Count Six charges Mr. Percoco alone.  I will begin by explaining what a conspiracy is.  These instructions on conspiracy will apply not only to Count Six, but also to other conspiracy counts I will explain

---

[65]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

later.  I will explain to you shortly the difference between a conspiracy charge and a substantive offense.

**Conspiracy**

93.     A conspiracy is a kind of criminal partnership, an agreement of two or more persons to join together to accomplish some unlawful purpose.[66]  The alleged purpose of the Count Six conspiracy was to commit extortion under color official right.

94.     To meet its burden of proof with respect to the allegation of conspiracy, the Government must establish each of the following elements beyond a reasonable doubt:

> First, the existence of the conspiracy charged in the Indictment; and
>
> Second, that the defendant intentionally and knowingly became a member of that conspiracy, that is, the defendant knowingly participated in the conspiracy with knowledge of the conspiracy's object and with intent to further the aims of the conspiracy.[67]

**Element One of Conspiracy: Existence of Conspiracy**

95.     The first element that the Government must prove beyond a reasonable doubt is the existence of the conspiracy.  Simply defined, a conspiracy is an agreement by two or more persons to violate the law.  In this instance, the unlawful purpose alleged to be the object or purpose of the conspiracy charged in Count Six was to commit extortion under color of official

---

[66]     Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[67]     Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

right.  Later on, I will give you specific instructions about what constitutes extortion under color of official right.[68]

96.     The essence of the crime of conspiracy is an unlawful combination or agreement to violate the law.  The crime of conspiracy is complete once the unlawful agreement is made. The success or failure of a conspiracy is not material to the question of guilt or innocence of the conspirator, for a conspiracy is a crime entirely separate and distinct from the substantive crime that may be the goal of the conspiracy.[69]

97.     In order to establish the existence of the conspiracy, you must find beyond a reasonable doubt, after considering all of the relevant evidence, that the minds of at least two alleged conspirators met in an understanding way and that they agreed, as I have explained, to work together in furtherance of the unlawful agreement alleged in Count Six of the Indictment.[70]

98.     In this case, the Government claims that the purpose of the alleged conspiracy in Count Six was to commit extortion under color of official right.  If the Government fails to prove that this was the object of the conspiracy, then you must find Mr. Percoco not guilty of the conspiracy count in Count Six.

99.     Remember, as I mentioned earlier, the ultimate success of the conspiracy, or the actual commission of the crime that is the object of the conspiracy, is not required.  The offense alleged in Count Six is a conspiracy, or agreement, to commit extortion under color of official

---

[68]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[69]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[70]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

right.  Again, I will give you specific instructions shortly on about what extortion under color of official right is.[71]

### **Element Two of Conspiracy: Intentional and Knowing Participation in the Conspiracy**

100.     If you conclude that the Government has proven beyond a reasonable doubt that the conspiracy charged in Count Six of the Indictment existed, you must next determine the second question.  That is whether Mr. Percoco participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful object—that is, to commit extortion under color of official right.[72]

101.     The Government must prove beyond a reasonable doubt that Mr. Percoco, by his own actions and conduct, intentionally and knowingly entered into the conspiracy or agreement with a criminal intent, that is, with awareness of the generally unlawful nature of his acts.  Mr. Percoco need not have known which specific law or rule his acts violated in order to be aware that his acts were unlawful.[73]

102.     For this element, the terms "intentionally" and "knowingly" mean that you must be satisfied beyond a reasonable doubt that, in joining the conspiracy (if you find that the defendant did join the conspiracy), the defendant knew what he was doing and that he took the actions in question deliberately and voluntarily.[74]

---

[71]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[72]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[73]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[74]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

103.    An act is done knowingly and intentionally only if it is done deliberately and purposefully, that is, the act must have been the product of the defendant's conscious objective rather than the product of force, mistake, accident, mere negligence or some other innocent reason.[75]

104.    By pleading not guilty, Mr. Percoco has denied that he was a member of the alleged conspiracy.  It is for you to determine whether the Government has established beyond a reasonable doubt that such knowledge and intent existed on the part of Mr. Percoco.[76]

105.    I want to caution you that the mere association by one person with another does not make that person a member of the conspiracy even when coupled with knowledge that a conspiracy is taking place.  Even knowledge of criminal activity without participation is not sufficient to support a conviction.[77]

106.    A person may know or be friendly with a criminal without being a criminal himself.  Mere similarity of conduct or the fact that two persons may have assembled together and discussed common aims and interests does not necessarily establish membership in a conspiracy.  What is necessary is that the defendant participated in the conspiracy with knowledge of its unlawful purpose and with an intent to aid in the accomplishment of its unlawful object.[78]

---

[75]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[76]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[77]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[78]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

107.    In sum, for you to find that this element satisfied, you must find that the defendant, with an understanding of the unlawful character of the conspiracy, intentionally and knowingly engaged, advised or assisted in it for the purpose of furthering an illegal undertaking.[79]

### Object of Count Six Conspiracy and Basis for Counts Seven and Eight: Extortion Under Color of Official Right

108.    Because Count Six of the Indictment charges a conspiracy to commit extortion under color of official right, I must instruct you on the elements of the substantive crime that is the object of the alleged conspiracy.

109.    The substantive crime of extortion under color of official right is also charged in Counts Seven and Eight.  Count Seven charges that Mr. Percoco committed extortion under color of official right against CPV.  Count Eight charges that Mr. Percoco committed extortion under color of official right against COR.  The alleged extortion charged in Count Seven is entirely unrelated to the alleged extortion charged in Count Eight.  When considering whether the Government has satisfied its burden of proof beyond a reasonable doubt with respect to Count Seven, relating to CPV, you must put out of your mind any evidence relating to Count Eight, relating to COR.  The same is true when you consider Count Eight.  I am giving you a common set of instructions for both Counts Seven and Eight because they charge the same type of crime, not because the two Counts are factually related.  In fact, they are not factually related at all, except that Mr. Percoco is charged in both counts.

110.    As commonly used, the term "extortion" means coercing someone to voluntarily give up property as the result of threats of force or violence.  Extortion under color of official

---

[79]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

right is a little different.  Extortion under color of official right occurs when a person uses his position as a public official to obtain property not due to him as a public official.

111.    As to Counts Seven and Eight, the Government must prove beyond a reasonable doubt that Mr. Percoco committed each of the elements of extortion under color of official right. As to Count Six, the conspiracy, the Government must prove beyond a reasonable doubt that Mr. Percoco knowingly joined a conspiracy the object of which was to commit extortion under color of official right.

112.    The elements of extortion under color of official right are:

First, that Mr. Percoco was a public official or held public office at the time of the events charged;

Second, that Mr. Percoco obtained property not due to him as a public official;

Third, that the property was given to Mr. Percoco with the consent of the giver and because of Mr. Percoco's official position and that Mr. Percoco knew that the property was given because of his official position; and

Fourth, that interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in some way or degree.[80]

**Element One of Extortion: Defendant was Public Official**

113.    The first element the Government must prove beyond a reasonable doubt is that, at the time of the events charged in the indictment, Mr. Percoco was a public official or held public office both at the time he allegedly accepted any bribes and at the time he allegedly performed any official act in exchange for those alleged bribes.[81]

---

[80]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[81]    See McDonnell v. United States, 136 S. Ct. 2355, 2369 (2016) (the question or matter on which the government official performs an official act must be "something within the specific

36

### Element Two of Extortion: Property Not Due That Office

114.   The second element the Government must prove, beyond a reasonable doubt, is that Mr. Percoco obtained property that was not legitimately owed to the public office Mr. Percoco occupied.  The term "property" includes money and tangible and intangible things of value that are capable of being transferred or given from one person to another.[82]

### Element Three of Extortion: Misuse of Official Position

115.   The third element that the Government must prove, beyond a reasonable doubt, is that Mr. Percoco used the authority of his public office to obtain the extorted property for himself or for a third party and that the extorted property was given at least in part because of Mr. Percoco's official position.[83]

116.   In addition, the extortion counts require the Government to prove, beyond a reasonable doubt, the existence of a quid pro quo.  I have already explained to you what a quid pro quo is, and what an official act is.  Those instructions apply here.

---

duties of an official's position—the function *conferred by the authority of his office*" (emphasis added)); Dixson v. United States, 465 U.S. 482, 499–500 (1984) ("To be a public official under section 201(a), an individual must possess some degree of *official responsibility* for carrying out a [government] program or policy . . . [and] assume some duties of an official nature." (emphasis added)); id. at 496 (relevant inquiry is "whether the person occupies a position of public trust with official [governmental] responsibilities"); Laverpool v. N.Y. City Transit Auth., 835 F. Supp. 1440, 1462 (E.D.N.Y. 1993) (where an arbitrator had been approached about a government job during a hearing and later accepted that job, he was "neither a public official [n]or a public officer at the time" of the purported bribes alleged as a predicate RICO offense), aff'd, 41 F.3d 1501 (2d Cir. 1994).

