1114 Avenue of the Americas
New York, NY 10036

212 506 3900 main
www.steptoe.com



Michael Campion Miller
212 506 3995 direct
212 506 3950 fax
mmiller@steptoe.com

December 13, 2017

<u>Via ECF</u>

Hon. Valerie E. Caproni
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: ***U.S. v. Percoco, et al.* (Case No. 16-cr-00776-VEC)**

Dear Judge Caproni:

  This firm represents Defendant Alain Kaloyeros in the above-referenced matter. We write to address issues raised at oral argument on December 6, 2017 regarding Dr. Kaloyeros' motion to suppress the cell phone seized pursuant to the New York State Attorney General's May 24, 2016 search warrant (the "Search Warrant").

  The three cases the Government cited at oral argument in support of its argument that the Donnelly Act criminalizes vertical bid-rigging[1] are inapposite for three reasons.

  First, all three cases involved bribes or other *quid pro quos* given to the administrator/seller. *People v. Partridge*—a thirty-year-old unpublished case—condemned "the bribery of a government employee[.]" No. 4352/86, 1987 WL 92057, at *5 (N.Y. Sup. Ct. Mar.

---

[1] We previously demonstrated that *People v. Schwartz* involved horizontal bid-rigging in which ostensible competitors colluded against a nursing home. 160 A.D.2d 964, 965 (2d Dep't 1990). At oral argument, the Court raised the fact that the nursing home administrator in *People v. Schwartz* was immunized. Tr. 8:22-23. That fact does not suggest that vertical bid-rigging is a cognizable theory. First, the opinion draws no conclusion as to the administrator's personal liability and no liability should be assumed simply because the administrator's counsel negotiated a favorable resolution for his or her client. Second, the administrator may have had other potential criminal exposure based on bribery or other non-Donnelly Act theories that motivated him to testify only under immunity. Third, an insider like the administrator in a vertical relationship could potentially be liable under an aiding and abetting theory based on his assistance to a horizontal bid-rigging scheme.



Hon. Valerie E. Caproni
December 13, 2017
Page 2

27, 1987). In *People v. Kessler*, another decades-old unpublished case, the defendant "demanded kickbacks from various contractors[.]" No. 11307/95, 1996 WL 903952, at *1 (N.Y. Sup. Ct. Dec. 2, 1996). *People v. Wiesner* similarly involved "kickbacks to government employees[.]" Tr. 27:4-16. The affidavit seeking the State Warrant—unlike the affidavits for the federal warrants—does not mention any potential bribes or other *quid pro quo* provided to Dr. Kaloyeros.

Second, *Partridge* was premised on the theory that vertical bid-rigging conspiracies can be per se illegal. *See* 1987 WL 92057, at *3. The New York Attorney General has disclaimed this approach. *See Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 331 (1988) (citing New York Attorney General's concession that "vertical restraints are not per se illegal under New York's antitrust law"). The holdings in both *Kessler* and *Wiesner* relied directly on the decision in *Partridge*. *See Kessler*, 1996 WL 903952, at *1 (citing only *Partridge* for its central holding); *Wiesner* (citing *Partridge*, *Kessler*, and *Schwartz*). *See also Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 521 (S.D.N.Y. 2013) (concluding that vertical bid-rigging allegations were insufficient to state claim under Donnelly Act per se or rule of reason theories). In short, the Government's cited cases rely on the *Partridge* decision—notwithstanding that the New York Attorney General undermined its validity in 1988.

Third, accepting the Government's interpretation of these cases would put the Donnelly Act at odds with its federal counterpart without any justification. Federal law would not support a criminal prosecution based on the vertical bid-rigging alleged here. *See Expert Masonry, Inc. v. Boone Cty., Ky.*, 440 F.3d 336, 348 (6th Cir. 2006) ("The parties may break a host of state or federal laws and regulations in . . . circumventing the bidding process in reaching a final arrangement, but they do not breach Section 1 of the Sherman Act where the alleged vertical agreements involve only one buyer and one seller.").[2] A divergence between the Sherman Act

---

[2] *See also Phillips Getschow Co. v. Green Bay Brown Cty. Prof'l Football Stadium Dist.*, 270 F. Supp. 2d 1043, 1050 (E.D. Wis. 2003); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1089 (D. Colo. 2012); *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1463–64 (E.D. Pa. 1992); *Banneker Ventures, LLC v. Graham*, 19 F. Supp. 3d 231, 251 (D.D.C. 2014), *aff'd in part, rev'd in part on other grounds*, 798 F.3d 1119 (D.C. Cir. 2015); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 747 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *TMT Mgmt., Grp., LLC v. U.S. Bank Nat'l Ass'n*, No. CV 14-4692, (MJD/JSM), 2016 WL 730254, at *26–27 (D. Minn. Jan. 4, 2016); *MHB Distrib., Inc. v. Parker Hannifin Corp.*, 800 F. Supp. 1265, 1268 (E.D. Pa. 1992); *United States v. Ashland Warren, Inc.*, 537 F. Supp. 433, 445 (M.D. Tenn. 1982). The only case approving a vertical bid-rigging theory is civil and involved a competitor who would have had the lowest bid absent collusion and the submission of objectively false bids. *See United States ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 926 (N.D. Ill. 2015). No courts have cited it for this proposition.