[82]   Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[83]   Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

### Element Four of Extortion: Affecting Interstate Commerce

117.    If you decide that Mr. Percoco obtained property of another under color of official right, then you must determine whether this action affected interstate commerce in any way or degree.  That is, you must determine whether there was an actual or potential effect on commerce between any two or more states.  "Commerce between two states" just means that items are bought and sold by entities located in different states.[84]

118.    It is not necessary for the Government to prove that commerce actually was affected by Mr. Percoco's conduct or that Mr. Percoco intended or anticipated that his actions would affect interstate commerce.  It is sufficient if you find that Mr. Percoco's conduct possibly or potentially could have affected interstate or foreign commerce.  The Government only needs to prove a very slight or subtle actual or potential effect on interstate commerce.  This element is also proven if the natural consequence of Mr. Percoco's actions was an actual or potential effect on interstate or foreign commerce.[85]

### Counts Nine and Ten: Honest Services Fraud Conspiracy

119.    Count Nine of the Indictment charges Mr. Percoco and Mr. Kelly with conspiracy to commit honest services fraud in connection with CPV's retaining of Lisa Percoco for consulting work.

120.    Count Ten of the Indictment charges Mr. Percoco, Mr. Aiello, and Mr. Gerardi with conspiracy to commit honest services fraud in connection with alleged payments to Mr. Percoco purportedly made at the direction of Mr. Aiello and Mr. Gerardi.

---

[84]      Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[85]      Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

121.    The conspiracy charged in Count Nine is entirely unrelated to the conspiracy charged in Count Ten.  When considering whether the Government has satisfied its burden of proof beyond a reasonable doubt with respect to Count Nine, relating to CPV, you must put out of your mind any evidence relating to Count Ten, relating to COR.  The same is true when you consider Count Ten.  I am giving you a common set of instructions for both Counts Nine and Ten because they charge the same type of crime, not because the two Counts are factually related.  In fact, they are not factually related at all, except that Mr. Percoco is charged in both counts.

122.    Earlier I explained that a conspiracy is an unlawful agreement and I gave you instructions on what elements the Government must prove beyond a reasonable doubt to establish a conspiracy.  Those instructions apply fully to Counts Nine and Ten.

123.    As to Count Nine, the Government must prove beyond a reasonable doubt that the charged defendants—Mr. Percoco and Mr. Kelly—knowingly and intentionally entered into a conspiracy to commit honest services fraud by agreeing that, as part of a quid pro quo, CPV would retain Lisa Percoco in exchange for official acts by Mr. Percoco on specific governmental matters.  Specifically, the Government must prove that Mr. Percoco and Mr. Kelly agreed that, in exchange for CPV retaining Lisa Percoco, Mr. Percoco would perform official acts on the Power Purchase Agreement and the Reciprocity Agreement.

124.    As to Count Ten, the Government must prove beyond a reasonable doubt that the charged defendants—Mr. Percoco, Mr. Aiello, and Mr. Gerardi—knowingly and intentionally entered into a conspiracy to commit honest services fraud by agreeing that COR would provide payments to Mr. Percoco in exchange for official acts by Mr. Percoco on specific governmental matters, as part of a quid pro quo.  Specifically, the Government must prove that Mr. Percoco,

Mr. Aiello, and Mr. Gerardi agreed that, in exchange for the alleged payments to Mr. Percoco,

Mr. Percoco would perform official acts on the Labor Peace Agreement, the release of grant

money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.

**Object of the Separate Conspiracies Charged in Counts Nine and Ten: Honest Services Fraud**

125.     Because Counts Nine and Ten of the Indictment both charge conspiracies to

commit honest services fraud, I must instruct you on the elements of the substantive crime that is

the object of the two alleged conspiracies.

126.     Honest services fraud requires four elements:

First, that there was a scheme or artifice to defraud the State of New York

and its citizens of their intangible right to the honest services of a government

official—in this case, Mr. Percoco;

Second, that the defendant, knowingly and willfully participated in the

scheme or artifice to defraud, with knowledge of its fraudulent nature and with the

specific intent to defraud;

Third, that the scheme or artifice involved the payment of bribes in a quid

pro quo; and

Fourth, that interstate wire communications were used in furtherance of

the scheme to defraud.[86]

127.     As I have explained, in order to sustain the charge that a defendant conspired to

commit honest services fraud, the Government must prove beyond a reasonable doubt, first, that

there existed a conspiracy the purpose of which was to commit honest services fraud and,

---

[86]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

second, that the defendant intentionally joined that conspiracy with knowledge of its unlawful

purpose, namely, to commit honest services fraud.

### Element One of Honest Services Fraud: Scheme to Defraud

128.    The first element of honest services fraud is that there was a scheme or artifice to

defraud the State of New York and its citizens of the honest services of a government official—

in this case, Mr. Percoco—through bribes.[87]

129.    A public official owes a duty of honest and faithful service to the public he or she

serves and to his or her public employer.  When a public official has obtained a corrupt

payment—that is, a bribe—for himself or for a third party in exchange for official action, the

official has breached his or her duty of honest and faithful, disinterested service.  This is because,

although the public official is outwardly purporting to be exercising independent judgment in

taking official action, in fact, the official's actions have been paid for.  Thus, the public is not

receiving what it expects and what it is entitled to, namely, its right to the public official's honest

and faithful service.[88]

130.    "A scheme or artifice" is a plan for the accomplishment of an object.[89]

131.    "Fraud" refers to methods by an individual to gain an advantage over another by

false representations, suggestions, or suppression of the truth or deliberate disregard for the

truth.[90]

---

[87]    Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge);
<u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[88]    Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge);
<u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[89]    Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript
of jury charge).

132.     Thus, a "scheme to defraud" in this context is a plan to deprive the State of New York and its citizens of their right to Mr. Percoco's honest services through bribery.[91]

133.     The scheme to defraud is alleged to have been carried out by making false and fraudulent statements, representations or omissions.  A statement, representation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was falsely made with the intention to deceive.[92]

### Element Two of Honest Services Fraud: Knowing and Willful Participation

134.     The second element of honest services fraud is that the defendant participated in the scheme to defraud knowingly, willfully, and with specific intent to defraud.  "Knowingly" means to act voluntarily and deliberately rather than mistakenly or inadvertently.  "Willfully" means to act knowingly and purposely, with an intent to do something that the law forbids, that is to say, with a bad purpose either to disobey or disregard the law.  "Intent to defraud" in this case means to act knowingly with the specific intent to deceive for the purpose of depriving another of the intangible right of honest services.[93]

135.     Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of honest services fraud.

---

[90]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[91]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[92]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[93]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

Good faith means having a state of mind that is honest and absent of bad intent.[94]  A defendant has no burden to establish a defense of good faith.  The burden is on the Government to prove fraudulent intent and the lack of good faith beyond a reasonable doubt.[95]

### Element Three of Honest Services Fraud: Bribe/Quid Pro Quo

136.    The third element of honest services fraud is a corrupt payment—that is, a bribe. Here, I refer you to my earlier instructions on quid pro quo.  Those instructions—including the instructions on "thing of value," "official act," and "in exchange for"—apply fully to Counts Nine and Ten.

### Alleged Quid Pro Quo in Count Nine (CPV)

137.    To prove the alleged honest services fraud scheme that is the object of the conspiracy charged in Count Nine, the Government must prove that Mr. Kelly provided and that Mr. Percoco accepted a bribe as part of a quid pro quo in exchange for official acts to benefit CPV on two specific governmental matters.  The bribe alleged in Count Nine is CPV's retaining of Lisa Percoco for consulting work.  The specific governmental matters the Government must prove that Mr. Percoco and Mr. Kelly agreed that Mr. Percoco would perform official acts on, in exchange for CPV retaining Lisa Percoco, are the Power Purchase Agreement and the Reciprocity Agreement.

138.    Because a conspiracy is an unlawful agreement, you must find that Mr. Percoco and Mr. Kelly reached an agreement on what the quid pro quo was.  In other words, the Government must prove that at the time CPV agreed to retain Lisa Percoco, Mr. Percoco and Mr.

---

[94]    See Black's Law Dictionary (10th ed. 2014) ("good faith" is "A state of mind consisting in (1) honesty in belief or purpose, . . . or (4) absence of intent to defraud or to seek unconscionable advantage").

[95]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge); United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

Kelly each understood and mutually agreed that, in exchange for Lisa Percoco being retained, Mr. Percoco would perform official acts to benefit CPV on the Power Purchase Agreement and the Reciprocity Agreement.