Hon. Valerie E. Caproni
December 13, 2017
Page 3

and the Donnelly Act is only warranted "where State policy, differences in the statutory language or the legislative history justify such a result." *Anheuser-Busch, Inc.*, 71 N.Y.2d at 335. The Government has not identified anything that would warrant this result here.

Fourth, this interpretation would also produce serious due process concerns. The Donnelly Act has the potential to reach any agreement that may restrain competition. N.Y. Gen. Bus. Law § 340 (prohibiting "[e]very contract, agreement, arrangement or combination whereby . . . any business, trade or commerce . . . is or may be restrained"). Combined with the Government's position that restraints subject to the rule of reason may be criminally prosecuted under the Donnelly Act, this means that any agreement is potentially criminal depending on the outcome of a highly fact-dependent rule of reason test. *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). The net result of this combination is that commercial actors will be unable to determine when their conduct will trigger criminal liability. The Department of Justice avoids the serious due process concerns attendant to the Sherman Act, which is equally far reaching, by only prosecuting narrowly defined horizontal conduct.[3]

Even if the State Warrant were valid, the Government waived any entitlement to rely on it. *United States v. Acosta*, No. S1 12 CR 224 PGG, 2013 WL 1890337, at *6 (S.D.N.Y. May 6, 2013) (finding waiver of argument on suppression motion). The Government identified no basis at oral argument to avoid waiver given its failure to address Dr. Kaloyeros' motion to suppress and unambiguous prior representation that it "does not intend to rely on the State search warrant to establish the admissibility of any contents of the cellphone." Dkt. No. 264 at 112 n. 37. The Court itself observed that "there really is no excuse for the fact that the U.S. Attorney's office didn't make any of these arguments" previously. Tr. 25:12-16.

Finally, even if the State Warrant were valid and the Government did not waive reliance on it, the Government's execution of the warrant was unconstitutional. At oral argument, the Court recognized that the Government could not "run roughshod" through the forensic image of Dr. Kaloyeros' cell phone but was instead "bound by the terms of the state warrant." Tr. 17:23-18:1, 23:9. The Court also recognized that it was incumbent upon the Government in its review to segregate "seized" from non-responsive records. Tr. 19:6-9.

The Government did not follow these fundamental directives when it reviewed Dr. Kaloyeros' cell phone. The State Warrant authorized a search for data "relating to criminal

---

[3] United States Department of Justice, An Antitrust Primer for Federal Law Enforcement Personnel, available at https://www.justice.gov/atr/antitrust-primer-federal-law-enforcement-personnel-revised-april-2005#1 (describing a criminal prosecution under Section 1 of the Sherman Act as "requir[ing] . . . an agreement among competitors," *i.e.*, a horizontal restraint).



Hon. Valerie E. Caproni
December 13, 2017
Page 4

violations of the Donnelly Act[.]" State Warrant at 1. The Government, however, apparently did not review "each element of the state warrant with the agent," or even ask the agent to look for violations of the Donnelly Act. Tr. 17:15-21. Instead, the Government appears to have: (1) treated the entirety of the cell phone as "fair game" (Tr. 20:23); (2) reviewed the cell phone for "evidence of the same conduct at issue" in the State Warrant without limiting review to violations of the Donnelly Act (Tr. 17:19-22); and (3) made no effort to segregate seized data (Tr. 19:6-10). The Government effectively failed to ring-fence its investigators' review in any way.

At bottom, the Government treated the State Warrant like a general warrant. The Government conceded as much when it stated "I can't sit here and represent exactly what process the agent did when looking at each file." Tr. 15:13-14.[4] This warrants, at minimum, a hearing into how the agent conducted his review of the seized records. *United States v. Wey*, 15-Cr-611 (AJN), 2017 WL 2574026, at *40 (S.D.N.Y. June 14, 2017); *United States v. Hulscher*, No. 4:16-CR-40070-01-KES, 2017 WL 657436, at *3 (D.S.D. Feb. 17, 2017) ("The government's position, which would allow for mass retention of unresponsive cell phone data, is simply inconsistent with the protections of the Fourth Amendment.").

For these reasons, materials seized from Dr. Kaloyeros should be suppressed. At a minimum, a hearing is necessary to understand the Government's protocol (or lack thereof) for reviewing these materials.

We thank the Court for its attention to this matter and are available to the Court should it require any additional information.

Respectfully submitted,

Michael C. Miller

cc:     All Counsel (via ECF)

---

[4]     The Court suggested at oral argument that it may have been permissible to review the cell phone in accordance with the warrant and seize material outside the scope of the warrant in plain view. Tr. 20:1-5. As the Court observed, the Government never made this argument. *Id.* In any event, this scenario is not consistent with the Government's actual review process here.