139.    As I explained in the instructions at the beginning on quid pro quo, the Government alleges that Mr. Percoco performed official acts by exerting pressure or providing advice to other officials with the intent that such pressure or advice form the basis of an official act by the other officials.  To satisfy the quid pro quo element of Count Nine, you must find that Mr. Percoco and Mr. Kelly each understood and mutually agreed that the alleged pressure or advice from Mr. Percoco would form the basis of an official act by another official on the Power Purchase Agreement or the Reciprocity Agreement.  Please refer to my earlier instructions on what the terms "pressure" and "advice" mean in the context of bribery.

140.    For you to find that the Government has satisfied its burden of proof as to the quid pro quo charged in Count Nine, you must unanimously find that Mr. Percoco and Mr. Kelly agreed, at the time of the alleged bribe, that Mr. Percoco would perform official acts on both the Power Purchase Agreement and the Reciprocity Agreement in return.[96]

### Alleged Quid Pro Quo in Count Ten (COR)

141.    To prove the alleged honest services fraud scheme that is the object of the conspiracy charged in Count Ten, the Government must prove that Mr. Aiello and Mr. Gerardi provided and that Mr. Percoco accepted bribes as part of a quid pro quo in exchange for official acts to benefit COR on specific governmental matters.  The bribes alleged in Count Ten are payments from COR to Mr. Percoco.  The specific governmental matters the Government must prove that Mr. Percoco, Mr. Aiello, and Mr. Gerardi agreed that Mr. Percoco would perform

---

[96]    See Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 9-7.1 (citing cases).

official acts on are the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.  To find that the Government has proved this element, you must find that Mr. Percoco, Mr. Aiello, and Mr. Gerardi reached an agreement on what the quid pro quo was.

142.    The Government alleges that Mr. Percoco performed official acts by exerting pressure or providing advice to other officials with the intent that such pressure or advice form the basis of an official act by the other officials.  To satisfy the quid pro quo element of Count Ten, you must find that Mr. Percoco, Mr. Aiello, and Mr. Gerardi each understood and mutually agreed that the alleged pressure or advice from Mr. Percoco would form the basis of an official act by another official on the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.  Please refer to my earlier instructions on what the terms "pressure" and "advice" mean in the context of bribery.

143.    As with Count Nine, for you to find that the Government has satisfied its burden of proof as to the quid pro quo charged in Count Ten, you must be unanimous in your determination of the official act(s) involved.

### Element Four of Honest Services Fraud: Interstate Wire Communications

144.    The fourth element of honest services fraud is the use of an interstate or foreign wire communication in furtherance of the scheme.  I instruct you that the term "wires" includes telephones, text messages, faxes, email, instant messages and wire transfers between financial institutions.  The interstate requirement means that the wire communication must pass between two or more states as, for example, a transmission of computer or telephonic signals between New York and another state.[97]

---

[97]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

145.     It is not necessary for the defendant you are considering to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.  In this regard, it is sufficient if the defendant caused the wires to be used by others.  This does not mean that the defendant must specifically have authorized others to make the call, send the email, or transfer the funds.  When a person does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.  Incidentally, this wire communication requirement is satisfied even if the wire communication is done by a person with no knowledge of the fraudulent scheme, including the victim of the alleged fraud.[98]

146.     The use of the wire need not itself be fraudulent.  Stated another way, the wire communication need not contain any fraudulent representation, or any request for money.  The use of the wires need not itself be a fraudulent representation.  It must, however, further or assist in the carrying out of the scheme to defraud.[99]

147.     Let me add the following: Only the wire communication must be reasonably foreseeable, not its interstate component.  Thus, if you find that the wire communication was reasonably foreseeable, then this element is satisfied even if it was not foreseeable that the wire communication would cross state lines.[100]

---

[98]     Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[99]     Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[100]     Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

**Counts Eleven and Twelve: Bribery [*or Gratuity*] (Acceptance)]**

*For the reasons set forth in Mr. Percoco's motion to dismiss, Counts Eleven and Twelve do not charge a gratuity theory and 18 U.S.C. § 666 should not be interpreted to cover gratuities.  (See Doc. No. 187, at 37–39).  In its opposition, the Government suggested that, before trial, it would elect to pursue either a bribery theory or a gratuity theory under section 666.  (Doc. No. 264, at 45 n.16).  Prior to filing this Proposed Final Jury Instruction, the defendants learned that the Government had not yet made such an election.*

*Accordingly, the defendants have included proposed instructions on the gratuity theory. If the Government proceeds on a bribery theory, the defense proposes the instructions in normal type.  If the Government elects to proceed on a gratuity theory instead of a bribery theory, the defense proposes the instructions in italicized type.  Elements One, Two, Four, and Five, as well as the bona fide compensation instruction, will be the same regardless of which theory the Government proceeds under—except that the word "gratuity" will replace the word "bribe" if the Government charges a gratuity theory.  Element Three will be different.  The proposed instructions below include a proposal for bribery and a separate proposal for gratuity.*

148.     Count Eleven of the Indictment charges that Mr. Percoco, during the time that he was a government official, solicited, demanded, accepted, or agreed to accept a bribe [*or gratuity*] from Mr. Kelly in connection with a federally funded program.  Specifically, Mr. Percoco is charged with accepting a bribe [*or gratuity*] from Mr. Kelly by accepting the payments made to Lisa Percoco in connection with her work for the CPV Educates program.

149.     Count Twelve of the Indictment charges that Mr. Percoco, during the time that he was a government official, solicited, demanded, accepted, or agreed to accept a bribe [*or gratuity*] from Mr. Aiello and Mr. Gerardi in connection with a federally funded program. Specifically, Mr. Percoco is charged with accepting a bribe [*or gratuity*] from Mr. Aiello and Mr. Gerardi by accepting two payments from COR during the Governor's 2014 reelection campaign.

150.     The alleged bribery [*or gratuity*] payments charged in Counts Eleven and Twelve are entirely separate.  When considering whether the Government has satisfied its burden of proof beyond a reasonable doubt with respect to Count Eleven, relating to CPV, you must put out of your mind any evidence relating to Count Twelve, relating to COR.  The same is true when you consider Count Twelve.  I am giving you a common set of instructions for both Counts

Eleven and Twelve because they charge the same type of crime, not because the two Counts are factually related.  In fact, they are not factually related at all, except that Mr. Percoco is charged in both Counts.

151.    To meet its burden of proof with respect to the allegation of bribery [*or gratuity*] payments in connection with a federally funded program, the Government must establish each of the following elements beyond a reasonable doubt:

> First, that at the time of the offense alleged in the Indictment, Mr. Percoco was an agent of the State of New York;

> Second, that in any one-year period between 2012 and 2016, the State of New York received federal benefits in excess of $10,000;

> Third, that Mr. Percoco accepted for himself a bribe [*or gratuity*] from a co-defendant as part of a quid pro quo to perform official acts[101] on specific matters pending before the State of New York;

> Fourth, that Mr. Percoco acted corruptly; and

> Fifth, that the value of the transaction for which an official act was performed or promised in exchange for the alleged bribe [*or gratuity*] was at least $5,000.[102]

---

[101]    For the reasons set forth in the defendants' pending motions to dismiss, 18 U.S.C. § 666 cannot be interpreted to include an official act requirement and is, for that reason, unconstitutional.  (See generally Doc. No. 230, 290).  If the Court declines to strike the section 666 counts as unconstitutional, the defendants assume that is because the Court has interpreted the statute to include an official act requirement.  Accordingly, the Proposed Final Jury Instructions for the section 666 counts include the official act requirement.

[102]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. No. 148 (jury charge).

152.   In addition to each of the above elements, the Government must also prove beyond a reasonable doubt that that the payment at issue was not a bona fide salary, wage, fee, or other compensation that was paid in the usual course of business.

**Element One of Bribery [*or Gratuity*] (Acceptance): Agent of State of New York**

153.   The first element the Government must prove beyond a reasonable doubt is that at the time of the alleged offense, Mr. Percoco was an agent of the State of New York.

154.   To be an "agent," the person must be authorized to act on behalf of a government.[103]  A person has authority to act on behalf of a government when he has the official right or permission to act legally on its behalf.[104]  That official right or permission can be conferred by an elected position, by formal employment, or by a contract deputizing a person to act on behalf of the government for a particular project or initiative.[105]

155.   The parties have stipulated that Mr. Percoco was employed by the Office of the Governor beginning on January 4, 2011 and concluding on January 4, 2016, except that Mr.

---

[103]   See 18 U.S.C. § 666(d)(1).

[104]   See Black's Law Dictionary (10th ed. 2014) ("authority" is "[t]he official right or permission to act, . . . to act legally on another's behalf"); Anderson v. U.S. Dep't of Labor, 422 F.3d 1155, 1180 (10th Cir. 2005) ("Here, the plain meaning of 'authorized' is '1: gave authority to: empowered; 2: gave legal or official approval to' . . . '[]gave legal authority; empowered . . . formally approved[].' . . . Therefore, based solely on the statutory language used, the term 'authorized representative' appears to require some sort of tangible delegation to act in one's shoes." (alterations omitted) (quoting Webster's College Dictionary (2003) and Black's Law Dictionary (7th ed. 1999))).

[105]   See United States v. Willis, 844 F.3d 155, 167 (5th Cir. 2016); United States v. Beldini, 443 F. App'x 709, 719 (3d Cir. 2011); United States v. Mazer, 631 F. App'x 57, 61 (2d Cir. 2015); United States v. Lupton, 620 F.3d 790, 793, 801 (7th Cir. 2010); United States v. Toro, No. 89 CR 0268 (RWS), 1989 WL 63118, at *2 (S.D.N.Y. June 8, 1989); United States v. Bonito, 57 F.3d 167, 173 (2d Cir. 1995); United States v. Moeller, 987 F.2d 1134, 1137-38 (5th Cir. 1993).

Percoco was not an employee of the Office of the Governor from April 22, 2014 to December 7, 2014.  You must accept that stipulation as true.

156.    I instruct you that Mr. Percoco was an "agent" of the Office of the Governor only during those periods when he was actually an employee of the Office of the Governor.

### Element Two of Bribery [*or Gratuity*] (Acceptance): Receipt of Federal Funds

157.    The second element the Government must prove beyond a reasonable doubt is that in a one-year period, the State of New York received federal benefits in excess of $10,000.[106]

158.    To prove this element, the Government must establish that the State of New York received, during a one-year period between 2012 and 2016, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance or some other form of federal assistance.  This does not include legitimate valid bona fide salary, wages, fees, or other compensation paid or expenses paid or reimbursed in the ordinary course of business.[107]

159.    The Government does not have to prove that Mr. Percoco had the authority to administer these federal benefits.  Nor does the Government have to prove any nexus between the unlawful payments alleged to have been made and received in this case and the federal funding that the State of New York allegedly received.[108]

### Element Three of Bribery (Acceptance): Bribe

160.    The third element the Government must prove beyond a reasonable doubt is that Mr. Percoco accepted a bribe from a co-defendant (or co-defendants) as part of a quid pro quo.

---

[106]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. No. 148 (jury charge).

[107]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. No. 148 (jury charge).

[108]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. No. 148 (jury charge).

Here, I refer you to my earlier instructions on <u>quid pro quo</u>.  Those instructions—including the instructions on "thing of value," "official act," and "in exchange for"—apply fully to Counts Eleven and Twelve.

### Alleged Quid Pro Quo in Count Eleven (CPV)

161.    As to Count Eleven, the Government must prove that Mr. Percoco accepted a bribe from Mr. Kelly as part of a <u>quid pro quo</u> in exchange for official acts to benefit CPV on two specific governmental matters.  The bribe alleged in Count Eleven is CPV's retaining of Lisa Percoco for consulting work.  The specific governmental matters the Government must prove that Mr. Percoco agreed to perform official acts on, in exchange for CPV retaining Lisa Percoco, are the Power Purchase Agreement and the Reciprocity Agreement.  The Government must prove that at the time CPV retained Lisa Percoco for consulting work, Mr. Percoco understood that, in exchange for Lisa Percoco being retained, he would perform official acts to benefit CPV on the Power Purchase Agreement and the Reciprocity Agreement.

162.    As I explained in the instructions at the beginning on <u>quid pro quo</u>, the Government alleges that Mr. Percoco performed official acts by exerting pressure or providing advice to other officials with the intent that such pressure or advice form the basis of an official act by the other officials.  To satisfy the <u>quid pro quo</u> element of Count Eleven, you must find that Mr. Percoco understood and intended that the alleged pressure or advice would form the basis of an official act by another official on the Power Purchase Agreement or the Reciprocity Agreement.  Please refer to my earlier instructions on what the terms "pressure" and "advice" mean in the context of bribery.

163.    For you to find that the Government has satisfied its burden of proof as to the <u>quid pro quo</u> charged in Count Eleven, you must unanimously find that Mr. Percoco accepted the

alleged bribe with the intent to perform official acts on both the Power Purchase Agreement and the Reciprocity Agreement in return.[109]

## **Alleged Quid Pro Quo in Count Twelve (COR)**

164.    As to Count Twelve, the Government must prove that Mr. Percoco accepted  a bribe from Mr. Aiello and Mr. Gerardi as part of a quid pro quo in exchange for official acts to benefit COR on specific governmental matters.  The bribes alleged in Count Twelve are payments from COR to Mr. Percoco.  The specific governmental matters the Government must prove that Mr. Percoco agreed to perform official acts on are the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.  The Government must prove that when COR provided the alleged payments to Mr. Percoco, Mr. Percoco understood that, in exchange for those payments, he would perform official acts on the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.

165.    As I explained in the instructions at the beginning on quid pro quo, the Government alleges that Mr. Percoco performed official acts by exerting pressure or providing advice to other officials with the intent that such pressure or advice form the basis of an official act by the other officials.  To satisfy the quid pro quo element of Count Twelve, you must find that Mr. Percoco understood and intended that the alleged pressure or advice would form the basis of an official act by another official on the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.  Please refer to my earlier instructions on what the terms "pressure" and "advice" mean in the context of bribery.

---

[109]    See Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 9-7.1 (citing cases).

166.    As with Count Eleven, for you to find that the Government has satisfied its burden of proof as to the quid pro quo charged in Count Twelve, you must be unanimous in your determination of the official act(s) involved.

167.    The intent of the party giving the thing of value may be different from the intent of the party receiving the thing of value.  In considering Counts Eleven and Twelve, it is the intent of the party charged with receiving the thing of value—Mr. Percoco—that matters.  The Government cannot establish this element simply through the state of mind of the giver of the thing of value.[110]

### *If the Government Elects to Proceed on Gratuity Theory:*

#### *Element Three of Gratuity (Acceptance): Gratuity*

168.    *The third element the Government must prove beyond a reasonable doubt is that Mr. Percoco accepted a gratuity from, with respect to Count Eleven, Mr. Kelly, and with respect to Count Twelve, Mr. Aiello and Mr. Gerardi.*[111]

169.    *A gratuity is anything of value that is provided to a government official as a reward for some future official act that the official will take (and may already have determined to take), or for a past official act that he has already taken.*[112]

170.    *To establish an illegal gratuity, the Government must prove beyond a reasonable doubt that there was a link between the thing of value conferred on the government official and a specific official act for or because of which the thing of value was given.  It is not sufficient that*

---

[110]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[111]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[112]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

*the gratuity was given merely because the government official had authority over matters in*

*which the defendant had an interest.  The mere effort to buy favor or generalized goodwill from a*

*government official who may be in a position to act favorably to the defendant's interests is not*

*sufficient to show a gratuity.  A direct nexus between the thing of value and a specific official act*

*is required.*[113]

### Element Four of Bribery (Acceptance): Corrupt Intent

171.     The fourth element that the Government must prove beyond a reasonable doubt is

that Mr. Percoco acted corruptly.  To act "corruptly" means to act voluntarily and intentionally

with an improper motive or purpose.  This involves conscious wrongdoing, or as it has

sometimes been expressed, a bad or evil state of mind.  The motive to act corruptly is ordinarily

an expectation of either financial gain or other benefit to oneself or some profit or benefit to

another person.  In the context of a bribery count, "corruptly" requires the violation of some duty

owed to the government or to the public in general.[114]

172.     In considering this element for Counts Eleven and Twelve, remember that it is

Mr. Percoco's intent that matters.  This element is not proven simply by showing that individuals

other than Mr. Percoco had corrupt intent.[115]  The Government cannot establish this element

---

[113]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge); see also United States v. Sun-Diamond Growers of California, 526 U.S. 398, 402 (1999) (vacating conviction where district court ruled that "*a direct nexus* between the value conferred to Secretary Espy by Sun-Diamond and an official act performed or to be performed by Secretary Espy" was not required and instructed the jury accordingly (emphasis added)).

[114]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge); see also United States v. Rooney, 37 F.3d 847, 852 (2d Cir. 1994) ("As is evident in many of our cases dealing with bribery, a fundamental component of a 'corrupt' act is a breach of some official duty owed to the government or the public at large."); United States v. Ford, 435 F.3d 204, 211 (2d Cir. 2006).

[115]     Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

simply through the state of mind of Mr. Kelly, Mr. Aiello, or Mr. Gerardi, nor anyone else besides Mr. Percoco.

173.    As I explained to you before when explaining <u>quid pro quo</u>, if you find that Mr. Percoco understood that the benefits were provided to him by a co-defendant—that is, with respect to Count Eleven, Mr. Kelly, and with respect to Count Twelve, Mr. Aiello and Mr. Gerardi—solely to cultivate goodwill or to nurture a relationship with Mr. Kelly, Mr. Aiello, or Mr. Gerardi, and not in exchange for the promise or performance by Mr. Percoco of any official act on the specific matters at issue in this case, then this element will not have been proven.[116]

**Element Five of Bribery (Acceptance): Value of Transaction**

174.    The fifth element the Government must prove beyond a reasonable doubt is that the value of the transaction for which an official act was performed or promised in exchange for the alleged bribe [*or gratuity*] was at least $5,000.[117]

**Bona Fide Compensation**

175.    A defendant cannot be convicted of bribery based on a bona fide salary, wages, fees, or other compensation paid in the usual course of business.  Put simply, bona fide compensation cannot constitute a bribe.[118]

---

[116]    Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[117]    Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[118]    <u>See</u> 18 U.S.C. § 666(c) ("This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."); <u>United States v. Ford</u>, 435 F.3d 204, 216 (2d Cir. 2006) (suggesting that the language of 666(c) simply be read to jurors so the jury can "draw its own conclusions from [the statute's] non-technical terms"); <u>United States v. Mills</u>, 140 F.3d 630, 633 (6th Cir. 1998) ("[T]he bona fide salary exception of subsection (c) must be read to apply to all of § 666."); <u>United States v. Marmolejo</u>, 89 F.3d 1185, 1190 n.5 (5th Cir. 1996) ("§ 666(c) . . . refers to the alleged wrongdoing."); <u>United States v. Robinson</u>, 663 F.3d 265, 272 (7th Cir. 2011) ("The natural

176.    To satisfy this burden as to Count Eleven, the Government must prove beyond a reasonable doubt that the alleged bribe from Mr. Kelly to Mr. Percoco—that is, the money that Lisa Percoco received from CPV—was not bona fide compensation paid in the usual course of business.

177.    To satisfy this burden as to Count Twelve, the Government must prove beyond a reasonable doubt that the alleged bribe from Mr. Aiello and Mr. Gerardi to Mr. Percoco—that is, the money that Mr. Percoco received purportedly from COR during the Governor's 2014 reelection campaign—was not bona fide compensation to Todd Howe paid in the usual course of business.

178.    As with the other elements, the Government bears the burden of proof, so if there is reasonable doubt as to whether the payment was a bona fide salary, wage, fee, or other compensation in the usual course of business, you must find the defendant not guilty.

## Counts Thirteen and Fourteen: Bribery [*or Gratuity*] (Payment)

*For the reasons set forth in Mr. Kelly's motion to dismiss, Count Thirteen does not charge a gratuity theory and 18 U.S.C. § 666 should not be interpreted to cover gratuities.  (See Doc. No. 230, at 61–64; Doc. No. 290, at 38–39).  In its opposition, the Government suggested that, before trial, it would elect to pursue either a bribery theory or a gratuity theory under section 666.  (Doc. No. 264, at 45 n.16).  Prior to filing this Proposed Final Jury Instruction, the defendants learned that the Government had not yet made such an election.*

*Accordingly, the defendants have included proposed instructions on the gratuity theory. If the Government proceeds on a bribery theory, the defense proposes the instructions in normal type.  If the Government elects to proceed on a gratuity theory instead of a bribery theory, the defense proposes the instructions in italicized type.  Elements One, Two, Four, and Five, as well as the bona fide compensation instruction, will be the same regardless of which theory the Government proceeds under—except that the word "gratuity" will replace the word "bribe" if the Government charges a gratuity theory.  Element Three will be different.  The proposed instructions below include a proposal for bribery and a separate proposal for gratuity.*

reading of the exception is that § 666 does not target bona fide salary, wages, and compensation; that is, compensation paid in the ordinary course shall not be construed as a bribe."); United States v. O'Brien, 994 F. Supp. 2d 167, 184 (D. Mass. 2014) ("There is no dispute that the exception set forth in § 666(c) applies generally to the 'bribe' element of the statute.").

179.    Count Thirteen of the Indictment charges that Mr. Kelly gave a bribe [*or gratuity*] to a government official in connection with a federally funded program.  Specifically, Mr. Kelly is charged with paying a bribe [*or gratuity*] to Mr. Percoco by causing Lisa Percoco to be retained for consulting work by CPV.

180.    Count Fourteen of the Indictment charges that Mr. Aiello and Mr. Gerardi gave a bribe [*or gratuity*] to a government official in connection with a federally funded program. Specifically, Mr. Aiello and Mr. Gerardi are charged with paying a bribe [*or gratuity*] to Mr. Percoco in exchange for the taking of official action to advance COR development projects in the State.

181.    The alleged bribery [*or gratuity*] payments charged in Counts Thirteen and Fourteen are entirely separate.  When considering whether the Government has satisfied its burden of proof beyond a reasonable doubt with respect to Count Thirteen, relating to CPV, you must put out of your mind any evidence relating to Count Fourteen, relating to COR.  The same is true when you consider Count Fourteen.  I am giving you a common set of instructions for both Counts Thirteen and Fourteen because they charge the same type of crime, not because the two Counts are factually related.  In fact, they are not factually related at all.

182.    To meet its burden of proof with respect to the allegation of bribery [*or gratuity*] payments in connection with a federally funded program, the Government must establish each of the following elements beyond a reasonable doubt:

> First, that at the time of the offense alleged in the Indictment, Mr. Percoco was an agent of the State of New York;
>
> Second, that in any one-year period between 2012 and 2016, the State of New York received federal benefits in excess of $10,000;

<u>Third</u>, that the defendant you are considering gave a bribe [*or gratuity*] to

Mr. Percoco as part of a <u>quid pro quo</u> for Mr. Percoco to perform official acts[119]

on specific matters pending before the State of New York;

<u>Fourth</u>, that the defendant you are considering acted corruptly; and

<u>Fifth</u>, that the value of the transaction for which an official act was sought

in exchange for the alleged bribe [*or gratuity*] was at least $5,000.[120]

183.    In addition to each of the above elements, the Government must also prove

beyond a reasonable doubt that that any payment was not a bona fide salary, wage, fee, or other

compensation that was paid in the usual course of business.[121]

**<u>Element One of Bribery [*or Gratuity*] (Payment): Agent of State of New York</u>**

184.    The first element the Government must prove beyond a reasonable doubt is that at

the time of the alleged offense, Mr. Percoco was an agent of the State of New York.

185.    The instructions that I gave you on this element for Counts Eleven and Twelve

also apply fully to Counts Thirteen and Fourteen.  Please refer to those instructions.

---

[119]    For the reasons set forth in the defendants' pending motions to dismiss, 18 U.S.C. § 666 cannot be interpreted to include an official act requirement and is, for that reason, unconstitutional.  (<u>See generally</u> Doc. No. 230, 290).  If the Court declines to strike the section 666 counts as unconstitutional, the defendants assume that is because the Court has interpreted the statute to include an official act requirement.  Accordingly, the Proposed Final Jury Instructions for the section 666 counts include the official act requirement.

[120]    Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[121]    <u>See</u> 18 U.S.C. § 666(c).

**Element Two of Bribery [*or Gratuity*] (Payment): Receipt of Federal Funds**

186.    The second element the Government must prove beyond a reasonable doubt is that in a one-year period, the State of New York received federal benefits in excess of $10,000.[122]

187.    The instructions that I gave you on this element for Counts Eleven and Twelve also apply fully to Counts Thirteen and Fourteen.  Please refer to those instructions.

**Element Three of Bribery (Payment): Bribe**

188.    The third element the Government must prove beyond a reasonable doubt is that the defendant you are considering—in Count Thirteen, Mr. Kelly, and in Count Fourteen, Mr. Aiello and Mr. Gerardi—gave a bribe to Mr. Percoco as part of the quid pro quo alleged in the Indictment.  Here, I refer you to my earlier instructions on quid pro quo.  Those instructions— including the instructions on "thing of value," "official act," and "in exchange for"—apply fully to Counts Thirteen and Fourteen.

**Alleged Quid Pro Quo in Count Thirteen (CPV)**

189.    As to Count Thirteen, the Government must prove that Mr. Kelly provided a bribe to Mr. Percoco as part of a quid pro quo in exchange for official acts to benefit CPV on two specific governmental matters.  The bribe alleged in Count Thirteen is CPV's retaining of Lisa Percoco for consulting work.  The specific governmental matters the Government must prove that Mr. Kelly intended that Mr. Percoco perform official acts on, in exchange for CPV retaining Lisa Percoco, are the Power Purchase Agreement and the Reciprocity Agreement.  In other words, the Government must prove that at the time CPV retained Lisa Percoco for consulting work, Mr. Kelly intended that, in exchange for Lisa Percoco being retained, Mr. Percoco would

---

[122]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

perform official acts to benefit CPV on the Power Purchase Agreement and the Reciprocity Agreement.

190.    As I explained in the instructions at the beginning on <u>quid pro quo</u>, the Government alleges that Mr. Percoco performed official acts by exerting pressure or providing advice to other officials with the intent that such pressure or advice form the basis of an official act by the other officials.   To satisfy the <u>quid pro quo</u> element of Count Thirteen, you must find that Mr. Kelly understood and intended that the alleged pressure or advice by Mr. Percoco would form the basis of an official act by another official on the Power Purchase Agreement or the Reciprocity Agreement.   Please refer to my earlier instructions on what the terms "pressure" and "advice" mean in the context of bribery.

191.    For you to find that the Government has satisfied its burden of proof as to the <u>quid pro quo</u> charged in Count Thirteen, you must unanimously find that Mr. Kelly provided the alleged bribe with the intent that Mr. Percoco would perform official acts on both the Power Purchase Agreement and the Reciprocity Agreement in return.[123]

### **Alleged Quid Pro Quo in Count Fourteen (COR)**

192.    As to Count Fourteen, the Government must prove that Mr. Aiello and Mr. Gerardi provided bribes to Mr. Percoco as part of a <u>quid pro quo</u> in exchange for official acts to benefit COR on specific governmental matters.   The bribes alleged in Count Fourteen are payments from COR to Mr. Percoco.   The specific governmental matters the Government must prove that Mr. Aiello and Mr. Gerardi intended that Mr. Percoco perform official acts on are the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.   The Government must prove that when COR provided the

---

[123]    <u>See</u> Leonard B. Sand <u>et al.</u>, 1 Modern Federal Jury Instructions: Criminal, Instruction 9-7.1 (citing cases).

alleged payments to Mr. Percoco, Mr. Aiello and Mr. Gerardi intended that, in exchange for those payments, Mr. Percoco would perform official acts on the Labor Peace Agreement, the release of grant money for COR's Film Hub, and a raise for Mr. Aiello's son, Steven L. Aiello, Jr.

193.    As I explained in the instructions at the beginning on quid pro quo, the Government alleges that Mr. Percoco performed official acts by exerting pressure or providing advice to other officials with the intent that such pressure or advice form the basis of an official act by the other officials.  To satisfy the quid pro quo element of Count Fourteen, you must find that Mr. Aiello and Mr. Gerardi understood and intended that the alleged pressure or advice by Mr. Percoco would form the basis of an official act by another official on the Labor Peace Agreement, the release of grant money for COR's Film Hub, or a raise for Mr. Aiello's son, Steven L. Aiello, Jr.  Please refer to my earlier instructions on what the terms "pressure" and "advice" mean in the context of bribery.

194.    As with Count Thirteen, for you to find that the Government has satisfied its burden of proof as to the quid pro quo charged in Count Fourteen, you must be unanimous in your determination of the official act(s) involved.

195.    The intent of the party giving the thing of value may be different from the intent of the party receiving the thing of value.  In considering Counts Thirteen and Fourteen, it is the intent of the party charged with giving the thing of value—in Count Thirteen, Mr. Kelly, and in Count Fourteen, Mr. Aiello and Mr. Gerardi—that matters.  The Government cannot establish this element simply through the state of mind of the recipient of the thing of value.[124]

---

[124]     Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

***If the Government Elects to Proceed on Gratuity Theory:***

### *Element Three of Gratuity (Payment)–Gratuity*

196.     *The third element the Government must prove beyond a reasonable doubt is that the defendant—in Count Thirteen, Mr. Kelly, and in Count Fourteen, Mr. Aiello and Mr. Gerardi—gave a gratuity to Mr. Percoco.*[125]

197.     *The instructions that I gave you on this element for Counts Eleven and Twelve also apply fully to Counts Thirteen and Fourteen.  Please refer to those instructions.*

### Element Four of Bribery (Payment)–Corrupt Intent

198.     The fourth element that the Government must prove beyond a reasonable doubt is that the defendant acted corruptly.  As I told you, to act "corruptly" means to act voluntarily and intentionally with an improper motive or purpose.  This involves conscious wrongdoing, or as it has sometimes been expressed, a bad or evil state of mind.  The motive to act corruptly is ordinarily an expectation of either financial gain or other benefit to oneself or some profit or benefit to another person.  In the context of a bribery count, "corruptly" requires the violation of some duty owed to the government or to the public in general.[126]

199.     In considering this element for Count Thirteen, remember that it is Mr. Kelly's intent that is important.  This element is not proven simply by showing that individuals other

---

[125]     Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[126]     Adapted from <u>United States v. Skelos</u>, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge); <u>see also</u> <u>United States v. Rooney</u>, 37 F.3d 847, 852 (2d Cir. 1994) ("As is evident in many of our cases dealing with bribery, a fundamental component of a 'corrupt' act is a breach of some official duty owed to the government or the public at large."); <u>United States v. Ford</u>, 435 F.3d 204, 211 (2d Cir. 2006).

than Mr. Kelly had corrupt intent.[127]  It is not enough for the Government to show that Mr. Kelly provided a thing of value to someone who had a corrupt state of mind, even if Mr. Kelly knew or was aware of that other person's state of mind.  To satisfy this element, the Government must prove that, when Mr. Kelly provided the thing of value, Mr. Kelly personally had a corrupt state of mind and intended the thing of value to be part of a quid pro quo.[128]

200.    Likewise, as to Count Fourteen, remember that it is the intent of Mr. Aiello and Mr. Gerardi that is important.  This element is not proven simply by showing that individuals other than each defendant had corrupt intent.

201.    As I explained to you before when explaining quid pro quo, if you find that Mr. Kelly (in Count Thirteen) or Mr. Aiello and Mr. Gerardi (in Count Fourteen) provided any benefits solely to cultivate goodwill or to nurture a relationship with Mr. Percoco, and not in exchange for the promise or performance by Mr. Percoco of any official act on the specific matters at issue in this case, then this element will not have been proven.[129]

---

[127]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[128]    See United States v. Ford, 435 F.3d 204, 213 (2d Cir. 2006) ("The recipient's 'awareness' that the donor gave something of value for the purpose of influencing the recipient might well constitute strong circumstantial evidence that the recipient acted with the requisite culpable state of mind in accepting the item, but a jury should be clearly instructed that it is the recipient's intent to make good on the bargain, not simply her awareness of the donor's intent that is essential to establishing guilt under Section 666.").

[129]    Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

**Element Five of Bribery (Payment)–Value of Transaction**

202.   The fifth element the Government must prove beyond a reasonable doubt is that the value of the transaction for which an official act was sought in exchange for the alleged bribe [*or gratuity*] was at least $5,000.[130]

**Bona Fide Compensation**

203.   As I explained before, a defendant cannot be convicted of bribery based on a bona fide salary, wages, fees, or other compensation paid in the usual course of business.[131]

204.   The instructions that I gave you on this element for Counts Eleven and Twelve also apply fully to Counts Thirteen and Fourteen.

205.   To satisfy this burden as to Count Thirteen, the Government must prove beyond a reasonable doubt that the alleged bribe from Mr. Kelly to Mr. Percoco—that is, the money that Lisa Percoco received from CPV—was not bona fide compensation paid in the usual course of business.

206.   To satisfy this burden as to Count Fourteen, the Government must prove beyond a reasonable doubt that the alleged bribe from Mr. Aiello and Mr. Gerardi to Mr. Percoco—that is,

---

[130]   Adapted from United States v. Skelos, 15 Cr. 317 (KMW), Doc. Nos. 146, 148 (transcript of jury charge).

[131]   See 18 U.S.C. § 666(c) ("This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."); United States v. Ford, 435 F.3d 204, 216 (2d Cir. 2006) (suggesting that the language of 666(c) should simply be read to jurors so the jury can "draw its own conclusions from [the statute's] non-technical terms"); United States v. Mills, 140 F.3d 630, 633 (6th Cir. 1998) ("[T]he bona fide salary exception of subsection (c) must be read to apply to all of § 666."); United States v. Marmolejo, 89 F.3d 1185, 1190 n.5 (5th Cir. 1996) ("§ 666(c) . . . refers to the alleged wrongdoing."); United States v. Robinson, 663 F.3d 265, 272 (7th Cir. 2011) ("The natural reading of the exception is that § 666 does not target bona fide salary, wages, and compensation; that is, compensation paid in the ordinary course shall not be construed as a bribe."); United States v. O'Brien, 994 F. Supp. 2d 167, 184 (D. Mass. 2014) ("There is no dispute that the exception set forth in § 666(c) applies generally to the 'bribe' element of the statute.").

the money that Mr. Percoco received purportedly from COR during the Governor's 2014 reelection campaign—was not bona fide compensation to Todd Howe paid in the usual course of business.

**Counts Seventeen and Eighteen: False Statement**

207.    Count Seventeen of the Indictment charges Mr. Aiello with willfully and knowingly making materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States. Specifically, the Indictment alleges that Mr. Aiello, while meeting with federal agents and representatives of the United States Attorney's Office for the Southern District of New York, made statements denying involvement in paying Mr. Percoco and alleges that, in truth and in fact, Mr. Aiello directed payment to Mr. Percoco.

208.    Count Eighteen of the Indictment charges Mr. Gerardi with willfully and knowingly making materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States. Specifically, the Indictment alleges that Mr. Gerardi, while meeting with federal agents and representatives of the United States Attorney's Office for the Southern District of New York, made statements denying involvement in paying Mr. Percoco and alleges that, in truth and in fact, Mr. Gerardi directed payment to Mr. Percoco.

209.    In order to prove Mr. Aiello and Mr. Gerardi guilt of the crime charged in Counts Seventeen and Eighteen, the Government must prove beyond a reasonable doubt the following five elements:

First, that on or about the date specified, Mr. Aiello and Mr. Gerardi made a statement or representation;

65

Second, this statement or representation was material;

Third, the statement or representation was false, fictitious, or fraudulent;

Fourth, the false, fictitious, or fraudulent statement was made knowingly and willfully; and

Fifth, the statement or representation was made in a matter within the jurisdiction of the Government of the United States.[132]

210.    You will need to determine whether the Government has proven all elements as to each of Counts Seventeen and Eighteen separately.  I will now explain these five elements to you in greater detail.

**Element One of False Statements: Statement or Representation**

211.    The first element of the crime charged in Counts Seventeen and Eighteen is that Mr. Aiello and Mr. Gerardi made the statement or representation that the Government has specifically charged to be false or misleading.  The Government need not prove that Mr. Aiello and Mr. Gerardi physically made or otherwise personally prepared the statement in question.  It is sufficient, as to a count, if Mr. Aiello and Mr. Gerardi caused the statement charged in that count to have been made.  Under the statute, there is no distinction between written and oral statements.

212.    If you find that, as to a count of making a false statement in a matter within the jurisdiction of the United States Government, the Government failed to prove beyond a reasonable doubt this first element—that Mr. Aiello and Mr. Gerardi made the statement charged—then your deliberation is finished, and you must return a verdict of not guilty as to that count.  However, if you find that the Government has proven beyond a reasonable doubt the first

---

[132]    Adapted from United States v. Litvak, 13 Cr. 19 (JCH), Doc. No. 225 (jury charge).

element, then you should proceed to consider the second element, on which I will now charge you.[133]

### Element Two of False Statements: Materiality

213.    The second element of the crime charged in Counts Seventeen and Eighteen is that the particular statement or representation that the Government has charged Mr. Aiello and Mr. Gerardi to have made was material.

214.    A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a reasonable decision-maker in a matter within the jurisdiction of the United States Government. However, proof of actual reliance on the statement by the decision-maker is not required.

215.    If you find that, as to a count of making a false statement in a matter within the jurisdiction of the United States Government, the Government failed to prove beyond a reasonable doubt this second element—that the statement was material—then your deliberation is finished, and you must return a verdict of not guilty as to that count.  However, if you find that the Government has proven beyond a reasonable doubt this second element, as well as the first element, then you should proceed to consider the third element, on which I will now charge you.[134]

### Element Three of False Statements: False, Fictitious, or Fraudulent

216.    The third element of the crime charged in Counts Seventeen and Eighteen is that the particular statement or representation identified by the government was false, fictitious, or fraudulent.  A statement or representation is "false" or "fictitious" if it was untrue when made,

---

[133]    Adapted from <u>United States v. Litvak</u>, 13 Cr. 19 (JCH), Doc. No. 225 (jury charge).

[134]    Adapted from <u>United States v. Litvak</u>, 13 Cr. 19 (JCH), Doc. No. 225 (jury charge).

and known at the time to be untrue by the person making it or causing it to be made.  A statement or representation is "fraudulent" if it was untrue when made and was made or caused to be made with the intent to deceive.

217.    If you find that, as to a count of making a false statement in a matter within the jurisdiction of the United States Government, the Government failed to prove beyond a reasonable doubt this third element—that the statement charged was false, fictitious, or fraudulent—then your deliberation is finished, and you must return a verdict of not guilty as to that count.  However, if you find that the Government has proven beyond a reasonable doubt the third element—that the statement charged was false, fictitious, or fraudulent—as well as the first and second elements—that Mr. Aiello and Mr. Gerardi made the statement and that the statement was material—then you should proceed to consider the forth element, on which I will now charge you.[135]

**Element Four of False Statements: Knowingly and Willfully**

218.    The fourth element of the crime charged in Counts Seventeen and Eighteen is that Mr. Aiello and Mr. Gerardi acted knowingly and willfully.

219.    An act is done "knowingly" here if it is done purposely and voluntarily, as opposed to mistakenly or accidentally.

220.    An act is done "willfully" here if it is done deliberately, with a bad purpose to do something the law forbids.

221.    If you find that, as to a count of making a false statement in a matter within the jurisdiction of the United States Government, Mr. Aiello and Mr. Gerardi did not act knowingly and willfully, or if you have a reasonable doubt as to whether they acted knowingly and

---

[135]    Adapted from <u>United States v. Litvak</u>, 13 Cr. 19 (JCH), Doc. No. 225 (jury charge).

willfully, then your deliberation is finished, and you must return a verdict of not guilty as to that count.  However, if you find that the Government has proven beyond a reasonable doubt this fourth element, that Mr. Aiello and Mr. Gerardi acted knowingly and willfully, as well as the first, second, and third elements, then you should proceed to the fifth and final element, on which I will now charge you.[136]

### Element Five of False Statements: Statement Regarding Matter within the Jurisdiction of the Government of the United States

222.    The fifth element of the crime charged in Counts Seventeen and Eighteen is that the statement was made with regard to a matter within the jurisdiction of the Government of the United States.  I instruct you that the Department of Justice is a department of the United States Government.

223.    There is no requirement that the statement actually be made, directed, or even given to the Federal department or agency.  You must, however, find that it was contemplated that the statement or representation was to be utilized in a matter which was within the jurisdiction of an agency or department of the United States Government.

224.    To be within the jurisdiction of an agency or department of the United States Government means that the statement must concern an authorized function of that department or agency.  Not everything concerning an agency or department is within the jurisdiction of the United States.  The phrase "within the jurisdiction" differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body.  A federal department or agency has jurisdiction when it has the power to exercise authority in a particular situation, regardless of whether the Federal agency chooses to exercise that authority or not.

---

[136]    Adapted from <u>United States v. Litvak</u>, 13 Cr. 19 (JCH), Doc. No. 225 (jury charge).

225.    It is not necessary for the Government to prove that Mr. Aiello and Mr. Gerardi had actual knowledge that the false statement was to be utilized in a matter which was within the jurisdiction of the Government of the United States.  It is sufficient to satisfy this element if you find that the false statement was made with regard to a matter within the jurisdiction of the Government of the United States.

226.    If you find that, as to a count of making a false statement in a matter within the jurisdiction of the United States Government, the Government has failed to prove beyond a reasonable doubt this fifth element—that the particular statement or statements charged was made with regard to a matter within the jurisdiction of the United States Government—then you must return a verdict of not guilty as to that count.  If, however, you find that, as to a count, the Government has proven beyond a reasonable all five elements, then you should return a verdict of guilty as to that count.[137]

227.    Remember, you must consider these five elements, on which I have charged you, with respect to each of Counts Seventeen and Eighteen, separately.  My suggestion is that, once you reach a verdict as to Count Seventeen, you proceed to the next count of making a false statement in a matter within the jurisdiction of the United States Government, again considering all five elements, and so on, until you have reached a verdict on each of Counts Seventeen and Eighteen.  This is only a suggestion, however.  Again, you are not required to consider the counts in numerical order, and you should consider the counts in the order that makes the most sense to you, as the jury.[138]

---

[137]    Adapted from United States v. Litvak, 13 Cr. 19 (JCH), Doc. No. 225 (jury charge).

[138]    Adapted from United States v. Litvak, 13 Cr. 19 (JCH), Doc. No. 225 (jury charge).

**Jury Unanimity as to False Statement**

228.    I also instruct you that, for you to return a verdict finding that the Government has

met its burden of proving that either Mr. Gerardi, Mr. Aiello, or both made specific false

statements to the Government, you must be unanimous as to which statements were false in each

case.[139]

**Venue**

229.    In addition to proving the essential elements of each crime charged beyond a

reasonable doubt, the Government must also establish what is called "venue"—that is, that some

act pertaining to the charge occurred in the Southern District of New York.  The Southern

District of New York includes all of Manhattan and the Bronx, as well as Westchester, Rockland,

Putnam, Dutchess, Orange and Sullivan Counties.[140]

230.    The Government does not have to prove that the complete crime was committed

within the Southern District of New York or that the defendant you are considering was ever in

the Southern District of New York.  It is sufficient to satisfy the venue requirement if any act in

furtherance of the crime charged occurred in this District.  The act itself need not be a criminal

act; it could include, for example, meeting with others involved in the criminal scheme within

this District.  And the act need not have been taken by the defendant, as long as the act was part

of the crime that you find that the defendant committed.[141]

231.    Unlike the elements of the offenses that I have just discussed at length, which

must be proved beyond a reasonable doubt, the Government is only required to prove venue by a

---

[139]    See Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 9-7.1 (citing cases).

[140]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[141]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

preponderance of the evidence.  A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime that you are considering occurred in this District.[142]

232.    If you find that the Government failed to prove venue by a preponderance of the evidence as to any count, you must return a verdict of not guilty as to that count.[143]

**Exculpatory Statement**

233.    You have heard testimony that one or more defendants made statements outside the courtroom in which he claimed that his conduct was consistent with innocence and not with guilt.  Such statements are called "exculpatory statements."  The Government claims that these statements in which a defendant exculpated himself are false.  If you find that a defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to, infer that the defendant believed that he was guilty.  You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which he is charged.[144]

234.    Regardless of what a defendant may have believed about his own guilt, the Government must prove all the elements of each charge beyond a reasonable doubt.  Whether the evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you to decide.[145]

---

[142]    Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[143]    Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[144]    Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[145]    Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

**Financial Disclosure Form**

235.     You heard testimony regarding and were shown financial disclosure forms filed by Mr. Percoco pursuant to state law.  Neither Mr. Percoco nor any other defendant has not been charged with any crime based on the way in which Mr. Percoco filled out his financial disclosure forms.  You may not find Mr. Percoco—or any other defendant—guilty on any count merely because you believe Mr. Percoco should have disclosed more or different information on those forms.  If, however, you find that Mr. Percoco knowingly did not fully disclose information sought on those forms, you may, but need not, consider that as evidence of Mr. Percoco's state of mind or as evidence of an intent to mislead the public or to conceal from the public information regarding the nature and source of his income.  You may also find that Mr. Percoco filled out the forms accurately or for perfectly innocent reasons.[146]

**Campaign Contributions**

236.     You heard some testimony about campaign contributions that were given to the political campaign(s) of Andrew Cuomo by CPV and by COR.  You heard some testimony that the campaign contributions by CPV were directed or facilitated by Mr. Kelly and that the campaign contributions from COR were directed or facilitated by Mr. Aiello and Mr. Gerardi.

237.     The freedom of speech protected by the Constitution extends to political contributions, campaign fundraising, and the activities and involvement of the individuals involved in that process—both the elected officials and their staff and the private citizens and corporations who are participating.[147]  Contributors have the right to make contributions with the hope that the candidate—or the campaign of the candidate—will support projects or produce

---

[146]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury charge).

[147]     Adapted from <u>United States v. Chapman</u>, 16 Cr. 199 (CMR) (E.D. Pa. Jan. 31, 2017), Doc. No. 111 (transcript of jury charge).

political outcomes that benefit the contributor.  A perfectly legitimate reason to make campaign

contributions is the expectation that the recipient of the contributions will respond by producing

outcomes favored by the contributor.  Another perfectly legitimate reason to make a campaign

contribution is to obtain access to government officials in return.[148]

238.    Similarly, elected officials—and the staff members of elected officials—have the

right to ask for and receive contributions, including from people or entities that hope these

elected officials will provide them access and support policies helpful to them.[149]

239.    The Government does not allege that any of the contributions made by CPV or by

COR were unlawful.[150]  You may find that each of the campaign contributions was made for

perfectly innocent reasons.

## PART III: FINAL INSTRUCTIONS

### Right to See Exhibits and Hear Testimony/Communications with the Court

240.    You are about to begin your deliberations.

241.    We will send all of the exhibits into the jury room for your use during

deliberations.  If you want any further explanation of the law or to hear any testimony read back,

you may request that.  If you ask for any testimony to be re-read, please be as specific as possible

so that we can identify exactly what you want to be read and not waste time reading testimony

---

[148]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions); see also McCutcheon v. FEC, 134 S. Ct. 1434, 1441 (2014) (plurality opinion) ("[G]overnment regulation may not target the general gratitude a candidate may feel toward those who support him or his allies, or the political access such support may afford."); Citizens United v. FEC, 558 U.S. 310, 360 (2010) ("Ingratiation and access, in any event, are not corruption."); id. at 359 ("It is well understood that a substantial and legitimate reason, if not the only reason . . . to make a contribution to, one candidate over another is that the candidate will respond by producing those political outcomes the supporter favors." (citation omitted)).

[149]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[150]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

you do not want read back.  If there is any doubt or question about the meaning of any part of the instructions that I have given you, you should not hesitate to send me a note asking for clarification or for a further explanation.[151]

242.     It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching on this case.  There is only one exception to this rule.  If it becomes necessary during your deliberations to communicate with me, you should send a note to me, in writing, signed by your foreperson, and give it to the Marshal, who will be available outside the jury room throughout your deliberations.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing or orally here in open court.  If you send any notes to the Court, do not disclose anything about your deliberations.  Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.[152]

**<u>Notes</u>**

243.     Some of you have taken notes throughout this trial.  I want to emphasize to you that notes are simply an aid to memory.  Your notes may not be given any greater weight or influence in the determination of the case than the recollections of other jurors.  Any difference between a  juror's recollection and another juror's notes should be settled by asking to have the

---

[151]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[152]     Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

court reporter read back the transcript, because it is the court record that the jury must rely on when making a determination of the facts and rendering a verdict.[153]

**Duty to Deliberate/Unanimous Verdict**

244.    You will now retire to decide your verdict on each of the counts of the indictment as to each defendant.  As I have already explained, for the Government to prevail on a particular charge against a particular defendant, the Government must prove each essential element of that charge beyond a reasonable doubt as to that defendant.  If the Government carries its burden, you must find that defendant guilty of that charge.  Otherwise, you must find that defendant not guilty and acquit him of that charge.[154]

245.    As I stated before, you must consider each defendant and each count separately.

246.    Your verdict on each count must be unanimous.  Each juror is entitled to his or her opinion, but you are also required to exchange views with your fellow jurors.  That is the very essence of jury deliberation.  If you have a point of view and after discussing it with other jurors it appears that your own judgment is open to question, then of course you should not hesitate to yield your original point of view if you are convinced that the other view is one that satisfies your judgment and conscience.[155]

247.    Do not give up a point of view that you conscientiously believe simply because you are outnumbered.  You should vote a certain way only if you personally are convinced—on the evidence, the facts, and the law—that it is the correct way to decide the case.[156]

---

[153]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[154]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[155]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[156]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

248.    After any breaks or when you arrive in the morning, if your deliberations last more than one day, do not begin to discuss the case until all jurors are present.[157]

**Selecting a Foreperson**

249.    The first thing you should do when you retire to deliberate is to select one of you to act as your foreperson.  You are free to select any of your members as your foreperson.[158]

**Verdict Form and Return of Verdict**

250.    Once you have reached your verdict, you must record it on the verdict form that I have prepared for you.  The foreperson should fill in the verdict sheet, date it, and sign it. The foreperson should then give a note to the Marshal outside your door stating that you have reached a verdict.  Do not specify what the verdict is in the note.  The foreperson should keep the verdict sheet until I ask for it.  You must all be in agreement with the verdict that is announced in court.[159]

**Oath**

251.    I charge you that any public interest that may exist in this trial can play absolutely no role in your decision-making.[160]

252.    I remind you that at the very beginning of the case you took an oath.  Your oath sums up your duty.  You must well and truly try the matters in issue and render a true verdict according to the law and the evidence.[161]

---

[157]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[158]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[159]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[160]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

[161]    Adapted from United States v. Silver, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).

253.    You may now retire to the jury room and begin your deliberations.[162]

###

---

[162]    Adapted from <u>United States v. Silver</u>, 15 Cr. 93 (VEC), Doc. No. 135 (jury instructions).